# EXHIBIT 1

Filing # 212794428 E-Filed 12/13/2024 11:02:29 AM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT, IN AND
FOR PALM BEACH COUNTY, FLORIDA

$R A$
12-19-24

Richard Mancini

              Plaintiff,

vs.

Steven Mancini, et al.

              Defendant.

CASE NO. 50-2024-CA-011586-XXXXAMB
Division AE

## SUMMONS

TO DEFENDANT(S):

Mancini Enterprises, LLC
c/o Steven Mancini, Registered Agent
41500 Mound Road, Sterling Heights, MI 48314

ALTERNATE ADDRESS:

### IMPORTANT

A LAWSUIT HAS BEEN FILED AGAINST YOU.  YOU HAVE 20 CALENDAR DAYS AFTER
THIS SUMMONS IS SERVED ON YOU TO FILE A WRITTEN RESPONSE TO THE
ATTACHED COMPLAINT WITH THE CLERK OF THIS COURT.  A PHONE CALL WILL NOT
PROTECT YOU.  YOUR WRITTEN RESPONSE, INCLUDING THE CASE NUMBER GIVEN
ABOVE AND THE NAMES OF THE PARTIES, MUST BE FILED IF YOU WANT THE COURT
TO HEAR YOUR SIDE OF THE CASE.  IF YOU DO NOT FILE YOUR RESPONSE ON TIME,
YOU MAY LOSE THE CASE, AND YOUR WAGES, MONEY, AND PROPERTY MAY
THEREAFTER BE TAKEN WITHOUT FURTHER WARNING FROM THE COURT.  THERE
ARE OTHER LEGAL REQUIREMENTS.  YOU MAY WANT TO CALL AN ATTORNEY
RIGHT AWAY.  IF YOU DO NOT KNOW AN ATTORNEY, YOU MAY CALL AN ATTORNEY
REFERRAL SERVICE OR A LEGAL AID OFFICE (LISTED IN THE PHONE BOOK).

IF YOU CHOOSE TO FILE A WRITTEN RESPONSE YOURSELF, AT THE SAME TIME YOU
FILE YOUR WRITTEN RESPONSE TO THE COURT YOU MUST ALSO MAIL OR TAKE A
COPY OF YOUR WRITTEN RESPONSE TO THE APLAINTIFF OR PLAINTIFF(S) ATTORNEY
NAMED BELOW.
Scott B. Cosgrove and Andrew B. Boese, Leon Cosgrove Jimenez, LLP, 255 Alhambra Circle, 8th Floor, Coral
Gables, FL 33134

THE STATE OF FLORIDA:
TO EACH SHERIFF OF THE STATE: YOU ARE COMMANDED TO SERVE THIS SUMMONS
AND A COPY OF THE COMPLAINT IN THIS LAWSUIT ON THE ABOVE NAMED
DEFENDANT(S)

DATED: ~~XXXXXXXXXX~~ Dec 16 2024

Joseph Abruzzo, Clerk & Comptroller

By: _____

DEPUTY CLERK **JOSIE LUCCE**

SEE REVERSE SIDE - VEASE AL REVES - VOIR DE L=AUTRE COTE DE

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecu-tifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egale-ment, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

SEE REVERSE SIDE - VEASE AL REVES - VOIR DE L=AUTRE COTE DE

This notice is provided pursuant to Administrative Order No. 2.207-1/15

**"If you are a <u>person with a disability</u> who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact William Hutchings, Jr., Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway, West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**

**"Si usted es una <u>persona minusválida</u> que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con William Hutchings, Jr., 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355-4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711."**

**"Si ou se yon <u>moun ki enfim</u> ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte William Hutchings, Jr., kòòdonatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telefòn li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711."**

Filing # 212317963 E-Filed 12/06/2024 10:44:19 AM

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

**I.   CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>FIFTEENTH</u>  JUDICIAL CIRCUIT, IN AND FOR <u>PALM BEACH</u>  COUNTY, FLORIDA

<u>Richard Mancini</u>
Plaintiff

Case # _____
Judge _____

vs.

<u>Steven Mancini, Lisa Cavaliere Mancini, Christina Mancini Catera, Mancini Enterprises LLC, Ric Man Construction Inc, Ric Man Detroit Inc</u>
Defendant

**II.   AMOUNT OF CLAIM**
Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

**III.   TYPE OF CASE**      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

## CIRCUIT CIVIL

- ☐ Condominium
- ☒ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☐ Negligence—other
  - ☐ Business governance
  - ☐ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability—commercial
  - ☐ Premises liability—residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
  - ☐ Commercial foreclosure
  - ☐ Homestead residential foreclosure
  - ☐ Non-homestead residential foreclosure
  - ☐ Other real property actions

- ☐ Professional malpractice
  - ☐ Malpractice—business
  - ☐ Malpractice—medical
  - ☐ Malpractice—other professional
- ☐ Other
  - ☐ Antitrust/Trade regulation
  - ☐ Business transactions
  - ☐ Constitutional challenge—statute or ordinance
  - ☐ Constitutional challenge—proposed amendment
  - ☐ Corporate trusts
  - ☐ Discrimination—employment or other
  - ☐ Insurance claims
  - ☐ Intellectual property
  - ☐ Libel/Slander
  - ☐ Shareholder derivative action
  - ☐ Securities litigation
  - ☐ Trade secrets
  - ☐ Trust litigation

## COUNTY CIVIL

- ☐ Small Claims up to $8,000
- ☐ Civil
- ☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

### COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☐ No ☒

**IV.   REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.   NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

   <u>5</u>

**VI.   IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.   HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.   IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.   DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Scott B. Cosgrove</u>        Fla. Bar # <u>161365</u>
      Attorney or party              (Bar # if attorney)

<u>Scott B. Cosgrove</u>        <u>12/06/2024</u>
 (type or print name)        Date

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION: "AE"
CASE NO.: 502024CA011586XXXAMB

RICHARD MANCINI,
      Plaintiff/Petitioner

vs.

STEVEN MANCINI,
LISA CAVALIERE MANCINI,
CHRISTINA MANCINI CATERA,
et al.,
      Defendant/Respondents.

_____/

### ORDER IMPLEMENTING DIFFERENTIATED CASE MANAGEMENT PLAN, DESIGNATING CASE TO THE GENERAL TRACK, ORDER SETTING CALENDAR CALL AND CASE MANAGEMENT CONFERENCE AND DIRECTING PRETRIAL AND MEDIATION PROCEDURES (DCMGJT)

**THIS MATTER** is a Circuit Civil case calling for a jury trial. Accordingly, it is

**ORDERED AND ADJUDGED** that pursuant to Administrative Order 3.110 (as amended), this case is designated to the **GENERAL TRACK**. The deadlines established by this Order are to ensure the case is **disposed of within 18 months from the date of filing.** To that end, the following procedures and deadlines shall be strictly observed:

### I. SERVICE OF THIS ORDER, ACTIVE CASE MANAGEMENT AND NON-COMPLIANCE

**Plaintiff/Petitioner is directed to serve this Order** upon each Defendant/Respondent with the Initial Complaint/Petition and Summons. The deadlines and procedures set forth herein are firm and may be modified only upon a showing of a good faith attempt to comply with the deadlines or demonstration of a significant change of circumstances and through the process established in the 15th Circuit's Administrative Order 3.110 (as amended).

The parties are expected to actively manage the case and to confer early and often to ensure compliance with this order and timely resolution of the case. The parties and counsel are expected to govern themselves at all times with a spirit of cooperation, professionalism, and civility. They are expected to accommodate each other whenever reasonably possible and eliminate disputes by reasonable agreements.

**Self-Represented/Pro se litigants** (i.e. those without counsel) are held to the same obligations imposed upon counsel.

**Motions to extend deadlines** must be filed *prior* to the deadline. Untimely motions will be denied absent compelling circumstances and showing of good cause.

**NONCOMPLIANCE WITH THIS ORDER, ABSENT A SHOWING OF GOOD**

Case No. 50-2024-CA-011586-XXXA-MB

**CAUSE, MAY RESULT IN DISMISSAL OF THE ACTION, THE STRIKING OF PLEADINGS, WITNESSES, OR EXHIBITS, REMOVAL OF THE CASE FROM THE DOCKET, DEFAULT OR ANY OTHER APPROPRIATE SANCTION.**

The failure to act in good faith and comply with this order must be reported, if not resolved through a conference of the parties and good faith conferral, by filing a **"Suggestion of Non-Compliance with Pre-Trial Order"** that must be set for hearing in a timely manner. The Suggestion must name the non-compliant person, describe the act of non-compliance, be served upon all parties and sent to the Court's chambers. Responses may only be submitted upon request of the Court. Failure to correct any non-compliance before the hearing may result in sanctions as described above. The parties will notify the Court immediately if non-compliance is cured; if cured more than 7 days before the hearing, the hearing may be cancelled.

II. <u>SCHEDULING, CONTINUANCES AND PRETRIAL DEADLINES</u>

**A CASE MANAGEMENT CONFERENCE and CALENDAR CALL will be held on May 8, 2026**. The parties must be ready to try the case by that day. The specific time of Case Management Conference and procedures for conducting Calendar Call can be found on the Division's webpages at www.15thcircuit.com. The Calendar Call may be conducted in-person or by e-calendar. <u>This Order serves as notice to the parties that failure to attend the Case Management Conference and Calendar Call will result in an Order of Dismissal without prejudice, or entry of default, without further notice or hearing. See Fla. R. Civ. P. 1.200(j)(6).</u>

The trial period begins the first business day of the immediately following week after the above-listed Case Management Conference and Calendar Call, unless otherwise described in the divisional instructions or by court order.

**TRIAL CONTINUANCES:** If a case cannot be ready for trial by the Calendar Call despite all good faith efforts, a motion to continue trial must be set for a Differentiated Case Management (DCM) Conference as described in the 15th Circuit's Administrative Order 3.110 (as amended) and the next paragraph. Any motion to continue the trial must comply with Fla. R. Civ. P. Rule 1.460, including that they are signed by the client. The Motion must be filed and the DCM Conference set no more than **30 DAYS** from the last defendant being served or as soon as circumstances giving rise to the need for a continuance becomes known and only for good cause. Every motion for a continuance must include a proposed Amended DCMO resetting each pretrial deadline that remains applicable and indicating the month the case can be ready for trial.

**DCM CONFERENCES:** DCM conferences are scheduled through the Circuit's Online Scheduling System under DCM- Case Management Conference Scheduling. No less than ten (10) days in advance of the DCM Conference the parties must file with the Clerk a Joint Status Report that:

1. Concisely updates the Court on the status of the case,
2. Identifies pending motions and other matters the Court needs to address, and
3. If applicable, provides a proposed revised pretrial schedule.

The parties must upload the Joint Status report at least 7 days in advance of a DCM Conference through the e-courtesy feature of the Circuit's Online Scheduling System. The

Case No. 50-2024-CA-011586-XXXA-MB

parties are to be prepared at the DCM Conference to address the topics listed in Rule 1.200(a) and for the court, at its discretion, to hear or set for hearing any pending motions.

**The following deadlines (discussed in detail below) apply unless otherwise modified by the Court:**

| | EVENTS | DESCRIPTION | COMPLETION DEADLINE |
|---|---|---|---|
| 1. | Service of Complaint | See Part III.A, infra | April 5, 2025 Service under extension is only by court order. |
| 2. | Pleading Amendments/ Adding parties | See Part III.B, infra | June 4, 2025 |
| 3. | Resolution of all motions/objections directed to the pleadings *(i.e. to dismiss or strike)* and pleadings closed * | See Part III.B, infra | August 13, 2025 |
| 4. | Expert Witnesses and Compulsory Examinations | See Part III.D, infra | January 8, 2026 |
| 5. | Witness & Exhibit Lists | See Part III.C, infra | January 8, 2026 |
| 6. | Rebuttal Witness Lists | See Part III.E, infra | January 28, 2026 |
| 7. | Filing Summary Judgment & *Daubert* Motions | See Part III.J, infra | February 7, 2026 |
| 8. | Discovery Cut-Off | See Part III.H, infra | February 7, 2026 |
| 9. | Pre-Trial Meet & Confer | See Part III.I, infra | April 8, 2026 |
| 10. | Deposition Designations | See Part III.G, infra | April 18, 2026 |
| 11. | Deadline for Mediation | See Part IV, infra | April 28, 2026 |
| 12. | Deadline to hear ALL Motions | See Part III.J, infra | May 3, 2026 |
| 13. | Jury Instructions and Verdict Form | See Part III.O, infra | May 5, 2026 |
| 14. | Trial Ready Date ** | See Part II, supra | May 8, 2026 |

**Fla. R. Gen. Prac. & Jud. Admin. Rule 2.514 governs if any deadlines falls on a weekend or holiday.**

* The parties must expeditiously address any motions directed to the pleadings. Defensive motions under Rule 1.140 of the Fla. R. Civ. P., motions to extend time to file a defensive motion or pleading, and any other motion preventing the matter from being at issue shall be set for hearing within **five (5) days** of filing. The motion should be scheduled for hearing at the earliest date that the Court and parties are available.

** The Court reserves the authority to expedite the trial setting and amend the pretrial deadlines accordingly.

III. **UNIFORM PRETRIAL PROCEDURES**

    A. **Timely Service and Defaults:**

        Parties must make reasonable efforts to ensure speedy service. Each return of

Case No. 50-2024-CA-011586-XXXA-MB

service must be separately filed for each defendant. If service is not completed within 90 days, an Order will be issued directing service by the **120 DAY DEADLINE**. Failure to comply will result in dismissal of the case or party for lack of service. Any motions to extend the deadline for service must specify why service could not have been effectuated, what is being done to effectuate service and request only that amount of additional time necessary.

If all defendants become defaulted, a Motion for Default Final Judgment along with supporting documentation must be filed within **30 days** of the last default and set for hearing at the next available hearing time.

B. **Amendment of Pleadings, Motions Directed at Pleadings and Notice for Trial:**

Any Motions to Amend Pleadings to add parties, must be filed no later than the first business day **180 DAYS AFTER THE CASE IS FILED**.

The parties must expeditiously address any other motions directed to the pleadings. Defensive motions under Rule 1.140, Fla. R. Civ. P., motions to extend time to file a defensive motion or pleading, and any other motion preventing the matter from being at issue must be set for hearing within **5 days** of filing to be heard at the earliest date that the Court and parties are available.

If the pleadings are not closed and the case not at issue **250 DAYS AFTER FILING**, the parties must appear for a DCM Conference to be noticed and held in accordance within the 15th Circuit's Administrative Order 3.110 and Divisional Instructions located on the Circuit's website for the Division to which the case is assigned.

C. **Exhibits and Witnesses**. On the last business day no later than **120 DAYS PRIOR TO CALENDAR CALL**, the parties must exchange lists of all trial exhibits, names and addresses of all trial witnesses.

D. **Expert Witnesses and Compulsory Medical Examinations.** If Expert Witnesses or Compulsory Medical Examinations are anticipated, the Parties must confer and establish a schedule for completing related discovery, including deadlines for disclosures, written discovery, depositions and motions directed at Experts or Compulsory Medical Examiners that will result in the completion of Expert/CME Discovery and resolution of Motions directed at them at least **120 DAYS BEFORE TRIAL**.

If agreed, the parties must submit a proposed Expert/CME Scheduling Order for entry by the Court. If not, the parties must appear for a DCM Case Management Conference.

**Expert Disclosures:** In addition to names and addresses of each expert retained to formulate an expert opinion with regard to this cause, both on the initial listing and on rebuttal, the parties must provide:

1. The subject matter about which the expert will testify;
2. The substance of facts and opinions to which the expert will testify;
3. A summary of the grounds for each opinion;
4. A copy of any written reports issued by the expert; and
5. A copy of the expert's curriculum vitae.

**One Expert Per Specialty:** The parties will be limited to one expert witness per specialty unless they obtain leave of Court to list and call more than one expert witness per specialty, no later than 60 days prior to calendar call.

E. **Rebuttal Witnesses and Exhibits.** On the last business day no later than **100 DAYS PRIOR TO CALENDAR CALL**, the parties must exchange lists of names and addresses of all rebuttal witnesses and list of any rebuttal exhibits.

F. **Additional Exhibits, Witnesses Or Objections.** At trial, the parties will be strictly limited to exhibits and witnesses disclosed and objections reserved on the schedules attached to the Pre-Trial Stipulation prepared in accordance with paragraphs D and E, absent agreement specifically stated in the Pre-Trial Stipulation or order of the Court upon good cause shown. Failure to reserve objections constitutes a waiver. A party desiring to use an exhibit or witness discovered after counsel have conferred pursuant to paragraph D must immediately furnish the Court and other counsel with a description of the exhibit or with the witness' name and address and the expected subject matter of the witness' testimony, together with the reason for the late discovery of the exhibit or witness. Use of the exhibit or witness may be allowed by the Court for good cause shown or to prevent manifest injustice.

G. **Deposition Designations.** No later than **20 DAYS PRIOR TO CALENDAR CALL**, each party must serve designation of depositions, or portions of depositions, each intends to offer as testimony. No later than **10 DAYS PRIOR TO CALENDAR CALL**, each opposing party is to serve any counter (or "fairness") designations to portions of depositions designated, together with objections to the depositions, or portions thereof, originally designated. No later than **5 DAYS BEFORE** calendar call, each party must serve any objections to counter designations served by an opposing party.

H. **Discovery Cutoff.** Unless otherwise agreed in the Pre-Trial Stipulation, all discovery must be completed no later than **90 DAYS PRIOR TO CALENDAR CALL** absent agreement for later discovery specifically stated in the Pre-Trial Stipulation or for other good cause shown. Absent unforeseeable, exigent circumstances, the failure to complete discovery is not grounds for a continuance.

I. **Pre-Trial Meet and Confer.** On the last business day no later than **3 0 DAYS PRIOR TO CALENDAR CALL**, the parties must confer and:

1. Discuss settlement;
2. Simplify the issues and stipulate, in writing, as to as many facts and issues as possible;
3. Prepare a Pre-Trial Stipulation in accordance with paragraph E; and
4. List all objections to trial exhibits.

J. **Motions:** The Parties must plan for, file and timely set hearings for any motions they expect the Court to address in advance of trial. **No motions will be heard the day of trial.** Few are appropriate after Calendar Call. The parties must confer early in the case and coordinate briefing and discovery schedules, as necessary, to ensure motions are timely heard.

While motion practice is critical to the advancement and streamlining of a case, the

Case No. 50-2024-CA-011586-XXXA-MB

Parties are reminded they **DO NOT have an absolute right to most motions being heard**. Failure to timely file and set motions for hearing in advance of Calendar Call will likely result the Court denying a request for hearing. Failure to file and have a motion heard is not grounds for a trial continuance.

**Summary Judgment and** *Daubert* **Motions** must be filed at least **90 DAYS prior to Calendar Call**. The parties shall confer regarding summary judgment motions to ensure discovery necessary for those motions is completed in advance of their filing.

**ALL MOTIONS** (including dispositive motions to motions in limine), must be heard no less than **5 days before Calendar Call**. Parties must plan and seek hearing time sufficiently in advance to ensure this deadline is met.

K.  **Filing of Pre-Trial Stipulation.** It is the duty of counsel for the Plaintiff to see that the Pre-Trial Stipulation is drawn, executed by counsel for all parties, and filed with the Clerk no later than **20 DAYS PRIOR TO CALENDAR CALL**. Unilateral pretrial statements are disallowed, unless approved by the Court, after notice and hearing showing good cause. Counsel for all parties are charged with good faith cooperation in this regard. The Pre-Trial Stipulation must contain in separately numbered paragraphs:

1.  A list of all pending motions including Motions *In Limine* and *Daubert* Motions requiring action by the Court and the dates those motions are set for hearing. **Motions not listed are deemed waived**.

2.  Stipulated facts requiring no proof at trial which may be read to the trier of fact;

3.  A statement of all issues of fact for determination at trial;

4.  Lists of exhibits itemized as follows:

    a.  Exhibits to be admitted by Plaintiff without objection;

    b.  Exhibits to be admitted by Defendant without objection;

    c.  Objected to Exhibits, with the specific basis for the objection stated.

    Note: Reasonably specific description of each exhibit is required. Non-specific descriptions like "all documents produced in discovery" will be stricken. Moreover, Objections may not be "reserved." Failure to specify an objection constitutes its waiver.

5.  Each party's numbered list of trial witnesses with addresses (including all known rebuttal witnesses); the list of witnesses must be on separate schedules attached to the Stipulation;

6.  A statement of total estimated time for trial, including the time needed per side for (1) jury selection, (2) opening arguments, (3) each case in chief, and (4) closing arguments.

7.  Names of attorneys to try case and their contact information; and

8.  The number of peremptory challenges per party.

Failure to file the Pre-Trial Stipulation or a Court Approved Unilateral Stipulation as

Case No. 50-2024-CA-011586-XXXA-MB

provided above may result in the case being stricken from the Court's calendar or other sanctions, including dismissal or default.

L. **Pre-Trial Conference pursuant to Fla. R. Civ. P. 1.200** If a pre-trial conference is set upon motion of a party or by the Court, counsel must meet and prepare a stipulation pursuant to paragraph K, infra, and file the stipulation no later than **5 DAYS BEFORE THE CONFERENCE**. Failure to request a pre-trial conference in a timely fashion constitutes a waiver of the notice of requirement of Rule 1.200. Absent prior approval, Motions for Summary Judgment will not be heard at any pre-trial conference.

M. **Pre-Marking Exhibits.** Prior to trial, each party is to mark for identification all exhibits, as directed by the clerk. (instructions and templates found at www.mypalmbeachclerk.com/departments/courts/evidence-guidelines/civil-evidence)

N. **Enlarged Jury Panels:** Local Rules require advance approval of the Chief Judge and Jury Office for jury panels exceeding 31 jurors. To ensure enough jurors are available, requests for enlarged jury panels must be resolved at least 6 months before calendar call.

O. **Jury Instructions and Verdict Form:** A joint set of proposed jury instructions and a proposed verdict form must be provided to the court no less than **3 days BEFORE TRIAL** in a printed form appropriate for submission to the jury and in Microsoft Word format.

If there is an objection to a proposed instruction, the instruction should be followed by the specific objection, a brief explanation, and a citation to legal authority. If an alternative or modified instruction is proposed, it should follow the instruction it is intended to replace.

P. **Unique Questions Of Law.** Prior to calendar call, counsel for the parties are directed to exchange and simultaneously submit to the Court appropriate memoranda with citations to legal authority in support of any unique legal questions that may reasonably be anticipated to arise during the trial.

## IV. **MEDIATION**

A. All parties are required to participate in mediation as follows:

1. The attendance of counsel who will try the case and representatives of each party with full authority to enter into a complete compromise and settlement is mandatory. If insurance is involved, an adjuster with authority up to the policy limits must attend.

2. At least one week prior to a scheduled mediation conference, all parties are to file with the mediator a brief, written summary of the case containing a list of issues as to each party.

3. All communications at the mediation conference are privileged consistent with Florida Statutes sections 44.102 and 90.408.

4. The mediator has no power to compel or enforce a settlement agreement. If a settlement is reached, it is a responsibility of the attorneys or parties to reduce

Case No. 50-2024-CA-011586-XXXA-MB

the agreement to writing and to comply with Florida Rule of Civil Procedure 1.730(b), unless waived.

B. The Plaintiff's attorney is responsible for scheduling mediation. The parties should agree on a mediator. If they are unable to agree, any party may apply to the Court for appointment of a mediator in conformity with Rule 1.720 (j), Fla. R. Civ. P. The lead attorney or party must file and serve on all parties and the mediator a Notice of Mediation giving the time, place, and date of the mediation and the mediator's name.

C. **Completion of mediation prior to calendar call is a prerequisite to trial and must be completed no later than 10 DAYS PRIOR TO CALENDAR CALL.** If mediation is not conducted, or if a party fails to participate in mediation, the case, at the Court's discretion, may be stricken from the trial calendar, pleadings may be stricken, and other sanctions may be imposed.

D. Any party opposing mediation may proceed under Florida Rule of Civil Procedure 1.700(b).

**DONE AND ORDERED** in West Palm Beach, Palm Beach County, Florida.



50-2024-CA-011586-XXXA-MB      12/11/2024
Bradley G. Harper
Circuit Judge

A copy of this Order has been furnished to the Plaintiff. The Plaintiff shall serve this Order to the Defendant(s) in compliance with Administrative Order 3.110 (amended).

# ADA NOTICE

This notice is provided pursuant to Administrative Order No. 2.207-7/22

"If you are a <u>person with a disability</u> who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact William Hutchings, Jr., Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."

"Si usted es una <u>persona minusválida</u> que necesita algún

Case No. 50-2024-CA-011586-XXXA-MB

acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con William Hutchings, Jr., 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355-4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711."

"Si ou se yon <u>moun ki enfim</u> ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte William Hutchings, Jr., kòòdonatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telefòn li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711."

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN
AND FOR PALM BEACH COUNTY,
FLORIDA

CASE NO. _____

RICHARD MANCINI,

        Plaintiff,

vs.

STEVEN MANCINI;
LISA CAVALIERE MANCINI, as trustee of the
STEVEN M. MANCINI CHILDREN'S TRUST
AGREEMENT NO. 2 F/B/O RICHARD MANCINI
and the STEVEN M. MANCINI 2011 CHILDREN'S
TRUST AGREEMENT F/B/O RICHARD MANCINI;
CHRISTINA MANCINI CATERA, as trustee of the STEVEN
M. MANCINI ELECTING SMALL BUSINESS TRUST;
MANCINI ENTERPRISES, LLC;
RIC-MAN CONSTRUCTION, INC.; and
RIC-MAN DETROIT, INC.,

        Defendants.

_____ /

## COMPLAINT

    Plaintiff Richard Mancini ("Plaintiff" or "Richard") hereby sues (1) Steven Mancini

("Steven"); (2) Lisa Cavaliere Mancini ("Lisa"), in her capacity as trustee of the Steven M.

Mancini Children's Trust Agreement No. 2 F/B/O Richard Mancini (the "2005 Trust") and the

Steven M. Mancini 2011 Children's Trust Agreement F/B/O Richard Mancini (the "2011 Trust");

(3) Christina Mancini Catera ("Christina"), in her capacity as trustee of the Steven M. Mancini

Electing Small Business Trust ("ESBT"); (4) Mancini Enterprises, LLC ("Mancini Enterprises");

(5) Ric-Man Construction, Inc. ("RCI"); and (6) Ric-Man Detroit, Inc. ("RCD"), and alleges as

follows.

## THE PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Richard Mancini is an individual and resident of Miami-Dade County, Florida.

2.      Defendant Steven Mancini, Richard's father, is an individual and resident of Macomb County, Michigan.

3.      Defendant Lisa Cavaliere Mancini, Richard's mother, is an individual and resident of Macomb County, Michigan.

4.      Defendant Christina Mancini Catera, Richard's sister, is an individual and resident of Palm Beach County, Florida.

5.      Defendant Mancini Enterprises, LLC is a Michigan limited liability company.

6.      Defendant Ric-Man Construction, Inc. is a Michigan corporation with its principal place of business in Sterling Heights, Michigan and offices in Deerfield Beach, Florida.

7.      Defendant Ric-Man Detroit, Inc. is a Michigan corporation with its principal place of business in Sterling Heights, Michigan.

8.      This Court has subject matter jurisdiction under Article 5, § 20(c)(3) of the Florida Constitution, and §§ 26.012(2), 736.0203, Fla. Stat.

9.      This Court may exercise general personal jurisdiction over Steven because of his substantial business activities within Florida, including in the construction and real estate industries, under § 48.193(2), Fla. Stat. In the alternative, this Court may exercise specific personal jurisdiction over Steven because this action arises out of the breach of Richard's employment agreement in Florida under § 48.193(1)(a), Fla. Stat. Personal jurisdiction over Steven is consistent with the Due Process Clause of the United States Constitution because Steven has purposefully availed himself of Florida's privileges and protections by employing Richard in Florida, and

maintaining suit against Steven in Florida will not offend traditional notions of fair play and substantial justice.

10.     This Court may exercise general personal jurisdiction over Lisa because of her substantial business activities within Florida, including in the construction and real estate industries, under § 48.193(2), Fla. Stat. In the alternative, this Court may exercise specific personal jurisdiction over Lisa because this action arises out of Lisa's breach of trust in Florida under §§ 48.193(1)(a), 736.0202(2)(a), Fla. Stat. Personal jurisdiction over Lisa is consistent with the Due Process Clause of the United States Constitution because Lisa has purposefully availed herself of Florida's privileges and protections by managing Florida trust assets and breaching her fiduciary duties to a Florida resident, and maintaining suit against Lisa in Florida will not offend traditional notions of fair play and substantial justice.

11.     This Court may exercise general personal jurisdiction over Christina because she resides in Boca Raton, Palm Beach County, Florida.

12.     This Court may exercise general personal jurisdiction over Mancini Enterprises, RCI, and RCD because of their substantial business activities within Florida, including in the construction and real estate industries, under § 48.193(2), Fla. Stat. In the alternative, this Court may exercise specific personal jurisdiction over Mancini Enterprises, RCI, and RCD because this action arises out of the breach of Richard's employment agreement in Florida under § 48.193(1)(a), Fla. Stat. Personal jurisdiction over Mancini Enterprises, RCI, and RCD is consistent with the Due Process Clause of the United States Constitution because these entities have purposefully availed themselves of Florida's privileges and protections by employing Richard in Florida, and maintaining suit against them in Florida will not offend traditional notions of fair play and substantial justice.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

13.     In accordance with §§ 47.011, 736.0204, Fla. Stat., venue is proper in this Court because Christina resides in Palm Beach County, Florida.

## FACTUAL ALLEGATIONS

### The Mancini Family Business

14.     In 1965, Richard Mancini Sr. ("Richard Sr."), Plaintiff's grandfather and namesake, launched the Mancini family's construction empire in Michigan.

15.     In 1972, Richard Sr. expanded the Mancini family empire to South Florida.

16.     Today, the Mancini family's business portfolio consists of several companies engaged in heavy construction work throughout Michigan and Florida under the leadership of Richard Sr.'s descendants, as well as various single-purpose entities focused on private and commercial real estate development.

17.     Richard Sr. passed away in 1993.

18.     Richard Sr. had five children with Gilda D'Agostini Mancini-Millelot, Plaintiff's grandmother: Lisa Mancini Jankowski, David Mancini Sr., Defendant Steven, Daniel Mancini ("Daniel"), and Edward Mancini ("Edward").

19.     In 2003, Steven, Daniel, and Edward separated their business interests from those of their other siblings, maintaining control over three Mancini construction companies—Defendant RCI, Ric-Man Construction Florida, Inc. ("RCF"), and Defendant RCD.

20.     Defendant Mancini Enterprises is a management company that contracts with various Mancini entities, including RCI and RCD.

21.     Steven and his wife, Defendant Lisa, have four adult children: Defendant Christina, Plaintiff Richard, Sabrina Mancini Daar ("Sabrina"), and Marina Mancini ("Marina").

**Richard's Employment and Wrongful Termination**

22.     Richard began working for RCI in 1999, when he was 10 years old, and continued to work for the business part-time and in the summer throughout high school, college, and graduate school.

23.     At RCI, Richard acquired substantial knowledge of tunnel, shaft, caisson, and open-cut construction, which he augmented with experience working on RCI's high-risk projects.

24.     Richard graduated from DePaul University in 2011 with a BA in Business.

25.     In 2013, Richard earned an MBA from the University of Miami with concentrations in Finance and Real Estate.

26.     In 2014, Richard was hired by Torchlight Investors, a real estate private equity fund headquartered in New York City with offices in Miami.

27.     In 2016, Richard commenced employment with Fifteen Group, a sophisticated Miami-based real estate investment company.

28.     As of late 2016, Richard had not spoken to Steven in over a year and a half.

29.     In October 2016, Steven approached Richard in an attempt to recruit him to rejoin the Mancini family conglomerate of businesses.

30.     Steven promised Richard guaranteed employment, with robust for-cause protections, for as long as Richard would like.

31.     Steven also promised that Richard would replace Daniel and Edward as Steven's primary partner in the family business, that Richard would hold equity in all Mancini companies, and that Richard would become principal and owner of the family conglomerate. In a June 26, 2017 email, Steven noted "the fact that Richard is part of the long term succession plan for Ric-Man."

32.     At first, Richard was reluctant to rejoin the family business due to his sometimes-challenging relationship with Steven.

33.     However, considering Steven's repeated assurances of future ownership, Richard made a significant commitment to his family and abandoned his promising career in finance.

34.     Richard would not have left his lucrative position at a prestigious Miami investment firm unless he had guaranteed employment with the family business and the promise of future ownership.

35.     On December 12, 2016, Richard commenced full-time employment with Mancini Enterprises, RCI, RCF, RCD, and related Mancini real estate companies pursuant to his agreement with Steven.

36.     Initially, both Daniel and Edward welcomed Richard back into the fold and praised his job performance.

37.     However, in mid-2017, Steven's relationship with Daniel and Edward deteriorated.

38.     Under one of the Mancini brothers' preexisting agreements with respect to their partnership, no brother could be bought out so long as his child worked for the family business.

39.     Daniel and Edward, as part of their campaign against Steven, sought to exploit this contractual provision by terminating Richard's employment, notwithstanding Richard's superior job performance.

40.     Amid the brothers' ongoing disagreement, and in furtherance of this bad faith effort, Edward contacted Richard in June 2017 to ask whether Richard had any written employment agreement with RCI or RCF.

41.     On June 29, 2017, Steven sent the following letter to Richard to memorialize the terms of Richard's employment:

LEÓN COSGROVE JIMÉNEZ, LLP
265 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

Richard,

     I am writing this letter to memorialize the terms and conditions under which I offered, and you agreed to accept, just cause employment by Ric-Man, beginning on or about December 2016.

     As you recall, in October, 2016, when I approached you about coming to work at Ric-Man, you were employed at Fifteen Group in Miami. We had multiple discussions over a few months about the terms under which you might consider leaving Fifteen Group and becoming employed by Ric-Man Construction, Inc. and all of its affiliate companies (jointly referred to as "Ric-Man and Mancini Companies").

     In reliance on the representations that I made to you as President and Chief Executive Officer of Ric-Man Construction Michigan, Vice President of Ric-Man Construction of Florida and Manager of Mancini Companies. You agreed to leave your employment with Fifteen Group. The representations and assurances that I made to you and on which you relied by accepting the position include the following:

1. That your employment would include service to all Ric-Man and Mancini companies, with an emphasis on Ric-Man Florida and Mancini Companies (in Florida).
2. That you would be required to travel around the country as necessary, including Michigan, Florida, Ohio (Painesville) and South Carolina.
3. That you might be expected to travel to Dallas Fort Worth and San Antonio, to take the companies to the next level.
4. That you would be employed at Ric-Man as long as you wanted and that you were being groomed for long-term association with Ric-Man.
5. That you would not be discharged from employment with Ric-Man unless there were good grounds to do so.
6. That you would be employed by Ric-Man at least until I resigned or retired.

     Before I made the offer above, I discussed this with Danny and Eddie and they approved. In light of the current upheaval in the Ric-Man and Mancini companies and Ed's email (attached), I felt it necessary to memorialize in a single writing the salient terms of the agreement that you and Ric-Man and Mancini Companies have reached.

     42.   Consistent with Steven's repeated promises that Richard would receive Steven's interest in the Mancini companies, Richard's continued employment in the family business was effectively guaranteed.

43.     For example, the employment agreement specified that Richard "would be employed . . . as long as [he] wanted," was "being groomed for long-term association with Ric-Man," and "would be employed by Ric-Man at least until [Steven] resigned or retired."

44.     Although the employment agreement referenced discharge for "good grounds," the understanding of the parties was that "good grounds" far exceeded the protections of a typical for-cause employment agreement and instead required the highest and most severe level of pervasive misconduct or disloyalty to justify any negative employment action.

45.     Steven sent the June 29, 2017, letter memorializing the December 2016 agreement because he was concerned that Edward or Daniel could attempt to interfere with Richard's employment status.

46.     As expected, Edward took the position that Richard's employment was governed by the general at-will provisions of the relevant employee handbook and not by the specific terms which Richard and Steven negotiated.

47.     Edward purported to terminate Richard from RCI on August 15, 2017. Edward also asserted that Richard was not an RCF employee.

48.     No cause existed for Richard's termination in 2017, and Edward did not provide any.

49.     Edward's purported termination of Richard, effectuated without good grounds, was both wrongful and invalid.

50.     Steven recognized that Richard's purported termination was in violation of Richad's employment agreement, under which he was guaranteed employment in the family business.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

51.     Following the resolution of the disagreement between Steven and his brothers, Richard was reinstated at Mancini Enterprises, RCI, and RCD under Steven's leadership.

52.     No superseding employment agreement involving Richard was executed, so Richard's employment continued to be governed by the December 2016 terms, as memorialized in the June 29, 2017, letter from Steven.

53.     Steven understood that Richard's employment continued to be governed by the December 2016 terms, as memorialized in the June 29, 2017, letter.

54.     In July 2018, Richard founded Richard Mancini Construction, Inc. ("RMC"), a Florida corporation, which became RCI's exclusive subcontractor in the State of Florida.

55.     Richard was an employee, agent, and representative of Mancini Enterprises, RCI, and RCD from 2016 through 2024, performing many functions and with significant business responsibilities.

56.     During his employment, Richard's titles included Chief Financial Officer ("CFO") of RCI and General Manager of RCI's Florida Division.

57.     Until August 2024, Richard served as CFO of several additional Mancini entities and managed Steven and Lisa's personal cash.

58.     On August 6, 2024, Steven purported to terminate Richard from RCI and RCD by claiming that Richard was "not an employee, officer, representative or agent of Ric-Man Construction, Inc."

59.     On September 20, 2024 Steven purported to terminate Richard from Mancini Enterprises.

60.     No cause existed for Richard's termination in 2024.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

61.     Instead, Steven informed Richard over email that his employment was "terminated effective immediately."

62.     The purported termination of Richard, effectuated without good grounds, was both wrongful and invalid.

63.     Richard has suffered substantial damages as a direct and proximate result of the conduct of Steven, Mancini Enterprises, RCI, and RCD.

64.     There is no adequate remedy at law for Richard's future harms. He is clearly entitled, and justice requires that he be reinstated at Mancini Enterprises, RCI, and RCD.

**The 2005 Trust**

65.     On November 22, 2005, Steven executed that certain irrevocable trust agreement titled the Steven M. Mancini Children's Trust Agreement No. 2, which created four individual trusts for the benefit of Steven's children, including the Steven M. Mancini Children's Trust Agreement No. 2 F/B/O Richard (the "2005 Trust"). A copy is attached hereto as Exhibit A.

66.     The beneficiaries of the 2005 Trust are Richard and any of his descendants.

67.     Lisa was the 2005 Trust's initial sole trustee.

68.     Upon information and belief, Lisa is currently the sole trustee of the 2005 Trust.

69.     Article V, Section C of the 2005 Trust requires the trustee to provide an inventory of trust assets and transactions to adult beneficiaries at least annually.

70.     Michigan law, which governs the 2005 Trust's administration, separately requires that trustees of irrevocable trusts keep beneficiaries reasonably informed about trust administration and provide accountings of trust assets.

71.     During Lisa's trusteeship, Richard has not received an annual accounting of trust assets or any other information about the trust's administration, as is his right as a named beneficiary of the 2005 Trust.

72.     Lisa has breached her fiduciary duty as the sole trustee of the 2005 Trust by failing to provide accountings in accord with the terms of the 2005 Trust and Michigan law.

**The 2011 Trust**

73.     On February 1, 2011, Steven executed that certain irrevocable trust agreement titled the Steven M. Mancini 2011 Children's Trust Agreement, which created four individual trusts for the benefit of Steven's children, including the Steven M. Mancini 2011 Children's Trust Agreement F/B/O Richard Mancini (the "2011 Trust"). A copy is attached hereto as Exhibit B.

74.     The beneficiaries of the 2011 Trust are Richard and any of his descendants.

75.     Lisa was the 2011 Trust's initial sole trustee.

76.     Upon information and belief, Lisa is currently the sole trustee of the 2011 Trust.

77.     Michigan law, which governs the 2011 Trust's administration, requires that trustees of irrevocable trusts keep beneficiaries reasonably informed about trust administration and provide accountings of trust assets.

78.     During Lisa's trusteeship, Richard has not received an annual accounting of trust assets.

79.     Lisa has breached her fiduciary duty as the sole trustee of the 2011 Trust by failing to provide accountings in accord with Michigan law.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

**The Electing Small Business Trust**

80.     On December 15, 2014, Steven executed that certain irrevocable trust agreement titled the Steven M. Mancini Electing Small Business Trust (the "ESBT"). A copy is attached hereto as Exhibit C.

81.     The named beneficiaries of the ESBT are Christina, Richard, Sabrina, and Marina.

82.     During Steven's lifetime, the ESBT authorizes discretionary distributions from the trust principal for Steven's children's health, education, safety, and welfare.

83.     The ESBT's initial co-trustees were Frank P. Iannuzzi ("Mr. Iannuzzi") and Cynthia R. Morefield ("Ms. Morefield").

84.     The ESBT, which specifies Steven's "intention" as the grantor "that there be at least two co-trustees serving at all times," contains detailed provisions governing the succession of trustees.

85.     The ESBT provides that, upon the resignation or removal of both Mr. Iannuzzi and Ms. Morefield as co-trustees, Steven's four children will serve as co-trustees.

86.     On or about June 2, 2017, consistent with the ESBT, Mr. Iannuzzi and Ms. Morefield resigned as co-trustees.

87.     Christina, Richard, Sabrina, and Marina accepted their appointment as successor co-trustees, consistent with the ESBT, on or about June 5, 2017.

88.     The ESBT provides that, upon the resignation or removal of any of Steven's children as trustee, the others would continue to serve as co-trustees.

89.     Importantly, the ESBT further provides—in Article VI, Section 2, Paragraph A— that, whenever Steven removes a trustee or co-trustee in his capacity as grantor, he is required as a condition precedent to first appoint a successor "Independent Trustee."

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

90.     The ESBT's definition of Independent Trustee excludes Steven; Steven's children; any of the parents, siblings, issue, and cohabiting spouses of Steven or his children; any employee of Steven or his children; any corporation in which Steven, his children, or the ESBT has a significant ownership interest, as well as the employees of any such corporation; and any employee of a corporation in which Steven or his children serve as executives.

91.     On or about January 5, 2019, Steven purported to remove Richard, Sabrina, and Marina as co-trustees of the ESBT.

92.     Although Steven expressly invoked Article VI, Section 2, Paragraph A of the ESBT in connection with the removal of these co-trustees, Steven did not name any Independent Trustee to serve alongside Christina.

93.     Instead, Christina executed an "Acceptance of Sole Trustee" in which she agreed to serve as the ESBT's lone trustee.

94.     Upon information and belief, Christina is currently the purported sole trustee of the ESBT.

95.     Christina's purported sole trusteeship is in violation of the ESBT's terms.

96.     In 2021, Christina moved to Florida, where she currently maintains her principal residence in Boca Raton.

97.     Article VII, Section 4 of the ESBT requires the trustee to provide a statement of account, at least annually, to those beneficiaries for whom the trust is established.

98.     Florida law, which governs the ESBT's administration, separately requires that trustees of irrevocable trusts provide beneficiaries with accountings at least annually and specifies that these accountings must contain those contents described in § 736.01835, Fla. Stat.

99.     During Christina's trusteeship, Richard has not received an annual accounting of trust assets, as is his right as a named beneficiary of the ESBT.

100.    Christina has breached her fiduciary duty as the sole trustee of the ESBT by failing to provide accountings in accord with the terms of the ESBT and Florida law.

## CLAIMS

### COUNT I

(Breach of Employment Agreement)

101.    Plaintiff incorporates paragraphs 1–64 as if fully set forth herein.

102.    Plaintiff brings this Count I against Defendants Steven, Mancini Enterprises, RCI, and RCD.

103.    In December 2016, Steven induced Richard to step away from his lucrative employment with Fifteen Group and begin working for Mancini Enterprises, RCI, RCD, and related Mancini companies in Miami.

104.    The binding terms of Richard's employment agreement with Defendants Steven, Mancini Enterprises, RCI, and RCD, memorialized in a June 29, 2017, letter, expressly included employment for as long as Richard preferred, with robust protections from termination.

105.    Richard continued to work faithfully and effectively for the family business during his employment.

106.    On or about August 6, 2024, Steven, RCI, and RCD breached Richard's employment contract by terminating Richard.

107.    On or about September 20, 2024, Steven and Mancini Enterprises breached Richard's employment contract by terminating Richard.

108.    Richard has suffered substantial damages as a direct and proximate result of Steven's breach.

109.    There is no adequate remedy at law for Richard's future harms other than continued employment at Mancini Enterprises, RCI, and RCD.

COUNT II

(Breach of Trust – Accounting – 2005 Trust)

110.    Plaintiff incorporates paragraphs 1–100 as if fully set forth herein.

111.    Plaintiff brings this Count II against Lisa, in her capacity as trustee of the Steven M. Mancini Children's Trust Agreement No. 2 F/B/O Richard Mancini.

112.    The 2005 Trust requires the trustee to provide a statement of account to those beneficiaries for whom the trust is established.

113.    Michigan law requires that trustees of irrevocable trusts provide beneficiaries with accountings of trust assets and keep them reasonably informed about trust administration.

114.    During Lisa's trusteeship, Richard has not received an annual accounting of trust assets or been reasonably informed about the administration of the 2005 Trust in his capacity as beneficiary.

115.    Lisa has breached her fiduciary duty as the sole trustee of the 2005 Trust by failing to provide accountings in accord with the terms of the 2005 Trust and Michigan law.

116.    Lisa's breach of trust is the result of willful misconduct and/or gross negligence.

COUNT III

(Breach of Trust – Accounting – 2011 Trust)

117.    Plaintiff incorporates paragraphs 1–100 as if fully set forth herein.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

118.    Plaintiff brings this Count III against Lisa, in her capacity as trustee of the Steven M. Mancini 2011 Children's Trust Agreement F/B/O Richard Mancini.

119.    Michigan law requires that trustees of irrevocable trusts provide beneficiaries with accountings of trust assets and keep them reasonably informed about trust administration.

120.    During Lisa's trusteeship, Richard has not received an annual accounting of trust assets or been reasonably informed about the administration of the 2011 Trust in his capacity as beneficiary.

121.    Lisa has breached her fiduciary duty as the sole trustee of the 2011 Trust by failing to provide accountings in accord with Michigan law.

122.    Lisa's breach of trust is the result of willful misconduct and/or gross negligence.

COUNT IV

(Breach of Trust – Accounting – ESBT)

123.    Plaintiff incorporates paragraphs 1–100 as if fully set forth herein.

124.    Plaintiff brings this Count IV against Christina, in her capacity as trustee of the Steven M. Mancini Electing Small Business Trust.

125.    The ESBT requires the trustee to provide a statement of account to those beneficiaries for whom the trust is established.

126.    Florida law requires that trustees of irrevocable trusts provide beneficiaries with accountings that contain the information listed in § 736.01835, Fla. Stat.

127.    During Christina's trusteeship, Richard has not received an annual accounting of trust assets in his capacity as beneficiary.

128.    Christina has breached her fiduciary duty as the sole trustee of the ESBT by failing to provide accountings in accord with the terms of the ESBT and Florida law.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

129.    Christina's breach of trust is the result of willful misconduct and/or gross negligence.

COUNT V

(Declaratory Judgment – § 86.041, Fla. Stat.)

130.    Plaintiff incorporates paragraphs 1–100 as if fully set forth herein.

131.    Plaintiff brings this Count V against Christina, in her capacity as trustee of the Steven M. Mancini Electing Small Business Trust.

132.    In Article VI, Section 2, Paragraph A, the ESBT provides that, as a condition precedent to the removal of an incumbent trustee by the grantor, an Independent Trustee must be appointed.

133.    Between June 5, 2017, and January 5, 2019, the ESBT's four co-trustees were Christina, Richard, Sabrina, and Marina.

134.    On or about January 5, 2019, Steven exercised his authority under Article VI, Section 2, Paragraph A to remove Richard, Sabrina, and Marina as co-trustees.

135.    On or about January 5, 2019, Christina purported to accept the status of sole trustee.

136.    Steven did not appoint any Independent Trustee in connection with the removal of Richard, Sabrina, or Marina as co-trustees, as required by Article VI, Section 2, Paragraph A.

137.    Christina's sole trusteeship is invalid under the terms of the ESBT.

138.    Accordingly, Plaintiff is entitled to a declaratory judgment that Christina's sole trusteeship is invalid.

WHEREFORE, Plaintiff prays that this Court enter judgment:

A.      Awarding compensatory damages and back pay for Plaintiff's wrongful termination;

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

B.    Requiring reinstatement of Richard's employment with Mancini Enterprises, RCI, and RCD;

C.    Ordering an accounting of trust assets under the 2005 Trust, the 2011 Trust, and the ESBT;

D.    Declaring that Defendant Christina's sole trusteeship is a violation of the ESBT and entering an appropriate remedy;

E.    Shifting attorneys' fees and costs pursuant to § 736.1004, Fla. Stat.; and

F.    Awarding such other relief as is appropriate.

### Jury Trial Demanded

Plaintiff hereby demands trial by jury for all issues so triable.


Dated: December 6, 2024                          Respectfully Submitted,


                                                 /s/ Scott B. Cosgrove
                                                 Scott B. Cosgrove
                                                   Florida Bar No. 161365
                                                 Andrew B. Boese
                                                   Florida Bar No. 824771
                                                 **LEÓN COSGROVE JIMÉNEZ, LLP**
                                                 255 Alhambra Circle, 8th Floor
                                                 Miami, Florida 33134
                                                 Tel: (305) 740-1975
                                                 Email: scosgrove@leoncosgrove.com
                                                 Email: aboese@leoncosgrove.com
                                                 Email: anoonan@leoncosgrove.com
                                                 Email: rmartinez@leoncosgrove.com

                                                 *Attorneys for Plaintiff Richard Mancini*

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

# EXHIBIT A

*LISA, then JG, the Trusts*

# STEVEN M. MANCINI

## CHILDREN'S TRUST AGREEMENT NO. 2

*11-22-05*
*2005*

I, **STEVEN M. MANCINI**, of 37532 Hidden Valley Court, Clinton Township, Michigan 48036 (sometimes referred to herein as the "Grantor"), hereby declare that I have transferred from my separate property to my wife, **LISA MANCINI**, as Trustee, in trust, the sum of Ten Dollars ($10) to each separate trust established herein, and such other property as may from time to time be subject to this Agreement. That property and all investments and reinvestments thereof ("trust principal") shall be held upon the following terms:

## ARTICLE I

## PURPOSE

This instrument may be designated the "**STEVEN M. MANCINI CHILDREN'S TRUST AGREEMENT NO. 2**".

It is the Grantor's intent in creating this instrument that all gifts made to the Trusts created hereunder be completed gifts; gifts of present interests for federal gift tax purposes [if the beneficiary is given a demand power as described in Article II(A)(1)]; and that the assets of such Trusts be excluded from the Grantor's gross estate for federal estate tax purposes. All provisions of this instrument shall be construed in such a manner to affect these intents. The Grantor retains no right, title, or interest in any trust property.

## ARTICLE II

### DISPOSITIVE PROVISIONS

As of the date of this instrument, the Trustee shall divide and allocate the trust principal into four (4) separate and equal trusts named respectively for the Grantor's children, **CHRISTINA M. MANCINI, RICHARD MANCINI, SABRINA A. MANCINI** and **MARINA A. MANCINI.** Future contributions may be made to these separate trusts in equal or unequal amounts. Each trust named for a child of the Grantor shall be administered as follows:

A.      Commencing on the date of this instrument and during the life of the child for whom the trust is named:

1.      The Trustee shall distribute to the child, and to his/her descendants who are living from time to time, such amounts of the net income and principal of the trust named for the child as the child, and his/her descendants (hereafter sometimes referred to as a "beneficiary"), may demand by written instrument delivered to the Trustee pursuant to the withdrawal rights described in subparagraph (2) immediately following.

2.      The following provisions shall apply to any withdrawal right available to a beneficiary under this Article:

(a)      A beneficiary of any trust created hereunder may only exercise a withdrawal right with respect to a contribution to the trust of "Gift Property" as defined in this Article, and the demand with respect to such contribution shall not exceed the amount the donor shall specify in writing to the trustee at the time or in advance of (but never after) the contribution, or if the donor does not so specify, the fair market value of such contribution determined as of the date it was added to the trust, divided by the number of beneficiaries of the trust living at the time of such contribution.

(b)      Any withdrawal right granted under this Article with respect to a contribution of Gift Property to the trust shall terminate wholly or partially in each calendar year of the trust (i) as soon as and to the maximum extent that such termination does not result in a release of a general power of appointment under both Sections 2514(e) and 2041(b)(2) of the Code by the beneficiary holding the

power, but not sooner than thirty (30) days after the date of the contribution, or (ii) on the day preceding the date of death of the beneficiary, whichever shall occur first. If any beneficiary possesses powers of withdrawal created under this Article which have not terminated and are related to more than one transfer, then the powers shall terminate in the order in which they were created.

(c)     Promptly upon the creation of the trust, the Trustee shall reasonably notify each beneficiary who then possesses a withdrawal right of the existence of the withdrawal right granted under this Article, the value of the original contribution of Gift Property to the trust, and the extent of the withdrawal right so granted; and, in addition, the Trustee shall give reasonable notice to each beneficiary who then possesses a withdrawal right of the date, value and extent of the withdrawal right for each additional contribution, unless actual notice thereof already exists. Upon any contribution of property to a trust, the donor shall advise the trustee of the extent to which the property constitutes Gift Property, and the trustee may rely upon such advice without further inquiry and without liability to the donor or to any beneficiary hereunder, absent bad faith.

(d)     If any beneficiary entitled to withdraw property under this Article is then disabled, the lawful guardian of that beneficiary may exercise all rights that the beneficiary would have under this Article if not disabled and may receive any notices to which the beneficiary otherwise would be entitled.

(e)     As used in this instrument, "Gift Property" means such part or all of any property contributed to the trust, or considered to be contributed to the trust under applicable tax laws, as to which the donor or the donor's spouse (if any) could claim a gift tax annual exclusion under Code Section 2503(b) if the property were given outright to the beneficiary or beneficiaries entitled to withdraw it pursuant to this Article.

(f)     For purposes of this Article, "contributions" to the trust shall include cash sums and other assets, including life insurance policies or any interests in such policies or other assets, which are paid, assigned, or transferred to the Trustee of the Trust.

(g)     A donor may, by a written instrument delivered to the Trustee at the time of a contribution and with respect solely to the contribution then being made, do one or more of the following: (i) increase, decrease or eliminate the amount subject to any beneficiary's demand power as to such new contribution, and/or (ii) change the period during which any beneficiary's demand power as to such new contribution may be exercised. No such direction may in any way alter, amend or change such beneficiary's demand power with respect to any prior contributions.

(h)     If the withdrawal right is possessed by a child who is legally incapacitated, such child's legal or natural guardian or another appropriate individual chosen by the Trustee may make such withdrawal or request or receive

information about such right on behalf of such child; provided, however, the donor whose gift gave rise to the withdrawal power shall not be able to act on behalf of such incapacitated child. Notwithstanding the foregoing provisions of this Article, no person shall have the right to withdraw any property hereunder as a result of the gift deemed under the Internal Revenue Code to have been made to a trust (or any of its beneficiaries) by reason of the lapse or release of a power over such trust. It is the Grantor's intention that the power of withdrawal granted to any child hereunder qualify any direct or indirect transfer to the trust for the benefit of such child as a gift of a present interest, which will qualify for the gift tax annual exclusion provided for in the Internal Revenue Code in effect at the time of such transfer. The provisions of this Article shall take precedent over and control any other provisions of this trust instrument; all other such provisions shall be limited and qualified so as not to detract from the unqualified rights of withdrawal granted to the child hereunder.

(i)     Notwithstanding anything in this Trust Agreement to the contrary, any distribution of principal of a trust established hereunder; any termination of a trust established hereunder; any exercise of a power of appointment granted hereunder; and/or any discretionary exercise by a Trustee acting hereunder, shall not be made if such distribution, termination, exercise or discretion would thwart or otherwise defeat an existing withdrawal right that is unexercised and has not lapsed.

(j)     Notwithstanding anything contained in this Article to the contrary, during any period that the trust named for the child is treated as a "grantor trust" within the meaning of Internal Revenue Code Sections 671 *et. seq.*, the beneficiaries shall *not* have any demand rights hereunder.

3.     The Trustee shall also distribute to the child (and his/her descendants) as much or all of the net income and principal of the trust named for the child as the Trustee from time to time believes desirable for the health, support, education, and maintenance of the child (and his/her descendants), considering all circumstances and factors believed pertinent by the Trustee; provided, however, that:

(a)     Such payments need not be for the equal benefit of the beneficiaries of the Trust.

(b)     The Trustee may exclude one or more of the beneficiaries entirely in making such distributions.

(c)     Undistributed income shall be accumulated and added to principal at least annually, provided that no accumulation of income shall be made in violation of law.

(d)     The Grantor's primary concern during the life of the child is for the child's health, support, education, and maintenance rather than for the preservation of trust principal for ultimate distribution to the child or the child's descendants.

(e)     Among the circumstances and factors to be considered by the Trustee in determining whether to make discretionary distributions of net income or principal to a beneficiary are the other income and assets known to the Trustee to be available to that beneficiary and the advisability of supplementing such income or assets.

(f)     With respect to distributions to beneficiaries other than the child, the Trustee shall give preference to the support, maintenance, health and education needs of the child over the needs of the child's descendants.

(g)     Distributions made to a child's descendants shall not be taken into account or treated as an advancement upon division or termination of any trust created by this Agreement.

(h)     The Trustee shall not distribute any of the income or principal of the trust that would in any manner discharge the Grantor's, the Grantor's spouse's or the Trustee's legal obligations to a beneficiary.

4.     During the Grantor's life, the Trustee shall have the limited power (exercisable in a non-fiduciary capacity, either personally or by an attorney-in-fact under a power of attorney, without the consent or approval of any person or entity in a fiduciary capacity) to appoint the principal of the trust to any one or more of the Grantor and the Grantor's descendants (or to a trust for their benefit), whether living at the time of exercise or thereafter born, in whole or in part, or in equal or unequal proportions, subject to the following provisions:

(a)     If the Trustee resigns, is terminated, or cannot serve for any other reason, then the Trustee's successors in trust shall have the right to exercise this limited power of appointment;

(b)     The power shall only be exercisable by the holder of the power, and shall not be exercised in favor of the holder, the holder's estate, the holder's creditors, or the creditors of the holder's estate;

(c)     The power shall not be exercised by the holder in any manner that would result in an economic benefit to the holder or that would in any manner

discharge or reduce any legal obligation of the holder, or any legal obligation of the Grantor or the Grantor's spouse; and

(d)     The power shall not be exercised by the holder during any period in which a beneficiary has a right of withdrawal under this Agreement, and/or if the value of the principal of the Trust after the exercise would be less than the aggregate amount subject to withdrawal from the trust after the exercise.

B.     Upon the death of the child for whom the trust is named, and in default of effective appointment granted under Paragraph (C) of this Article, the Trustee shall divide all remaining trust principal and accumulated income into the number of equal shares which is necessary to provide one such share for each of the deceased child's then living descendants, per stirpes, or if none, then for each of the Grantor's then living descendants, per stirpes. Each such share shall constitute a separate and distinct trust named for the descendant. The Trustee shall hold, administer and distribute each such trust upon the same terms and conditions as the trust named for the child under this Article, by substituting the descendant for the child. It is the Grantor's intention that the various trusts established hereunder continue for the maximum period permitted under applicable law.

C.     Upon the death of the beneficiary for whom the trust is named (including trusts named for the Grantor's descendants) before the complete distribution of the trust, the Trustee shall distribute the principal and accrued income of the trust to such one or more of the Grantor's then living descendants, or to one or more charitable organizations then described in Sections 170(c) and 2055(a) of the Internal Revenue Code, as amended, or to the beneficiary's spouse as the beneficiary may appoint by will, except that any property appointed to a beneficiary's spouse shall be retained in trust for that spouse, and the trust must provide that (i) only trust income, and not principal, may be distributed to the spouse, (ii) the trust will terminate upon the spouse's death (or such earlier date as the beneficiary designates), and (iii) upon termination, the trust

property shall be allocated or distributed (in the manner designated by the beneficiary) among the Grantor's then living descendants.

D. If a beneficiary for whom a trust is named and all of his/her descendants should die prior to the final and complete termination of such trust, that trust shall terminate and the Trustee shall distribute all remaining trust principal and accumulated income (not effectively appointed by the beneficiary under the provisions of Paragraph (C) above) to the Grantor's then living descendants, per stirpes. Notwithstanding the foregoing, if at the time of such distribution any such descendant of the Grantor is a beneficiary of a trust created by this Agreement, then the distribution which, but for this sentence, would have been made to such descendant shall be transferred into and become a part of the trust held for the benefit of such descendant.

E. If all of the beneficiaries hereunder die before one or more of them is entitled to the distribution of assets, then the principal and accrued income of the trust shall be divided into separate trust shares of equal value for the then living descendants of **EDWARD A. MANCINI** and **DANIEL C. MANCINI** on a per stirpital basis. Each such trust share shall be held, administered and distributed in accordance with the provisions of this Article II as if said descendants were my children (or grandchildren as the case may be).

F. Notwithstanding any of the foregoing provisions, the Trustee of each trust hereunder shall have the power to refuse a withdrawal request or to postpone any distributions of principal otherwise required to the beneficiary for whom the trust is named, and to postpone the termination of such trust which might otherwise be required, all as if such withdrawal right had not been available, or such age had not been attained, or such death had not occurred, if the Trustee, in its sole discretion, determines that such refusal or postponement is consistent with the Grantor's overall intent. In exercising such discretion, the Grantor authorizes and approves the

Trustee's use of such information as may be available and pertinent, such as the beneficiary's serious physical or mental disability, the beneficiary's addiction to drugs or alcohol, the beneficiary's incarceration, a pending divorce, a gambling problem, the beneficiary's involvement in a "cult" type organization, the involvement of the beneficiary as a defendant in a civil or criminal lawsuit or in any bankruptcy proceeding, present or imminent financial difficulty, a serious tax disadvantage in making a distribution, or similar substantial cause. Any such refusal or postponement may be continued by the Trustee from time to time, up to and including the entire lifetime of the beneficiary. The Trustee's exercise of discretion in such refusal or postponement shall be final and binding upon all parties in interest. No Trustee shall at any time be held liable for any action taken or not taken pursuant to this paragraph, nor shall any Trustee be required to take any affirmative action pursuant hereto, and no Trustee shall be required to inquire into or investigate any beneficiary's status as it may relate to this paragraph. Notwithstanding anything contained in this Agreement to the contrary, during any period of time that a beneficiary's distributions are being postponed pursuant to the foregoing provisions, the Trustee may also distribute the income and/or principal of such beneficiary's trust to or for the benefit of the beneficiary's spouse and descendants (if any) for said spouse's and descendants' health, education, maintenance, support and welfare. The Trustee may make unequal distributions to said spouse and descendants or may at any time make a distribution to fewer than all of them, and shall have no duty to equalize those distributions.

Whenever a beneficiary of a trust created hereunder (the "disabled beneficiary") is eligible for any public benefits to provide for his/her basic support and maintenance (i.e., SSI, SSDI, Medicaid, etc.), then during the term of such trust, the Grantor directs that distributions from such trust shall be used *solely* for supplementing those benefits which are available to him/her.

Inasmuch as possible, the Trustee is to administer such trust so that the disabled beneficiary's eligibility for public governmental assistance programs is not endangered. Under no circumstances shall the disabled beneficiary have the power or authority to demand any distribution from the Trustee, and the Trustee is under no obligation, implied or otherwise, to make any distributions to the disabled beneficiary. Further, the Trustee may withhold distributions to the disabled beneficiary if, in the Trustee's sole discretion, they would not be consistent with the Grantor's intentions as expressed above. The Trustee has full discretion to spend a disabled beneficiary's trust income or principal, or not to spend it, as the Trustee sees fit. The disabled beneficiary shall have no legal right to the trust's assets, even in the case of an emergency. Notwithstanding anything contained in this Trust Agreement to the contrary, neither the Trustee nor any Trust Protector shall have the right to terminate any trust established for a disabled beneficiary.

   G. The Grantor intends that each trust created under this Agreement be treated as a separate taxable entity and not taxed to the Grantor for federal income tax purposes. This Trust Agreement shall be interpreted and administered consistently with this intent.

   1. The Trustee shall make no distribution or expenditure that discharges a legal obligation of the Grantor or that gives the Grantor any monetary benefit.

   2. Notwithstanding anything contained in this Trust Agreement to the contrary, the Trustee shall not: (a) purchase, exchange, or otherwise deal with trust principal or trust income for less than adequate and full consideration in money or money's worth; (b) lend the Grantor, the Trustee, or any entity in which Grantor, the Trustee or both possess a substantial interest, directly or indirectly, without adequate interest and security; (c) allow anyone other than the Trustee to vote or direct the voting of any corporate shares or other securities of the trust; (d) allow anyone other than the Trustee to control the trust's investments or reinvestments by direction

or veto; (e) allow anyone to require the Trustee to exchange trust property of equal value; or (f) use trust income to pay premiums of life insurance on the life of the Grantor (or the Grantor's spouse, if any).

     3.   The Grantor renounces, disclaims, and waives all interests, either vested or contingent, including reversionary interests and possibilities of reverter that the Grantor may at any time otherwise hold or be determined to possess in the income or principal, or both, of any trust created hereunder.

    H.   It is the intent of the Grantor that no portion of any trust created hereunder be includible in the Grantor's gross estate or the gross estate of the Grantor's spouse for estate tax purposes and, accordingly, the Grantor directs that this Agreement shall be construed and the trusts created hereunder administered in accordance with and to carry out that intent. It is the further intent of the Grantor that, unless property is included in the gross estate of a beneficiary by reason of a power of appointment conferred on a beneficiary hereunder, no portion of any trust created hereunder be includible in the gross estate of any beneficiary for estate tax purposes and, accordingly, the Grantor directs that this Agreement shall be construed and the trusts created hereunder administered in accordance with and to carry out that intent.

    I.   Notwithstanding any applicable provision of law to the contrary, the Grantor shall not be permitted to participate in any decision regarding the revocation of any trust created hereunder with or without the consent of the beneficiary(ies). In addition, the Grantor shall not be permitted to exercise, either alone or in conjunction with any other person, any power described in Section 2036(a)(2) or 2038 of the Code. It is the Grantor's intent that no portion of any trust created hereunder be includable in the Grantor's gross estate for estate tax purposes at the Grantor's death; and, notwithstanding any provision herein contained to the contrary, this Agreement shall be

construed and any trust created hereunder administered in accordance with and to achieve that intent.

## ARTICLE III

## ADMINISTRATIVE PROVISIONS

The provisions of this Article shall apply to each trust held under this instrument:

A.　　If at any time a beneficiary eligible to receive net income or principal distributions is under legal disability, or in the opinion of the Trustee is incapable of properly managing his or her financial affairs, the Trustee may make those distributions directly to the beneficiary, to a lawful guardian of the beneficiary (without having to see to the proper application of such payment), or to a custodian selected by the Trustee for the beneficiary under a Uniform Transfers to Minors Act or similar applicable law (without having to see to the proper application of such payment), to any IRC Section 529 account or arrangement of which the beneficiary would be both the account owner and designated beneficiary, or may otherwise expend the amounts to be distributed for the benefit of the beneficiary in such manner as the Trustee considers advisable. As used throughout this instrument, the term "lawful guardian" shall mean successively in the order named (i) the court-appointed conservator, (ii) either parent (other than the Grantor), or (iii) the individual having personal custody (whether or not a court-appointed guardian) where no conservator has been appointed.

B.　　Among the circumstances and factors to be considered by the Trustee in determining whether to make discretionary distributions of income or principal to a beneficiary are the other income and assets known to the Trustee to be available to that beneficiary and the advisability of supplementing such income or assets. As used throughout this instrument, the term "education" includes, but is not limited to, private schooling at the elementary and secondary school level, college, graduate and professional education, and specialized or vocational training.

C.    To the extent permitted by law, a beneficiary's interest hereunder shall not be subject to liabilities or creditor claims or to assignment or anticipation. However, this provision shall not restrict the exercise of a disclaimer or the exercise of a power of appointment or withdrawal right granted by this Agreement, nor shall it prevent or prohibit the termination of a trust or the sale, gift or transfer of beneficial interests to charity or between family members and/or beneficiaries.

D.    Any trust principal or net income as to which a power of appointment is exercised shall be distributed to the appointee or appointees upon such conditions and estates, in such manner (in trust or otherwise), with such powers, in such amounts or proportions, and at such time or times (but not beyond the period permitted by any applicable rule of law relating to perpetuities) as the powerholder may specify in the instrument exercising the power, subject to the following:

1.    Any power, including a power of appointment, granted to an individual under this Trust Agreement may be exercised either by (i) such individual by a Will, or (ii) a written direction other than a Will executed by such individual or such individual's Agent, and delivered to the Trustee during the individual's lifetime (hereinafter referred to as a "written direction"), which Will or written direction specifically refers to the paragraph of this Trust Agreement under which the power is granted. A written direction may be revoked or amended by a subsequent written direction executed by the individual or his or her Agent that complies with the above formalities. If a conflict occurs between the terms of the individual's Will and the terms of a written direction or between the terms of two or more written directions, the terms of the most recent document shall prevail. A power of appointment may be exercised by an individual even if (i) the individual is a minor or under disability, or (ii) all of the assets constituting the trust with

respect to which the power is granted have not been received by the Trustee. If the Trustee does not receive actual notice of the exercise of a power of appointment by Will within six (6) months after the death of the individual holding the power, the Trustee may, without liability, distribute the property subject to the power as if the power had not been exercised. In determining whether, in what manner, and to what extent a power of appointment has been exercised by Will, the Trustee may act in reliance on a court order in any jurisdiction admitting an instrument to probate as the Will of the holder of the power or finding that the holder died intestate. However, this provision shall not affect any right an appointee or beneficiary in default of appointment may have against any distributee.

2.   Notwithstanding subparagraph 1 above to the contrary, no power of appointment may be exercised by any individual under this Trust Agreement with respect to policies of insurance on the life of such individual, or the proceeds thereof, unless such policies or proceeds would be included in the individual's gross estate at such individual's death without regard to such power of appointment. Unless the implementation of the exercise of a power of appointment described herein is specifically restricted under this Trust Agreement, a power of appointment (i) exercisable during the powerholder's lifetime shall be implemented upon delivery to the Trustee or thereafter as provided in the instrument exercising the power, and (ii) exercisable at the death of the powerholder shall be implemented upon such individual's death or thereafter as provided in the instrument exercising the power. Upon a powerholder's death, the power of appointment shall not pass on to the powerholder's descendants.

3.   The purported exercise of any power, including a power of appointment, granted under this Trust Agreement shall be of no force or effect if such purported exercise was the result of compulsion. If such purported exercise is the result of compulsion, the Trustee shall

administer the property subject to such power as if said purported exercise had not occurred. The purported exercise of a power shall be deemed to be the result of compulsion if such purported exercise is in response to or by reason of any order or other direction of any court having jurisdiction over the individual holding the power, the Trustee, the property subject to the power or the trust containing such property. An individual's Agent may not exercise a power given to such individual under this Trust Agreement if such purported exercise is in response to or by reason of any such order or other direction of any court having jurisdiction over the Agent, unless the order or other direction was obtained by the Agent in a proceeding in which the Agent was the petitioner or voluntarily acquiesced.

E.     The following provisions shall govern the payment of estate and generation skipping taxes:

1.     All estate, inheritance and similar death taxes (but not generation-skipping transfer taxes) attributable to the trust estate and occasioned by the death of the Grantor or the Grantor's spouse shall be paid by, charged to and recovered from the persons (including trusts) receiving taxable benefits under this Agreement in accordance with the provisions of the Estates and Protected Individuals Code, after giving effect to IRC Section 2207A.

2.     All estate, inheritance or similar death taxes (but not generation-skipping transfer taxes) attributable to property subject to a general power of appointment granted hereunder shall be charged against such property, unless the donee, by specific reference to the power, directs otherwise.

3.     All generation-skipping transfer taxes attributable to a direct skip shall be paid by the Trustee out of and charged against the property constituting the transfer as provided in IRC Sections 2603(a)(3) and 2603(b). All generation-skipping transfer taxes attributable to a

taxable distribution occurring with respect to any trust established hereunder shall be paid by the transferee thereof as provided in IRC Sections 2603(a)(1) and 2603(b), and all generation-skipping transfer taxes attributable to a taxable termination occurring with respect to any trust established hereunder shall be paid by the Trustee and charged against the property constituting the transfer as provided in IRC Sections 2603(a)(2) and 2603(b).

4.     The Trustee may establish such reserves and make such charges as the Trustee considers necessary for the payment of all taxes described in this Paragraph (E).

F.     Notwithstanding any provisions of this Agreement to the contrary, if any stock of a corporation that then operates or that Trustee shall deem likely to operate in the near future as an S corporation (as defined in IRC Section 1361(a)) is held by a trust or becomes distributable to a trust created under this Agreement, and such trust is not eligible or is no longer eligible, or may not be eligible or qualified to hold S corporation stock (for whatever the reason – including because of discretionary authority granted the Trustee), the Trustee may implement any of the following alternatives with respect to the S corporation stock:

1.     Where the original trust is for a sole beneficiary, the Trustee may create for that beneficiary (provided the beneficiary meets the requisite qualifications under IRC Section 1361) a separate trust that qualifies as a Qualified Subchapter S Trust ("QSST") under IRC Section 1361(d), and then distribute such stock to the newly created trust.

2.     Where the original trust is for multiple beneficiaries, the Trustee may create separate trusts for each beneficiary (provided the beneficiary meets the requisite qualifications under IRC section 1361) and allocate the S corporation stock among the newly created trusts based on each beneficiary's current interest in the income of the original trust, and if no beneficiary is entitled to current income from the original trust, the Trustee may allocate the S corporation stock

among the newly created trusts in a manner that the Trustee deems fair and appropriate. Each newly created trust shall hold that beneficiary's appropriate share of the S corporation stock, and shall qualify as a QSST.

3.　　If circumstances prevent the Trustee from accomplishing the first two alternatives under this Paragraph (F), the Trustee may, in its discretion: (i) create for the beneficiary or beneficiaries a new trust that qualifies as an Electing Small Business Trust ("ESBT") under IRC Section 1361(e) (provided the beneficiaries meet the requisite qualifications thereunder) and distribute such stock to the newly created trust(s), provided however, any currently exercisable inter-vivos power of appointment held by a beneficiary concerning the S corporation stock to be held by the ESBT (other than a beneficiary's inter-vivos power of withdrawal) is hereby automatically modified and limited concerning the number and class of potential appointees eligible to receive the S corporation stock so that the number of potential appointees shall not exceed the number of persons who are eligible to hold the S corporation stock (as currently specified in IRC Section 1361(b)(1)(A)) and the class of appointees shall not include those persons who are ineligible to hold S corporation stock (as currently described in IRC Sections 1361(b)(1)(B) and (C)), (ii) elect to qualify any trust as any form of eligible stockholder of an S corporation under future legislation and to reform any existing trust in order to qualify and conform thereunder (provided such reformation does not prevent an existing bequest from qualifying for the charitable deduction), or (iii) distribute such stock to the beneficiaries (provided the beneficiaries are eligible S corporation shareholders) as if the trust had terminated, while continuing to hold any other non-S corporation property in trust.

4.　　Each newly created QSST shall have mandatory distributions of income (as defined in IRC Section 643(b)) and no one shall have any power to appoint or distribute any

portion of the QSST property to anyone other than to the beneficiary of the trust. In all other respects the newly created trusts shall be as consistent as possible with the original trusts and still qualify as QSSTs or ESBTs (as the case may be). The Trustee may take any action necessary with regard to S corporations, including making any elections required to qualify stock as S corporation stock and may sign all necessary tax returns and forms.

5.      It is Grantor's intent that any S corporation stock comprising a portion of the trust estate be eligible to be held pursuant to the terms of this Agreement, either as an ESBT, a QSST, or in any other manner permitted by the Internal Revenue Code or the Regulations or rulings thereunder. Accordingly, the Trustee is granted the power to amend or modify this Agreement when, in the sole opinion of the Trustee, an amendment is required to this Agreement or any trust established hereunder to permit S corporation stock to be held pursuant to the terms of this Agreement. The sole purpose of this power to amend the Agreement is to enable the Trustee to make technical amendments to the Agreement as necessary to permit the Agreement and its trusts to hold S corporation stock during the continuance of this Agreement in accordance with the Internal Revenue Code, Regulations and rulings thereunder; but in no event shall the Trustee amend or modify this Agreement or any trust in a manner that would impair a beneficiary's unexercised right of withdrawal that has not yet lapsed or prevent an existing bequest from qualifying for the marital or charitable deduction or from enabling an increase in basis (if applicable) under the Code, or that would impair the status or qualification of a trust that holds shares of stock in a Subchapter S corporation.

6.      In addition, the Trustee, in such fiduciary's sole and absolute discretion, is authorized to make any elections or give any consents which are required to achieve or maintain S corporation status for stock to be held in trust pursuant to this trust Agreement and may also

enter into such stock purchase, voting or other agreements as the Trustee, in such fiduciary's sole and absolute discretion, shall determine to be necessary or appropriate for the protection of the trust, the shareholders of the S corporation and/or the deemed shareholders of the S corporation.

G.     Grantor recognizes that some or all of the following conditions may arise in the future although they cannot now be foreseen: (i) a radically substantial change in the political, economic, or social order in the United States of America; (ii) legislation or court decisions highly detrimental to any trust hereunder or its beneficiary(ies); (iii) lack of availability of suitable trust investments for an extended period; (iv) other events tending to greatly impair the intent and purposes of this agreement; and/or (v) future amendments and interpretations of the federal wealth transfer tax laws that could thwart the trust purposes. Grantor further recognizes that a termination of a trust hereunder might be desirable if any of these conditions occur. It is, therefore, expressly provided that, if any trustee of any trust hereunder shall make application to the then court of general jurisdiction in the place where such trust shall have its situs and if such court, by its appropriate decree, shall determine that a condition coming within any of the foregoing standards has occurred and that the best interests of such trust and of the persons interested in it require the termination of such trust, the trustee(s) of such trust, following entry of such decree and obedient to its terms, shall distribute the trust's estate to such trust's then beneficiary(ies) according to their respective interests as set forth in such decree. No trustee shall be required to consider any action under this section until a person interested in a trust hereunder has requested such consideration in writing, nor shall any trustee have any affirmative duty or responsibility for any failure to exercise any authority granted in this paragraph. Prior to terminating a trust hereunder, the trustee may request and shall be entitled to be held harmless and receive appropriate indemnification from the beneficiaries who are going to receive a terminating distribution. The trustee shall not terminate a

trust if it would impair the status or qualification of a trust that holds shares of stock in a Subchapter S corporation, or would impair a beneficiary's unexercised right of withdrawal that has not yet lapsed. Notwithstanding anything contained herein to the contrary, the trustee who terminates a trust under this paragraph must *not*: (i) be related or subordinate (within the meaning of IRC Section 672(c)) to any donor or beneficiary with respect to the trust in question; (ii) be benefited by the exercise or non-exercise of any power given the Trustee by this Trust Agreement or by law; or (iii) be a beneficiary or a donor of the trust in question.

H.     If the provisions of any trust hereunder would violate the rule against perpetuities under applicable law, then such trust shall terminate on the last date before such violation would occur, if the trust has not previously terminated, and the Trustee shall distribute the principal and any accrued or undistributed net income of the trust to the beneficiary for whom the trust is named.

I.      For purposes of determining who is a child, grandchild or descendant of Grantor or of any other person:

1.     Legal adoption before the person adopted reached the age of twenty-one years shall be the equivalent in all respects to blood relationship; and

2.     A person born out of wedlock and those claiming through that person shall be deemed to be descendants (i) of the natural mother and her ancestors, and (ii) if the natural father acknowledges paternity, of the natural father and his ancestors, in each case unless a decree of adoption terminates such natural parent's parental rights.

3.     A person who is conceived by artificial insemination shall be regarded as the legitimate child of his or her mother and of the man to whom she was then married provided he has consented to such artificial insemination.

J.      An individual's "Agent" means (1) the individual's attorney-in-fact acting under a durable power of attorney, to the extent such durable power of attorney specifically authorizes the exercise of a particular power, or (2) the individual's duly appointed conservator or guardian, to the extent such conservator or guardian gives notice to the Trustee and obtains approval for the exercise of such power from the Court which appointed him or her as such conservator or guardian.

K.      A Trustee shall be treated as incapacitated if: (1) the Trustee has been declared or adjudicated as such by a court of competent jurisdiction; (2) a guardian, conservator, or other personal representative of such Trustee's person or estate has been appointed by a court of competent jurisdiction; (3) the Trustee has been certified as such in writing by at least two licensed physicians; (4) the Trustee fails to satisfy within sixty (60) days a written request by a majority of the beneficiaries (with any beneficiary under a legal disability acting through his/her Agent) then eligible to receive mandatory or discretionary distributions of net income hereunder for certification of the Trustee's capacity in writing by at least two licensed physicians; or (5) the Trustee has disappeared or is absent for unexplained reasons, or the Trustee is being detained under duress where the Trustee is unable to effectively manage his or her property or affairs.

L.      If a beneficiary of any trust created herein makes a disclaimer or renunciation valid under applicable law, of any interest or partial interest in the trust, this Agreement shall be administered as if such beneficiary had died immediately before the creation of such interest or partial interest; and if a holder of a power under this Agreement makes a disclaimer or renunciation, valid under applicable law, of any power to withdraw or appoint trust principal or income, this Agreement shall be administered as if the grant of such power to such power holder had been omitted herefrom.

M.     Notwithstanding any other provision of this Agreement, whenever payments are authorized to be made to or for a beneficiary's "health, education, support and maintenance", the Grantor intends that such payments are to be limited by "ascertainable standards" within the meaning of Sections 2041 and 2514 of the Internal Revenue Code.

N.     In addition to distributions to a beneficiary, the Trustee may permit the use of any trust property by any beneficiary without the necessity of any compensation of any kind from the beneficiary to the trust for such use. In this regard, the Trustee may acquire any property, whether real or personal and whether income producing or not, which the Trustee believes desirable for the beneficiary's health, education, maintenance, support and best interests. Such property may include, but shall not be limited to, residential real estate, household furnishings and appliances, artwork and jewelry.

O.     As used herein, the term "survivor or survivors of" shall mean the persons or person so designated that are living at the time in question, but shall *not* include any descendants or issue of such designated persons or person.

P.     In the event the State of the Grantor's domicile is determined to be the Grantor's heir (or the Grantor's spouse's heir) any distribution that would have been made to such State, but for this provision, shall be added to and distributed as part of the shares being distributed to living individuals.

Q.     In the event the Grantor and the Grantor's spouse become divorced or legally separated, the Grantor's spouse, said spouse's parents, all descendants of said spouse's parents who are not the Grantor's descendants, and all spouses of such persons who are not descendants of the Grantor's parents, shall be deemed to have died intestate on the date of such divorce or legal separation for all purposes of interpreting this Agreement (other than for purposes of the "rule

against perpetuities" provisions under this Agreement). In the event a descendant of the Grantor and his or her spouse become divorced or legally separated, such spouse, all descendants of such spouse's parents who are not the Grantor's descendants, and all spouses of such persons who are not descendants of the Grantor's parents, shall be deemed to have died intestate on the date of such divorce or legal separation for all purposes of interpreting this Agreement (other than for purposes of the "rule against perpetuities" provisions under this Agreement). Notwithstanding the foregoing provisions of this Paragraph to the contrary, a person who is deemed to have died pursuant to the foregoing provisions of this Paragraph may nonetheless be subsequently designated to serve in any fiduciary capacity hereunder by a plan made or created subsequent to the date such person is otherwise deemed to have died pursuant to the foregoing provisions of this Paragraph.

  R. Reference to "Code, "Internal Revenue Code", IRC (or similar abbreviations), or to provisions thereof, are to the Internal Revenue Code of 1986, as amended at the time in question.

## ARTICLE IV

## TRUSTEE POWERS

A.    In addition, to the powers granted to trustees under Michigan law, the Trustee shall have the following powers with respect to each trust held under this instrument, exercisable in the discretion of the Trustee:

1.    To retain for any period of time without limitation, and without liability for loss or depreciation in value, any property transferred to the Trustee, including stock or other evidences of interest in a trust hereunder or partnership interests (whether general, special, or limited), even though the Trustee would not purchase the property as a trust investment and though its retention might violate principles of investment diversification;

2.    To sell at public or private sale, wholly or partly for cash or on credit, contract to sell, grant or exercise options to buy, convey, transfer, exchange, or lease (for a term within or extending beyond the term of the trust) any real or personal property of the trust, and to partition, dedicate, grant easements in or over, subdivide, improve, and remodel, repair, or raze improvements on any real property of the trust, and in general to deal otherwise with the trust property in such manner, for such prices, and on such terms and conditions as any individual might do as outright owner of the property;

3.    To purchase life insurance on the life of any individual in which any beneficiary hereunder may have an insurable interest; to enter into any form of split-dollar arrangement with respect to such insurance, including a split-dollar arrangement with another trust of which any Trustee hereunder is acting as a trustee, notwithstanding that such arrangement may constitute an act of self-dealing; to pay any premiums on any such life insurance policy held hereunder (subject to the provisions of Article II, Paragraph (H) above); to exercise with respect to

said insurance policies held hereunder from time to time all options, rights, elections and privileges exercisable with respect to said policies, including, but not limited to, the right to demand and collect from the company or companies issuing said policies all such proceeds as shall be payable to the Trustee; to designate and change the beneficiaries thereunder, provided, however, neither the Grantor nor the Grantor's spouse, if any, may be designated as such beneficiary; to modify, exchange, surrender or cancel any such policies of insurance; to borrow upon and pledge any such policy in connection with a loan; to assign and distribute any and all of the rights thereunder to or for the benefit of any beneficiary of the trust; to direct the disposition of dividends or surplus; to convert said policies into different forms of insurance; and to elect methods of settlement with respect thereto.

4.      To borrow money at interest rates then prevailing from any individual, bank, or other source, irrespective of whether any such individual or bank is then acting as Trustee, and to create security interests in the trust property by mortgage, pledge, or otherwise;

5.      To invest in bonds, common or preferred stocks, notes, real estate mortgages, common trust funds, shares of registered investment companies or other entities (including companies or entities for which any corporate Trustee, or an affiliate of any corporate Trustee, acts as investment adviser, custodian, transfer agent or such other capacity which is now or may in the future be legally permissible, and for which the Trustee receives remuneration), currencies, partnership interests (whether general, special, or limited), limited liability company interests, or other securities or property, real or personal, domestic or foreign, including partial interests, such as life estate, term or remainder interests, without being limited by any statute or rule of law governing investments by Trustees or other fiduciaries;

6.     To make allocations, divisions, and distributions of trust property in cash or in kind, or partly in each; to allocate different kinds or disproportionate shares of property or undivided interests in property among the beneficiaries or separate trusts, without liability for, or obligation to make compensating adjustments by reason of, disproportionate allocations of unrealized gain for federal income tax purposes; and to determine the value of any property so allocated, divided, or distributed;

7.     To make such elections and allocations under the tax laws as the Trustee deems advisable without regard to the relative interests of the beneficiaries; the Trustee shall not make adjustments between principal and income, or in the interests of the beneficiaries, to compensate for the effects of such elections and allocations; and any decision made by the Trustee with respect to the exercise of any tax election or allocation shall be binding and conclusive on all persons;

8.     To exercise in person or by general or limited proxy all voting and other rights, powers, and privileges and to take all steps to realize all benefits with respect to stock or other securities; and to enter into or oppose, alone or with others, voting trusts, mergers, consolidations, foreclosures, liquidations, reorganizations, or other changes in the financial structure of any corporation;

9.     To cause any security or other property to be held, without disclosure of any fiduciary relationship, in the name of the Trustee, in the name of a nominee, or in unregistered form;

10.    To pay all expenses incurred in the administration of the trust, including reasonable compensation to any Trustee, and to employ or appoint and pay reasonable

compensation to accountants, depositaries, investment counsel, attorneys, attorneys-in-fact, and agents (with or without discretionary powers);

11.    To deal with the fiduciary or fiduciaries of any other trust or estate, even though the Trustee is also the fiduciary or one of the fiduciaries of the other trust or estate;

12.    To compromise or abandon any claim in favor of or against the trust;

13.    To lend money to the personal representative of the Grantor's estate or the Grantor's spouse's estate, and to purchase property from the personal representative of the Grantor's estate or the Grantor's spouse's estate and retain the same for any period of time without limitation, and without liability for loss or depreciation in value, notwithstanding any risk, unproductivity, or lack of diversification;

14.    To commingle for investment purposes the property of the trust with the property of any other trust held hereunder, allocating to each an undivided interest in the commingled property;

15.    To receive any property, real or personal, to be added to the trust by lifetime or testamentary transfer or otherwise, if the Trustee consents in writing;

16.    To execute instruments of any kind, including instruments containing covenants and warranties binding upon and creating a charge against the trust property and containing provisions excluding personal liability;

17.    To use and expend the trust income and principal to (i) conduct or cause to be conducted environmental investigations of the trust property, including environmental audits, assessments, site monitoring, laboratory analyses, testing, title histories, aerial photographs, public and private records reviews, and any related inquiries arising out of or in any way related to liability or claims under federal, state or local environmental statutes, regulations, ordinances,

requirements, demands of government authorities or policies or under common law ("environmental laws"); (ii) take appropriate remedial action to contain, clean up or remove any actual or threatened environmental hazard, including a spill, release, discharge or contamination, and conduct site restoration work on the trust property and notify the appropriate federal, state or local authorities either on its own accord or in response to an actual or threatened violation of environmental laws; (iii) institute legal proceedings, claims and demands concerning environmental hazards, contamination or condition of the trust property, or contest, pay, compromise, settle or comply with legal proceedings, claims, demands, orders, penalties, fines and damages brought or imposed by federal, state or local government authorities or by a private litigant; and (iv) employ agents, consultants and legal counsel to assist with or perform the above undertakings or actions. Any expenses or costs incurred by the Trustee under this subparagraph may be charged against income or principal as the Trustee shall determine; and

18.     To buy, sell and trade in securities of any nature, including future contracts, options, short sales and on margin; to maintain and operate margin accounts with brokers; to pledge any securities held or purchased by the trust with such brokers as security for loans and advances made to the trust; and to establish and maintain bank accounts of all types in one or more banking institutions as the Trustee may choose.

19.     To divide property in any trust created hereunder with an inclusion ratio, as defined in Section 2642(a)(1) of the Internal Revenue Code, of neither one nor zero into two separate trusts representing two fractional shares, one with an inclusion ratio of one and the other with an inclusion ratio of zero.

20.     To divide property in any trust created hereunder into separate trusts with different transferors; such a trust may have more than one transferor.

21.     To purchase annuity contracts, and to deal with such contracts, by exercising every available right and privilege of a policy owner.

22.     To participate as a fiduciary investor in the operation of any productive business or other enterprise, and to incorporate, dissolve, or otherwise change the form of such business, to the extent consistent with its role as a fiduciary.

23.     To deposit trust funds in any commercial interest-bearing savings or savings and loan accounts (including those with any corporate fiduciary itself).

24.     To lend trust funds to such persons and on such terms, including (but not limited to) interest rates, security, and loan duration, as the Trustee deems advisable, but (subject to the provisions of Article II, Paragraph (H)) the Trustee may not lend trust funds to the Grantor without an adequate rate of interest.

25.     To merge or consolidate any trust created hereunder together with any other trust having substantially the same dispositive provisions.

26.     To buy assets of any type from any person on such terms, including (but not limited to) cash or credit, interest rates, and security, as the Trustee deems advisable.

27.     To improve, develop, manage, lease, or abandon any trust assets, as the Trustee deems advisable.

28.     To pay and advance money for the trust's protection and for all expenses, losses, and liabilities sustained in its administration.

29.     To prosecute or defend any action for the protection of the trust, the Trustee in the performance of the Trustee's duties, or both, and to pay, contest, or settle any claim by or against the trust or the Trustee in the performance of the Trustee's duties.

30.     The Trustee may determine in a fair, equitable and practical manner how all Trustee's fees, disbursements, receipts, and wasting assets shall be credited, charged, or apportioned between principal and income. The Trustee may set aside from trust income reasonable reserves for taxes, assessments, insurance premiums, repairs, depreciation, obsolescence, depletion, and for the equalization of payments to or for the beneficiaries; it may select any and all accounting periods with regard to the trust property. The Trustee may allocate all receipts of money or property paid or delivered to the Trustee and all expenses to principal or income in accordance with the laws of the State governing this instrument; provided, however, that with regard to any item not clearly governed by such laws, the Trustee shall have discretion to determine whether items should be charged or credited to income or principal as the Trustee may deem equitable and just under all of the circumstances. If the trust owns any interests in a partnership and receives money or property from the partnership which is attributable to a partial or total liquidation of the partnership, said receipt shall be allocated to the principal of the Trust. Cash or property received from a partnership is considered to be received in partial liquidation to the extent that: (i) the partnership, on or about the time of a distribution, indicates that said distribution is a distribution in partial liquidation, or (ii) the total amount received in a distribution or a series of related distributions is greater than twenty (20%) percent of the partnership's gross assets, as reflected in the partnership's year-end financial statements for the period immediately preceding the initial receipt. The Trustee, other than a Trustee who is a beneficiary hereunder, may allocate receipts and disbursements, within the meaning of Treas. Reg. §1.643(a)-3(b) to income or principal or partly to principal and partly to income all or part of the realized gains from the sale or exchange of trust assets in such manner as the Trustee, other than a Trustee who is a beneficiary hereunder, shall determine, even though a particular allocation may be inconsistent with otherwise

applicable state law. Notwithstanding the foregoing, the Trustee may not exercise the power to allocate income or principal for assets held in a Qualified Subchapter S Trust created hereunder. The Trustee, other than a Trustee who is a beneficiary hereunder, may deem, within the meaning of Treas. Reg. §1.643(a)-3(e), any discretionary distribution of principal as being paid from capital gains realized during the year. The Trustee, other than a Trustee who is a beneficiary hereunder, is authorized to take any action to make such deeming respected for tax purposes. The Trustee may appoint a trustee who is neither related to nor subordinate to themselves or to the Grantor to make any distribution which the Trustee is prohibited from making or which may result in adverse estate, gift, or income tax consequences to the Trustee if the Trustee were to take a proposed action. Such trustee shall be limited in authority to taking or not taking such proposed action. No beneficiary of a pecuniary bequest hereunder shall be entitled to interest on their bequest. Furthermore, the Trustee shall determine whether such bequest shall be paid from income, principal or partly from income and principal, in the Trustee's absolute and sole discretion.

31.     To perform all other acts necessary to accomplish the proper management, investment and distribution of the trust property.

32.     To disclaim any fiduciary power granted under this Agreement or applicable law, and to disclaim any part or all of any interest in property as trust property (whether or not the disclaimer is a qualified disclaimer as defined in the Internal Revenue Code).

33.     The Trustee may invest and reinvest in such classes of stocks, bonds, securities, commodities, options, metals, or other property, real or personal, as it shall determine. The Trustee may invest in investment trusts as well as in common trust funds. The Trustee may purchase life, annuity, accident, sickness, and medical insurance on the behalf of and for the benefit of any trust beneficiary. In addition to the investment powers conferred upon the Trustee,

the Trustee is authorized (but not directed) to acquire and retain investments not regarded as traditional for trusts, including investments that would be forbidden by the "prudent person" rule. The Trustee shall not be bound by the prudent investor or prudent man rule of MCL 700.1501 *et seq*. This power is granted under MCL §700.1502(2) specifically authorizing the Grantor to expand, restrict, eliminate or otherwise limit the Trustee's standard of care.

34.    To manage without judicial authorization or approval any IRC Section 529 account or arrangement (collectively referred to as an account) of which the Grantor was the designated owner. Included within the scope of this authority the Trustee shall possess full power and authority to establish new IRC Section 529 accounts on behalf of any trust beneficiary to be named as the "designated beneficiary," to make beneficiary changes from time to time to any IRC Section 529 account, and to make additional contributions to IRC Section 529 accounts if the Trustee considers additional contributions to be necessary and appropriate to carry out the directions contained in this Trust. The Trustee shall also possess the full authority to transfer funds from one state's IRC Section 529 account to another state's IRC Section 529 account. The Trustee shall possess the incidental power to transfer funds from one account investment to another account investment so long as that change in investments is authorized by the state that sponsors the IRC Section 529 account. In addition, the Trustee shall possess full authority to approve any distributions or approve any reimbursements from an established IRC Section 529 account. The Trustee shall also possess the authority to name a contingent IRC Section 529 account owner. The Trustee is authorized to make any investments of trust estate assets in a IRC Section 529 account, and the transfer of cash to a IRC Section 529 account shall constitute a permissible investment without judicial approval, and such investment shall be conclusively deemed to be an appropriate

exercise of the Trustee's discretion to carry out the objectives that are more particularly described in this Trust.

      35.    To execute and deliver any instruments necessary or useful in the exercise of any of the foregoing.

      B.    The powers granted in this Article shall be in addition to those granted by law and may be exercised even after termination of all trusts hereunder until actual distribution of all trust principal, but not beyond the period permitted by any rule of law relating to perpetuities.

      C.    To minimize the impact of any generation-skipping transfer tax that may be applied to any of the trusts created by this Agreement or their beneficiaries, the Trustee shall take the following actions, where applicable:

      1.    If any trust under this Agreement would otherwise by reason of an allocation of generation-skipping transfer tax exemption to it, have an inclusion ratio as defined in IRC section 2642(a) of neither one (1) nor zero (0), then before such allocation the Trustee shall divide, on a fractional basis, the total trust assets into two (2) separate trusts of equal or unequal value, to permit allocation of the exemption solely to one trust (the "exempt trust") so that the exempt trust will have an inclusion ratio of zero (0); any such division shall be accomplished by allocating to the other trust (the "non-exempt trust") which will have an inclusion ratio of one (1)) the minimum fractional share necessary to leave the exempt trust with a corpus of the desired value and an inclusion ratio of zero (0), so as to be entirely exempt from generation-skipping tax. The Trustee is also authorized to sever a single trust into multiple trusts under the "qualified severance" rules of IRC section 2642(a)(3). References hereunder to "trust" or "trusts" refer also to arrangements that are treated as trusts for generation-skipping purposes and to separate shares of a trust, when appropriate to the context, if the shares are, as "substantially separate and independent

shares of different beneficiaries" or otherwise, entitled to be treated as separate trusts for generation-skipping tax purposes.

2.    If the Trustee does in fact divide a trust into two (2) trusts, one which has an inclusion ratio of one (1) and the other which has inclusion ratio of zero (0), the Trustee shall make the division in a manner that permits the trusts to be treated as separate trusts in accordance with Treas. Reg §§26.2654-1(a) and (b). Unless applicable Treasury Regulations require otherwise, if the new trusts are severed on a fractional basis, the separate trusts need not be funded on a pro rata basis; provided, however, if funding is on a non-pro rata basis, the Trustee shall fund the trusts based on either the fair market value of the assets on the date of funding or in a manner that fairly reflects the net appreciation or depreciation in the value of the assets measured from the valuation date to the date of funding, as required by Treas. Reg. §26.2654-1(b)(1). The Trustee shall first distribute to the nonexempt trust property (or its proceeds) that constitutes Income in Respect of a Decedent before distributing other property. Where applicable (unless applicable Treasury Regulations require otherwise), if the severance is required (by the terms of this Agreement) to be made on the basis of a pecuniary amount, the payment of the pecuniary amount shall be satisfied in a manner that complies with Treas. Reg §§26.2654-1(a)(ii)(A) and (B) (which concerns the payment of appropriate interest and the method of funding the pecuniary amount).

3.    Where applicable, the Trustee is directed to comply with the valuation rules of Treas. Reg. §26.2642-2 and the separate-trust rules of Treas. Reg. §26.2654-1, to wit: (i) Unless applicable Treasury Regulations require otherwise, the Trustee shall satisfy the "appropriate interest" requirement: (A) by paying or irrevocably setting aside property in satisfaction of a pecuniary amount within fifteen (15) months of the date of death of the transferor; (B) by paying appropriate interest as defined in Treas. Reg. §26.2642-2(b)(4) on a pecuniary amount; or (C) by

allocating to a pecuniary amount a pro rata share of trust income from the transferor's date of death to the payment date; (ii) Unless applicable Treasury Regulations require otherwise, the Trustee shall pay such pecuniary amount: (A) in cash; (B) solely or partly in kind, using date of distribution values; or (C) solely or partly in kind, in a manner that fairly reflects net appreciation and depreciation in the value of the assets in the fund available to pay the pecuniary amount, measured from the date of valuation to the date of distribution; (iii) Unless applicable Treasury Regulations require otherwise, when a generation-skipping tax exemption is to be allocated to a residual transfer that follows a pecuniary payment: (A) the pecuniary payment shall receive "appropriate interest" as described above; and (B) if the pecuniary payment is to be satisfied solely or partly in kind, the funding of such in kind distribution shall be in a manner described above; (iv) In determining the denominator for the "applicable fraction" used in calculating the inclusion ratio for any trust, when this Agreement (or the Trustee) creates separate trusts, one with an inclusion ratio of one (1) and one with an inclusion ratio of zero (0), the "applicable fraction" shall be calculated under the Treasury Regulations in effect at such time to accomplish the intended result; and (v) In determining how to satisfy the appropriate interest and funding requirements and how to obtain the desired "applicable fraction" described above, the Trustee shall have complete discretion, and shall not be held liable for any consequence of the exercise of this discretion made in good faith, even though the Trustee's decision as to how to satisfy these requirements may affect the amounts ultimately allocated to the various trusts hereunder.

4. When a trust is divided into exempt and nonexempt trusts or otherwise into separate trusts, each trust shall (except as otherwise expressly provided to the contrary) have the same provisions as the original trust (the "divided trust") from which it is established, and references in this Agreement to that divided trust shall collectively refer to the separate trusts

derived from it; nevertheless, the Trustee may make different tax elections (including the allocation of generation-skipping transfer tax exemption), and exercise investment, administrative, and distributive discretion, and donees of powers of appointment may exercise their powers, differently with respect to each of the separate trusts (even otherwise identical trusts) derived from the divided trust.

5.     If a trust under this Agreement, whether created under this provision or not, is entirely exempt or nonexempt from generation-skipping tax and adding property to it would partially subject the trust to generation-skipping tax, or change its inclusion ratio, the Trustee shall hold that property in a separate trust in lieu of making the addition.

6.     The Trustee is authorized to divide property in a trust into separate trusts with different transferors; such a trust may have more than one transferor. The Trustee shall make any payment to, or for the benefit of, a beneficiary from any trust that has more than one transferor for generation-skipping transfer tax purposes (i) pro rata, from the separate portions attributable to transferors relative to whom the beneficiary is a nonskip person for generation-skipping tax purposes, and, to the extent of any balance, (ii) in ascending order of inclusion ratios of the portions for generation-skipping tax purposes, from the separate portions attributable to transferors relative to whom the beneficiary is a skip person for generation-skipping tax purposes, and such distributions need not be ratable among trusts or trust shares with the same inclusion ratios.

7.     If exempt and nonexempt trusts are established under this Agreement, the Trustee shall have the power to make distributions (including distributions resulting from a partial or complete termination of a trust) to beneficiaries who are "nonskip persons" first from nonexempt trusts established for them and then from exempt trusts established for them; in addition, distributions to beneficiaries who are "skip persons" may be made first from exempt

trusts established for them and only thereafter from nonexempt trusts established for them. Distributions need not be ratable among trusts or trust shares with the same inclusion ratios. In making distributions from a nonexempt trust, the Trustee is authorized to make generation-skipping-tax-exempt distributions to beneficiaries who are skip persons, as permitted by IRC section 2611(b)(1) (concerning direct payments for educational and medical expenses). "Skip persons" and "nonskip persons" shall be defined for purposes of this Agreement in accordance with IRC section 2613.

       8.    Upon division, distribution, or termination of an exempt trust and a nonexempt trust, the Trustee may allocate property from the exempt trust first to a share or trust from which a generation-skipping transfer is more likely to occur.

       9.    If any trust created hereunder shall terminate by reason of the death of the beneficiary and a generation-skipping transfer ("GST") tax under Chapter 13 of the Code would otherwise be imposed on any part or all of such trust, then, in lieu of distributing such trust under such provisions, the Trustee shall distribute such part or all of such trust as would otherwise be subject to such GST tax in such manner as said beneficiary shall by Will appoint, and said beneficiary is hereby given a general testamentary power of appointment over such trust in favor of the creditors of the beneficiary's estate (other than any taxing authority), exercisable by said beneficiary alone and in all events, but it must be exercised, if at all, by a Will which makes specific reference to said power. If said beneficiary shall fail to exercise said general testamentary power of appointment or if the exercise thereof shall be invalid, the assets of said trust not effectively appointed shall be distributed or held in trust in the same manner as provided in such trust, and the provisions of this paragraph shall not be applicable. The beneficiary's power conferred by this provision shall not be exercisable in any manner so as to postpone the vesting of

any estate or interest in the appointed property or to suspend the absolute ownership or power of alienation of the appointed property for a period ascertainable without regard to applicable rules limiting the maximum duration of trusts (such as rules governing perpetuities, vesting, accumulations, or the suspension of alienation), and the validity of any exercise shall be measured with respect to such rules, to the extent possible.

10.    A living descendant of a transferor who dies no later than 90 days after the subject transfer shall be treated as having predeceased the transferor, as is permitted by Treas. Reg. § 26.2612-1(a)(2)(i), and no person shall be considered to have survived another or considered to be living upon the death of another if he or she shall die within 90 days after the death of such other.

D.    Notwithstanding any other provision of this instrument, the following limitations will apply to the exercise of any powers or authorities by the Trustee.

1.    No Trustee shall have the power to use or apply trust property (i) to discharge the Grantor's obligation to support or maintain any beneficiary hereunder, (ii) for the support and maintenance of anyone the Trustee is obligated to support and maintain, (iii) for the purpose of directly or indirectly discharging the personal legal obligations of that Trustee or of any beneficiary of any trust created under this instrument with respect to any other person, (iv) nor shall any Trustee who is also a beneficiary of any trust created under this instrument have the power, as Trustee, to make discretionary distributions to him or herself (including, but not limited to, any decision to terminate such trust estate) except to the extent necessary for such Trustee's health, education, support and maintenance as described under IRC Section 2041 and 2514 (concerning powers of appointment and ascertainable standards), and such beneficiary-Trustee shall exercise its Trustee powers solely in a fiduciary capacity and shall possess no

powers that would otherwise permit that beneficiary-Trustee to enlarge or shift any of the beneficial interests created under this instrument (except as an incidental consequence of the discharge of such fiduciary duties). Any other provision to the contrary notwithstanding, no beneficiary-Trustee shall possess any power or discretion that is "conclusive", "sole", "absolute" or "uncontrolled" with respect to the exercise or non-exercise of such power or discretion; and such beneficiary-Trustee's power or discretion in that regard shall at all times be exercised or not exercised in a reasonable manner, be limited by a reasonably definite standard, and shall be subject to review and judicial scrutiny.

If the limitations contained in this subparagraph would prevent the exercise of one or more powers or authorities granted to the Trustee named or selected hereunder, but such powers could be exercised either by such named Trustee acting jointly with an independent trustee or by an independent trustee alone, then such named Trustee shall appoint an additional Co-Trustee (if one is not then serving) who can exercise those powers and authorities without violating this subparagraph. Such an independent trustee shall act jointly with such named trustee whenever their joint exercise of a power or authority will not violate the restrictions imposed by this subparagraph, and such independent trustee shall act alone whenever such separate action is required to exercise a power or authority without violating the restrictions imposed by this subparagraph.

2.      If a beneficiary is acting as the sole Trustee over any trust named for or established for such beneficiary under this Trust Agreement, then such beneficiary may at any time, by written instrument, appoint any person, or any bank or trust company, within or outside the State of Michigan to serve as a Co-Trustee over his/her separate trust; provided, however, any such Co-Trustee so appointed may not be the Grantor, the Grantor's spouse (if any), or a

"related or subordinate party" (as to either the Grantor or the beneficiary) as defined in Section 672(c) of the Code.

Whenever a beneficiary is acting as a Co-Trustee over any trust named for or established for such beneficiary under this Trust Agreement, then, notwithstanding anything contained in this Trust Agreement to the contrary, the following provisions shall apply:

The beneficiary shall not participate in the exercise of any discretion to determine the propriety or amount of payments of income or principal to himself or herself (except such discretion may be exercised so long as it is limited by an ascertainable standard [relating to the health, education, maintenance and support of such person], in which event the beneficiary may participate in the exercise of such limited discretion);

The beneficiary shall not possess any of the incidents of ownership or participate in any determination with respect to any policy of insurance on his or her life or the proceeds thereof, and the remaining Co-Trustee(s) alone shall exercise that discretion and possess those incidents of ownership;

The beneficiary shall not authorize or make other payment for the benefit of any person or exercise any power, whether granted under this Trust Agreement or applicable law, if under the then-applicable tax law, such Trustee's sole possession and/or exercise (as though the only Trustee) of such power would cause all or part of such trust to be attributed to any person for purposes of income or transfer taxes before such person receives the actual distribution or benefit of such property, and another Trustee could alone possess and exercise such power without such adverse tax consequences;

The beneficiary shall not authorize or make any payment for the benefit of any person if such payment or application both will discharge the legal obligation of another person and, on account of such discharge, cause there to be imposed any transfer tax.

3.     No person shall become a Trustee of any trust created hereunder (or become a custodian under any Uniform Transfers (or Gifts) to Minors Act, under any other Article of this instrument), if, because of the generation to which such person is assigned for purposes of any federal generation skipping transfer tax, such person's exercise of the fiduciary power granted under this instrument would be subject to such tax.

4.     If the limitations contained in this Paragraph would prevent the exercise of one or more powers or authorities granted to the Trustee named or selected hereunder but such powers could be exercised either by such named Trustee acting jointly with an independent trustee or by an independent trustee alone, then such named Trustee may appoint an independent trustee who can exercise those powers and authorities without violating this Paragraph. Such an independent trustee shall act jointly with such named Trustee whenever their joint exercise of a power or authority will not violate the restrictions imposed by this Paragraph, and such independent trustee shall act alone whenever such separate action is required to exercise a power or authority without violating the restrictions imposed by this Paragraph.

E.     To the extent that such requirements can legally be waived, no Trustee hereunder shall ever be required to give bond or security as Trustee, or to qualify before, be appointed by or account to any court, or to obtain the order of approval of any court with respect to the exercise of any power or discretion granted in this instrument. The Trustee shall not register any trust created hereunder with a Probate Court of the State of Michigan, unless the Trustee otherwise elects, or unless required by law.

F.      The Trustee's (other than a Trustee who is also a beneficiary or remainder beneficiary hereunder) exercise or nonexercise of powers and discretions in good faith shall be conclusive on all persons. No person paying money or delivering property to any Trustee hereunder shall be required or privileged to see to its application. The certificate of the Trustee that the Trustee is acting in compliance with this instrument shall fully protect all persons dealing with a Trustee.

G.      Notwithstanding any other provision of this Agreement:

1.      The Trustee may from time to time appoint as a Trust Protector (of any trust created under this instrument) one or more U.S. citizens or residents who are not a related or subordinate party, (as defined in IRC § 672(c), to the Grantor, the Grantor's spouse, or to any trust beneficiary. Any appointment of a Trust Protector shall be in writing. The writing shall describe when the appointment shall take effect and when it shall end. If an appointment has not been accepted by the appointee, it may be revoked by the appointing party unless the written appointment specifies otherwise.

2.      The Trust Protector may resign by giving written notice to the Trustee. In addition, at any time and from time to time, the Trustee(s) may remove, with or without cause, a Trust Protector acting hereunder. All trusts created under this instrument need not have or continue to have the same Trust Protector. The provisions of this instrument that relate to the Trust Protector shall be separately applicable to each trust held hereunder.

3.      The Trust Protector, in the Trust Protector's sole discretion, by written instrument, delivered to the Trustee may (i) terminate any trust (except any trust with a charitable beneficiary) and accelerate the distribution of proceeds to the current income beneficiary or pro-rata to the current income beneficiaries; (ii) amend any trust (except as to any provision in any

trust which was necessary for a gift tax exclusion, marital deduction, deferral of tax for a non-citizen spouse or charitable deduction for which a gift tax exclusion, marital deduction, tax deferral or charitable deduction was claimed or allowed) in order to (A) achieve tax advantages, (B) react to changes in the Internal Revenue Code, Treasury Regulations, Revenue Rulings or court cases which adversely affect the tax benefits otherwise available with respect to the trust, or (C) react to changes in the Internal Revenue Code (including but not limited to the scheduled repeal of the Federal Estate Tax), Treasury Regulations, Revenue Rulings or court cases which present advantages to the beneficiaries of the trust; (iii) amend the trust administrative provisions relating to the identity, qualifications, succession, removal, and appointment of the Trustee; (iv) to change the situs and governing law of any trust created hereunder; (v) amend the financial powers of the Trustee; (vi) change the terms of any power of appointment; (vii) change the terms of any spendthrift provision; (viii) restrict in any way determined by the Trust Protector to be beneficial to the trust or a beneficiary, revocably or irrevocably, the future exercise of any power held by any beneficiary or Trustee hereunder; (ix)  (ix) amend the terms of any trust created under this instrument with respect to (A) the purposes for which the Trustee may distribute trust income and principal, and the circumstances and factors the Trustee may take into account in making such distributions; and (B) the termination date of the trust, either by extending or shortening the termination date (but not beyond any applicable perpetuities period).

4.    In addition, the Trust Protector shall have the power to amend the Trust to include a limited power of appointment in favor of the Grantor or any other donor, so that upon receipt of property from such person (hereafter the "donor") for less than adequate consideration (i.e., a gift), the property would be divided between an "LPA share" and a "non-LPA share". The LPA share would receive the excess of the value of the gift property (as finally determined for

federal gift tax purposes) over the value of such property as represented by the donor in an instrument delivered to the Trustee upon conveyance of the property. The non-LPA share would receive the balance of the gift property. The LPA share and non-LPA share shall be administered pursuant to the same terms of this Trust Agreement, except the donor shall have a limited power of appointment (lifetime and testamentary) over the LPA share. The donor may appoint the LPA share property to anyone other than himself/herself, his/her creditors, his/her estate, and the creditors of his/her estate. If the Trust Protector adds such a limited power of appointment to the Trust Agreement, then the Trust Protector shall also amend the Trust Agreement so that (i) any other power of appointment granted to a beneficiary under this instrument will be limited to the non-LPA share; and (ii) any withdrawal rights used to qualify gifts for the annual exclusion will not apply to property subject to the LPA share.

5.      The Trust Protector may make a permitted amendment retroactively to the inception of the trust. Any such amendment may be made by an instrument in writing signed by the Trust Protector, and a copy of the amendment shall be delivered to the Trustee and each adult beneficiary of the Trust to whom income may then be payable or permitted to be paid hereunder and to the natural or legal guardian, if any, of each such minor or otherwise legally disabled beneficiary.

6.      Notwithstanding the foregoing, the Trust Protector shall not amend any Trust in such a way that it would cause any portion of the trust property to be included (for Federal Estate Tax purposes) in the gross estate of the Grantor, any fiduciary of the Trust, or the Trust Protector to the extent it was not already included in the gross estate of the Grantor, the fiduciary of the Trust, or the Trust Protector. The Trust Protector may not accelerate distributions or amend any Trust if it would result in a distribution to or for the benefit of the Trust Protector,

the Trust Protector's estate, or the creditors of the Trust Protector's estate. Neither the Trustee nor the Trust Protector shall have the duty to monitor any trust in order to (i) determine whether any power conferred upon the Trust Protector should be exercised, (ii) keep informed as to the acts or omissions of others, and (iii) minimize or prevent any loss. Any exercise or non-exercise of the Trust Protector's power shall be in the Trust Protector's sole and absolute discretion and shall bind all persons. The Trust Protector is not required to exercise any power or discretion granted under this Trust Agreement. Absent bad faith, the Trust Protector, in that capacity, is hereby exonerated from any and all liability for the acts or omissions of the Trust Protector, any fiduciary, or any beneficiary arising from any exercise or non-exercise by the Trust Protector of the powers granted to the Trust Protector. The Trust Protector may conclusively rely on the opinion of legal counsel retained by the Trustee in the exercise or non-exercise of the powers and discretions granted under this Paragraph or may act or not act without seeking the opinion of legal counsel, all in its sole and absolute discretion. The Trust Protector shall have no fiduciary duty to any trust beneficiary and shall be indemnified by the trust and beneficiaries who are benefited by the exercise of the Trust Protector's authority hereunder.

7.      The Trust Protector, acting on behalf of the Trust Protector and any successor Trust Protector, may at any time irrevocably release, renounce, suspend or modify to a lesser extent any and all powers and discretion granted to the Trust Protector hereunder by delivering a written document to the Trustee.

8.      Notwithstanding the foregoing, the Trust Protector shall not have the power to amend this Agreement (i) to add one or more persons to the group of beneficiaries hereunder, (ii) to delete one or more persons from the group of beneficiaries hereunder, or (iii) to affect the amount of property which may be distributed to or for the benefit of any person. In

addition, notwithstanding anything contained in this Paragraph to the contrary, a power granted under this Paragraph shall not be exercised in a manner that would violate any of the S Corporation requirements for any trust created hereunder as a Qualified Subchapter S Trust or an Electing Small Business Trust.

9.     The Trust Protector shall not have the power to amend any Trust in such a manner as to (i) reduce the restrictions or limitations on the limited power of amendment of the Trust Protector as set forth in this Section; (ii) result in any direct or indirect financial benefit to any individual who is not, at the time of such amendment, already a present or potential future beneficiary of this Trust other than merely through the exercise of a power of appointment herein granted; (iii) make any changes that would have the effect of eliminating or reducing any substantial deduction, credit, exclusion or other tax benefit, or significant grandfathered status or a protection from claims of creditors of the Grantor, the Trust or a beneficiary of the Trust; (iv) limit a beneficiary's rights resulting from transfers from the Trust to the beneficiary prior to the time of the amendment; or (v) result in any direct or indirect financial benefit to any then acting Trustee.

10.    Notwithstanding anything contained in this Agreement to the contrary, a power granted under this subparagraph shall not be exercised in a manner that would impair a beneficiary's existing withdrawal rights or cut off a beneficiary's powers over such withdrawal rights.

H.     In addition to the investment powers conferred above, the Trustee(s) are authorized (but not directed) to acquire and retain investments not regarded as traditional for trusts, including investments that would be forbidden or would be regarded as imprudent, improper or unlawful by the "prudent person" rule, "prudent investor" rule, or any other rule or

law which restricts a fiduciary's capacity to invest. The Trustee(s), in the exercise of sole and absolute discretion, may invest in any type of property, wherever located, including any type of security or option, improved or unimproved real property, and tangible or intangible personal property, and in any manner, including direct purchase, joint ventures, partnerships, limited partnerships, limited liability companies, corporations, mutual funds, business trusts or any other form of participation or ownership whatsoever. In making investments, the Trustee(s) may disregard any or all of the following factors:

  1. Whether a particular investment, or the trust investments collectively, will produce a reasonable rate of return or result in the preservation of principal.

  2. Whether the acquisition or retention of a particular investment or the trust investments collectively are consistent with any duty of impartiality as to the different beneficiaries. The Grantor intends that no such duty shall exist.

  3. Whether the trust is diversified. The Grantor intends that no duty to diversify shall exist.

  4. Whether any or all of the trust investments would traditionally be classified as too risky or speculative for trusts. The entire trust may be so invested. The Grantor intends the Trustee(s) to have sole and absolute discretion in determining what constitutes acceptable risk and what constitutes proper investment strategy. The Grantor's purpose in granting the foregoing authority is to modify the "prudent person" rule, "prudent investor" rule, or any other rule or law which restricts a fiduciary's ability to invest insofar as any such rule or law would prohibit an investment or investments because of one or more factors listed above, or any other factor relating to the nature of the investment itself. The Grantor does this because the

Grantor believes it is in the best interests of the beneficiaries of the trusts created hereunder to give the Trustee(s) broad discretion in managing the assets of the trusts created hereunder.

I.     The Trustee(s) shall take appropriate action to collect all sums payable under the provisions of or in settlement of any insurance policies, at maturity or otherwise, to which the Trustee(s) may become entitled as the beneficiary named in such policies. The Trustee(s), however, shall not be responsible for inability to enforce collection of any proceeds or amounts payable under such policies. The Trustee(s) shall not be obligated to enter into or maintain any litigation to enforce payment of any such policies until the Trustee(s) shall have been satisfactorily indemnified against all expenses and liabilities which the Trustee(s), in the exercise of sole and absolute discretion, may deem incident to such litigation, and the Trustee(s) may utilize any property held hereunder to meet expenses reasonably incurred in connection with enforcing the payment of such policies. The Trustee(s) shall be under no duty whatever to make payments of any premiums, dues, assessments, interest or other charges which may become due and payable on any policy of insurance held hereunder or to which the Trustee(s) are designated as the beneficiary or to see that such payments are made or to notify the insured or any other persons that such payments are or will become due, and the Trustee(s) shall have no responsibility in case such premiums, dues, assessments or other charges are not paid.

J.     Subject to the provisions of Paragraph K below, every act done, power exercised or obligation assumed by a Trustee pursuant to the provisions of this Agreement shall be held to be done, exercised or assumed, as the case may be, by the Trustee acting in a fiduciary capacity and not otherwise, and every person, firm, corporation or other entity contracting or otherwise dealing with the Trustee shall look only to the funds and property of the trust estate for payment under such contract or payment of any money that may become due or payable under any

obligation arising under this Agreement, in whole or in part, and the Trustee shall not be individually liable therefore even though the Trustee did not exempt himself, herself or itself from individual liability when entering into any contract, obligation or transaction in connection with or growing out of the trust estate. The Trustee shall be fully indemnified by the trust estate against any claim or demand by any trust beneficiary or trust creditor, except for any claim or demand based on such Trustee's own willful misconduct, willful default or gross negligence proved by clear and convincing evidence.

K.      Grantor recognizes that some persons may be hesitant to serve as Trustee hereunder because of a concern about potential liability. Therefore, the Grantor directs that: (i) the Trustee shall not incur any liability by reason of any error of judgment, mistake of law, or action of any kind taken or omitted to be taken in connection with the administration of the Trust if in good faith reasonably believed by such Trustee to be in accordance with the provisions and intent hereof, except for any matter involving such Trustee's own willful misconduct or gross negligence proved by clear and convincing evidence, (ii) no Trustee shall not have any fiduciary responsibility to observe, monitor or evaluate the actions of any Co-Trustee and shall not be liable to any party for the failure to seek to remedy a breach of trust, or in a recurring situation to request instructions from a court having jurisdiction over the trust, even if a Trustee may be guilty of a gross violation of fiduciary duties hereunder, and (iii) the Trustee shall be fully indemnified by the trust estate against any claim or demand by any trust beneficiary or trust creditor, except for any claim or demand based on such negligence proved by clear and convincing evidence. In no event shall any Trustee hereunder be liable for any matter with respect to which he, she or it is not authorized to participate hereunder.

L.      Grantor recognizes that some or all of the following conditions may arise in the future although they cannot now be foreseen: (i) a radically substantial change in the political, economic, or social order in the United States of America; (ii) legislation or court decisions highly detrimental to any trust hereunder or its beneficiary(ies); (iii) lack of availability of suitable trust investments for an extended period; (iv) other events tending to greatly impair the intent and purposes of this agreement; and/or (v) future amendments and interpretations of the federal wealth transfer tax laws that could thwart the trust purposes. Grantor further recognizes that a termination of a trust hereunder might be desirable if any of these conditions occur. It is, therefore, expressly provided that, if any trustee of any trust hereunder shall make application to the then court of general jurisdiction in the place where such trust shall have its situs and if such court, by its appropriate decree, shall determine that a condition coming within any of the foregoing standards has occurred and that the best interests of such trust and of the persons interested in it require the termination of such trust, the trustee(s) of such trust, following entry of such decree and obedient to its terms, shall distribute the trust's estate to such trust's then beneficiary(ies) according to their respective interests as set forth in such decree. No trustee shall be required to consider any action under this section until a person interested in a trust hereunder has requested such consideration in writing, nor shall any trustee have any affirmative duty or responsibility for any failure to exercise any authority granted in this paragraph. Prior to terminating a trust hereunder, the trustee may request and shall be entitled to be held harmless and receive appropriate indemnification from the beneficiaries who are going to receive a terminating distribution. The trustee shall not terminate a trust if it would impair the status or qualification of a trust that holds shares of stock in a Subchapter S corporation, or would impair a beneficiary's unexercised right of withdrawal that has not yet lapsed or would otherwise impair a

qualified family owned business interest deduction taken under IRC Section 2057. Notwithstanding anything contained herein to the contrary, the trustee who terminates a trust under this paragraph must not: (i) be related or subordinate (within the meaning of IRC Section 672(c)) to any donor or beneficiary with respect to the trust in question; (ii) be benefited by the exercise or non-exercise of any power given the Trustee by this trust agreement or by law; or (iii) be a beneficiary or a donor of the trust in question.

M.    Except as otherwise provided in this paragraph, the validity, construction, administration, meaning and effect, and all rights of beneficiaries under this Agreement (and any other instrument related thereto) shall be governed by the laws of the State of Michigan without regard to its conflicts of law principles; provided, however, that all matters pertaining to the Trustee's administration of real property shall be governed by the laws of the situs of such real property, including such jurisdiction's conflict of law principles. The administration, construction, meaning and effect, and rights of beneficiaries under a trust established by the exercise of a power of appointment granted hereunder shall be governed by the laws of whatever jurisdiction may be designated either in such instrument of appointment or in the resulting trust (or, absent such designation, by the laws of the State of Michigan). This paragraph shall apply regardless of any change of residence of any Trustee or any beneficiary, or the appointment or substitution of a Trustee residing in another jurisdiction. The Trustee may, with the written consent of a majority of the trust's current income beneficiaries who are not incapacitated, change the situs of such trust and elect to have the validity, construction, administration, meaning and effect or rights of beneficiaries of such trust be governed by the laws of another jurisdiction, in or outside the United States (including that jurisdiction's law concerning the maximum duration of trusts). The Trustee may not change the situs of a trust or the trust's

governing law in order to limit its existing liability to the beneficiaries. The jurisdiction whose laws govern the validity, construction, administration, meaning and effect, and rights of beneficiaries of any trust may, but need not, be the same as the situs of the administration of such trust. This Agreement shall be exempt from mandatory registration (although the Trustee may, in its discretion register any trust). Unless otherwise consented to by the current income beneficiaries of the trust in question or by any Trust Protector of the trust in question, no person shall serve as a Trustee if to do so would result in the trust being: (i) classified as a "foreign trust" under the Internal Revenue Code, and (ii) subjected to greater or additional taxation as a result of such classification.

## ARTICLE V

## TRUSTEES

A.    Any Trustee may resign at any time by giving prior written notice to the beneficiary or beneficiaries to whom the current trust income may or must then be distributed.

B.    **LISA MANCINI** shall be succeeded upon death, resignation, removal or incapacity by **DANIEL C. MANCINI** and **EDWARD A. MANCINI** as successor Co-Trustees, with all the same rights, powers and duties as the initial Trustee.  In the event that **DANIEL C. MANCINI** and **EDWARD A. MANCINI** are deadlocked on any issue requiring their consent, then **FRANK P. IANNUZZI**, if willing and able, shall break any such deadlock.  In addition, after the death of the survivor of the Grantor and the Grantor's spouse, each legally competent beneficiary who has attained or attains the age of twenty-five (25) years shall become a Co-Trustee over any separate trust named or established hereunder for the benefit of such beneficiary. Except as otherwise provided in Paragraphs D and E of this Article, if **LISA MANCINI, DANIEL C. MANCINI** and **EDWARD A. MANCINI** all cease to act as Trustee hereunder for any reason, or if any successor Trustee appointed as hereinafter provided ceases to act as Trustee hereunder for any reason, the person or persons indicated in Paragraph F of this Article shall, by written instrument, immediately appoint any person (other than a "disqualified person," meaning the Grantor, the Grantor's spouse (if any), a descendant of the Grantor, a person legally obligated to support any such descendant, or, during the Grantor's life, a "related or subordinate party" as defined in Section 672(c) of the Code) who is experienced in business, finance or investments, or any bank or trust company, within or outside the State of Michigan, as successor Trustee. The Grantor shall not serve as Trustee, Co-Trustee, successor Trustee or successor Co-Trustee of any trust created hereunder.

C.     During the term of this Agreement, the Trustee shall furnish, at least annually, to each adult beneficiary, a complete inventory of trust property held in trust in which the beneficiary has an interest, and shall furnish annually to each adult beneficiary an accounting of all receipts, disbursements, and transactions in a manner required by MCLA 700.7303(3). The person or persons indicated in Paragraph F of this Article may at any time, by written instrument, approve the accounts of the Trustee with the same effect as if the accounts had been approved by a court having jurisdiction of the subject matter and of all necessary parties.

D.     If any corporate trustee designated to act or at any time acting hereunder is merged with or transfers substantially all of its assets to another corporation, or is in any other manner reorganized or reincorporated, the resulting or transferee corporation shall become Trustee in place of its corporate predecessor.

E.     As often as the Trustee shall deem such action to be advantageous to the trusts or to any beneficiary, the Trustee may, by written instrument, resign and appoint as substitute trustee with respect to all or any part of the trust principal, including property as to which the Trustee cannot act, any person (other than a disqualified person), or any bank or trust company, within or outside the State of Michigan. The substitute trustee shall have all of the title, powers, and discretion of the original Trustee, but shall exercise the same under the supervision of the resigning Trustee, who shall act as adviser to the substitute Trustee. The adviser may at any time remove the substitute Trustee by written instrument delivered to the substitute Trustee. Upon the removal or resignation of the substitute Trustee, the adviser may resume the office of Trustee or may continue to act as adviser and appoint another substitute Trustee. Any adviser may receive reasonable compensation for services as adviser.

F.     A successor Trustee may be appointed pursuant to Paragraph B of this Article to fill any vacancy, and the accounts of the Trustee may be approved pursuant to Paragraph C of this Article by a majority in number of the beneficiaries to whom the current trust income may or must then be distributed. If any beneficiary so entitled to act is then under legal disability, the instrument of appointment or approval may be signed, executed, and delivered by the lawful guardian of such beneficiary (other than the Grantor) on his or her behalf.

G.     The incumbent Trustee shall have all of the title, powers, and discretion granted to the original Trustee, without court order or act of transfer. No successor Trustee shall be personally liable for any act or failure to act of predecessor Trustee. With the approval of the person or persons indicated in Paragraph F of this Article who may approve the accounts of the Trustee, a successor Trustee may accept the account furnished, if any, and the property delivered by or for a predecessor Trustee without liability for so doing, and such acceptance shall be a full and complete discharge to the predecessor Trustee.

H.     The Grantor, if living and not incapacitated, may remove, in writing, an incumbent trustee or co-trustee and a successor trustee designated to act in the future, with or without cause, and appoint a successor individual or Independent Trustee or a series of successor individual or Independent Trustees or Co-Trustees. In the event the Grantor is not living or is incapacitated, the named beneficiary of any trust created hereunder who has attained the age of 25 years, with any named beneficiary under a legal disability voting through his/her lawful guardian, may remove, in writing, an incumbent trustee or a co-trustee and a successor trustee designated to act in the future, with respect to his/her separate trust, with or without cause, and appoint a successor Independent Trustee or a series of successor Independent Trustees or Co-Trustees. As a condition precedent to removing a trustee or co-trustee hereunder, the person or

5-3

persons who are removing the trustee shall first appoint one or more successor trustees in accordance with the provisions of Paragraph B of this Article (if no successor Trustee has already been named herein); provided, however, no person acting alone, may remove or name a trustee of a trust hereunder that would be included in the Grantor's or that person's estate solely by reason of this right of removal or appointment, and the Grantor may not be named as a Trustee.

## ARTICLE VI

### TRUST IRREVOCABLE

The Grantor waives irrevocably all rights, power and authority to amend or revoke this instrument or any trust hereby evidenced.

The Grantor hereby signs this Trust Agreement on November 22, 2005.

WITNESSES:                                  GRANTOR:

_____            _____
MARY K. WALDROP                             STEVEN M. MANCINI

_____
JENNIFER L KUZMARSKI

The trusts created by the foregoing instrument are accepted as of the day and year last above written.

WITNESSES:                                  TRUSTEE:

_____            _____
MARY K. WALDROP                             LISA MANCINI

_____
JENNIFER L KUZMARSKI

STATE OF MICHIGAN          )
                           ) SS
COUNTY OF OAKLAND          )

Acknowledged before me in Oakland County, Michigan on November 22, 2005, by **STEVEN M. MANCINI.**

_____
CYNTHIA R. MOREFIELD
Notary Public, State of Michigan
County of Macomb
My Commission Expires Nov. 11, 2010
Acting in the County of _____

6-1

STATE OF MICHIGAN                    )
                                     ) SS
COUNTY OF OAKLAND                    )

Acknowledged before me in Oakland County, Michigan, on November 22, 2005, by **LISA MANCINI**, Trustee of the **STEVEN M. MANCINI CHILDREN'S TRUST AGREEMENT NO. 2**.

CYNTHIA R. MOREFIELD
Notary Public, State of Michigan
County of Macomb
My Commission Expires Nov. 11, 2010
Acting in the County of *Macomb*

This instrument was prepared by:

Julius H. Giarmarco, Esq.
Cox, Hodgman & Giarmarco, P.C.
101 W. Big Beaver Road
Columbia Center, Suite 1000
Troy, MI 48084-5280
(248) 457-7000

## SCHEDULE OF PROPERTY

This schedule is attached to and forms a part of that certain Trust Agreement executed by **STEVEN M. MANCINI**, as Grantor, and **LISA MANCINI**, as Trustee, on November 22, 2005, and known as the **STEVEN M. MANCINI CHILDREN'S TRUST AGREEMENT NO. 2**, and identifies the initial trust property held subject to the Trusts thereunder.

Cash . . . . . $40.00

# EXHIBIT B

*LISA, then JG, then Trust*

# STEVEN M. MANCINI

# 2011 CHILDREN'S TRUST AGREEMENT

by

### Julius H. Giarmarco, Esq.

### Giarmarco, Mullins & Horton, P.C.

### 101 W. Big Beaver Road, Tenth Floor
### Troy, MI 48084

### Telephone: (248) 457-7000

Copyright©2009 Julius H. Giarmarco, Esq.

# TABLE OF CONTENTS

## STEVEN M. MANCINI

## 2011 CHILDREN'S TRUST AGREEMENT

ARTICLE ONE
CREATION OF TRUST ................................................................................ 1-1
    Section 1.    The Trust ................................................................................ 1-1
    Section 2.    Initial Funding and Allocation to Trusts for Children ........... 1-1
    Section 3.    Additional Funding ............................................................... 1-1
    Section 4.    The Names of the Trusts ........................................................ 1-1
    Section 5.    Irrevocability ........................................................................ 1-2
    Section 6.    The Grantor Has No Rights in any Trust ............................... 1-2
    Section 7.    The Grantor's Intention ........................................................ 1-3

ARTICLE TWO
DISTRIBUTION OF THE GRANTOR'S TRUST PROPERTY ................... 2-1
    Section 1.    Distribution of Trusts ........................................................... 2-1
    Section 2.    Trust of a Descendant of a Deceased Child .......................... 2-9
    Section 3.    Limited Power of Appointment ........................................... 2-10

ARTICLE THREE
ULTIMATE DISTRIBUTION PATTERN ................................................... 3-1

ARTICLE FOUR
METHODS OF DISTRIBUTION AND TRUST ADMINISTRATION .......... 4-1
    Section 1.    General Guidelines for Distribution ...................................... 4-1
    Section 2.    Methods of Payment ............................................................. 4-1

ARTICLE FIVE
THE RESIGNATION, REPLACEMENT, AND SUCCESSION OF THE TRUSTEES .......... 5-1
    Section 1.    The Resignation of a Trustee ................................................ 5-1
    Section 2.    The Removal of a Trustee ..................................................... 5-1
    Section 3.    Replacement of Trustees ....................................................... 5-2
    Section 4.    Corporate Fiduciaries ........................................................... 5-3
    Section 5.    Powers and Liabilities of Successor Trustee .......................... 5-5

ARTICLE SIX
GENERAL MATTERS AND INSTRUCTIONS WITH REGARD TO THE TRUSTEESHIP .......... 6-1
    Section 1.    Use of "Trustee" Nomenclature ........................................... 6-1
    Section 2.    No Requirement to Furnish Bond .......................................... 6-1
    Section 3.    Court Supervision Not Required ............................................ 6-1
    Section 4.    The Trustee's Responsibility to Make Information Available to Beneficiaries .......... 6-1
    Section 5.    Delegation Among the Trustees ............................................ 6-2
    Section 6.    Utilization of Substitute Trustee ........................................... 6-2
    Section 7.    Trustee's Fee ........................................................................ 6-2
    Section 8.    A Majority of Trustees Required to Control .......................... 6-2
    Section 9.    Termination for Unusual Cause ............................................ 6-3
    Section 10.    Trust Protector ..................................................................... 6-3

ARTICLE SEVEN
WITHDRAWAL RIGHTS...........................................................................................7-1
    Section 1.    Withdrawal Rights.................................................................7-1
    Section 2.    Notice of Withdrawal Rights..............................................7-2
    Section 3.    Exercise of Withdrawal Power...........................................7-2
    Section 4.    Lapse of Power and Hanging Power...................................7-2
    Section 5.    Power to Change Withdrawal Rights..................................7-3
    Section 6.    Miscellaneous Provisions...................................................7-3

ARTICLE EIGHT
INCOME TAX STATUS OF TRUST DURING THE GRANTOR'S LIFETIME..............8-1
    Section 1.    Grantor Trust Status............................................................8-1
    Section 2.    Trustee Prohibitions............................................................8-2
    Section 3.    Non-Fiduciary Capacity......................................................8-2
    Section 4.    Restrictions.........................................................................8-2
    Section 5.    Release................................................................................8-2
    Section 6.    Re-Grant.............................................................................8-3
    Section 7.    Reimbursement for Income Tax Liability...........................8-3

ARTICLE NINE
THE TRUSTEE'S ADMINISTRATIVE AND INVESTMENT POWERS ......................9-1
    Section 1.    Introduction to Trustee's Powers ......................................9-1
    Section 2.    Powers to Be Exercised in the Best Interests of the Beneficiaries........9-1
    Section 3.    Administrative and Investment Powers...............................9-1
    Section 4.    Environmental Matters.......................................................9-15
    Section 5.    Generation-Skipping Transfers .........................................9-16
    Section 6.    Investment Advisor............................................................9-21

ARTICLE TEN
DEFINITIONS AND GENERAL PROVISIONS......................................................10-1
    Section 1.    Definitions..........................................................................10-1
    Section 2.    Divorce..............................................................................10-3
    Section 3.    The Rule Against Perpetuities............................................10-4
    Section 4.    Protective Clause................................................................10-4
    Section 5.    Beneficiaries on Government Assistance.............................10-5
    Section 6.    Exercise of Power of Appointment ....................................10-5
    Section 7.    Contest Clause....................................................................10-6
    Section 8.    General Matters..................................................................10-7
    Section 9.    Cost-of-Living Adjustment Factor .....................................10-8
    Section 10.    Governing Law / Situs.......................................................10-8

# STEVEN M. MANCINI

# 2011 CHILDREN'S TRUST AGREEMENT

## ARTICLE ONE

## CREATION OF TRUST

### SECTION 1.   THE TRUST

This irrevocable trust, dated February 1, 2011, is by STEVEN M. MANCINI, as the Grantor, and LISA MANCINI as the initial sole Trustee of the trust.

All references to "the trust", "this trust", "trust", or "Trust Agreement" unless otherwise stated, shall refer to this irrevocable trust and the separate trusts created herein. All references to "the Trustee" or "Trustee" shall refer to the initial Trustee or Trustees, or their successor or successors in trust.

### SECTION 2.   INITIAL FUNDING AND ALLOCATION TO TRUSTS FOR CHILDREN

As of the date of this Trust Agreement, the Trustee shall divide and allocate the trust principal into four (4) separate trusts named respectively the Grantor's children, CHRISTINA M. MANCINI, RICHARD MANCINI, SABRINA A. MANCINI and MARINA A. MANCINI. Each such trust shall be initially funded with $10. Future contributions may be made to these separate trusts in equal or unequal amounts. Each trust named for a child of the Grantor shall be held, administered and distributed in accordance with the provisions in the following Article that are specific to that child's trust.

### SECTION 3.   ADDITIONAL FUNDING

Each trust created hereunder may be additionally funded by the Grantor or by any other person in any manner with property interests of all kinds. All property interests transferred, assigned, conveyed, or delivered to the Trustee in trust shall be absolute and irrevocable and must be acceptable to the Trustee.

All property interests transferred, assigned, conveyed, or delivered to the Trustee shall be subject to all of the terms and conditions set forth in this Trust Agreement.

### SECTION 4.   THE NAMES OF THE TRUSTS

For purposes of beneficiary designations, formal correspondence, and transfers directly to the trusts, the separate trusts established herein shall be referred to as:

> LISA MANCINI, Trustee, or any successor Trustee, of the STEVEN M. MANCINI 2011 CHILDREN'S TRUST AGREEMENT F/B/O CHRISTINA M. MANCINI, dated February 1, 2011.

LISA MANCINI, Trustee, or any successor Trustee, of the STEVEN M. MANCINI 2011 CHILDREN'S TRUST AGREEMENT F/B/O RICHARD MANCINI, dated February 1, 2011.

LISA MANCINI, Trustee, or any successor Trustee, of the STEVEN M. MANCINI 2011 CHILDREN'S TRUST AGREEMENT F/B/O SABRINA A. MANCINI, dated February 1, 2011.

LISA MANCINI, Trustee, or any successor Trustee, of the STEVEN M. MANCINI 2011 CHILDREN'S TRUST AGREEMENT F/B/O MARINA A. MANCINI, dated February 1, 2011.

## SECTION 5.   IRREVOCABILITY

Each separate trust established herein is hereby expressly declared to be irrevocable, and the Grantor hereby expressly waives all rights and powers, whether alone or in conjunction with others, and regardless of when or from what source the Grantor may heretofore or hereafter have acquired such rights or powers, to alter, amend, revoke or terminate any trust herein created, or to alter, amend or change the terms and conditions of this Trust Agreement, in whole or in part.

By this Trust Agreement, the Grantor, during the term hereof, hereby renounces any interest, either vested or contingent, in the income or principal of any trust herein created, and relinquishes all possession or enjoyment of, or the right to income from, the property of any trust herein created, and all right and power, whether alone or in conjunction with others, to designate the persons who shall possess and enjoy the property of any such trust, or the income therefrom.

Accordingly, no power enumerated herein or accorded to trustees generally pursuant to law, singly or as a whole, shall be construed to enable the Grantor (i) to become a trustee hereunder (or to possess or exercise any powers of such office); (ii) to vote any stock described in IRC Section 2036(b) which may at any time be directly or indirectly given to any trust hereunder; (iii) to possess or exercise any power of appointment with respect to any such trust; (iv) to exercise or retain any power described in IRC Section 2036(a) or (b) or IRC Section 2038; (v) to exercise any incident of ownership within the meaning of IRC Section 2042 with respect to any policy insuring the Grantor and held by the trust; (vi) to receive any distributions on behalf of a beneficiary (regardless of the Grantor's relationship to the beneficiary); (vii) to possess or exercise any rights or discretion granted to a beneficiary hereunder; or (viii) to permit any trust distribution which would have the effect of discharging any legal obligation of the Grantor, of the Grantor's spouse, or of the Trustee (including any obligation relating to the support and/or education of any beneficiary hereunder), other than legal obligations arising under this Trust Agreement.

## SECTION 6.   THE GRANTOR HAS NO RIGHTS IN ANY TRUST

After the execution of this Trust Agreement, the Grantor shall have no right, title, or interest in the income or principal of any trust created hereunder. In addition, the Grantor shall have no right, title, interest, power, incident of ownership, or any other benefit in any trust property.

Neither the Grantor's estate nor the Grantor shall have any reversionary or similar interest in the trust or the property held by it.

## SECTION 7.    THE GRANTOR'S INTENTION

In keeping with the wholly discretionary nature of this trust and all separate trusts created hereunder, no beneficiary, except as regards to any irrevocable vesting in the beneficiary's favor, shall have any ascertainable, proportionate, actuarial or otherwise fixed or definable right to or interest in all or any portion of any trust or its property. It is the Grantor's intent that the Trustee have all of the discretion of a natural person, and that a potential distribution beneficiary hold nothing more than a mere expectancy. It is also the Grantor's intent that this Paragraph be interpreted to provide the Trustee with the greatest discretion in making distributions allowed under law.

## ARTICLE TWO

## DISTRIBUTION OF THE GRANTOR'S TRUST PROPERTY

**SECTION 1.   DISTRIBUTION OF TRUSTS**

A.   **Distribution of Trust for CHRISTINA M. MANCINI.**

The Trustee, in its sole and absolute discretion, shall apply to, or for the benefit of, CHRISTINA M. MANCINI (the "Primary Beneficiary") and the descendants of CHRISTINA M. MANCINI (hereinafter collectively referred to as the "beneficiaries") as much of the net income and principal from the trust as the Trustee deems advisable for the health, education, maintenance, and support of the beneficiaries. Any excess net income shall be added to principal.

1.   **Guidelines for Discretionary Distributions.**

To the extent that the Grantor has given the Trustee any discretionary authority over the distribution of income or principal to the beneficiaries, the Trustee may (but need not) consider other income or resources available to the beneficiaries that are outside of the trust and are known to the Trustee.

The Trustee may lend income and principal of the trust to the beneficiaries or buy assets for their use, rather than distributing income or principal outright to beneficiaries, unless the Trustee determines that outright distributions are more appropriate. The Trustee may permit the use of any trust property by any beneficiary without the necessity of any compensation of any kind from the beneficiary to the trust for such use. In this regard, the Trustee may acquire any property, whether real or personal and whether income producing or not, which the Trustee believes desirable for a beneficiary's health, education, maintenance, and support. Such property may include, but shall not be limited to, residential real estate, household furnishings and appliances, artwork and jewelry.

The Trustee may also assist a beneficiary in a business or profession by (i) making a distribution directly to the beneficiary, (ii) investing trust principal directly in the business venture, without regard to whether such investment is a proper investment for trustees under applicable law, or (iii) loaning funds to the beneficiary or the business venture on such terms and conditions as the Trustee deems appropriate.

Although the Grantor does not intend to limit the discretion of the Trustee, it is the Grantor's belief that, in most cases, the most appropriate method for assisting a beneficiary consistent with the present and future needs of other trust beneficiaries is through a loan of trust funds to the individual.

Without in any way limiting the nature of the discretion conferred upon the Trustee and without imposing any fiduciary duty to do so, it is the Grantor's intention that the Trustee should consider the interests of the Primary Beneficiary as paramount to the interests of the other beneficiaries.

A distribution to or for the benefit of a beneficiary shall be charged to the trust rather than against the beneficiary's ultimate share upon the termination of the trust.

2.    **Limited Power of Appointment Upon Death of a Primary Beneficiary.**

The Primary Beneficiary of a trust created under this Paragraph (A) shall have the limited testamentary power to appoint the remaining property in the Primary Beneficiary's trust to, or in trust for the benefit of, a person or persons among the Grantor's then living descendants (other than the Primary Beneficiary, the Primary Beneficiary's estate or creditors, or the creditors of the Primary Beneficiary's estate), in such proportions and upon such terms and conditions and estates, with the powers, in the manner and at the times as the Primary Beneficiary appoints by a valid last will or by a valid living trust agreement which specifically refers to this power.

The Primary Beneficiary may, at any time and from time to time during the Primary Beneficiary's lifetime, by a written, acknowledged instrument delivered to the Trustee, release such power of appointment with respect to any or all of the property subject to such power, or may further limit the persons or entities in whose favor this power may be exercised or the extent to which this power may be exercised.

If the Primary Beneficiary does not effectively exercise this power of appointment for any reason, in whole or in part, the trust, to the extent not effectively appointed by the Primary Beneficiary, shall, upon the Primary Beneficiary's death, be disposed of in accordance with the remaining terms and conditions provided in this Paragraph (A).

3.    **Disposition of Unappointed Property For Descendants of the Primary Beneficiary.**

Upon the death of the Primary Beneficiary, if any descendant of the Primary Beneficiary is then living, the unappointed principal and accrued income, if any, of the trust shall be divided into shares to be set apart, on a per stirpital basis with respect to the then living descendants of the Primary Beneficiary. Any share so set apart with respect to a descendant of the Primary Beneficiary shall be named for such descendant and shall be held, administered and distributed as provided in this Paragraph (A), with such descendant for whom such share was created referred to as the "Primary Beneficiary", and with such Primary Beneficiary and such Primary Beneficiary's descendants collectively referred to as the "beneficiaries". If no descendant of the Primary Beneficiary is then living, the remaining trust property shall be distributed to the then living descendants, per stirpes, of the Primary Beneficiary's nearest ancestor who is the Grantor or a descendant of the Grantor and of whom one or more descendants are then living, provided, however that any share thus inuring to a descendant of the Grantor shall be held in a separate trust (then or previously created with respect to the descendant under this Paragraph (A)) to be administered as provided in this Paragraph (A). If a trust for a descendant has already been established in accordance with other provisions of this Article, and if the provisions of such other trust differ from the provisions of the trust for such descendant under this Paragraph (A), then the share created for such descendant pursuant to this Paragraph (A) to be administered as provided in this Paragraph (A)

shall, notwithstanding this Paragraph (A), be added to such other trust and be administered in accordance with the provisions of such other trust.

4.    **General Dispositive Intention of the Grantor.**

It is the Grantor's general intention that, upon the death of any Primary Beneficiary of any trust under this Paragraph (A), regardless of the Primary Beneficiary's generation from the Grantor (except to the extent that the Primary Beneficiary effectively exercises the Primary Beneficiary's limited power of appointment) the property in that trust be divided, as provided above, on a per stirpital basis, into trusts for the Primary Beneficiary's surviving descendants with each of those descendants becoming a Primary Beneficiary of such descendant's own trust, to be similarly disposed of through all succeeding generations in perpetuity to the maximum extent permitted by the governing law.

B.    **Distribution of Trust for RICHARD MANCINI.**

The Trustee, in its sole and absolute discretion, shall apply to, or for the benefit of, **RICHARD MANCINI** (the "Primary Beneficiary") and the descendants of **RICHARD MANCINI** (hereinafter collectively referred to as the "beneficiaries") as much of the net income and principal from the trust as the Trustee deems advisable for the health, education, maintenance, and support of the beneficiaries. Any excess net income shall be added to principal.

1.    **Guidelines for Discretionary Distributions.**

To the extent that the Grantor has given the Trustee any discretionary authority over the distribution of income or principal to the beneficiaries, the Trustee may (but need not) consider other income or resources available to the beneficiaries that are outside of the trust and are known to the Trustee.

The Trustee may lend income and principal of the trust to the beneficiaries or buy assets for their use, rather than distributing income or principal outright to beneficiaries, unless the Trustee determines that outright distributions are more appropriate. The Trustee may permit the use of any trust property by any beneficiary without the necessity of any compensation of any kind from the beneficiary to the trust for such use. In this regard, the Trustee may acquire any property, whether real or personal and whether income producing or not, which the Trustee believes desirable for a beneficiary's health, education, maintenance, and support. Such property may include, but shall not be limited to, residential real estate, household furnishings and appliances, artwork and jewelry.

The Trustee may also assist a beneficiary in a business or profession by (i) making a distribution directly to the beneficiary, (ii) investing trust principal directly in the business venture, without regard to whether such investment is a proper investment for trustees under applicable law, or (iii) loaning funds to the beneficiary or the business venture on such terms and conditions as the Trustee deems appropriate.

Although the Grantor does not intend to limit the discretion of the Trustee, it is the Grantor's belief that, in most cases, the most appropriate method for assisting a

beneficiary consistent with the present and future needs of other trust beneficiaries is through a loan of trust funds to the individual.

Without in any way limiting the nature of the discretion conferred upon the Trustee and without imposing any fiduciary duty to do so, it is the Grantor's intention that the Trustee should consider the interests of the Primary Beneficiary as paramount to the interests of the other beneficiaries.

A distribution to or for the benefit of a beneficiary shall be charged to the trust rather than against the beneficiary's ultimate share upon the termination of the trust.

2.    **Limited Power of Appointment Upon Death of a Primary Beneficiary.**

The Primary Beneficiary of a trust created under this Paragraph (B) shall have the limited testamentary power to appoint the remaining property in the Primary Beneficiary's trust to, or in trust for the benefit of, a person or persons among the Grantor's then living descendants (other than the Primary Beneficiary, the Primary Beneficiary's estate or creditors, or the creditors of the Primary Beneficiary's estate), in such proportions and upon such terms and conditions and estates, with the powers, in the manner and at the times as the Primary Beneficiary appoints by a valid last will or by a valid living trust agreement which specifically refers to this power.

The Primary Beneficiary may, at any time and from time to time during the Primary Beneficiary's lifetime, by a written, acknowledged instrument delivered to the Trustee, release such power of appointment with respect to any or all of the property subject to such power, or may further limit the persons or entities in whose favor this power may be exercised or the extent to which this power may be exercised.

If the Primary Beneficiary does not effectively exercise this power of appointment for any reason, in whole or in part, the trust, to the extent not effectively appointed by the Primary Beneficiary, shall, upon the Primary Beneficiary's death, be disposed of in accordance with the remaining terms and conditions provided in this Paragraph (B).

3.    **Disposition of Unappointed Property For Descendants of the Primary Beneficiary.**

Upon the death of the Primary Beneficiary, if any descendant of the Primary Beneficiary is then living, the unappointed principal and accrued income, if any, of the trust shall be divided into shares to be set apart, on a per stirpital basis with respect to the then living descendants of the Primary Beneficiary. Any share so set apart with respect to a descendant of the Primary Beneficiary shall be named for such descendant and shall be held, administered and distributed as provided in this Paragraph (B), with such descendant for whom such share was created referred to as the "Primary Beneficiary", and with such Primary Beneficiary and such Primary Beneficiary's descendants collectively referred to as the "beneficiaries". If no descendant of the Primary Beneficiary is then living, the remaining trust property shall be distributed to the then living descendants, per stirpes, of the Primary Beneficiary's nearest ancestor who is the Grantor or a descendant of the Grantor and of whom one or more descendants are then living, provided, however that any share

2-4

thus inuring to a descendant of the Grantor shall be held in a separate trust (then or previously created with respect to the descendant under this Paragraph (B)) to be administered as provided in this Paragraph (B). If a trust for a descendant has already been established in accordance with other provisions of this Article, and if the provisions of such other trust differ from the provisions of the trust for such descendant under this Paragraph (B), then the share created for such descendant pursuant to this Paragraph (B) to be administered as provided in this Paragraph (B) shall, notwithstanding this Paragraph (B), be added to such other trust and be administered in accordance with the provisions of such other trust.

4.      **General Dispositive Intention of the Grantor.**

It is the Grantor's general intention that, upon the death of any Primary Beneficiary of any trust under this Paragraph (B), regardless of the Primary Beneficiary's generation from the Grantor (except to the extent that the Primary Beneficiary effectively exercises the Primary Beneficiary's limited power of appointment) the property in that trust be divided, as provided above, on a per stirpital basis, into trusts for the Primary Beneficiary's surviving descendants with each of those descendants becoming a Primary Beneficiary of such descendant's own trust, to be similarly disposed of through all succeeding generations in perpetuity to the maximum extent permitted by the governing law.

C.      **Distribution of Trust for SABRINA A. MANCINI.**

The Trustee, in its sole and absolute discretion, shall apply to, or for the benefit of, SABRINA A. MANCINI (the "Primary Beneficiary") and the descendants of SABRINA A. MANCINI (hereinafter collectively referred to as the "beneficiaries") as much of the net income and principal from the trust as the Trustee deems advisable for the health, education, maintenance, and support of the beneficiaries. Any excess net income shall be added to principal.

1.      **Guidelines for Discretionary Distributions.**

To the extent that the Grantor has given the Trustee any discretionary authority over the distribution of income or principal to the beneficiaries, the Trustee may (but need not) consider other income or resources available to the beneficiaries that are outside of the trust and are known to the Trustee.

The Trustee may lend income and principal of the trust to the beneficiaries or buy assets for their use, rather than distributing income or principal outright to beneficiaries, unless the Trustee determines that outright distributions are more appropriate. The Trustee may permit the use of any trust property by any beneficiary without the necessity of any compensation of any kind from the beneficiary to the trust for such use. In this regard, the Trustee may acquire any property, whether real or personal and whether income producing or not, which the Trustee believes desirable for a beneficiary's health, education, maintenance, and support. Such property may include, but shall not be limited to, residential real estate, household furnishings and appliances, artwork and jewelry.

The Trustee may also assist a beneficiary in a business or profession by (i) making a distribution directly to the beneficiary, (ii) investing trust principal directly in the

business venture, without regard to whether such investment is a proper investment for trustees under applicable law, or (iii) loaning funds to the beneficiary or the business venture on such terms and conditions as the Trustee deems appropriate.

Although the Grantor does not intend to limit the discretion of the Trustee, it is the Grantor's belief that, in most cases, the most appropriate method for assisting a beneficiary consistent with the present and future needs of other trust beneficiaries is through a loan of trust funds to the individual.

Without in any way limiting the nature of the discretion conferred upon the Trustee and without imposing any fiduciary duty to do so, it is the Grantor's intention that the Trustee should consider the interests of the Primary Beneficiary as paramount to the interests of the other beneficiaries.

A distribution to or for the benefit of a beneficiary shall be charged to the trust rather than against the beneficiary's ultimate share upon the termination of the trust.

2.      **Limited Power of Appointment Upon Death of a Primary Beneficiary.**

The Primary Beneficiary of a trust created under this Paragraph (C) shall have the limited testamentary power to appoint the remaining property in the Primary Beneficiary's trust to, or in trust for the benefit of, a person or persons among the Grantor's then living descendants (other than the Primary Beneficiary, the Primary Beneficiary's estate or creditors, or the creditors of the Primary Beneficiary's estate), in such proportions and upon such terms and conditions and estates, with the powers, in the manner and at the times as the Primary Beneficiary appoints by a valid last will or by a valid living trust agreement which specifically refers to this power.

The Primary Beneficiary may, at any time and from time to time during the Primary Beneficiary's lifetime, by a written, acknowledged instrument delivered to the Trustee, release such power of appointment with respect to any or all of the property subject to such power, or may further limit the persons or entities in whose favor this power may be exercised or the extent to which this power may be exercised.

If the Primary Beneficiary does not effectively exercise this power of appointment for any reason, in whole or in part, the trust, to the extent not effectively appointed by the Primary Beneficiary, shall, upon the Primary Beneficiary's death, be disposed of in accordance with the remaining terms and conditions provided in this Paragraph (C).

3.      **Disposition of Unappointed Property For Descendants of the Primary Beneficiary.**

Upon the death of the Primary Beneficiary, if any descendant of the Primary Beneficiary is then living, the unappointed principal and accrued income, if any, of the trust shall be divided into shares to be set apart, on a per stirpital basis with respect to the then living descendants of the Primary Beneficiary. Any share so set apart with respect to a descendant of the Primary Beneficiary shall be named for such descendant and shall be held, administered and distributed as provided in this Paragraph (C), with such descendant for whom such share was created referred to as

the "Primary Beneficiary", and with such Primary Beneficiary and such Primary Beneficiary's descendants collectively referred to as the "beneficiaries". If no descendant of the Primary Beneficiary is then living, the remaining trust property shall be distributed to the then living descendants, per stirpes, of the Primary Beneficiary's nearest ancestor who is the Grantor or a descendant of the Grantor and of whom one or more descendants are then living, provided, however that any share thus inuring to a descendant of the Grantor shall be held in a separate trust (then or previously created with respect to the descendant under this Paragraph (C)) to be administered as provided in this Paragraph (C). If a trust for a descendant has already been established in accordance with other provisions of this Article, and if the provisions of such other trust differ from the provisions of the trust for such descendant under this Paragraph (C), then the share created for such descendant pursuant to this Paragraph (C) to be administered as provided in this Paragraph (C) shall, notwithstanding this Paragraph (C), be added to such other trust and be administered in accordance with the provisions of such other trust.

4.      **General Dispositive Intention of the Grantor.**

It is the Grantor's general intention that, upon the death of any Primary Beneficiary of any trust under this Paragraph (C), regardless of the Primary Beneficiary's generation from the Grantor (except to the extent that the Primary Beneficiary effectively exercises the Primary Beneficiary's limited power of appointment) the property in that trust be divided, as provided above, on a per stirpital basis, into trusts for the Primary Beneficiary's surviving descendants with each of those descendants becoming a Primary Beneficiary of such descendant's own trust, to be similarly disposed of through all succeeding generations in perpetuity to the maximum extent permitted by the governing law.

D.     **Distribution of Trust for MARINA A. MANCINI.**

The Trustee, in its sole and absolute discretion, shall apply to, or for the benefit of, MARINA A. MANCINI (the "Primary Beneficiary") and the descendants of MARINA A. MANCINI (hereinafter collectively referred to as the "beneficiaries") as much of the net income and principal from the trust as the Trustee deems advisable for the health, education, maintenance, and support of the beneficiaries. Any excess net income shall be added to principal.

1.      **Guidelines for Discretionary Distributions.**

To the extent that the Grantor has given the Trustee any discretionary authority over the distribution of income or principal to the beneficiaries, the Trustee may (but need not) consider other income or resources available to the beneficiaries that are outside of the trust and are known to the Trustee.

The Trustee may lend income and principal of the trust to the beneficiaries or buy assets for their use, rather than distributing income or principal outright to beneficiaries, unless the Trustee determines that outright distributions are more appropriate. The Trustee may permit the use of any trust property by any beneficiary without the necessity of any compensation of any kind from the beneficiary to the trust for such use. In this regard, the Trustee may acquire any property, whether real or personal and whether income producing or not, which the

Trustee believes desirable for a beneficiary's health, education, maintenance, and support. Such property may include, but shall not be limited to, residential real estate, household furnishings and appliances, artwork and jewelry.

The Trustee may also assist a beneficiary in a business or profession by (i) making a distribution directly to the beneficiary, (ii) investing trust principal directly in the business venture, without regard to whether such investment is a proper investment for trustees under applicable law, or (iii) loaning funds to the beneficiary or the business venture on such terms and conditions as the Trustee deems appropriate.

Although the Grantor does not intend to limit the discretion of the Trustee, it is the Grantor's belief that, in most cases, the most appropriate method for assisting a beneficiary consistent with the present and future needs of other trust beneficiaries is through a loan of trust funds to the individual.

Without in any way limiting the nature of the discretion conferred upon the Trustee and without imposing any fiduciary duty to do so, it is the Grantor's intention that the Trustee should consider the interests of the Primary Beneficiary as paramount to the interests of the other beneficiaries.

A distribution to or for the benefit of a beneficiary shall be charged to the trust rather than against the beneficiary's ultimate share upon the termination of the trust.

2.    **Limited Power of Appointment Upon Death of a Primary Beneficiary.**

The Primary Beneficiary of a trust created under this Paragraph (D) shall have the limited testamentary power to appoint the remaining property in the Primary Beneficiary's trust to, or in trust for the benefit of, a person or persons among the Grantor's then living descendants (other than the Primary Beneficiary, the Primary Beneficiary's estate or creditors, or the creditors of the Primary Beneficiary's estate), in such proportions and upon such terms and conditions and estates, with the powers, in the manner and at the times as the Primary Beneficiary appoints by a valid last will or by a valid living trust agreement which specifically refers to this power.

The Primary Beneficiary may, at any time and from time to time during the Primary Beneficiary's lifetime, by a written, acknowledged instrument delivered to the Trustee, release such power of appointment with respect to any or all of the property subject to such power, or may further limit the persons or entities in whose favor this power may be exercised or the extent to which this power may be exercised.

If the Primary Beneficiary does not effectively exercise this power of appointment for any reason, in whole or in part, the trust, to the extent not effectively appointed by the Primary Beneficiary, shall, upon the Primary Beneficiary's death, be disposed of in accordance with the remaining terms and conditions provided in this Paragraph (D).

3.  **Disposition of Unappointed Property For Descendants of the Primary Beneficiary.**

Upon the death of the Primary Beneficiary, if any descendant of the Primary Beneficiary is then living, the unappointed principal and accrued income, if any, of the trust shall be divided into shares to be set apart, on a per stirpital basis with respect to the then living descendants of the Primary Beneficiary. Any share so set apart with respect to a descendant of the Primary Beneficiary shall be named for such descendant and shall be held, administered and distributed as provided in this Paragraph (D), with such descendant for whom such share was created referred to as the "Primary Beneficiary", and with such Primary Beneficiary and such Primary Beneficiary's descendants collectively referred to as the "beneficiaries". If no descendant of the Primary Beneficiary is then living, the remaining trust property shall be distributed to the then living descendants, per stirpes, of the Primary Beneficiary's nearest ancestor who is the Grantor or a descendant of the Grantor and of whom one or more descendants are then living, provided, however that any share thus inuring to a descendant of the Grantor shall be held in a separate trust (then or previously created with respect to the descendant under this Paragraph (D)) to be administered as provided in this Paragraph (D). If a trust for a descendant has already been established in accordance with other provisions of this Article, and if the provisions of such other trust differ from the provisions of the trust for such descendant under this Paragraph (D), then the share created for such descendant pursuant to this Paragraph (D) to be administered as provided in this Paragraph (D) shall, notwithstanding this Paragraph (D), be added to such other trust and be administered in accordance with the provisions of such other trust.

4.  **General Dispositive Intention of the Grantor.**

It is the Grantor's general intention that, upon the death of any Primary Beneficiary of any trust under this Paragraph (D), regardless of the Primary Beneficiary's generation from the Grantor (except to the extent that the Primary Beneficiary effectively exercises the Primary Beneficiary's limited power of appointment) the property in that trust be divided, as provided above, on a per stirpital basis, into trusts for the Primary Beneficiary's surviving descendants with each of those descendants becoming a Primary Beneficiary of such descendant's own trust, to be similarly disposed of through all succeeding generations in perpetuity to the maximum extent permitted by the governing law.

## SECTION 2.    TRUST OF A DESCENDANT OF A DECEASED CHILD

If the trust share created for a deceased child who has then living descendants would have referred to the deceased child as the "Primary Beneficiary" had the child survived, then such trust share shall be further divided into per stirpital parts for such descendants and each per stirpital part set aside for each such descendant shall be held, administered and distributed in accordance with the provisions of Section 2 of this Article that would have applied had the child survived, but treating the descendant as the "Primary Beneficiary" of the per stirpital part established hereunder for such descendant. A trust established under this section shall be named for the descendant for whom the trust is established.

2-9

## SECTION 3.    LIMITED POWER OF APPOINTMENT

During the Grantor's lifetime, the currently acting Trustee shall have the limited power (exercisable in a non-fiduciary capacity, either personally or by an attorney-in-fact under a power of attorney, without the consent or approval of any person or entity in a fiduciary capacity) to appoint the principal of the trust to any one or more of the Grantor and the Grantor's descendants (or to a trust for their benefit), whether living at the time of exercise or thereafter born, in whole or in part, or in equal or unequal proportions, subject to the following provisions:

This limited power of appointment shall be exercised in writing with all the formalities of a deed delivered to the Grantor, on or before the effective date of such appointment set forth in such instrument, which must be during the continuance of such trust but which may relate to a specified event, such as the time of the Trustee's death.

The Trustee may, at any time and from time to time during his or her lifetime, by written instrument delivered to the beneficiaries, release such limited power of appointment with respect to any or all of the property subject to such power and/or may further limit the persons or entities in whose favor this power may be exercised or the extent to which this power may be exercised.

A.    Qualifications on the Limited Power of Appointment.

The power shall only be exercisable by the holder of the power, and shall not be exercised in favor of the holder, the holder's estate, the holder's creditors, or the creditors of the holder's estate.

The power shall not be exercised by the holder in any manner that would result in an economic benefit to the holder or that would in any manner discharge or reduce any legal obligation of the holder, or any legal obligation of the Grantor.

The power shall not apply to any "incidents of ownership" of any life insurance policy insuring the life of the Trustee and held by the trust.

The power shall not be effective to the extent it could be considered a general power of appointment because it could be a reciprocal power with someone else holding another power of appointment or power of distribution in this trust or any other trust.

The power shall not be exercised by the holder if the value of the principal of the trust after the exercise would be less than the aggregate amount subject to a right of withdrawal under Article Seven after the exercise.

## ARTICLE THREE

## ULTIMATE DISTRIBUTION PATTERN

If at any time there is no person, corporation, or other entity entitled to receive all or any part of the trust property, the Trustee shall distribute the trust property as follows:

1.   Fifty (50%) percent of the trust property shall be distributed to the then acting Trustee(s) of the **EDWARD A. MANCINI 2011 CHILDREN'S TRUST AGREEMENT**, dated February 1, 2011, to be held, administered and distributed in accordance with the provisions thereof.

2.   Fifty (50%) percent of the trust property shall be distributed to the then acting Trustee(s) of the **DANIEL C. MANCINI 2011 CHILDREN'S TRUST AGREEMENT**, dated February 1, 2011, to be held, administered and distributed in accordance with the provisions thereof.

## ARTICLE FOUR

## METHODS OF DISTRIBUTION AND TRUST ADMINISTRATION

### SECTION 1.   GENERAL GUIDELINES FOR DISTRIBUTION

Whenever a distribution is authorized or required to be made by a provision of this Trust Agreement to any beneficiary who is disabled or incapacitated, such distribution may be made by the Trustee:

> Without continuing court supervision or the intervention of a guardian, conservator, or any other legal representative.

> Without giving or requiring any bond or surety on bond.

> Pursuant to any of the methods authorized under this Article.

In making distributions under this Article, disability or incapacity shall include adjudicated mental incapacity by a court of competent jurisdiction, or incapacity because of age, illness, or injury.

Before making any distributions to beneficiaries under this Article, it is the Grantor's desire that the Trustee, to the extent that it is both reasonable and possible:

> Inquire into the ultimate disposition of the distributed funds.

> Take into consideration the behavior of trust beneficiaries with regard to their disposition of prior distributions of trust property.

The Trustee shall obtain a receipt from the person, corporation, or other entity receiving any distribution called for in this Article.

### SECTION 2.   METHODS OF PAYMENT

The Trustee may make the distributions called for in this Article in any one or more of the following ways:

> Directly to a beneficiary.

> To persons, corporations, or other entities for the use and benefit of the beneficiary.

> To an account in a commercial bank or savings institution in the name of the beneficiary, or in a form reserving the title, management, and custody of the account to a suitable person, corporation, or other entity for the use and benefit of the beneficiary.

> In any prudent form of annuity purchased for the use and benefit of the beneficiary.

> To any person or duly licensed financial institution, including the Trustee, as a custodian under the Uniform Transfers to Minors Act, or any similar act, of any state, or in any manner allowed by any state statute dealing with gifts or distributions to minors or other individuals under a legal disability.

To any guardian or other person deemed by the Trustee to be responsible, and who has assumed the responsibility of caring for the beneficiary.

To any IRC Section 529 account or arrangement, of which the beneficiary would be both the account owner and designated beneficiary.

To any self-settled revocable living trust established by the beneficiary.

## ARTICLE FIVE

### THE RESIGNATION, REPLACEMENT, AND SUCCESSION OF THE TRUSTEES

### SECTION 1.    THE RESIGNATION OF A TRUSTEE

Any Trustee of a trust created under this Trust Agreement may resign by giving thirty (30) days written notice to the Grantor or the Grantor's legal representative. If the Grantor is not living, the notice shall be delivered to the Co-Trustee, if any, and to all of the beneficiaries then eligible to receive mandatory or discretionary distributions of net income from such trust.

If a beneficiary is a minor or is incapacitated, the notice shall be delivered to that beneficiary's guardian or other legal representative.

### SECTION 2.    THE REMOVAL OF A TRUSTEE

Any Trustee may be removed as follows:

**A.**    **Removal by the Grantor.**

The Grantor reserves the right to remove any incumbent Trustee or Co-Trustee and a successor Trustee designated to act in the future and appoint a successor Independent Trustee or a series of successor Independent Trustees or Co-Trustees. As a condition precedent to removing a Trustee or Co-Trustee hereunder, the Grantor shall first appoint a successor Independent Trustee (if no successor Trustee has already been named herein) or a series of successor Independent Trustees, as such term is defined under Paragraph (E) of this Section.

**B.**    **Removal by the Grantor's Spouse.**

After the Grantor's death, or during any period that the Grantor is disabled, the Grantor's spouse may remove any incumbent Trustee or Co-Trustee and a successor Trustee designated to act in the future and appoint a successor Independent Trustee or a series of successor Independent Trustees or Co-Trustees. As a condition precedent to removing a Trustee or Co-Trustee hereunder, the Grantor's spouse shall first appoint a successor Independent Trustee (if no successor Trustee has already been named herein) or a series of successor Independent Trustees, as such term is defined under Paragraph (E) of this Section.

**C.**    **Removal by Other Beneficiaries.**

After the death or disability of both the Grantor and the Grantor's spouse, a majority of the beneficiaries (with any beneficiary under a legal disability acting through his/her Agent) then eligible to receive mandatory or discretionary distributions of net income under this Trust Agreement may remove any incumbent Trustee or Co-Trustee and a successor Trustee designated to act in the future and appoint a successor Independent Trustee or a series of successor Independent Trustees or Co-Trustees. In addition, each beneficiary (with any beneficiary under a legal disability acting through his/her Agent) for whom a separate trust is named or established hereunder may remove any incumbent Trustee or Co-Trustee and a

successor Trustee designated to act in the future and appoint a successor Independent Trustee or a series of successor Independent Trustees or Co-Trustees with respect to his/her separate trust. As a condition precedent to removing a Trustee or Co-Trustee hereunder, the Grantor's beneficiaries shall first appoint a successor Independent Trustee (if no successor Trustee has already been named herein) or a series of successor Independent Trustees, as such term is defined under Paragraph (E) of this Section.

Notwithstanding the foregoing, at such time as a beneficiary is acting as a Co-Trustee of a trust named or established hereunder for such beneficiary, the beneficiary need not appoint a replacement for a co-trustee being removed if there is at least one other co-trustee then serving with the beneficiary, it being the Grantor's intention that there be at least two co-trustees serving at all times. Moreover, the beneficiary need not appoint a replacement for a co-trustee being removed if at least one other co-trustee is a Corporate Fiduciary as that term is defined below.

D.    **Notice of Removal.**

Neither the Grantor, nor the Grantor's spouse, nor any of the Grantor's beneficiaries, need give any Trustee being removed any reason, cause, or ground for such removal.

Notice of removal shall be effective when made in writing by either:

Personally delivering notice to the Trustee and securing a written receipt, or

Mailing notice in the United States mail to the last known address of the Trustee by certified mail, return receipt requested.

E.    **Definition of Independent Trustee.**

As used in this Trust Agreement, the term "Independent Trustee" means either (i) any person other than (A) the Grantor, (B) any beneficiary of the trust in question, or (C) any person who is "related or subordinate" (within the meaning of IRC Section 672(c)) to either the Grantor or any beneficiary of the trust in question or (ii) any Corporate Fiduciary. In the event that any Independent Trustee should for any reason cease to meet such qualifications; he or she shall immediately cease to be a Trustee as though he or she had resigned immediately prior to the occurrence of such disqualification.

## SECTION 3.   REPLACEMENT OF TRUSTEES

Trustees shall be replaced in the following manner:

A.    **Designation of Successor Trustees.**

If **LISA MANCINI** dies, resigns, or becomes incapacitated, then **DANIEL C. MANCINI** and **EDWARD A. MANCINI** shall serve as successor Co-Trustees. If either **DANIEL C. MANCINI** or **EDWARD A. MANCINI** does not accept the appointment as Trustee, dies, resigns, is removed, or becomes incapacitated, the other shall serve as sole Trustee.

If both **DANIEL C. MANCINI** and **EDWARD A. MANCINI** do not accept the appointment as Co-Trustees, die, resign, are removed or become incapacitated, then **FRANK P. IANNUZZI** shall serve as successor Trustee.

In addition, after the death of the survivor of the Grantor and the Grantor's spouse, each legally competent beneficiary who has attained or attains the age of twenty-five (25) years shall become a Co-Trustee over any separate trust named or established hereunder for the benefit of such beneficiary.

The Grantor shall not serve as Trustee, Co-Trustee, successor Trustee or successor Co-Trustee of any trust created hereunder.

**B.      Successor Trustees.**

A Trustee may be listed more than once in this Section or an initial Trustee may also be named as a successor Trustee. Naming a Trustee more than once is done as a convenience only and is not to be construed as a termination of that Trustee's trusteeship.

**C.      Unfilled Trusteeship.**

In the event no named Trustees of a trust created under this Trust Agreement are available, a majority of the beneficiaries then eligible to receive mandatory or discretionary distributions of net income from such trust shall forthwith name a successor fiduciary.

If a majority of the beneficiaries then eligible to receive mandatory or discretionary distributions of net income from such trust cannot agree on a successor fiduciary, any such beneficiary can petition a court of competent jurisdiction, ex parte, to designate a successor fiduciary as a Trustee.

The court that designates the successor Trustee shall not acquire any jurisdiction over any trust created under this Trust Agreement, except to the extent necessary to name a successor Trustee.

Any successor Trustee named hereunder must be an Independent Trustee (whether a corporation or an individual). In the event that any successor Trustee should for any reason cease to qualify as an Independent Trustee, he or she shall immediately cease to be a Trustee as though he or she had resigned immediately prior to the occurrence of such disqualification.

## SECTION 4.   CORPORATE FIDUCIARIES

Any Corporate Fiduciary named under this Trust Agreement or appointed by a court of competent jurisdiction as a Trustee must be a bank or trust company situated in the United States having trust powers under applicable federal or state law.

If any bank or trust company ever succeeds to the trust business of any Corporate Fiduciary serving as a Trustee hereunder, whether because of a name change or any other form of reorganization, or if such Corporate Fiduciary ever transfers all of its existing business to any other bank or trust company, the successor shall thereupon, without any action being required, succeed to the trusteeship as if originally named.

During any period of time that a Corporate Fiduciary is acting as Trustee or Successor Trustee hereof, the following provisions shall apply:

The Corporate Fiduciary may employ attorneys and such other persons including auditors, appraisers, accountants, investment advisors and/or agents, even if such persons are affiliated or associated with the Corporate Fiduciary, to advise or assist the Corporate Fiduciary in the performance of administrative duties, to act without independent investigation on their recommendations and, instead of acting personally, to employ one or more agents to perform any act of administration, whether or not discretionary.

The fees, compensation and expenses of such attorneys and such other persons, including those persons who are affiliates of the Corporate Fiduciary shall be, unless already included in the compensation of the Corporate Fiduciary as set out in its prevailing schedule of fees, in addition to the compensation of the Corporate Fiduciary and shall be an expense of the trust.

The services, including discretionary and non-discretionary services which may be performed by affiliates of the Corporate Fiduciary may include but not be limited to: (i) Managing the investment of trust assets or advising on the investment of such assets on a discretionary or non-discretionary basis, directly or through the retention of investment managers who may also be affiliates of the Corporate Fiduciary; (ii) Acting as custodian of all or part of the trust assets; and (iii) Executing or effecting transactions for the trust, and providing such other services to the trust that are normally provided by a broker dealer.

In addition to investments otherwise authorized by this Trust Agreement, the Corporate Fiduciary, and any Investment Advisor retained by the Corporate Fiduciary, are authorized to invest in the following: (i) Registered investment companies and mutual funds which are offered, managed or to which services are provided by affiliates of the Corporate Fiduciary; and (ii) Securities, instruments of deposit, insurance contracts or policies, or other property distributed, underwritten or issued by an affiliate of the Corporate Fiduciary, or sold as an agent by an affiliate of the Corporate Fiduciary. To the extent that the trust is invested in securities issued by an affiliate of the Corporate Fiduciary, and such securities have voting rights, the voting of such securities shall be directed by the Co-Trustee, if applicable, or otherwise by the individual who, pursuant to the terms of this Trust Agreement, has the authority to direct the purchase or retention of such securities. Pursuant to any of the above investments, the affiliate will be compensated (directly or indirectly) as it would be in comparable transactions in which an affiliate is not involved and such compensation shall be in addition to the compensation of the Corporate Fiduciary, for its services as Trustee of the trust.

The Corporate Fiduciary acting hereunder, or its affiliate, from time to time may have a commercial lending relationship with the trust or a business in which special securities held in the trust represent interests. The Grantor favors such relationships even though they may constitute a technical conflict of interest and the Corporate Fiduciary or its affiliate may earn interest, take and enforce security interests in collateral owned by that business, or otherwise profit from such lending relationship. In no event shall the Corporate Fiduciary or its affiliate be liable for any such technical violation of any conflict of interest or similar rule. The Corporate Fiduciary-lender or affiliate-lender shall be entitled to enforce all its creditor's rights with respect to any such loan even though such enforcement is not in the best interests of the trust.

The Corporate Fiduciary shall be compensated in accordance with its schedule of fees in effect at the time such services are performed. In addition to such fees, the Corporate Fiduciary, or its affiliates, shall also be entitled to receive any payments under Rule 12b-1 of the Investment Company Act of

1940 from any registered investment company, as well as such other fees or compensation paid by any mutual fund, unit investment trust or other investment vehicle, or agent.

In addition to and not in derogation of any other hold harmless or indemnification provisions of this Trust Agreement which may apply to the Corporate Fiduciary, the Corporate Fiduciary shall be held harmless from and not be responsible for actions or inactions hereunder unless such actions or inactions constitute negligence or willful misconduct. The Corporate Fiduciary shall not be responsible for any actions or inactions of any predecessor or successor Trustee and shall only be responsible for assets of the trust upon receipt of such assets and during the period for which it retains such assets. These provisions shall survive the period during which the Corporate Fiduciary shall be acting as Trustee hereunder.

## SECTION 5.   POWERS AND LIABILITIES OF SUCCESSOR TRUSTEE

Any successor Trustee, whether corporate or individual, shall have all of the rights, powers, and privileges, and be subject to all of the obligations and duties, both discretionary and ministerial, as given to the original Trustees.

Any successor Trustee shall be subject to any restrictions imposed on the original Trustees. No successor Trustee shall be required to examine the accounts, records, and acts of any previous Trustees.

No successor Trustee shall in any way be responsible for any act or omission to act on the part of any previous Trustees.

## ARTICLE SIX

### GENERAL MATTERS AND INSTRUCTIONS WITH REGARD TO THE TRUSTEESHIP

#### SECTION 1.   USE OF "TRUSTEE" NOMENCLATURE

As used throughout this Trust Agreement, the word "Trustee" shall refer to the initial Trustee as well as any single, additional, or successor Trustee. It shall also refer to any individual, corporation, or other entity acting as a replacement, substitute, or added Trustee.

#### SECTION 2.   NO REQUIREMENT TO FURNISH BOND

The Trustee shall not be required to furnish any bond for the faithful performance of its duties.

If a bond is required by any law or court of competent jurisdiction, it is the Grantor's desire that no surety be required on such bond.

#### SECTION 3.   COURT SUPERVISION NOT REQUIRED

All trusts created under this Trust Agreement shall be administered free from the active supervision of any court. Any statute or rule to the contrary notwithstanding, pursuant to Estates and Protected Individuals Code Section 7101, the trust shall not be registered in any court except such temporary filing or registration in Oakland county as may be required by any court action involving the trust.

Any proceedings to seek judicial instructions or a judicial determination shall be initiated by the Trustee in the appropriate state court having original jurisdiction of those matters relating to the construction and administration of trusts.

#### SECTION 4.   THE TRUSTEE'S RESPONSIBILITY TO MAKE INFORMATION AVAILABLE TO BENEFICIARIES

During the term of this Trust Agreement, the Trustee shall furnish, at least annually, to current trust beneficiaries (as that term is defined under Michigan law) a complete inventory of trust property held in trust in which the current trust beneficiary has an interest, and shall furnish annually to each current trust beneficiary an accounting of all receipts, disbursements and transactions in a manner required by MCL 700.7303(3). In addition, the Trustee shall furnish, at least quarterly, to current trust beneficiaries copies of all brokerage statements. Provided, however, during the lifetime of a current trust beneficiary: (i) the Trustee shall not provide any accountings or information, including brokerage statements, about the trust administration or trust property to any other beneficiary; (ii) the Trustee shall not provide any accountings or information, including brokerage statements, about the trust administration or trust property to those beneficiaries whose only distribution consists of a specific devise or of a dollar amount; and (iii) the Trustee shall not provide any accountings or information, including brokerage statements, about the trust administration or trust property to any beneficiary who did not receive a distribution of income or principal during the trust's preceding taxable year. There shall be no requirement that this function be completed during the Grantor's lifetime if the major holdings of the Trust are comprised of life insurance policies on the Grantor's life. The person or persons entitled to an accounting under this Section may at any time, by written

instrument, approve the accounts of the Trustee with the same effect as if the accounts had been approved by a court having jurisdiction of the subject matter and of all necessary parties.

## SECTION 5.   DELEGATION AMONG THE TRUSTEES

Any Trustee may delegate to any other Trustee the power to exercise any or all powers granted the Trustee in this Trust Agreement, including those that are discretionary, if allowed by law.

A delegating Trustee may revoke any such delegation at will.

The delegation of any such power, as well as the revocation of any such delegation, shall be evidenced by an instrument in writing executed by the delegating Trustee.

As long as any such delegation is in effect, any of the delegated powers may be exercised by the Trustee receiving such delegation with the same force and effect as if the delegating Trustee had personally joined in the exercise of such power.

## SECTION 6.   UTILIZATION OF SUBSTITUTE TRUSTEE

If any Trustee is unwilling or unable to act as to any trust property, the Trustee shall designate, in writing, an individual, bank trust department, or trust company to act as a substitute Trustee with regard to such property.

The property being administered by the substitute Trustee, as well as the net income therefrom, shall be distributed or remitted as directed by the designating Trustee consistent with the terms of this Trust Agreement.

Each substitute Trustee shall exercise all of the fiduciary powers granted by this Trust Agreement unless expressly limited by the designating Trustee in the instrument appointing such substitute Trustee, or by any provision within this Section.

Any substitute Trustee may resign at any time by delivering written notice to the Trustee to that effect.

## SECTION 7.   TRUSTEE'S FEE

The Trustee shall be entitled to fair and reasonable compensation for the services it renders as a fiduciary. The amount of compensation shall be an amount equal to the customary and prevailing charges for services of a similar nature during the same period of time and in the same geographic locale, but not to exceed one (1%) percent of the trust principal annually (determined as of the beginning of the fiscal year) for any non-corporate fiduciary.

The Trustee shall be reimbursed for the reasonable costs and expenses incurred in connection with its fiduciary duties under this Trust Agreement.

## SECTION 8.   A MAJORITY OF TRUSTEES REQUIRED TO CONTROL

When more than two Trustees are acting, the concurrence and joinder of a majority of the Trustees shall control in all matters pertaining to the administration of any trust created hereunder.

If only two Trustees are acting, the concurrence and joinder of both shall be required.

When more than two Trustees are acting, any dissenting or abstaining Trustee may be absolved from personal liability by registering a written dissent or abstention with the records of the trust; the dissenting Trustee shall thereafter act with the other Trustees in any manner necessary or appropriate to effectuate the decision of the majority.

## SECTION 9.    TERMINATION FOR UNUSUAL CAUSE

The Grantor recognizes that some or all of the following conditions may arise in the future although they cannot now be foreseen: (i) a radically substantial change in the political, economic, or social order in the United States of America; (ii) legislation or court decisions highly detrimental to any trust hereunder or its beneficiary(ies); (iii) lack of availability of suitable trust investments for an extended period; (iv) other events tending to greatly impair the intent and purposes of this Trust Agreement; and/or (v) future amendments and interpretations of the federal wealth transfer tax laws that could thwart the trust purposes. The Grantor further recognizes that a termination of a trust hereunder might be desirable if any of these conditions occur. It is, therefore, expressly provided that, if any Trustee of any trust hereunder shall make application to the then court of general jurisdiction in the place where such trust shall have its situs and if such court, by its appropriate decree, shall determine that a condition coming within any of the foregoing standards has occurred and that the best interests of such trust and of the persons interested in it require the termination of such trust, the Trustee of such trust, following entry of such decree and obedient to its terms, shall distribute the trust's estate to such trust's then beneficiaries according to their respective interests as set forth in such decree. No Trustee shall be required to consider any action under this Section until a person interested in a trust hereunder has requested such consideration in writing, nor shall any Trustee have any affirmative duty or responsibility for any failure to exercise any authority granted in this Section. Prior to terminating a trust hereunder, the Trustee may request and shall be entitled to be held harmless and receive appropriate indemnification from the beneficiaries who are going to receive a terminating distribution. The Trustee shall not terminate a trust if it would impair a beneficiary's unexercised right of withdrawal that has not yet lapsed, or would impair the status or qualification of a trust that holds shares of stock in a Subchapter S corporation, or would otherwise impair a qualified family owned business interest deduction taken under IRC Section 2057. Notwithstanding anything contained in this Section to the contrary, the Trustee who terminates a trust under this Section must not: (i) be related or subordinate (within the meaning of IRC Section 672(c)) to any donor or beneficiary with respect to the trust in question; (ii) be benefited by the exercise or non-exercise of any power given the Trustee by this Trust Agreement or by law; or (iii) be a beneficiary or a donor of the trust in question.

## SECTION 10.   TRUST PROTECTOR

### A.    Appointment of Trust Protector.

The Trustee may from time to time appoint as a Trust Protector (of any trust created under this Trust Agreement) one or more U.S. citizens or residents who are not a related or subordinate party (as defined in IRC Section 672(c)), to the Grantor, the Grantor's spouse, or to any trust beneficiary. Any appointment of a Trust Protector shall be in writing. The writing shall describe when the appointment shall take effect and when it shall end. If an appointment has not been accepted by the appointee, it may be revoked by the appointing party unless the written appointment specifies otherwise.

**B.**     **Powers of Trust Protector.**

The Trust Protector, in the Trust Protector's sole discretion, by written instrument, delivered to the Trustee may (i) terminate any trust (except any trust with a charitable beneficiary) and accelerate the distribution of proceeds to the current income beneficiary or pro-rata to the current income beneficiaries; provided, however, the Trust Protector shall not terminate a trust if it would impair the status or qualification of a trust that holds shares of stock in a Subchapter S corporation, or would otherwise impair a qualified family owned business interest deduction under IRC Section 2057; (ii) amend any trust (except as to any provision in any trust which was necessary for a gift tax exclusion to be claimed or allowed) in order to (A) achieve tax advantages, (B) react to changes in the Internal Revenue Code, Treasury Regulations, Revenue Rulings or court cases which adversely affect the tax benefits otherwise available with respect to the trust, or (C) react to changes in the Internal Revenue Code (including but not limited to the scheduled repeal of the federal estate tax), Treasury Regulations, Revenue Rulings or court cases which present advantages to the beneficiaries of the trust; (iii) amend the trust administrative provisions relating to the identity, qualifications, succession, removal, and appointment of the Trustee; (iv) to change the situs and governing law of any trust created hereunder; (v) amend the financial powers of the Trustee; (vi) change the terms of any power of appointment; (vii) change the terms of any spendthrift provision; (viii) restrict in any way determined by the Trust Protector to be beneficial to the trust or a beneficiary, revocably or irrevocably, the future exercise of any power held by any beneficiary or Trustee hereunder; (ix) amend the terms of any trust created under this Trust Agreement with respect to (A) the purposes for which the Trustee may distribute trust income and principal, and the circumstances and factors the Trustee may take into account in making such distributions; and (B) the termination date of the trust, either by extending or shortening the termination date (but not beyond any applicable perpetuities period); (x) amend the Trust administrative provisions and the provisions dealing with the Trustee's duties, powers, responsibilities and liabilities, so as to comply with the standard requirements of any corporate fiduciary acting (or desiring to act) as a Trustee hereunder; and (xi) amend the provisions of Article Seven governing powers of withdrawal in any way that the Trust Protector determines will help achieve the Grantor's goal of obtaining the gift tax annual exclusion for transfers to a trust created by this Trust Agreement while avoiding other adverse tax consequences to the Grantor, the Grantor's estate, the trust and the beneficiaries of the trust; provided, however, that the Trust Protector may not amend the provisions of Article Seven to convey powers of withdrawal.

The Trust Protector may make a permitted amendment retroactively to the inception of the trust. Any such amendment may be made by an instrument in writing signed by the Trust Protector, and a copy of the amendment shall be delivered to the Trustee and each adult beneficiary of the trust to whom income may then be payable or permitted to be paid hereunder and to the natural or legal guardian, if any, of each such minor or otherwise legally disabled beneficiary. Any amendment by the Trust Protector to any Trust created under this Trust Agreement that alters the duties, liabilities or compensation of the Trustee shall be subject to the prior written approval of the Trustee.

**C.**     **Resignation or Removal of Trust Protector.**

The Trust Protector may resign by giving written notice to the Trustee. In addition, at any time and from time to time, the Trustee may remove, with or without cause, a Trust Protector acting hereunder. All Trusts created under this Trust Agreement need not have or

continue to have the same Trust Protector. The provisions of this Trust Agreement that relate to the Trust Protector shall be separately applicable to each trust held hereunder.

**D.**      **Limitation on Trust Protector's Powers.**

The Trust Protector shall not have the power to amend any trust in such a way that it would cause any portion of the trust property to be included (for federal estate tax purposes) in the Grantor's gross estate, any fiduciary of the trust, or the Trust Protector to the extent it was not already included in the Grantor's gross estate, the fiduciary of the trust, or the Trust Protector. The Trust Protector may not accelerate distributions or amend any trust if it would result in a distribution to or for the benefit of the Trust Protector, the Trust Protector's estate, or the creditors of the Trust Protector's estate.

The Trust Protector shall not have the power to amend any trust (i) to add one or more persons to the group of beneficiaries hereunder, (ii) to delete one or more persons from the group of beneficiaries hereunder, or (iii) to affect the amount of property that may be distributed to or for the benefit of any person. In addition, notwithstanding anything contained in this Section to the contrary, a power granted under this Section shall not be exercised in a manner that would violate any of the S Corporation requirements for any trust created hereunder as a Qualified Subchapter S Trust or an Electing Small Business Trust.

The Trust Protector shall not have the power to amend any Trust in such a manner as to (i) reduce the restrictions or limitations on the limited power of amendment of the Trust Protector as set forth in this Section; (ii) result in any direct or indirect financial benefit to any individual who is not, at the time of such amendment, already a present or potential future beneficiary of the trust other than merely through the exercise of a power of appointment herein granted; (iii) make any changes that would have the effect of eliminating or reducing any substantial deduction, credit, exclusion or other tax benefit, or significant grandfathered status or a protection from claims of the Grantor's creditors, the trust or a beneficiary of the trust; (iv) limit a beneficiary's rights resulting from transfers from the trust to the beneficiary prior to the time of the amendment; or (v) result in any direct or indirect financial benefit to any then acting Trustee.

**E.**      **Modification of Trust Protector's Powers.**

The Trust Protector, acting on behalf of the Trust Protector and any successor Trust Protector, may at any time irrevocably release, renounce, suspend or modify to a lesser extent any and all powers and discretion granted to the Trust Protector hereunder by delivering a written document to the Trustee.

**F.**      **Exoneration of Trust Protector.**

Neither the Trustee nor the Trust Protector shall have the duty to monitor any Trust in order to (i) determine whether any power conferred upon the Trust Protector should be exercised, (ii) keep informed as to the acts or omissions of others, and (iii) minimize or prevent any loss. Any exercise or non-exercise of the Trust Protector's power shall be in the Trust Protector's sole and absolute discretion and shall bind all persons. The Trust Protector is not required to exercise any power or discretion granted under this Trust Agreement. Absent bad faith, the Trust Protector, in that capacity, is hereby exonerated from any and all liability for the acts or omissions of the Trust Protector, any fiduciary, or any beneficiary arising from any exercise or non-exercise by the Trust Protector of the powers granted to the Trust

Protector. The Trust Protector may conclusively rely on the opinion of legal counsel retained by the Trustee in the exercise or non-exercise of the powers and discretions granted under this Section or may act or not act without seeking the opinion of legal counsel, all in its sole and absolute discretion. The Trust Protector shall have no fiduciary duty to any trust beneficiary and shall be indemnified by the trust and beneficiaries who are benefited by the exercise of the Trust Protector's authority hereunder.

**G.**    **Withdrawal Rights.**

Notwithstanding anything contained in this Section to the contrary, a power granted under this section shall not be exercised in a manner that would impair a beneficiary's existing withdrawal rights or cut off a beneficiary's powers over such withdrawal rights.

## ARTICLE SEVEN

## WITHDRAWAL RIGHTS

### SECTION 1.   WITHDRAWAL RIGHTS

Prior to the death of the Grantor, and with respect to each trust created under this Trust Agreement, during the calendar year of the creation of the trust or during any calendar year thereafter in which a transfer, whether direct or indirect or deemed, is made to the trust and commencing with the date of creation of the trust or the date of transfer to the trust, each of the then living present and remainder beneficiaries of the trust (referred to in this Article as the "Powerholders" and singularly as a "Powerholder") shall have the power to withdraw property then belonging to the trust (including the transferred property) having the value at the time of the withdrawal not exceeding the lesser of:

A.     **Powerholder's Pro Rata Share.**

Such Powerholder's pro rata share of the value at the time of the transfer of any property transfers to or for the benefit of the trust, whether direct, indirect or deemed, during such calendar year, with such pro rata share to be determined by dividing such value by the number of Powerholders having a withdrawal right pursuant to this Article when such withdrawal rights arise hereunder; or

B.     **Federal Gift Tax Exclusion.**

The maximum amount which qualifies for the federal gift tax exclusion under IRC Section 2503(b), but such amount shall be adjusted to provide the maximum amount excludable pursuant to said IRC Section in future years (by cost of living adjustments, statutory changes or otherwise) reduced by the amount of any prior gifts to such Powerholder by the same donor which qualify for said annual exclusion in the same calendar year; provided, however, that for the purposes of determining the maximum amount which qualifies for such withdrawal pursuant to this Paragraph (B), it shall be presumed that a donor's spouse, if any, has consented to treat any such eligible gifts as being made one-half by such donor and one-half by such donor's spouse pursuant to IRC Section 2513, whether or not such donor's spouse has in fact so consented.

C.     **Powerholders on Government Assistance.**

If the treatment of an individual as a "Powerholder" for federal gift tax purposes hereunder would disqualify such individual from receiving public or private financial assistance in connection with such individual's disability in any given year, then such individual shall be prohibited from withdrawing any property from the trust in such year, notwithstanding any other provision contained in this Trust Agreement.

D.     **Priority of Withdrawal Right.**

Any distribution of principal to a Powerholder shall be considered as a distribution in full or partial satisfaction of the Powerholder's power to withdraw property under this Article. Notwithstanding any other provision of this Trust Agreement, no distribution shall be made

if the value of the principal of the trust after the distribution would be less than the aggregate amount subject to withdrawal from the trust after the distribution.

## SECTION 2.   NOTICE OF WITHDRAWAL RIGHTS

Each Powerholder shall be kept reasonably informed by the donor or the Trustee of all withdrawable transfers hereto which are made or expected to be made. Such efforts may include annually apprising each Powerholder of his/her rights to withdraw, providing the Powerholder with a single notice sufficient to apprise him/her of his/her current and expected future rights to withdraw, or any other means determined by the donor or the Trustee to provide each Powerholder with reasonable notice. After receiving such notice from the donor or the Trustee at least once, any Powerholder, or the legal guardian of any Powerholder, by a written instrument mailed or delivered to the donor or the Trustee, may permit the donor or the Trustee to provide such written notices annually (during the first month of each calendar year) in anticipation of transfers to be made during such year or may altogether waive the donor's or the Trustee's obligation to further provide such written notices. In addition, no notice shall be required to be given to any Powerholder who has actual or verbal notice of his/her withdrawal rights. In no event shall the donor or the Trustee be held liable for failing to give any notice required hereunder, nor shall the failure of any Powerholder to receive such notice be deemed to abrogate his/her withdrawal rights in accordance with the provisions of this Article. A Powerholder's right of withdrawal is not contingent upon such notice. Upon request by any Powerholder, the Trustee shall furnish full, detailed information with respect to any such transfers subject to withdrawal hereunder.

## SECTION 3.   EXERCISE OF WITHDRAWAL POWER

Withdrawal rights shall be exercised by an acknowledged instrument delivered to the Trustee indicating the amount desired to be withdrawn. The Trustee shall satisfy any such demand by distributing to such Powerholder cash or property of equivalent then current fair market value (including an interest in any life insurance policy held by the trust). To the extent that distributable assets are not conveniently available, the Trustee is authorized to borrow, upon such terms as are reasonably necessary, the funds necessary in order to provide for payment of amounts required by any exercise of withdrawal rights by a Powerholder hereunder.

## SECTION 4.   LAPSE OF POWER AND HANGING POWER

To the extent each such right of withdrawal is not fully exercised within 30 days after the transfer giving rise to the withdrawal right, it shall lapse, but only to the extent of the greater of the amount specified in IRC Sections 2514(e)(1) and (2), as amended, reduced by the amount of any such lapses which occurred previously in the same calendar year under this or other instruments, and any unlapsed portion shall continue in existence and shall thereafter lapse on January 1 of the next calendar year, but only to the extent provided above, and the unlapsed portion of such right of withdrawal shall be carried forward into succeeding years and lapse on January 1 of each succeeding calendar year, but only to the extent provided above.

The amounts involved in a withdrawal right described in the preceding Paragraph shall be measured after subtracting all other amounts that the same Powerholder could have withdrawn during the same calendar year from this or any other fund, to the extent that such powers must, under applicable federal gift tax law, be aggregated in determining whether the lapse of the right of withdrawal under this Section is a release of a general power of appointment.

Upon the death of a Powerholder, the unlapsed portion of such Powerholder's right of withdrawal shall be distributed to or in trust for such persons as the Powerholder may appoint by a validly executed Last Will and Testament, making specific reference to this general power of appointment. To the extent the foregoing general power of appointment is not exercised, the unlapsed portion of such Powerholder's right of withdrawal shall be added to the trust and distributed pursuant to the terms thereof.

## SECTION 5.    POWER TO CHANGE WITHDRAWAL RIGHTS

Notwithstanding the limitations provided in this Article with respect to withdrawal rights of the Powerholders, the donor making a transfer shall have the right, by acknowledged instrument delivered to the Trustee on or before the date of the specific transfer: (i) to prohibit any or all of the Powerholders from exercising a withdrawal right with respect to such transfer; (ii) to increase or decrease the amount subject to the withdrawal right of any or all of the Powerholders with respect to such transfer, except that the amounts subject to the withdrawal right shall not exceed the value of the property transferred at the time of transfer; or (iii) to change the period during which any or all of the Powerholders may exercise the withdrawal right, including provisions relating to the lapse of such right, with respect to such transfer.

## SECTION 6.    MISCELLANEOUS PROVISIONS

If the withdrawal right is possessed by a Powerholder who is legally incapacitated, such Powerholder's legal or natural guardian or another appropriate individual chosen by the Trustee may make such withdrawal or request or receive information about such right on behalf of such Powerholder; provided, however, the donor whose gift gave rise to the withdrawal power shall not be able to act on behalf of such incapacitated Powerholder. Any property received pursuant to the exercise of a withdrawal right on behalf of a Powerholder who is legally incapacitated shall be held for the use and benefit of such Powerholder and shall not be used by the person exercising the withdrawal power to discharge that person's legal obligation of support for such Powerholder.

Notwithstanding the foregoing provisions of this Article, no person shall have the right to withdraw any property hereunder as a result of the gift deemed under the Internal Revenue Code to have been made to a trust (or any of its beneficiaries) by reason of the lapse or release of a power over such trust. It is the Grantor's intention that the power of withdrawal granted to any Powerholder hereunder qualify any direct or indirect transfer to the trust for the benefit of such Powerholder as a gift of a present interest, which will qualify for the gift tax annual exclusion provided for in the Internal Revenue Code in effect at the time of such transfer. The provisions of this Article shall take precedence over and control any other provisions of this Trust Agreement; all other such provisions shall be limited and qualified so as not to detract from the unqualified rights of withdrawal granted to the Powerholders hereunder.

Notwithstanding anything in this Trust Agreement to the contrary, any distribution of principal of a trust established hereunder; any termination of a trust established hereunder; any exercise of a power of appointment granted hereunder; and/or any discretionary exercise by a Trustee acting hereunder, shall not be made if such distribution, termination, exercise or discretion would thwart or otherwise defeat an existing withdrawal right that is unexercised and has not lapsed.

## ARTICLE EIGHT

## INCOME TAX STATUS OF TRUST DURING THE GRANTOR'S LIFETIME

### SECTION 1.   GRANTOR TRUST STATUS

The Grantor intends that during the Grantor's lifetime each trust created under this Trust Agreement be a "grantor trust" (under the rules of Subpart E of Part I of Subchapter J of Subtitle A of the IRC) deemed owned by the Grantor for federal income tax purposes, unless and until an effective release by the Grantor of all of the powers granted under this Section. Accordingly, notwithstanding anything contained in this Trust Agreement to the contrary, the provisions of this Article shall apply to each trust created under this Trust Agreement during the Grantor's lifetime.

A.      **Substitute Assets for Equivalent Value.**

The Grantor reserves and shall have the right, exercisable at any time and from time to time, to demand that the Trustee transfer to the Grantor any or all of the trust assets in exchange for assets of equivalent value. This power shall enable the Grantor to determine the occurrence and timing of any such exchange.

The Grantor shall not be able to exercise this power in any manner that shifts benefits among the trust beneficiaries. The Trustee shall not honor an attempt to exercise this power if the Trustee believes that such effectuation of the Grantor's attempted exercise of this power would shift benefits among the trust beneficiaries.

The Grantor may exercise this power only by an instrument in writing signed by the Grantor and delivered to the Trustee and to each then-living current adult beneficiary of the trust. Such writing shall state the date on which such exchange shall occur, but not earlier than thirty (30) days after the date on which such instrument is received by the Trustee.

Without reducing or eliminating the fiduciary duties imposed upon the Trustee acting under the terms of this Trust Agreement or applicable law, the Trustee shall ensure the Grantor's compliance with the terms of this substitution power by being satisfied that the properties acquired and substituted by the Grantor are in fact of equivalent value within the meaning of Rev. Rul. 2008-22; further, this power to substitute property shall not be exercised in a manner that may shift benefits among the trust beneficiaries within the meaning of Rev. Rul. 2008-22; and without limiting the foregoing prohibition upon shifting benefits among trust beneficiaries, the Trustee shall have the power to reinvest trust corpus and a duty of impartiality with respect to the trust beneficiaries at all times while this power of substitution is in effect, within the meaning of Rev. Rul. 2008-22.

B.      **Borrow Money from Trust.**

The Grantor shall have the power to borrow any of the trust income and principal in exchange for the Grantor's promissory note, which note shall be equal in value to the amount loaned, shall bear an adequate rate of interest, but shall not require any security; provided, however, that notwithstanding any provision of this Trust Agreement to the contrary, the Trustee shall not have the general power to make loans to any person other than the Grantor without regard to interest or security.

8-1

    **C.**    **Pay Premiums for Life Insurance.**

The Grantor shall have the power to compel the Trustee to use trust income to pay premiums on policies of life insurance on the life of the Grantor, the Grantor's spouse, or both.

## SECTION 2.   TRUSTEE PROHIBITIONS

Notwithstanding anything contained in this Trust Agreement to the contrary, the following prohibitions shall apply.

    **A.**    **Stock of a Controlled Corporation.**

The Trustee shall not loan to Grantor or permit Grantor to reacquire any shares of the voting stock of any corporation in which Grantor has directly or indirectly, including ownership by attribution under IRC Section 318, the right to vote stock constituting at least twenty percent (20%) of the total combined voting power of all classes of the said corporation's stock.

    **B.**    **Incidents of Ownership.**

The Trustee shall not loan to Grantor or permit Grantor to reacquire any property that would cause the Grantor to have an incident of ownership, as defined in IRC Section 2042, with respect to any insurance policies on Grantor life held as part of the trust property.

## SECTION 3.   NON-FIDUCIARY CAPACITY

The powers granted to the Grantor under this Article are exercisable solely in a non-fiduciary capacity, and without the consent or approval of the Trustee or any other person and without the requirement of any court approval. The powers granted under this Article shall be exercisable only during the Grantor's lifetime; provided that, to the extent any power is exercised during the Grantor's lifetime, the exercise of the power shall not be revoked by reason of the Grantor's death.

## SECTION 4.   RESTRICTIONS

Notwithstanding anything contained in this Trust Agreement to the contrary, the powers given to the Grantor under this Article shall not be exercisable to the extent that their exercise would reasonably be expected to cause any of the trust assets to be included in the Grantor's gross estate for federal estate tax purposes.

## SECTION 5.   RELEASE

The Grantor may at any time, during the Grantor's lifetime, in the Grantor's sole, absolute and uncontrolled discretion, release any or all of the powers granted under this Article, in whole or in part, without any liability to any trust beneficiaries (current or future). Any such release shall be in writing delivered to the Trustee, and shall bind the Grantor, the Trustee, and all other persons interested in any share of any trust hereunder.

## SECTION 6.   RE-GRANT

The Trust Protector may re-grant an otherwise released power to the person who would have held that power but for the release, by a writing delivered to that person, with a copy to the Grantor, the Trustee, and to each then living adult beneficiary of the trust, designating the date of the re-grant of the power.

## SECTION 7.   REIMBURSEMENT FOR INCOME TAX LIABILITY

The Trustee (in its sole and absolute discretion) is authorized from time to time to pay to the Grantor, or to the legal representatives of the Grantor's estate, such amounts as the Grantor (or such legal representatives) shall certify as being required to discharge the Grantor's tax liability (whether federal, state or otherwise) in respect of income realized by the trust and not distributed to the Grantor, including, but not limited to, tax on realized capital gains. However, this authority shall not be exercised pursuant to this Section or applicable state law unless and until the trust is governed by a state law that does not subject the trust's assets to the claims of an existing creditor (or assignee of the Grantor), in whole or in part, solely because of the existence of such discretionary reimbursement power.

# ARTICLE NINE

## THE TRUSTEE'S ADMINISTRATIVE AND INVESTMENT POWERS

### SECTION 1.   INTRODUCTION TO TRUSTEE'S POWERS

Except as otherwise provided herein, the Trustee of each trust created hereunder shall have both the administrative and investment powers enumerated under this Article, those powers granted to a Personal Representative under the terms of the Grantor's Last Will and Testament, and any other powers granted by law with respect to the various trusts created by this Trust Agreement.

### SECTION 2.   POWERS TO BE EXERCISED IN THE BEST INTERESTS OF THE BENEFICIARIES

The Trustee shall exercise the administrative and investment powers set forth in this Trust Agreement without the order of any court, as the Trustee determines in its sole and absolute discretion to be in the best interests of the beneficiaries. Notwithstanding any other provision of this Trust Agreement, each power, discretion or authority herein granted to the Trustee of any trust estate created hereunder, or accorded to the Trustee thereof generally pursuant to law, shall be exercised and exercisable only in such manner and with such restrictions and limitations as may be necessary in order to prevent the value of the trust estate, in whole or in part, from being includible in the Grantor's gross estate for federal estate tax purposes.

### SECTION 3.   ADMINISTRATIVE AND INVESTMENT POWERS

The Trustee of each trust created hereunder is hereby granted the following administrative and investment powers:

A.   **Agricultural Powers.**

The Trustee may retain, sell, acquire, and continue any farm or ranching operation whether as a sole proprietorship, partnership, or corporation.

The Trustee may engage in the production, harvesting, and marketing of both farm and ranch products either by operating directly or with management agencies, hired labor, tenants, or sharecroppers.

The Trustee may engage and participate in any government farm program, whether state or federally sponsored.

The Trustee may purchase or rent machinery, equipment, livestock, poultry, feed, and seed.

The Trustee may improve and repair all farm and ranch properties; construct buildings, fences, and drainage facilities; acquire, retain, improve, and dispose of wells, water rights, ditch rights, and priorities of any nature.

The Trustee may, in general, do all things customary or desirable to operate a farm or ranch operation for the benefit of the beneficiaries of the various trusts created under this Trust Agreement.

**B.**   **Business Powers.**

The Trustee may retain and continue any business in which the Grantor has or had an interest as a shareholder, partner, sole proprietor, or as a participant in a joint venture, even though that interest may constitute all or a substantial portion of the trust property.

The Trustee may directly participate in the conduct of any such business or employ others to do so on behalf of the beneficiaries.

The Trustee may execute partnership agreements, buy-sell agreements, and any amendments to them.

The Trustee may participate in the incorporation of any trust property; any corporate reorganization, merger, consolidation, recapitalization, liquidation, dissolution; or any stock redemption or cross purchase buy-sell agreement.

The Trustee may hold the stock of any corporation as trust property, and may elect or employ directors, officers, employees, and agents and compensate them for their services.

The Trustee may sell or liquidate any business interest that is part of the trust property.

The Trustee may carry out the provisions of any agreement entered into by the Grantor for the sale of any business interest or the stock thereof.

The Trustee may exercise all of the business powers granted in this Trust Agreement regardless of whether the Trustee is personally interested or an involved party with respect to any business enterprise forming a part of the trust property.

**C.**   **Common Fund Powers.**

For the purpose of convenience with regard to the administration and investment of the trust property, the Trustee may hold the several trusts created under this Trust Agreement as a common fund.

The Trustee may make joint investments with respect to the funds comprising the trust property.

The Trustee may enter into any transaction authorized by this Article with fiduciaries or other trusts or estates in which any beneficiary hereunder has an interest, even though such fiduciary is also a Trustee under this Trust Agreement.

**D.**   **Compensation Powers.**

The Trustee shall pay all expenses incurred in the administration of the Trust, including reasonable compensation to any Trustee, and, in the Trustee's absolute discretion, to allocate the expenses of administering the trust between the income and principal of the trust, including but not limited to, all to income or all to principal.

The Trustee shall pay itself reasonable compensation for its services as fiduciary as provided in this Trust Agreement, and shall reasonably compensate those persons employed by the Trustee, including agents, auditors, accountants, and attorneys.

E.   **Distribution Powers.**

The Trustee is specifically authorized to make divisions and distributions of the trust property either in cash or in kind, or partly in cash and partly in kind, or in any proportion it deems advisable.

The Trustee shall be under no obligation or responsibility to make pro rata divisions and distributions in kind.

The Trustee may allocate specific property to any beneficiary or share although the property may differ in kind from the property allocated to any other beneficiary or share.

The foregoing powers may be exercised regardless of the income tax basis of any of the property.

F.   **Income and Principal Powers.**

Subject to the duty of impartiality, the Trustee may determine in a fair, equitable, and practical manner how all Trustee's fees, disbursements, receipts, and wasting assets shall be credited, charged, or apportioned between principal and income.

The Trustee may set aside from trust income reasonable reserves for taxes, assessments, insurance premiums, repairs, depreciation, obsolescence, depletion, and for the equalization of payments to or for the beneficiaries; it may select any and all accounting periods with regard to the trust property.

All increases in the value of any life insurance policies prior to the death of the insured held by this trust shall be principal and not income.

The Trustee may allocate all receipts of money or property paid or delivered to the Trustee and all expenses to principal or income in accordance with the laws of the State governing this Trust Agreement; provided, however, that with regard to any item not clearly governed by such laws, the Trustee shall have discretion to determine whether items should be charged or credited to income or principal as the Trustee may deem equitable and just under all of the circumstances.

If the trust owns any interests in a partnership and receives money or property from the partnership that is attributable to a partial or total liquidation of the partnership, said receipt shall be allocated to the principal of the trust. Cash or property received from a partnership is considered to be received in partial liquidation to the extent that: (i) the partnership, on or about the time of a distribution, indicates that said distribution is a distribution in partial liquidation, or (ii) the total amount received in a distribution or a series of related distributions is greater than twenty (20%) percent of the partnership's gross assets, as reflected in the partnership's year-end financial statements for the period immediately preceding the initial receipt.

The Trustee, other than a Trustee who is a beneficiary hereunder, may allocate receipts and disbursements, within the meaning of Treas. Reg. §1.643(a)-3(b) to income or principal or partly to principal and partly to income all or part of the realized gains from the sale or exchange of trust assets in such manner as the Trustee, other than a Trustee who is a beneficiary hereunder, shall determine, even though a particular allocation may be

inconsistent with otherwise applicable state law. Notwithstanding the foregoing, the Trustee may not exercise the power to allocate income or principal for assets held in a Qualified Subchapter S Trust created hereunder.

The Trustee, other than a Trustee who is a beneficiary hereunder, may deem, within the meaning of Treas. Reg. §1.643(a)-3(e), any discretionary distribution of principal as being paid from capital gains realized during the year. The Trustee, other than a Trustee who is a beneficiary hereunder, is authorized to take any action to make such deeming respected for tax purposes.

The Trustee may appoint a trustee who is neither related to nor subordinate to themselves or to the Grantor to make any distribution which the Trustee is prohibited from making or which may result in adverse estate, gift, or income tax consequences to the Trustee if the Trustee were to take a proposed action. Such trustee shall be limited in authority to taking or not taking such proposed action.

No beneficiary of a pecuniary bequest hereunder shall be entitled to interest on their bequest. Furthermore, the Trustee shall determine whether such bequest shall be paid from income, principal or partly from income and principal, in the Trustee's absolute and sole discretion.

G.    **Investment Powers in General.**

The Trustee may invest and reinvest in such classes of stocks, bonds, securities, commodities, options, metals, or other property, real or personal, as it shall determine, including, but not limited to, interests in closely-held corporations and closely-held partnerships and limited liability companies. The Trustee may invest in investment trusts as well as in common trust funds.

Notwithstanding anything contained herein to the contrary, all such investments shall be held by a brokerage firm (in the name of the applicable trust) and not by the Trustee directly.

The Trustee may purchase life, annuity, accident, sickness, and medical insurance on the behalf of and for the benefit of any trust beneficiary.

H.    **"Prudent Person" Rule.**

In addition to the investment powers conferred herein, the Trustee is authorized (but not directed) to acquire and retain investments not regarded as traditional for trusts, including investments that would be forbidden or would be regarded as imprudent, improper or unlawful by the "prudent person" rule, "prudent investor" rule, or any other rule or law which restricts a fiduciary's capacity to invest. In making investments, the Trustee may disregard any or all of the following factors:

      Whether a particular investment, or the trust investments collectively, will produce a reasonable rate of return or result in the preservation of principal.

      Whether the acquisition or retention of a particular investment or the trust investments collectively are consistent with any duty of impartiality as to the different beneficiaries.

      Whether the trust is diversified.

Whether any or all of the trust investments would traditionally be classified as too risky or speculative for trusts and, therefore, the entire trust may be so invested.

The Grantor's purpose in granting the foregoing authority is to modify the "prudent person" rule, "prudent investor" rule, or any other rule or law which restricts a fiduciary's ability to invest insofar as any such rule or law would prohibit an investment or investments because of one or more factors listed above, or any other factor relating to the nature of the investment itself. The Grantor does this because the Grantor believes it is in the best interests of the beneficiaries of the trust created hereunder to give the Trustee broad discretion in managing the assets of the trusts created hereunder.

I.      Loan, Borrowing, and Encumbrance Powers.

Except as provided in Article Eight, Section 1, to lend trust funds to such persons and on such terms, including (but not limited to) interest rates, security, and loan duration, as the Trustee deems advisable.

The Trustee may borrow money upon such terms and conditions as it shall deem advisable, including, in the case of a corporate fiduciary, the power to borrow from its own banking or commercial department.

The Trustee shall have the power to obligate the trust property for the repayment of any sums borrowed where the best interests of the beneficiaries have been taken into consideration.

The Trustee shall have the power to encumber the trust property, in whole or in part, by a mortgage or mortgages, deeds of trust, or by pledge, hypothecation or otherwise, even though such encumbrance may continue to be effective after the term of any trust or trusts created in this Trust Agreement.

The Trustee may borrow money or provide guarantees of repayment of borrowings of another for any purpose incidental to the administration of the trust for the protection of trust assets, and to mortgage or pledge trust assets for payment.

J.      Margin, Brokerage, and Bank Account Powers.

The Trustee is authorized to buy, sell, and trade in securities of any nature, including short sales and on margin. The Trustee also has the authority and right to invest or speculate in futures contracts and/or options on futures contracts. The Trustee may maintain and operate margin accounts with brokers, and may pledge any securities held or purchased by the Trustee with such brokers as securities for loans and advances made to the Trustee. The Trustee is authorized to establish and maintain bank accounts of all types in one or more banking institutions that the Trustee may choose.

K.      Mortgage Powers.

The Trustee shall have the power to enter into any mortgage whether as a mortgagee or mortgagor, to purchase mortgages on the open market, and to otherwise buy, sell, or trade in first or subordinate mortgages.

The Trustee may reduce the interest rate on any mortgage and consent to the modification or release of any guaranty of any mortgage.

The Trustee may continue mortgages upon and after maturity with or without renewal or extension, and may foreclose any mortgage. The Trustee may purchase the mortgaged property or acquire it by deed from the mortgagor without foreclosure.

L.  **Nominee Powers.**

The Trustee may hold any trust property in the name of the Trustee, or in the name of a nominee, and may enter into agreements to facilitate holding such property. The Trustee may accomplish such with or without disclosing its fiduciary capacity.

The Trustee may cause assets, which may from time to time comprise the trust property, or any part thereof, to be registered in the Trustee's name or names, either with or without designation as Trustee, or in the name or names of the Trustee's nominee or nominees, or to hold them, in whole or in part, in such condition as they will pass by delivery, or to take and keep the same, in whole or in part, unregistered. The Trustee is specifically authorized to deposit such assets with others or have the same held by others, including securities intermediaries who may hold the same in commingled or uncertificated form; provided that the Trustee shall maintain adequate records of such assets which are so held and exercise reasonable care, skill and caution as to the selection of any such custodian or securities intermediary, the establishing of the scope of the terms of the agreement under which it shall hold such assets and the monitoring of its performance and compliance with such agreement. If the Trustee shall comply with such preceding sentence, the Trustee shall not be liable to the beneficiaries or the trust property for the actions or inactions of the custodian or securities intermediary.

M.  **Nonproductive Property.**

The Trustee may hold property which is non-income producing or is otherwise nonproductive if the holding of such property is, in the sole and absolute discretion of the Trustee, in the best interests of the beneficiaries.

N.  **Oil, Gas, Coal, and Other Mineral Powers.**

The Trustee may do all things necessary to maintain in full force and effect any oil, gas, coal, or other mineral interests comprising part or all of the trust property.

The Trustee may purchase additional oil, gas, coal, and other mineral interests when necessary or desirable to effect a reasonable plan of operation or development with regard to the trust property.

The Trustee may buy or sell undivided interests in oil, gas, coal, and other mineral interests, and may exchange any of such interests for interests in other properties or for services.

The Trustee may execute oil, gas, coal, and other mineral leases on such terms as the Trustee may deem proper, and may enter into pooling, unitization, repressurization, and other types of agreements relating to the development, operation, and conservation of mineral properties.

Any lease or other agreement may have a duration that the Trustee deems reasonable, even though extending beyond the duration of any trust created in this Trust Agreement.

The Trustee may execute division orders, transfer orders, releases, assignments, farm outs, and any other instruments that it deems proper.

The Trustee may drill, test, explore, mine, develop, and otherwise exploit any and all oil, gas, coal, and other mineral interests, and may select, employ, utilize, or participate in any business form, including partnerships, joint ventures, co-owners' groups, syndicates, and corporations, for the purpose of acquiring, holding, exploiting, developing, operating, or disposing of oil, gas, coal, and other mineral interests.

The Trustee may employ the services of consultants or outside specialists in connection with the evaluation, management, acquisition, disposition, or development of any mineral interest, and may pay the cost of such services from the principal or income of the trust property.

The Trustee may use the general assets of the trusts created under this Trust Agreement for the purposes of acquiring, holding, managing, developing, pooling, unitizing, repressuring, or disposing of any mineral interest.

O.   **Employment of Agents/Powers of Attorney.**

The Trustee is specifically authorized to employ or appoint and pay reasonable compensation to accountants, depositories, investment counsel, money managers, attorneys, attorneys-in-fact, and agents, with or without discretionary powers.

The Trustee is specifically authorized to employ, revocably delegate powers (including discretionary) to, and act without independent investigation upon the recommendation of, accountants, agents, attorneys, custodians, employees, investment advisors, managers and other representatives (including any fiduciary of the Grantor's estate or under this Trust Agreement), and pay their reasonable compensation and expenses even though such persons are associated with the Trustee or may also be a Trustee (or nominated Trustee) hereunder or a fiduciary of the Grantor's estate, and such compensation shall be in addition to their fiduciary fees. Where qualification for, or preservation of, a federal tax benefit attributable to a trust asset depends on the material participation or management by an individual, the Trustee without liability may designate any such individual as "manager" and may delegate to that individual such powers as the Trustee shall decide although such individual may not be specifically qualified to exercise such powers.

The Trustee may also execute, deliver, and grant to any individual or corporation a revocable or irrevocable power of attorney to transact any and all business on behalf of the various trusts created in this Trust Agreement. The power of attorney may grant to the attorney-in-fact all of the rights, powers, and discretion that the Trustee could have exercised.

P.   **Powers to Merge Similar Trusts.**

The Trustee may merge and consolidate any trust created in this Trust Agreement with any other trust created by the Grantor, or any other person at any other time, if the other trust contains substantially the same terms for the same beneficiaries.

The Trustee may administer such merged and consolidated trusts as a single trust or unit. If, however, such a merger or consolidation does not appear feasible, as determined in the sole and absolute discretion of the Trustee, the Trustee may consolidate the assets of such trusts for purposes of investment and trust administration while retaining separate records and accounts for the respective trusts.

Q.      Powers of an Interested Trustee.

Notwithstanding any provision in this Trust Agreement to the contrary, no Trustee shall have the power to use or apply trust property (i) to discharge the Grantor's obligation to support or maintain any beneficiary hereunder, (ii) for the support and maintenance of anyone the Trustee is obligated to support and maintain, (iii) for the purpose of directly or indirectly discharging the personal legal obligations of that Trustee or of any beneficiary of any trust created under this Trust Agreement with respect to any other person, (iv) nor shall any Trustee who is also a beneficiary of any trust created under this Trust Agreement have the power, as trustee, to make discretionary distributions to himself/herself (including, but not limited to, any decision to terminate such trust estate) except to the extent necessary for such Trustee's health, education, support and maintenance as described under IRC Section 2041 and 2514 (concerning powers of appointment and ascertainable standards), and such beneficiary-trustee shall exercise its trustee powers solely in a fiduciary capacity and shall possess no powers that would otherwise permit that beneficiary-trustee to enlarge or shift any of the beneficial interests created under this Trust Agreement (except as an incidental consequence of the discharge of such fiduciary duties); provided, however, if a beneficiary-Trustee is a Co-Trustee with one or more others, the foregoing limitation of Subparagraph (iii) shall not apply to the other Trustees, who may exercise the discretionary power in accordance with its terms but without the participation of the beneficiary-Co-Trustee who is subject to such foregoing limitation and to the extent that a beneficiary-trustee has the authority to make discretionary distributions of income and/or principal to another beneficiary from a trust that the beneficiary-trustee is also a beneficiary of, such distributions shall be limited by an ascertainable standard related to the distributee beneficiary's health, education, support and maintenance in the manner of living to which the distributee beneficiary has been accustomed, considering the resources otherwise available to the distributee beneficiary. Any other provision to the contrary notwithstanding, no beneficiary-trustee shall possess any power or discretion that is "conclusive", "sole", "absolute" or "uncontrolled" with respect to the exercise or non-exercise of such power or discretion; and such beneficiary-trustee's power or discretion in that regard shall at all times be exercised or not exercised in a reasonable manner, be limited by a reasonably definite standard, and shall be subject to review and judicial scrutiny.

If the limitations contained in this Subparagraph would prevent the exercise of one or more powers or authorities granted to the Trustee named or selected hereunder, but such powers could be exercised either by such named Trustee acting jointly with an Independent Trustee or by an Independent Trustee alone, then such named Trustee shall appoint an additional Co-Trustee (if one is not then serving) who can exercise those powers and authorities without violating this Subparagraph. Such an Independent Trustee shall act jointly with such named trustee whenever their joint exercise of a power or authority will not violate the restrictions imposed by this Subparagraph, and such Independent Trustee shall act alone whenever such separate action is required to exercise a power or authority without violating the restrictions imposed by this Subparagraph.

If a beneficiary is acting as the sole Trustee over any trust named for or established for such beneficiary under the trust, then such beneficiary may at any time, by written instrument, appoint any person, or any bank or trust company, within or outside the State of Michigan to serve as a Co-Trustee over his/her separate trust; provided, however, any such Co-Trustee so appointed may not be the Grantor, the Grantor's spouse, or a "related or subordinate party" (as to either the Grantor or the beneficiary) as defined in IRC Section 672(c).

Whenever a beneficiary is acting as a Co-Trustee over any trust named for or established for such beneficiary under the trust, then, notwithstanding anything contained in this Trust Agreement to the contrary, the following provisions shall apply:

1.    **Participation in Exercise of Discretion.**

The beneficiary shall not participate in the exercise of any discretion to determine the propriety or amount of payments of income or principal to himself or herself (except such discretion may be exercised so long as it is limited by an ascertainable standard [relating to the health, education, maintenance and support of such person], in which event the beneficiary may participate in the exercise of such limited discretion);

2.    **Insurance on Life of Beneficiary.**

The beneficiary shall not possess any of the incidents of ownership or participate in any determination with respect to any policy of insurance on his or her life or the proceeds thereof, and the remaining Co-Trustees alone shall exercise that discretion and possess those incidents of ownership;

3.    **Prohibition Against Attribution of Trust Property.**

The beneficiary shall not authorize or make other payment for the benefit of any person or exercise any power, whether granted under this Trust Agreement or applicable law, if under the then-applicable tax law, such Trustee's sole possession and/or exercise (as though the only Trustee) of such power would cause all or part of such trust to be attributed to any person for purposes of income or transfer taxes before such person receives the actual distribution or benefit of such property, and another Trustee could alone possess and exercise such power without such adverse tax consequences;

4.    **Prohibition Against Discharge of Legal Obligation.**

The beneficiary shall not authorize or make any payment for the benefit of any person if such payment or application both will discharge the legal obligation of another person and, on account of such discharge, cause there to be imposed any transfer tax.

R.    **Powers of an Insured Trustee.**

Any individual Trustee under this Trust Agreement is prohibited from exercising any power conferred on the owner of any policy which insures the life of such individual Trustee and which is held as part of the trust property, or from exercising any rights under a split-dollar

arrangement involving any policy which insures the life of such individual Trustee and which is held as part of the trust property.

If the Trustee holds any such policy or policies as a part of the trust property, or holds an interest in any such split-dollar arrangement, the powers conferred on the owner of such policy, and the rights conferred under the split-dollar arrangement, shall be exercised only by the other then acting Trustee or substitute Trustee.

If the insured Trustee is the only then acting Trustee, then such powers and rights shall be exercised by a substitute Trustee designated pursuant to the provisions of this Trust Agreement dealing with the Trusteeship.

If any rule of law or court decision construes the ability of the insured Trustee to name a substitute Trustee as an incident of ownership, the substitution process shall be implemented by a majority of the then current mandatory and discretionary income beneficiaries, excluding the insured Trustee if the insured Trustee is a beneficiary.

S.    Real Estate Powers.

The Trustee may sell, convey, transfer, exchange, convert or otherwise dispose of real estate, at public or private sale, with or without security, in such manner, at such time or times, for such purposes, for such prices, and upon such terms, credits and conditions as the Trustee may deem advisable.

The Trustee may make leases and grant options to lease for any term, even though the term may extend beyond the termination of any trust created under this Trust Agreement.

The Trustee may grant or release easements and other interests with respect to real estate, enter into party wall agreements, execute estoppel certificates, and develop and subdivide any real estate.

The Trustee may dedicate parks, streets, and alleys or vacate any street or alley, and may construct, repair, alter, remodel, demolish, or abandon improvements.

The Trustee may elect to insure, as it deems advisable, all actions contemplated by this subsection.

The Trustee may take any other action reasonably necessary for the preservation of real estate and fixtures comprising a part of the trust property or the income therefrom.

T.    S Corporation Stock.

If any stock of a corporation that then operates or that Trustee shall deem likely to operate in the near future as an S corporation (as defined in IRC Section 1361(a)) is held by a trust or becomes distributable to a trust created under this Trust Agreement, and such trust is not eligible or is no longer eligible, or may not be eligible or qualified to hold S corporation stock (for whatever the reason - including because of discretionary authority granted the Trustee), the Trustee may implement any of the following alternatives with respect to the S corporation stock:

1.    **Creation of QSST for Sole Beneficiary.**

Where the original trust is for a sole beneficiary, the Trustee may create for that beneficiary (provided the beneficiary meets the requisite qualifications under IRC Section 1361) a separate trust that qualifies as a Qualified Subchapter S Trust ("QSST") under IRC Section 1361(d), and then distribute such stock to the newly created trust.

2.    **Creation of QSSTs for Multiple Beneficiaries.**

Where the original trust is for multiple beneficiaries, the Trustee may create separate trusts for each beneficiary (provided the beneficiary meets the requisite qualifications under IRC section 1361) and allocate the S corporation stock among the newly created trusts based on each beneficiary's current interest in the income of the original trust, and if no beneficiary is entitled to current income from the original trust, the Trustee may allocate the S corporation stock among the newly created trusts in a manner that the Trustee deems fair and appropriate; provided, however, that if the current income beneficiaries of the original trust are only the Grantor's descendants, each new trust shall be created solely for the benefit of the descendant in the most senior generation. Each newly created trust shall hold that beneficiary's appropriate share of the S corporation stock, and shall qualify as a QSST.

3.    **Alternatives to Creation of QSST(s).**

If circumstances prevent the Trustee from accomplishing the first two alternatives under this Subparagraph, the Trustee may, in its discretion: (i) create for the beneficiary or beneficiaries a new trust that qualifies as an Electing Small Business Trust ("ESBT") under IRC Section 1361(e) (provided the beneficiaries meet the requisite qualifications thereunder) and distribute such stock to the newly created trust(s), provided however, any currently exercisable inter-vivos power of appointment held by a beneficiary concerning the S corporation stock to be held by the ESBT (other than a beneficiary's inter-vivos power of withdrawal) is hereby automatically modified and limited concerning the number and class of potential appointees eligible to receive the S corporation stock so that the number of potential appointees shall not exceed the number of persons who are eligible to hold the S corporation stock (as currently specified in IRC Section 1361(b)(1)(A)) and the class of appointees shall not include those persons who are ineligible to hold S corporation stock (as currently described in IRC Sections 1361(b)(1)(B) and (C)), (ii) elect to qualify any trust as any form of eligible stockholder of an S corporation under future legislation and to reform any existing trust in order to qualify and conform thereunder, or (iii) distribute such stock to the beneficiaries (provided the beneficiaries are eligible S corporation shareholders) as if the trust had terminated, while continuing to hold any other non-S corporation property in trust.

4.    **QSST/ESBT Consistency with Original Trusts.**

Each newly created QSST shall have mandatory distributions of income (as defined in IRC Section 643(b)) and no one shall have any power to appoint or distribute any portion of the QSST property to anyone other than to the beneficiary of the trust. In all other respects the newly created trusts shall be as consistent as possible with the original trusts and still qualify as QSSTs or ESBTs (as the case may be). The

Trustee may take any action necessary with regard to S corporations, including making any elections required to qualify stock as S corporation stock and may sign all necessary tax returns and forms.

5. **Amendment Power to Permit S Corporation Stock to be Held.**

It is the Grantor's intent that any S corporation stock comprising a portion of the trust estate be eligible to be held pursuant to the terms of this Trust Agreement, either as an ESBT, a QSST, or in any other manner permitted by the Internal Revenue Code or the Regulations or rulings thereunder. Accordingly, the Trustee is granted the power to amend or modify this Trust Agreement when, in the sole opinion of the Trustee, an amendment is required to this Trust Agreement or any trust established hereunder to permit S corporation stock to be held pursuant to the terms of this Trust Agreement. The sole purpose of this power to amend this Trust Agreement is to enable the Trustee to make technical amendments to this Trust Agreement as necessary to permit this Trust Agreement and its trusts to hold S corporation stock during the continuance of this Trust Agreement in accordance with the Internal Revenue Code, Regulations and rulings thereunder; but in no event shall the Trustee amend or modify this Trusts Agreement or any trust in a manner that would impair a beneficiary's unexercised right of withdrawal that has not yet lapsed, or that would impair the status or qualification of a trust that holds shares of stock in a Subchapter S corporation, or would otherwise impair a qualified family owned business interest deduction taken under IRC Section 2057.

U. **Sale, Lease, and Other Dispositive Powers.**

The Trustee may sell, lease, transfer, exchange, grant options with respect to, or otherwise dispose of the trust property.

The Trustee may deal with the trust property at such time or times, for such purposes, for such considerations and upon such terms, credits, and conditions, and for such periods of time, whether ending before or after the term of any trust created under this Trust Agreement, as it deems advisable.

The Trustee may make such contracts, deeds, leases, and any other instruments it deems proper under the immediate circumstances, and may deal with the trust property in all other ways in which a natural person could deal with his or her property.

The Trustee may divide into separate trusts with appropriate identification, or hold as designated portions of a single trust, assets held in "portions" for the benefit of the same beneficiary, and to sever a trust into two or more separate trusts for any reason, provided that the division shall be on a proportional or fractionalized basis.

V. **Securities Powers.**

In addition to those other securities powers granted throughout this Article, the Trustee may retain, exercise, or sell rights of conversion or subscription with respect to any securities held as part of the trust property.

The Trustee may vote or refrain from voting at corporate meetings either in person or by proxy, whether general or limited, and with or without substitutions.

W.    **Settlement Powers.**

The Trustee may compromise, adjust, arbitrate, alter the terms of, or abandon any claim in favor of or against any trust created under this Trust Agreement, and may take deeds in lieu of foreclosure.

X.    **Trust Addition and Retention Powers.**

The Trustee is authorized to receive additional trust property, whether by gift, will, or otherwise, from either the Grantor or any other person, corporation, or entity.

Upon receipt of any additional property, the Trustee shall administer and distribute the same as part of the trust property.

The Trustee may retain, without liability for depreciation or loss resulting from such retention, all property constituting the trust estate at the time of its creation or thereafter received from other sources.

The foregoing shall be acceptable even though such property may not be of the character prescribed by law for the investment of trust funds or may result in inadequate diversification of the trust property.

Y.    **Split Interest Trusts.**

With respect to a trust, if any, of which both individuals and charity are beneficiaries (including remainder beneficiaries), to create or make an addition to a so-called qualified charitable lead trust with remainder to or in further trust for any one or more of the beneficiaries of the trust, or a qualified charitable remainder trust initially for the benefit of any one or more of the beneficiaries of the trust, as the Trustee, in the exercise of sole and absolute discretion, may determine; to select the qualified charitable organizations receiving a benefit from any such split-interest trust; to determine whether the trust is of the annuity, unitrust or income-only unitrust variety; the annual payout percentage or amount, and the length of the trust, provided, however, that it is the Grantor's intention that any split-interest charitable trust created by the Trustee pursuant to this Subparagraph shall constitute a trust conferring a charitable interest which qualifies for a federal income, gift and estate tax charitable deduction, if applicable, and accordingly, the Grantor directs that the provisions of this Trust Agreement applying to any such split-interest charitable trust shall be construed in a manner consistent with IRC Sections 170(c), 501(c)(3), 642(c), 664, 2055 and 2522 and with the regulations and rulings which from time to time may be promulgated thereunder, and that any such trust shall be administered solely in conformity with said Sections applicable to it and the regulations and rulings thereunder.

Z.    **IRC Section 529 Plans.**

To manage without judicial authorization or approval any IRC Section 529 education savings account or arrangement (collectively referred to as an account) of which the Grantor is or at one time was the designated owner. Included within the scope of this authority the Trustee shall possess full power and authority to establish new IRC Section 529 accounts on behalf of any trust beneficiary to be named as the "designated beneficiary," to make beneficiary changes from time to time to any IRC Section 529 account, and to make additional contributions to IRC Section 529 accounts if the Trustee considers additional

contributions to be necessary and appropriate to carry out the directions contained in this Trust Agreement. The Trustee shall also possess the full authority to transfer funds from one state's IRC Section 529 account to another state's IRC Section 529 account. The Trustee shall possess the incidental power to transfer funds from one account investment to another account investment so long as that change in investments is authorized by the state that sponsors the IRC Section 529 account. In addition, the Trustee shall possess full authority to approve any distributions or approve any reimbursements from an established IRC Section 529 account. The Trustee shall also possess the authority to name a contingent IRC Section 529 account owner. The Trustee is authorized to make any investments of trust estate assets in an IRC Section 529 account, and the transfer of cash to an IRC Section 529 account shall constitute a permissible investment without judicial approval, and such investment shall be conclusively deemed to be an appropriate exercise of the Trustee's discretion to carry out the objectives that are more particularly described in this Trust Agreement.

AA.     **Trustees' or Fiduciaries' Powers Acts.**

In addition to all of the powers specifically granted the Trustee in this Article, the Trustee may exercise those powers set forth under the Trustees' or Fiduciaries' Powers Acts, or their equivalent, of the State of Michigan, together with any amendment to such laws.

The Trustee may perform every act reasonably necessary to administer each and every share or trust created under this Trust Agreement. All of the powers granted to the Trustee in this Article shall be in addition to those powers conferred upon Trustees under all applicable state and federal statutes.

Each power conferred upon the Trustee under this Article, or upon Trustees in general, by applicable state or federal statutes, shall be subject to any express limitations or contrary directions contained in this Trust Agreement.

In addition, the Trustee may disclaim any power granted to it, if the disclaimer will not adversely affect any beneficiary materially. The Trustee shall deliver a written disclaimer under this provision to one or more of the beneficiaries then entitled to trust income. The disclaimer shall be effective on the date first received by a beneficiary.

In addition, the Trustee may release all or any part of a general power or special power, even if a special power is not presently exercisable or is exercisable in a fiduciary capacity that requires the exercise of the power, if the Trustee, in its sole discretion, determines that the release is necessary to qualify a trust as an eligible shareholder of an S corporation (as defined in IRC Section 1361(b)).

BB.     **Charitable Trusts.**

During the Grantor's lifetime, the Trustee (if such Trustee is not a related or subordinate party to the Grantor or to any trust beneficiary, as defined in IRC Section 672(c)) may add to the class of beneficiaries any charitable split interest trust, as described in IRC Section 4947(a)(2), where all of the non-charitable beneficiaries are the Grantor's descendants. The addition shall be effected by a writing retained with the records of the Trust, designating the date of the addition of the new beneficiary.

## SECTION 4.   ENVIRONMENTAL MATTERS

The Trustee is hereby granted the following additional powers and rights:

**A.**   **Trustee's Powers to Deal with Environmental Hazards.**

The Trustee shall have the power to use and expend the trust income and principal to (i) conduct or cause to be conducted an environmental investigation of the trust property including environmental audits, assessments, site monitoring, laboratory analysis, testing, title history, aerial photographs, public and private records review and any related inquiry arising out of or in any way related to liability or claims under federal, state or local environmental statutes, regulations, ordinances, requirements, demands of government authorities or policies or under common law ("environmental laws"); (ii) take appropriate remedial action to contain cleanup or remove any actual or threatened environmental hazard including a spill, release, discharge or contamination and conduct site restoration work on the trust property and to notify the appropriate federal, state or local authorities either on its own accord or in response to an actual or threatened violation of environmental laws; (iii) institute legal proceedings, claims and demands concerning environmental hazards, contamination or condition of the trust property or contest, pay, compromise, settle or comply with legal proceedings, claims, demands, orders, penalties, fines and damages brought or imposed by federal, state or local government authorities or by a private litigant; (iv) comply with any local, state or federal agency order or court order directing an assessment, abatement or cleanup of any environmental hazards; and (v) employ agents, consultants and legal counsel to assist with or perform the above undertakings or actions. Any expenses or costs incurred by The Trustee under this Paragraph may be charged against income or principal as the Trustee shall determine.

**B.**   **Trustee's Right to Refuse Contributions.**

The Trustee shall have the power to receive any property, real or personal, to be added to the trust from the Grantor or Grantor's spouse, in any event (and if the Trustee consents in writing, from any other person) by lifetime or testamentary transfer or otherwise; provided, however, that the Trustee, in its sole discretion, may require, as a prerequisite to accepting property, that the donating party provide evidence satisfactory to the Trustee that (i) the property is not contaminated by any Hazardous Materials; and (ii) the property is not being used and has never been used for any activities directly or indirectly involving the generation, use, treatment, storage, disposal, release, or discharge of any Hazardous Materials, except in compliance with all applicable federal, state and local laws and regulations.

**C.**   **Indemnification of Trustee.**

Notwithstanding any contrary provision of the trust, the Trustee may withhold a distribution to a beneficiary until receiving from the beneficiary an indemnification agreement in which the beneficiary agrees to indemnify the Trustee as follows:

The Grantor or the Grantor's successors in interest shall defend, indemnify and hold harmless the Trustee and its employees, directors, shareholders, successors and assigns, attorneys and representatives from and against any claims, demand, penalties, fines, liabilities, settlements, damages, including, but not limited to personal injury and property damages, costs or expenses including, without limitation attorney's and consultant's fees,

investigation and laboratory fees, site monitoring, removal, cleanup, restoration or other remedial action, court costs and litigation expenses, known or unknown, contingent or otherwise, arising out of or in any way related to liability or claims under federal, state or local environmental statutes, regulations, ordinances, requirements, demands of government authorities or policies or under common law that may arise as a result of or be attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal or presence of Hazardous Materials, in, on or about the trust property, real or personal.

D.     Hazardous Materials.

For purposes of this Section 4, "Hazardous Materials" means any materials or substance: (1) defined as a "hazardous substance" pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. Section 9601 et. seq.) and amendments thereto and regulations promulgated thereunder; (ii) containing gasoline, oil, diesel fuel and other petroleum products; (iii) defined as a "hazardous waste" pursuant to the Federal Resource Conservation and Recovery Act (42 U.S.C Section 6901 et. seq.) and amendments thereto and regulations promulgated thereunder; (iv) containing polychlorinated byphenyls (PCBs); (v) containing asbestos; (vi) radioactive; (vii) biologically hazardous or (viii) the presence of which requires investigation or remediation under any federal, state or local statute, regulation, ordinance or policy; or which is or becomes defined as a "hazardous waste" or "hazardous substance" under any federal, state or local statute, regulation or ordinance; and any toxic, explosive, corrosive or otherwise hazardous substance, material or waste which is or becomes regulated by any federal, state or local governmental authority, or which causes a nuisance upon or waste to the premises.

E.     Exoneration of Trustee.

No Trustee shall be liable for any loss or depreciation in value of trust assets as a result of the Trustee retaining any property that is polluted or contaminated or has an adverse environmental condition unless the Trustee caused the loss or depreciation in value through willful default, willful misconduct or gross negligence.

## SECTION 5.     GENERATION-SKIPPING TRANSFERS

A.     Power to Allocate the GST Exemption.

If the Trustee is required to make and file the Federal estate tax return for the Grantor's estate or any other return that may be required in connection with the generation-skipping transfer tax (the "GST tax"), the Trustee shall have the power to:

1.     Lifetime Transfers.

Allocate the Grantor's exemption from the Federal generation-skipping transfer tax (the "GST Exemption") to all or part of any property that the Grantor transferred during life to which the Grantor did not allocate any GST Exemption;

**2.** **Deemed Allocation Election.**

Elect not to have the deemed allocation provisions of IRC Section 2632(b) apply, in whole or in part, to any lifetime transfer made by the Grantor;

**3.** **Testamentary Transfers.**

Allocate the Grantor's GST Exemption that has not been allocated to the Grantor's lifetime transfers to all or any part of any transfer, outright or in trust, that occurs as a result of the Grantor's death and of which the Grantor is the transferor, whether provided for in this Trust Agreement, the Grantor's will, or in any other way; and

**B.** **Allocation of Assets.**

**1.** **Based on the Grantor's GST Exemption.**

If the value of the property to be distributed to any trust created by this Trust Agreement is greater than the GST Exemption that the Trustee decides to allocate to that trust, the Trustee shall create two separate trusts that shall be identified as the Exempt Portion and the Non-Exempt Portion of that trust. The Trustee shall first distribute to the Non-Exempt Portion each asset (or its proceeds) that is an item of income in respect of a decedent, and shall distribute to the Exempt Portion the fractional share of the remaining property to be distributed that will cause the Exempt Portion to have an inclusion ratio of zero based on the GST Exemption that the Trustee allocates to it. To the extent the remaining property is insufficient to fully fund the Exempt Portion in accordance with the preceding sentence, the Trustee shall allocate to the Exempt Portion instead of the Non-Exempt Portion the fractional share of the items of income in respect of a decedent that is necessary to fully fund the Exempt Portion. Any remaining assets shall be distributed to the Non-Exempt Portion. The Exempt Portion and Non-Exempt Portion of such a trust shall be held, administered, and distributed as separate trusts in the manner described in this Section 5.

**2.** **Based on Another Person's GST Exemption.**

(i)     If property that is held in the Non-Exempt Portion of any trust created by this Trust Agreement is included in the Federal gross estate of a person other than the Grantor, the Trustee shall allocate to a separate trust the fractional share of the assets in the Non-Exempt Portion that will cause the separate trust to have an inclusion ratio of zero, based on the amount of the other person's GST Exemption that is allocated to that separate trust. The assets allocated to the separate trust shall be held, administered, and distributed pursuant to the same provisions that apply to the trust from which those assets were distributed.

(ii)     If a person other than the Grantor adds property to any trust created by this Trust Agreement and if that other person's GST Exemption is allocated to all or a portion of that property, the Trustee shall allocate to a separate trust a fractional share of that property that has a value equal to the amount of that other person's GST Exemption that is allocated to the property so that the separate trust shall have an inclusion ratio of zero. The Trustee shall hold, administer, and distribute the

assets allocated to that separate trust pursuant to the provisions that apply to the trust to which the assets were to be added.

(iii)   If the Trustee creates more than one separate trust with an inclusion ratio of zero because it has received property to which more than one person's GST Exemption has been allocated, and if those trusts are to be administered for the same beneficiaries and pursuant to the same provisions, those several separate trusts may be combined in a single trust if the inclusion ratio of the combined trust will continue to be zero after the separate trusts are combined.

**3.     Based on Other Characteristics.**

The Trustee shall have the authority to allocate property to as many separate trusts as shall be necessary to identify characteristics of such property that are significant for GST tax purposes, including but not limited to, property that is not subject to the GST tax (in which case such a trust shall be administered by reference to the provisions in this Trust Agreement that apply to the Exempt Portion of a trust), or property that qualifies for the grandchild exclusion or for the predeceased child exemption. Any such separate trust shall be held, administered, and distributed pursuant to the provisions that would have applied to the property if the separate trust had not been created.

**4.     Pecuniary Payments and Bequests.**

If a person or trust holds the current right to receive a mandatory (i.e., nondiscretionary and noncontingent) payment of a pecuniary amount at the death of a person treated as the transferor of the property for Federal GST tax purposes (the "Transferor"), the Trustee shall either:

(i)     Within 15 months of the Transferor's death, make the entire payment or irrevocably set it aside by segregating it and holding it in a separate account pending distribution; or

(ii)    Allocate to the pecuniary payment a pro rata share of the income earned by the fund from which the pecuniary payment is to be made between the date of death of the Transferor and the date of payment.

**C.     Administration of Trusts for Descendants.**

The Trustee shall administer the Exempt Portion, Non-Exempt Portion and any other separate trust for a descendant pursuant to the terms of this Trust Agreement that apply to those trusts, except that:

**1.     Discretionary Distribution.**

The Trustee shall make any discretionary distribution of income or principal to a non-skip person first from the Non-Exempt Portion of the trust and last from the Exempt Portion of the trust; and shall, insofar as the Trustee deems it appropriate, pay from the Non-Exempt Portion of the trust a skip person's medical and tuition expenses directly to the provider of those services to the extent such distributions would be excluded from the definition of a generation skipping transfer under IRC

Section 2611(b)(1); and shall make any discretionary distribution of income or principal to a skip person first from the Exempt Portion and last from the Non-Exempt Portion; and shall make any distribution from any other separate trust for that descendant in a way that will eliminate or minimize the imposition of a GST tax on the distribution or on future distributions.

2.     **Withdrawal of Principal.**

Any assets that the descendant is permitted to withdraw shall be withdrawn first from the Non-Exempt Portion until it is exhausted and last from the Exempt Portion. The part of the Non-Exempt Portion that may be withdrawn shall be determined by a fraction whose numerator shall be the value of the combined principal balances of the Exempt Portion, the Non-Exempt Portion and any other separate trust for that descendant that is administered pursuant to the same provisions as the Exempt Portion and the Non-Exempt Portion, times the fractional share of the trust's principal that the descendant is entitled to withdraw; and the denominator shall be the value of the Non-Exempt Portion's principal balance. If the numerator is larger than the denominator the descendant may withdraw all of the Non-Exempt Portion and may withdraw the balance to which such descendant is entitled next from the Exempt Portion and any other separate trust in a sequence determined by the Trustee that will eliminate or minimize the imposition of a GST tax on the distribution or on future distributions.

3.     **General Power of Appointment.**

This Subparagraph (C)(3) shall apply if a descendant of the Grantor dies and if the GST tax would apply to the Non-Exempt Portion of such descendant's trust at a rate that is based on the maximum Federal estate tax rate if it were not for the provisions of this Subparagraph (C)(3).

(i)     If such a descendant's gross estate plus such descendant's adjusted taxable gifts, less all of the items that are deductible for Federal estate tax purposes other than the marital deduction, is less than the lowest amount to which the maximum Federal estate tax rate applies, such descendant shall have the power to appoint to the creditors of such descendant's estate the fractional share of the remaining principal and undistributed income of the Non-Exempt Portion of such descendant's trust that is described in the Subparagraph immediately following.

(ii)     The fractional share that the descendant may appoint shall be that part of the Non-Exempt Portion that is not otherwise includable in the descendant's gross estate for Federal estate tax purposes that, when added to such descendant's gross estate and to the amount of death taxes that are payable from the Non-Exempt Portion pursuant to Subparagraph (D)(1), will cause such descendant's gross estate plus such descendant's adjusted taxable gifts, less all of the items that are deductible for Federal estate tax purposes other than the marital deduction, to be the highest amount to which the rate just below the maximum Federal estate tax rate applies. This power is in addition to any other power of appointment given to the descendant by this Trust Agreement.

**D. Death Taxes.**

    **1. Descendants' Trusts.**

        After the death of a descendant, if any part of the Non-Exempt Portion of such descendant's trust is subject to an estate, inheritance or succession tax because of the power given the descendant by Subparagraph (C)(3) and because of the provisions of this Section 5, the Trustee shall pay the fiduciary of the descendant's estate, from that part of the Non-Exempt Portion of such descendant's trust that is not otherwise includable in such descendant's gross estate for Federal estate tax purposes, the amounts that the fiduciary certifies have been paid or are due from such descendant's estate for such death taxes. The taxes attributable to the Non-Exempt Portion because of the provisions of Subparagraph (C)(3) and this Section 5 shall be the excess of the actual taxes over the taxes that would have been payable if the provisions of Subparagraph (C)(3) and this Section 5 did not apply.

**E. Simultaneous Death.**

    If (a) the Grantor, the Grantor's spouse, or any descendant of the Grantor dies, and if (b) another person dies who is (i) assigned to a younger generation than that of the deceased person described in (a) of this sentence, and who is (ii) a person to or for whom an interest in any property passes outright or in trust because of the deceased person's death, and if (c) there is insufficient evidence to determine who died first, it shall be presumed that the person assigned to the younger generation died first as to property that that person failed to appoint effectively; and it shall be presumed that the person assigned to the older generation died first as to property that the younger generation person did appoint effectively.

**F. Division of Trusts.**

    The Grantor intends that each separate trust created by this Trust Agreement, including the Exempt Portion and Non-Exempt Portion into which any trust may be divided, shall have an inclusion ratio for GST tax purposes of either zero or one. If a separate trust shall have an inclusion ratio that is more than zero and less than one, the Trustee shall have the power to divide any property held in such a trust or portion into two separate trusts representing fractional shares of the property being divided so that one trust will have an inclusion ratio of one and the other trust an inclusion ratio of zero if such a division is permitted by applicable law; if it is not permitted, such a trust shall be held, administered, and distributed, separate from any other trust or portion that does not have an inclusion ratio of either one or zero.

**G. Frustration of Purpose.**

    **1. Purpose.**

        The Grantor's purpose in creating any Exempt Portion as a separate trust is to segregate in the Exempt Portion those funds that are permitted by law to be transferred to a younger generation person without the imposition of the GST tax so that they can be held in trust free from the imposition of either the Federal estate tax or the GST tax until the Exempt Portion is terminated pursuant to the effective exercise of a power of appointment or the terms of this Trust Agreement.

2.      **Change in Law or Circumstances.**

If the provisions of the applicable tax law change from those that are in effect when the Grantor signs this Trust Agreement, or if the circumstances of one or more of the Grantor's descendants and the descendant's family should be such that, in the Trustee's judgment, there is either no significant tax advantage or there is a significant tax or non-tax disadvantage in continuing all or any part of the Exempt Portion or any other separate trust for a descendant as a separate trust in the manner provided for in this Trust Agreement, the Trustee is authorized, in its sole and uncontrolled discretion, (i) to terminate the Exempt Portion or any other separate trust, in whole or in part, and to distribute the principal and undistributed income outright to the person who is then the income beneficiary of that portion, or (ii) to combine all or any part of a descendant's Exempt Portion, Non-Exempt Portion, or any other separate trust for a descendant with all or any part of one or more other trusts that are to be held, administered, and distributed pursuant to the same provisions.

H.      **Exoneration of Trustee.**

Any decision by the Trustee to exercise or not to exercise any power granted by this Section 5, and the extent to which such a power shall be exercised, shall be final and binding on all persons. No beneficiary who is serving as a Trustee may participate in the exercise of any power granted by this Section 5 if the exercise of that power may in any way affect a right or a potential right of that beneficiary or confer upon that beneficiary any kind of benefit; in any such case the powers granted by this Section 5 shall be exercised only by a co-trustee or successor trustee who is not prevented from acting by this Section 5 or, if there is no such trustee, by a court of competent jurisdiction.

## SECTION 6.   INVESTMENT ADVISOR

A.      **Appointment.**

After the Grantor's death, then the Grantor's spouse, if living, and if not, then any beneficiary for whom a trust is created or named (with any such beneficiary under a legal disability voting through his/her lawful guardian) shall have the right, by written instrument, to appoint and remove, from time to time, an Investment Advisor to the Trustee of such trust. The Investment Advisor may be an individual or a corporate entity but must be a person (individual or corporate) whose primary profession is investment counseling and advising. Every Trustee acting when any Investment Advisor is appointed or removed shall forthwith be given written notice of such fact.

The principal purpose of the Investment Advisor is to consult with the Trustee on the diversity of investments, the selection of investment managers, and/or the selection of mutual funds (depending on the size of the portfolio). In setting the investment strategy for the funds of any trusts established hereunder, the Trustee is directed to request the Investment Advisor to make investment recommendations based on the "risk adjusted returns" of the investment managers and/or the mutual funds.

B.   **Coordination with Trustee.**

The Trustee shall consult with any Investment Advisor, when acting, with respect to any and all investment decisions, other than ministerial decisions, and shall cooperate with the Investment Advisor to carry out such investment plans, programs and acts as may be recommended by the Investment Advisor; provided, however, and notwithstanding the foregoing, upon receipt of written recommendations from a duly appointed Investment Advisor, the Trustee shall be accorded a reasonable time to examine and review the same before implementing the same and may refuse to implement the same, in whole or in part, if the Trustee shall determine, in the exercise of its fiduciary responsibilities, that implementation of all or any part of said recommendations would not be reasonably prudent in the circumstances. Written notice of such determination shall be given by the Trustee to the Investment Advisor (with a copy to each beneficiary entitled to appoint an Investment Advisor).

C.   **Liability of Trustee.**

Notwithstanding anything elsewhere herein or as provided by statute or regulation to the contrary, no Trustee shall be liable for any loss or other detriment arising directly or indirectly from any act or omission to act directed by an Investment Advisor or from any sale, failure to sell, retention of assets or other investment activity or failure of activity based upon or resulting, directly or indirectly, from the directions of an Investment Advisor or from the failure or refusal of a Trustee, acting in discharge of its fiduciary responsibilities hereunder, to implement all or any part of the written directions or recommendations of any Investment Advisor.

## ARTICLE TEN

## DEFINITIONS AND GENERAL PROVISIONS

### SECTION 1.   DEFINITIONS

For purposes of this Trust Agreement, the following words and phrases shall be defined as follows:

**A.      Adopted and Afterborn Persons.**

Persons who are legally adopted while they are under 18 years of age (and not those persons adopted after attaining 18 years of age) shall be treated for all purposes under this Trust Agreement as though they were the naturally born children of their adopting parents.

A child in gestation who is later born alive shall be considered a child in being throughout the period of gestation.

**B.      Agent.**

An individual's "Agent" means (1) the individual's attorney-in-fact acting under a durable power of attorney, to the extent such durable power of attorney specifically authorizes the exercise of a particular power, or (2) the individual's duly appointed conservator to the extent such conservator gives notice to the Trustee and obtains approval for the exercise of such power from the Court which appointed him or her as such conservator.

**C.      Descendants.**

A person's descendants shall include all of his or her lineal descendants through all generations; provided, however, a child shall not be considered a descendant of his natural or adoptive parent (or of the ancestors of such parent) after the date of a court order terminating the parent's parental rights of the child, unless such parental rights were terminated primarily as a result of the actions of a party other than the parent.

A descendant in gestation who is later born alive shall be considered a descendant in being throughout the period of gestation.

An adopted person, and all persons who are the descendants by blood or by legal adoption while under the age of 18 years of such adopted person, shall be considered descendants of the adopting parents as well as the adopting parents' ancestors.

**D.      Per Stirpes Distributions.**

For purposes of this Trust Agreement, when an allocation or distribution is directed to be made "per stirpes" the following rules shall be applied to determine both the eligible takers and the shares which they shall take, in the following manner: (i) eligible takers shall not include the issue of living issue; and (ii) in determining the shares, the primary shares shall be fixed in reference to the generation closest to the ancestor or ancestors described in which there is at least one member then living. The number of such primary shares shall be the same as the number of members of that generation then living or who died survived by issue

10-1

then living; intending that if all eligible takers are of the same generation they shall take in equal shares.

**E.    Education.**

As used in this Trust Agreement, "education" shall include:

> Any course of study or instruction at an accredited college or university granting undergraduate or graduate degrees.

> Any course of study or instruction at any institution for specialized, vocational, or professional training.

> Any curriculum offered by any institution that is recognized for purposes of receiving financial assistance from any state or federal agency or program.

> Any course of study or instruction which may be useful in preparing a beneficiary for any vocation consistent with the beneficiary's abilities and interests.

> Distributions for education may include tuition, fees, books, supplies, living expenses, travel, and spending money to the extent that they are reasonable.

**F.    Personal Representative.**

For the purposes of this Trust Agreement, the term "personal representative" shall include an executor, administrator, guardian, custodian, conservator, Trustee, or any other form of personal representative.

**G.    Incapacity or Disability.**

Except as otherwise provided in this Trust Agreement, a person shall be deemed to be incapacitated or under a legal incapacity or disability if (i) such person has been duly adjudged an incapacitated person, a disabled person, an insane person or an incompetent person by any court of competent jurisdiction and a legal guardian for such person has been appointed; or (ii) a person's ability to receive and evaluate information effectively or to communicate decisions, or both, is impaired to such an extent that the person lacks the capacity to manage such person's financial resources, as determined by certification of two licensed physicians who are unrelated to the person (by blood or marriage) and who are experts in neuro-psychological evaluations and who are experts in neuro-psychological evaluations; or (iii) an individual Trustee of a trust created under this Trust Agreement fails to satisfy within sixty (60) days a written request by a majority of the beneficiaries then eligible to receive mandatory or discretionary distributions of net income from such trust (with any beneficiary under a legal disability acting through his/her Agent) for certification in writing by at least two licensed physicians who are unrelated to the person (by blood or marriage) and who are experts in neuro-psychological evaluations that the Trustee can effectively carry out the duties of a Trustee; or (iv) such person is someone who cannot take any needed actions due to involuntary detention or disappearance, as determined by the affidavit of at least two people with knowledge regarding the same. The Trustee hereunder shall have no liability to anyone for acting in good faith upon any such certification or affidavit.

**H.   Antilapse Provision.**

As used in this Trust Agreement, the term "if living" shall have the same meaning as the phrase "and not to [the beneficiary's] descendants", except to the extent such descendants are named as successor beneficiaries by the terms of this Trust Agreement.

**I.   Ademption of Specific Devises**

It is the Grantor's intent that each specific devise of trust property made hereunder, if any, shall lapse and be of no effect if, at the time of distribution, the property so devised is not part of the trust property and does not subsequently become trust property after the Grantor's death.

**J.   State as Heir.**

In the event the State of Michigan is determined to be an heir hereunder, any distribution that would have been made to the State, but for this provision, shall be added to and distributed as part of the shares being distributed to living individuals.

**K.   Ascertainable Standard.**

Notwithstanding any other provision of this Trust Agreement to the contrary, whenever payments are authorized to be made to or for a beneficiary's "health, education, support and maintenance", the Grantor intends that such payments are to be limited by "ascertainable standards" within the meaning of IRC Sections 2041 and 2514.

**L.   Survivor or Survivors.**

As used herein, the term "survivor or survivors of" shall mean the persons or person so designated that are living at the time in question, but shall not include any descendants or issue of such designated persons or person.

**M.   Use of Trust.**

As used herein, the term "income" shall also mean the use of non-income producing trust property.

**N.   Internal Revenue Code of 1986.**

Reference to "Code", "Internal Revenue Code", IRC (or similar abbreviations), or to provisions thereof, are to the Internal Revenue Code of 1986, as amended at the time in question.

## SECTION 2.   DIVORCE

If either the Grantor or the Grantor's spouse files a petition for legal separation or dissolution of marriage, the Grantor's spouse, the parents of the Grantor's spouse, and all descendants of the parents of the Grantor's spouse (who are not descendants of the Grantor's parents) and all spouses of such persons (who are not descendants of the Grantor's parents) shall be deemed to have died intestate on the date of such filing for all purposes of this Trust Agreement (other than for purposes of the "rule against perpetuities" provisions under this Trust Agreement); provided, however, that if court order(s) are issued dismissing all such petitions

(whether filed by the Grantor or the Grantor's spouse) and the Grantor accepts the dismissal of such petitions filed by the Grantor's spouse by a duly acknowledged instrument, then all such persons shall no longer be deemed to have died intestate for all purposes of this Trust Agreement.

If a descendant of the Grantor or such descendant's spouse files a petition for legal separation or dissolution of marriage, such spouse, all descendants of the parents of such spouse (who are not descendants of the Grantor), and all spouses of such persons (who are not descendants of the Grantor's parents) shall be deemed to have died intestate on the date of such filing for all purposes of this Trust Agreement (other than for purposes of the "rule against perpetuities" provisions under this Trust Agreement); provided, however, that if court order(s) are issued dismissing all such petitions (whether filed by the descendant of the Grantor or such descendant's spouse) and the descendant of the Grantor accepts the dismissal of such petitions filed by such descendant's spouse by a duly acknowledged instrument, then all such persons shall no longer be deemed to have died intestate for all purposes of this Trust Agreement.

## SECTION 3.   THE RULE AGAINST PERPETUITIES

Notwithstanding any other provision in this Trust Agreement relating to perpetuity periods, the trusts created under this Trust Agreement shall be perpetual to the fullest extent permitted by applicable law. If any trust created hereunder is deemed to be subject to the law of a jurisdiction that has a rule against perpetuities or similar rule which limits the period during which property can be held in trust, then such trust (other than a trust created by the exercise of a power of appointment conferred hereunder which exercise commences a new rule against perpetuities period under the law of such jurisdiction) shall terminate in all events upon the expiration of the longest period that property may be held in trust under this Trust Agreement under the law of such jurisdiction (including any applicable period in gross, such as 21 years, 90 years or 110 years); provided, however, that if the jurisdiction has a rule against perpetuities or similar rule which applies only to certain types of property, such as real property, the provisions of this Section shall apply only to such property. If under the law of such jurisdiction the longest period that property may be held in trust may be determined (or alternatively determined) with reference to the death of the last survivor of a group of individuals in being upon the date of that Trust Agreement becomes irrevocable, those individuals shall consist of all of the descendants of the Grantor's parents who were in being on the date such rule against perpetuities period or similar rule commenced. Upon termination of a trust pursuant to the provisions of this Section, the trust property shall be transferred, conveyed and paid over to the beneficiary for whom the trust was named or created, or, if such beneficiary is not then living, to the then living descendants of the beneficiary, per stirpes, or, if no descendant of the beneficiary is then living, to the then living descendants, per stirpes, of the lineal ancestor of the beneficiary of the closest degree of consanguinity to the beneficiary which ancestor has descendants who are then living and which ancestor was also a descendant of the Grantor, or, if there are no descendants of such a lineal ancestor of the beneficiary, in accordance with the terms and conditions set forth in Article Three above.

## SECTION 4.   PROTECTIVE CLAUSE

To the extent permitted by law, a beneficiary's interest hereunder shall not be subject to liabilities or creditor claims or to assignment or anticipation. However, this provision shall not restrict the exercise of a disclaimer or the exercise of a power of appointment or withdrawal right granted by this Trust Agreement, nor shall it prevent or prohibit the termination of a trust or the sale, gift or transfer of beneficial interests to charity or between family members and/or beneficiaries.

## SECTION 5.   BENEFICIARIES ON GOVERNMENT ASSISTANCE

Whenever a beneficiary (the "disabled beneficiary") of any trust created hereunder is eligible for any public benefits to provide for his/her basic support and maintenance (i.e., SSI, SSDI, Medicaid, etc.), then, notwithstanding anything contained in this Trust Agreement to the contrary, during the term of such trust, the Grantor direct that distributions from such trust shall be used solely for supplementing those benefits which are available to him or her. Inasmuch as possible, the Trustee is to administer such trust so that the disabled beneficiary's eligibility for public governmental assistance programs is not endangered. Under no circumstances shall the disabled beneficiary have the power or authority to demand any distribution from the Trustee, and the Trustee is under no obligation, implied or otherwise, to make any distributions to the disabled beneficiary. Further, the Trustee may withhold distributions to the disabled beneficiary if, in the Trustee's sole discretion, they would not be consistent with the Grantor's intentions as expressed above. The Trustee has full discretion to spend a disabled beneficiary's trust income or principal, or not to spend it, as the Trustee sees fit. The disabled beneficiary shall have no legal right to the trust's assets, even in the case of an emergency. Notwithstanding anything contained in this Trust Agreement to the contrary, neither the Trustee nor any Trust Protector shall have the right to terminate any trust established for a disabled beneficiary.

## SECTION 6.   EXERCISE OF POWER OF APPOINTMENT

Any trust principal or net income as to which a power of appointment is exercised shall be distributed to the appointee or appointees upon such conditions and estates, in such manner (in trust or otherwise), with such powers, in such amounts or proportions, and at such time or times (but not beyond the period permitted by any applicable rule of law relating to perpetuities) as the powerholder may specify in the instrument exercising the power, subject to the following:

A.   **Manner of Exercise.**

Any power, including a power of appointment, granted to an individual under the trust may be exercised either by (1) such individual by a Will, or (2) a written direction other than a Will executed by such individual or such individual's Agent, and delivered to the Trustee during the individual's lifetime (hereinafter referred to as a "written direction"), which Will or written direction specifically refers to the paragraph of the trust under which the power is granted. A written direction may be revoked or amended by a subsequent written direction executed by the individual or his or her Agent that complies with the above formalities. If a conflict occurs between the terms of the individual's Will and the terms of a written direction or between the terms of two or more written directions, the terms of the most recent document shall prevail. A power of appointment may be exercised by an individual even if (1) the individual is a minor or under disability, or (2) all of the assets constituting the trust with respect to which the power is granted have not been received by the Trustee. If the Trustee does not receive actual notice of the exercise of a power of appointment by Will within six (6) months after the death of the individual holding the power, the Trustee may, without liability, distribute the property subject to the power as if the power had not been exercised. In determining whether, in what manner, and to what extent a power of appointment has been exercised by Will, the Trustee may act in reliance on a court order in any jurisdiction admitting an instrument to probate as the Will of the holder of the power or finding that the holder died intestate. However, this provision shall not affect any right an appointee or beneficiary in default of appointment may have against any distributee.

**B.** **Restrictions on Implementation.**

Notwithstanding Paragraph (A) above to the contrary, no power of appointment may be exercised by any individual under the trust with respect to policies of insurance on the life of such individual, or the proceeds thereof, unless such policies or proceeds would be included in the individual's gross estate at such individual's death without regard to such power of appointment. Unless the implementation of the exercise of a power of appointment described herein is specifically restricted under the trust, a power of appointment (1) exercisable during the powerholder's lifetime shall be implemented upon delivery to the Trustee or thereafter as provided in the instrument exercising the power, and (2) exercisable at the death of the powerholder shall be implemented upon such individual's death or thereafter as provided in the instrument exercising the power. Upon a powerholder's death, the power of appointment shall not pass on to the powerholder's descendants.

**C.** **Compelled Exercise Not Effective.**

The purported exercise of any power, including a power of appointment, granted under this Trust Agreement shall be of no force or effect if such purported exercise was the result of compulsion. If such purported exercise is the result of compulsion, the Trustee shall administer the property subject to such power as if said purported exercise had not occurred. The purported exercise of a power shall be deemed to be the result of compulsion if such purported exercise is in response to or by reason of any order or other direction of any court having jurisdiction over the individual holding the power, the Trustee, the property subject to the power or the trust containing such property. An individual's Agent may not exercise a power given to such individual under this Trust Agreement if such purported exercise is in response to or by reason of any such order or other direction of any court having jurisdiction over the Agent, unless the order or other direction was obtained by the Agent in a proceeding in which the Agent was the petitioner or voluntarily acquiesced.

## SECTION 7.   CONTEST CLAUSE

If any person, including a beneficiary, shall in any manner, directly or indirectly, attempt to contest or oppose the validity of this Trust Agreement, including any amendments thereto, or commences or prosecutes any legal proceedings to set this Trust Agreement aside, then in such event such person shall forfeit his or her share, cease to have any right or interest in the trust property, and shall be deemed to have predeceased the Grantor.

Should any person disclaim his or her interest, in whole or in part, in any trust created for his or her benefit by this Trust Agreement, the result of which would be for that person to receive trust property free of trust earlier than provided by the terms of this Trust Agreement, then the disclaiming person shall forfeit his or her interest in the trust, shall cease to have any right or interest in the trust property, and shall be deemed to have predeceased the Grantor.

A court action to clarify the Grantor's intent, or to obtain authority to take steps reasonably calculated to protect the Grantor's estate, will not give rise to any penalty under this Section. Further, the Trustee or any interested trust beneficiary may petition a court of competent jurisdiction to obtain a determination as to whether an issue, if brought before the court, would give rise to a penalty under this Section, and the act of bringing such a petition will not give rise to a penalty, and the reasonable costs and fees associated with bringing such a petition shall be paid by the petitioner (or by the trust if the petitioner is the Trustee).

## SECTION 8.   GENERAL MATTERS

The following general matters of construction shall apply to the provisions of this Trust Agreement:

A.   **Construction.**

Unless the context requires otherwise, words denoting the singular may be construed as denoting the plural, and words of the plural may be construed as denoting the singular. Words of one gender may be construed as denoting another gender as is appropriate within such context.

B.   **Headings of Articles, Sections, and Paragraphs.**

The headings of Articles, Sections, and Paragraphs used within this Trust Agreement are included solely for the convenience and reference of the reader. They shall have no significance in the interpretation or construction of this Trust Agreement.

C.   **Notices.**

All notices required to be given in this Trust Agreement shall be made in writing by either:

Personally delivering notice to the party requiring it, and securing a written receipt, or

Mailing notice by certified United States mail, return receipt requested, to the last known address of the party requiring notice.

The effective date of the notice shall be the date of the written receipt or the date of the return receipt, if received, or if not, the date it would have normally been received via certified mail, provided there is evidence of mailing.

D.   **Delivery.**

For purposes of this Trust Agreement "delivery" shall mean:

Personal delivery to any party, or

Delivery by certified United States mail, return receipt requested to the party making delivery.

The effective date of delivery shall be the date of personal delivery or the date of the return receipt, if received, or if not, the date it would have normally been received via certified mail, provided there is evidence of mailing.

E.   **Duplicate Originals.**

This Trust Agreement may be executed in several counterparts; each counterpart shall be considered a duplicate original Trust Agreement.

F.    Severability.

If any provision of this Trust Agreement is declared by a court of competent jurisdiction to be invalid for any reason, such invalidity shall not affect the remaining provisions of this Trust Agreement. The remaining provisions shall be fully severable, and this Trust Agreement shall be construed and enforced as if the invalid provision had never been included in this Trust Agreement.

## SECTION 9.   COST-OF-LIVING ADJUSTMENT FACTOR

Whenever a gift, bequest or other payment made hereunder which is expressly to be adjusted for the "cost-of-living", then as of January 1 of each calendar year beginning with the second year after the date of this Trust Agreement, such gift, bequest or payment (the "Payment") shall be redetermined by multiplying the initial Payment times the Cost of Living Adjustment Factor. The Cost of Living Adjustment Factor shall be a fraction, the numerator of which is the United States consumer price index for the prior calendar year and the denominator of which is the United States consumer price index for the year this Trust Agreement was dated. For purposes of this section, "United States consumer price index" means the annual average of the United States consumer price index for all urban consumers as defined and reported by the United States Department of Labor, Bureau of Labor Statistics, or its successor agency. Alternatively, the Trustee may obtain this factor from the State of Michigan Department of Treasury's annual publication of the cost of living adjustment factor required to be published annually by section 1210 of the Estates and Protected Individuals Code of 1998, which factor is presently determined in the same manner as the Cost of Living Adjustment Factor described above.

## SECTION 10.   GOVERNING LAW / SITUS

It is not intended that the laws of only one particular state shall necessarily govern all questions pertaining to all of the trusts hereunder. Rather, the validity of each trust hereunder, as well as the validity of the particular provisions of that trust, shall be governed by the laws of whatever state having any sufficient connection with such trust will support such validity.

The meaning and effect of the terms of this trust instrument (and of any other instrument related hereto) shall be governed by the laws of the State of Michigan. The meaning and effect of the instrument creating any trust receiving an appointment hereunder shall be governed by the laws of whatever state may be designated in such instrument (or, absent such designation, by the laws of the State of Michigan).

The administration of each trust hereunder shall be governed by the laws of the state in which that trust is then being administered (based on the location of the principal office of the trustee then having custody of that trust's principal assets and records), which state's courts shall have exclusive jurisdiction over the administration of that trust with respect to any period during which it was thus being administered in that state. Furthermore, to the greatest extent permitted by law each and every trust hereunder (and each of its trustees) shall be exempt from and shall do everything possible to be independent of registration in or with, accountings to, and supervision by any court or other government agency. The jurisdiction whose laws govern the validity, construction, administration, meaning and effect, and rights of beneficiaries of any trust may, but need not, be the same as the situs of the administration of such trust.

The foregoing shall apply even though the situs of some trust assets or the home of the Grantor, a trustee or a beneficiary may at some time be elsewhere.

The Trustee may, with the written consent of a majority of the trust's current income beneficiaries who are not incapacitated, change the situs of any trust created hereunder and elect to have the validity, construction, administration, meaning and effect or rights of beneficiaries of such trust be governed by the laws of another jurisdiction, in or outside the United States (including that jurisdiction's law concerning the maximum duration of trusts). The Trustee may not change the situs of a trust or the trust's governing law in order to limit its existing liability to the beneficiaries.

Unless otherwise consented to by the current income beneficiaries of the trust in question or by any Trust Protector of the trust in question, no person shall serve as a Trustee if to do so would result in the trust being: (i) classified as a "foreign trust" under the Internal Revenue Code, and (ii) subjected to greater or additional taxation as a result of such classification.

**IN WITNESS WHEREOF,** I have executed this Trust Agreement the day and year first written above.

I certify that I have read the foregoing irrevocable Trust Agreement, and that it correctly states the terms and conditions under which the trust property is to be held, managed, and disposed of by the Trustee. I approve this irrevocable trust in all particulars, and request the Trustee to execute it.

WITNESS:                                              GRANTOR:

JENNIFER BROWN                                        _____
                                                      STEVEN M. MANCINI

                                                      TRUSTEE:

_____ JENNIFER BROWN                        _____
                                                      LISA MANCINI

STATE OF MICHIGAN          )
                           ) SS.
COUNTY OF OAKLAND          )

Acknowledged before me in Oakland County, Michigan, on February 1, 2011, by **STEVEN M. MANCINI** as Grantor and **LISA MANCINI** as Trustee.

                                                      _____
                                                      Notary Public

Mary K. Waldrop, Notary Public
State of Michigan, County of Lapeer
My Commission Expires 8/11/2012
Acting in the County of _MACOMB_

10-9

# EXHIBIT C

*T-E CHRISTINA*

# STEVEN M. MANCINI

# ELECTING SMALL BUSINESS TRUST AGREEMENT

*12-15-14 ESBT*

by

### Julius H. Giarmarco, Esq.

### Giarmarco, Mullins & Horton, P.C.

**101 West Big Beaver Road**
**Tenth Floor Columbia Center**
**Troy, Michigan 48084-5280**

**Telephone: (248) 457-7000**

Copyright©2014 Julius H. Giarmarco, Esq.

# TABLE OF CONTENTS

## STEVEN M. MANCINI

## ELECTING SMALL BUSINESS TRUST AGREEMENT

**ARTICLE ONE**
CREATION OF TRUST ................................................................................................. 1-1
| | | |
|---|---|---|
| Section 1. | The Trust | 1-1 |
| Section 2. | Initial Funding | 1-1 |
| Section 3. | Additional Funding | 1-1 |
| Section 4. | The Name of the Trust | 1-1 |
| Section 5. | Irrevocability | 1-2 |
| Section 6. | The Grantor Has No Rights in This Trust | 1-2 |
| Section 7. | The Grantor's Intention | 1-2 |

**ARTICLE TWO**
ADMINISTRATION OF THE COMMON TRUST .............................................. 2-1
| | | |
|---|---|---|
| Section 1. | Disposition of the Trust Property | 2-1 |
| Section 2. | Limited Power of Appointment | 2-2 |
| Section 3. | Electing Small Business Trust | 2-3 |
| Section 4. | Termination of the Common Trust | 2-3 |

**ARTICLE THREE**
DISTRIBUTION OF THE GRANTOR'S TRUST PROPERTY ...................... 3-1
| | | |
|---|---|---|
| Section 1. | Division Into Separate Trusts | 3-1 |
| Section 2. | Distribution of Trusts | 3-1 |
| Section 3. | Trust of a Deceased Child | 3-10 |
| Section 4. | Discretionary Distributions by Independent Trustee | 3-10 |
| Section 5. | Electing Small Business Trust | 3-11 |

**ARTICLE FOUR**
ULTIMATE DISTRIBUTION PATTERN ............................................................ 4-1

**ARTICLE FIVE**
METHODS OF DISTRIBUTION AND TRUST ADMINISTRATION ......... 5-1
| | | |
|---|---|---|
| Section 1. | General Guidelines for Distribution | 5-1 |
| Section 2. | Methods of Payment | 5-1 |

**ARTICLE SIX**
THE RESIGNATION, REPLACEMENT, AND SUCCESSION OF THE TRUSTEES ............... 6-1
| | | |
|---|---|---|
| Section 1. | The Resignation of a Trustee | 6-1 |
| Section 2. | The Removal of a Trustee | 6-1 |
| Section 3. | Replacement of Trustees | 6-2 |
| Section 4. | Powers, Duties, Limitations, Immunities and Liabilities of Fiduciaries | 6-4 |
| Section 5. | Corporate Fiduciaries | 6-4 |

**ARTICLE SEVEN**
GENERAL MATTERS AND INSTRUCTIONS WITH REGARD TO THE TRUSTEESHIP ............... 7-1
| | | |
|---|---|---|
| Section 1. | Use of "Trustee" Nomenclature | 7-1 |

| | | |
|---|---|---|
| Section 2. | No Requirement to Furnish Bond | 7-1 |
| Section 3. | Court Supervision Not Required | 7-1 |
| Section 4. | The Trustee's Responsibility to Make Information Available to Beneficiaries | 7-1 |
| Section 5. | Delegation Among the Trustees | 7-2 |
| Section 6. | Utilization of Substitute Trustee | 7-2 |
| Section 7. | Trustee's Fee | 7-2 |
| Section 8. | A Majority of Trustees Required to Control | 7-2 |
| Section 9. | Termination for Unusual Cause | 7-3 |
| Section 10. | Trust Protector | 7-3 |
| Section 11. | Distribution to Trusts | 7-6 |

**ARTICLE EIGHT**
**WITHDRAWAL RIGHTS** .................................................................................. 8-1

| | | |
|---|---|---|
| Section 1. | Withdrawal Rights | 8-1 |
| Section 2. | Notice of Withdrawal Rights | 8-2 |
| Section 3. | Exercise of Withdrawal Power | 8-2 |
| Section 4. | Lapse of Power and Hanging Power | 8-2 |
| Section 5. | Power to Change Withdrawal Rights | 8-3 |
| Section 6. | Miscellaneous Provisions | 8-3 |

**ARTICLE NINE**
**INCOME TAX STATUS OF TRUST DURING THE GRANTOR'S LIFETIME** ........... 9-1

| | | |
|---|---|---|
| Section 1. | Non-Grantor Trust Status | 9-1 |
| Section 2. | No Discharge of Legal Obligation | 9-1 |

**ARTICLE TEN**
**THE TRUSTEE'S ADMINISTRATIVE AND INVESTMENT POWERS** ............... 10-1

| | | |
|---|---|---|
| Section 1. | Introduction to Trustee's Powers | 10-1 |
| Section 2. | Powers to Be Exercised in the Best Interests of the Beneficiaries | 10-1 |
| Section 3. | Administrative and Investment Powers | 10-1 |
| Section 4. | Environmental Matters | 10-16 |
| Section 5. | Generation-Skipping Transfers | 10-18 |
| Section 6. | Investment Advisor | 10-23 |
| Section 7. | Distribution Advisor | 10-23 |

**ARTICLE ELEVEN**
**DEFINITIONS AND GENERAL PROVISIONS** ........................................... 11-1

| | | |
|---|---|---|
| Section 1. | Definitions | 11-1 |
| Section 2. | Divorce | 11-3 |
| Section 3. | The Rule Against Perpetuities | 11-4 |
| Section 4. | Protective Clause | 11-4 |
| Section 5. | Beneficiaries on Government Assistance | 11-5 |
| Section 6. | Exercise of Power of Appointment | 11-6 |
| Section 7. | Contest Clause | 11-8 |
| Section 8. | General Matters | 11-8 |
| Section 9. | Cost-of-Living Adjustment Factor | 11-9 |
| Section 10. | Governing Law / Situs | 11-10 |

## STEVEN M. MANCINI

## ELECTING SMALL BUSINESS TRUST AGREEMENT

### ARTICLE ONE

### CREATION OF TRUST

#### SECTION 1.   THE TRUST

This irrevocable trust, dated December 15, 2014, is by **STEVEN M. MANCINI**, as the Grantor, and **FRANK P. IANNUZZI** and **CYNTHIA R. MOREFIELD** as the initial Co-Trustees of the trust.

All references to "the trust", "this trust", "trust", or "Trust Agreement" unless otherwise stated, shall refer to this irrevocable trust and the trusts created herein. All references to "the Trustee" or "Trustee" shall refer to the initial Trustee or Trustees, or their successor or successors in trust.

#### SECTION 2.   INITIAL FUNDING

As of the date of this Trust Agreement, the Trustee shall hold the trust principal in a trust named and for benefit of the Grantor's children, **CHRISTINA M. MANCINI, RICHARD M. MANCINI, SABRINA A. MANCINI** and **MARINA A. MANCINI.** The trust shall be initially funded with $10 and such other property as may from time to time be made subject to this Trust Agreement. The trust shall be held, administered and distributed as provided in the Articles that follow.

#### SECTION 3.   ADDITIONAL FUNDING

The trust may be additionally funded by the Grantor or by any other person in any manner with property interests of all kinds. All property interests transferred, assigned, conveyed, or delivered to the Trustee in trust shall be absolute and irrevocable and must be acceptable to the Trustee.

All property interests transferred, assigned, conveyed, or delivered to the Trustee shall be subject to all of the terms and conditions set forth in this Trust Agreement.

#### SECTION 4.   THE NAME OF THE TRUST

For purposes of beneficiary designations, formal correspondence, and transfers directly to the trust, the trust shall be referred to as:

> **FRANK P. IANNUZZI** and **CYNTHIA R. MOREFIELD**, Trustees, or any successor Trustee, of the **STEVEN M. MANCINI ELECTING SMALL BUSINESS TRUST AGREEMENT**, dated December 15, 2014.

## SECTION 5.   IRREVOCABILITY

This trust is hereby expressly declared to be irrevocable, and the Grantor hereby expressly waives all rights and powers, whether alone or in conjunction with others, and regardless of when or from what source the Grantor may heretofore or hereafter have acquired such rights or powers, to alter, amend, revoke or terminate any trust herein created, or to alter, amend or change the terms and conditions of this Trust Agreement, in whole or in part.

By this Trust Agreement, the Grantor, during the term hereof, hereby renounces any interest, either vested or contingent, in the income or principal of any trust herein created, and relinquishes all possession or enjoyment of, or the right to income from, the property of any trust herein created, and all right and power, whether alone or in conjunction with others, to designate the persons who shall possess and enjoy the property of any such trust, or the income therefrom.

Accordingly, no power enumerated herein or accorded to trustees generally pursuant to law, singly or as a whole, shall be construed to enable the Grantor (i) to become a trustee hereunder (or to possess or exercise any powers of such office); (ii) to vote any stock described in IRC Section 2036(b) which may at any time be directly or indirectly given to any trust hereunder; (iii) to possess or exercise any power of appointment with respect to any such trust; (iv) to exercise or retain any power described in IRC Section 2036(a) or (b) or IRC Section 2038; (v) to exercise any incident of ownership within the meaning of IRC Section 2042 with respect to any policy insuring the Grantor and held by the trust; (vi) to receive any distributions on behalf of a beneficiary (regardless of the Grantor's relationship to the beneficiary); (vii) to possess or exercise any rights or discretion granted to a beneficiary hereunder; or (viii) to permit any trust distribution which would have the effect of discharging any legal obligation of the Grantor, of the Grantor's spouse, or of the Trustee (including any obligation relating to the support and/or education of any beneficiary hereunder), other than legal obligations arising under this Trust Agreement.

## SECTION 6.   THE GRANTOR HAS NO RIGHTS IN THIS TRUST

After the execution of this Trust Agreement, the Grantor shall have no right, title, or interest in the income or principal of this trust. In addition, the Grantor shall have no right, title, interest, power, incident of ownership, or any other benefit in any trust property.

Neither the Grantor's estate nor the Grantor shall have any reversionary or similar interest in the trust or the property held by it.

## SECTION 7.   THE GRANTOR'S INTENTION

In keeping with the wholly discretionary nature of this trust and all separate trusts created hereunder, no beneficiary, except as regards to any irrevocable vesting in the beneficiary's favor, shall have any ascertainable, proportionate, actuarial or otherwise fixed or definable right to or interest in all or any portion of any trust or its property. It is the Grantor's intent that the Trustee have all of the discretion of a natural person, and that a potential distribution beneficiary hold nothing more than a mere expectancy. It is also the Grantor's intent that this Paragraph be interpreted to provide the Trustee with the greatest discretion in making distributions allowed under law.

## ARTICLE TWO

## ADMINISTRATION OF THE COMMON TRUST

### SECTION 1.    DISPOSITION OF THE TRUST PROPERTY

Commencing on the date of this Trust Agreement and until the Grantor's death (the "Termination Date"), the Trustee shall hold, administer and distribute the trust as follows.

**A.    Distribution of Income and Principal.**

The Trustee shall distribute, subject to the provisions of Article Eleven, Section 5 below, to any one or more of the Grantor's children, from time to time living, as much of the net income and principal of the Trust, even to the extent of exhausting principal as the Trustee believes desirable for the health, education, support, and maintenance of the Grantor's children (including those children born or legally adopted subsequent to the date of this Trust Agreement), in each case considering all circumstances and factors deemed pertinent by the Trustee.

**1.    Distributions to Beneficiaries.**

The Grantor's primary concern during the life of the beneficiaries is for the beneficiaries' health, education, support, and maintenance rather than for the preservation of trust principal for ultimate distribution to the beneficiaries or the beneficiaries' descendants.

**2.    Unequal Distributions Allowed.**

The Trustee may make distributions to or for the benefit of one or more of the beneficiaries to the complete exclusion of the other beneficiaries. Distributions may be made to the beneficiaries in equal or unequal amounts according to their respective needs.

A distribution to or for the benefit of a beneficiary shall be charged as an advance against that beneficiary's ultimate share.

**3.    Other Available Resources.**

In making distributions pursuant to this Article, the Trustee need not consider other income or resources available to the beneficiary that are outside of the trust and are known to the Trustee.

**4.    No Discharge of Legal Obligations.**

No payment or distribution shall be made by the Trustee for the discharge of any of the Grantor's legal obligations, or otherwise for the Grantor's monetary benefit. If the Grantor's spouse has the power to remove a Trustee of this trust, the Trustee shall not distribute any of the principal of the trust that would in any manner discharge the Grantor's spouse's legal obligation to a beneficiary of the trust, if the

Grantor's spouse is disabled, the Trustee shall ignore this restriction during the period of the Grantor's spouse's disability, and the Grantor's spouse shall not have the power to remove a Trustee of the trust.

5.    **Undistributed Net Income.**

Any net income not distributed by the Trustee shall be accumulated and added to the principal of the trust.

## SECTION 2.    LIMITED POWER OF APPOINTMENT

During the Grantor's lifetime, the currently acting Trustee shall have the limited power (exercisable in a non-fiduciary capacity, either personally or by an attorney-in-fact under a power of attorney, without the consent or approval of any person or entity in a fiduciary capacity) to appoint the principal of any trust created hereunder to any one or more of the Grantor's children (or to a trust for their benefit), whether living at the time of exercise or thereafter born, in whole or in part, or in equal or unequal proportions, subject to the following provisions:

A.    **Writing Required**

This limited power of appointment shall be exercised in writing with all the formalities of a deed delivered to the Grantor, on or before the effective date of such appointment set forth in such instrument, which must be during the continuance of such trust but which may relate to a specified event, such as the time of the death of the holder of the power.

B.    **Release/Further Limitation of Power**

The holder of the power may, at any time and from time to time during his or her lifetime, by written instrument delivered to the beneficiaries, release such limited power of appointment with respect to any or all of the property subject to such power and/or may further limit the persons or entities in whose favor this power may be exercised or the extent to which this power may be exercised.

C.    **Qualifications on the Limited Power of Appointment.**

The power shall only be exercisable by the holder of the power, and shall not be exercised in favor of the holder, the holder's estate, the holder's creditors, or the creditors of the holder's estate.

The power shall not be exercised by the holder in any manner that would result in an economic benefit to the holder or that would in any manner discharge or reduce any legal obligation of the holder, or any legal obligation of the Grantor or the Grantor's spouse.

The power shall not apply to any "incidents of ownership" of any life insurance policy insuring the life of the Trustee and held by the trust.

The power shall not be effective to the extent it could be considered a general power of appointment because it could be a reciprocal power with someone else holding another power of appointment or power of distribution in this trust or any other trust.

2-2

The power shall not be exercised by the holder if the value of the principal of the trust after the exercise would be less than the aggregate amount subject to a right of withdrawal under Article Eight after the exercise.

## SECTION 3.   ELECTING SMALL BUSINESS TRUST

### A.   Separate Shares.

The Trustee may hold all shares of S corporation stock held by the Trustee (the ESBT share) as a separate trust under this Article. The Trustee shall apportion expenses of the trust between the two (2) shares (the ESBT share and the remaining share), in a manner that is not inconsistent with the Internal Revenue Code of 1986, as amended (the Code) and regulations promulgated thereunder.

### B.   Distributions to U.S. Beneficiaries Only.

No Trustee may distribute income or principal to any beneficiary of the ESBT share of the trust who is not at the time of that distribution a citizen of the United States or a resident of the United States, as defined for federal income tax purposes (a "U.S. person" or a "non-U.S. person", as the case may be), notwithstanding any other provision of this Trust Agreement. The Trustee shall hold for future distribution any amounts that would otherwise have been distributed to a non-U.S. person, subject to the provisions of this Section 3. The Trustee shall distribute such accumulated amounts to the non-U.S. person when he or she becomes a U.S. person. If the beneficiary dies without ever becoming a U.S. person, the Trustee shall distribute these accumulated amounts to the successor in interest to that non-U.S. person's portion of the ESBT share of the trust, if the successor in interest is a U.S. person. If the successor in interest is not a U.S. person on the date of the death of the non-U.S. beneficiary, and if the successor in interest does not become a U.S. person within two (2) years of the date of the death of the non-U.S. beneficiary's, the Trustee shall reallocate the portion of the ESBT share of the trust that was otherwise being held for the non-U.S. beneficiary, to the other beneficiaries of the ESBT share of the trust who are U.S. persons. Such allocation shall be made pro rata, based on the relative value of each other share.

### C.   Election.

The Trustee shall make the election required by Section 1361(e)(3) of the Code, to qualify the ESBT share as an electing small business trust, for purposes of subchapter S of the Code.

## SECTION 4.   TERMINATION OF THE COMMON TRUST

Upon the Termination Date, the Trustee shall hold, administer and distribute the principal and any accrued and undistributed net income of the trust as provided in the Articles that follow.

**ARTICLE THREE**

**DISTRIBUTION OF THE GRANTOR'S TRUST PROPERTY**

**SECTION 1.   DIVISION INTO SEPARATE TRUSTS**

Upon the termination of the Common Trust (the "Division Date"), the Trustee shall divide the remaining trust property into as many separate trusts as shall be necessary to establish one equal trust for each of the Grantor's children who is either living on the Division Date or then deceased with one or more descendants then living. A trust established for a living child of the Grantor shall be named for that child and held, administered and distributed in accordance with the relevant provisions of Section 2 of this Article. A trust established for a deceased child of the Grantor shall be held, administered, and distributed in accordance with the provisions of Section 3 of this Article. If the Grantor is not survived by any then living descendants, the remaining trust property shall be held, administered, and distributed in accordance with the provisions of Article Four.

In determining the value of each trust share, the Trustee shall add to the value of the trust property the aggregate value of all distributions, if any, made under Article Two, Section 1, Paragraph (A)(2) of this Trust Agreement. The resulting total shall be divided by the number of trusts created under this Section. The trust share of any child, or the trust of a deceased child who has then living descendants, shall be reduced by the aggregate value of all such distributions made to that child (and/or to that child's descendants), if any, under Article Two, Section 1, Paragraph (A)(2) of this Trust Agreement. In making a reduction of any trust for such distributions, the value of any amount previously distributed shall be its value as of the date of its distribution. If the amount of the reduction exceeds the value of the trust share of any beneficiary, the beneficiary shall receive nothing. The beneficiary shall have no duty to refund any excess distributions.

Notwithstanding anything elsewhere set forth in this Trust Agreement to the contrary, the Trustee may delay making the distributions and divisions required by this Section for a reasonable period of time if the Trustee, in its sole discretion, determines that such delay will accomplish one or more of the trust's purposes.

**SECTION 2.   DISTRIBUTION OF TRUSTS**

   **A.    Distribution of Trust for CHRISTINA M. MANCINI.**

The Trustee, in its sole and absolute discretion, may apply to, or for the benefit of, **CHRISTINA M. MANCINI** (the "Primary Beneficiary") and the descendants of **CHRISTINA M. MANCINI** (hereinafter collectively referred to as the "beneficiaries") as much of the net income and principal from the trust as the Trustee deems advisable for the health, education, support, and maintenance of the beneficiaries. Any excess net income shall be added to principal.

   **1.    Guidelines for Discretionary Distributions.**

To the extent that the Grantor has given the Trustee any discretionary authority over the distribution of income or principal to the beneficiaries, the Trustee need not consider other income or resources available to the beneficiaries that are outside of the trust and are known to the Trustee.

The Trustee may lend income and principal of the trust to the beneficiaries or buy assets for their use, rather than distributing income or principal outright to beneficiaries, unless the Trustee determines that outright distributions are more appropriate. The Trustee may permit the use of any trust property by any beneficiary without the necessity of any compensation of any kind from the beneficiary to the trust for such use. In this regard, the Trustee may acquire any property, whether real or personal and whether income producing or not, which the Trustee believes desirable for a beneficiary's health, education, support, and maintenance. Such property may include, but shall not be limited to, residential real estate, household furnishings and appliances, artwork and jewelry.

The Trustee may also assist a beneficiary in a business or profession by (i) making a distribution directly to the beneficiary, (ii) investing trust principal directly in the business venture, without regard to whether such investment is a proper investment for trustees under applicable law, or (iii) loaning funds to the beneficiary or the business venture on such terms and conditions as the Trustee deems appropriate.

Although the Grantor does not intend to limit the discretion of the Trustee, it is the Grantor's belief that, in most cases, the most appropriate method for assisting a beneficiary consistent with the present and future needs of other trust beneficiaries is through a loan of trust funds to the individual.

Without in any way limiting the nature of the discretion conferred upon the Trustee and without imposing any fiduciary duty to do so, it is the Grantor's intention that the Trustee should consider the interests of the Primary Beneficiary as paramount to the interests of the other beneficiaries.

A distribution to or for the benefit of a beneficiary shall be charged to the trust rather than against the beneficiary's ultimate share upon the termination of the trust.

2.   **Limited Power of Appointment Upon Death of a Primary Beneficiary.**

The Primary Beneficiary of a trust created under this Paragraph (A) shall have the limited testamentary power to appoint the remaining property in the Primary Beneficiary's trust to, or in trust for the benefit of, a person or persons among the Grantor's then living descendants (other than the Primary Beneficiary, the Primary Beneficiary's estate or creditors, or the creditors of the Primary Beneficiary's estate) or to any one or more organizations described in IRC Sections 642(c), 2055(a) and 2522(a), in such proportions and upon such terms and conditions and estates, with the powers, in the manner and at the times as the Primary Beneficiary appoints by a valid last will or by a valid living trust agreement which specifically refers to this power.

The Primary Beneficiary may, at any time and from time to time during the Primary Beneficiary's lifetime, by a written, acknowledged instrument delivered to the Trustee, release such power of appointment with respect to any or all of the property subject to such power, or may further limit the persons or entities in whose favor this power may be exercised or the extent to which this power may be exercised.

If the Primary Beneficiary does not effectively exercise this power of appointment for any reason, in whole or in part, the trust, to the extent not effectively appointed

by the Primary Beneficiary, shall, upon the Primary Beneficiary's death, be disposed of in accordance with the remaining terms and conditions provided in this Paragraph (A).

3.   **Disposition of Unappointed Property For Descendants of the Primary Beneficiary.**

Upon the death of the Primary Beneficiary, if any descendant of the Primary Beneficiary is then living, the unappointed principal and accrued income, if any, of the trust shall be divided into shares to be set apart, on a per stirpital basis with respect to the then living descendants of the Primary Beneficiary. Any share so set apart with respect to a descendant of the Primary Beneficiary shall be named for such descendant and shall be held, administered and distributed as provided in this Paragraph (A), with such descendant for whom such share was created referred to as the "Primary Beneficiary", and with such Primary Beneficiary and such Primary Beneficiary's descendants collectively referred to as the "beneficiaries". If no descendant of the Primary Beneficiary is then living, the remaining trust property shall be distributed to the then living descendants, per stirpes, of the Primary Beneficiary's nearest ancestor who is the Grantor or a descendant of the Grantor and of whom one or more descendants are then living, provided, however that any share thus inuring to a descendant of the Grantor shall be held in a separate trust (then or previously created with respect to the descendant under this Paragraph (A)) to be administered as provided in this Paragraph (A). If a trust for a descendant has already been established in accordance with other provisions of this Article, and if the provisions of such other trust differ from the provisions of the trust for such descendant under this Paragraph (A), then the share created for such descendant pursuant to this Paragraph (A) to be administered as provided in this Paragraph (A) shall, notwithstanding this Paragraph (A), be added to such other trust and be administered in accordance with the provisions of such other trust.

4.   **General Dispositive Intention of the Grantor.**

It is the Grantor's general intention that, upon the death of any Primary Beneficiary of any trust under this Paragraph (A), regardless of the Primary Beneficiary's generation from the Grantor (except to the extent that the Primary Beneficiary effectively exercises the Primary Beneficiary's limited power of appointment) the property in that trust be divided, as provided above, on a per stirpital basis, into trusts for the Primary Beneficiary's surviving descendants with each of those descendants becoming a Primary Beneficiary of such descendant's own trust, to be similarly disposed of through all succeeding generations in perpetuity to the maximum extent permitted by the governing law.

B.   **Distribution of Trust for RICHARD M. MANCINI.**

The Trustee, in its sole and absolute discretion, may apply to, or for the benefit of, **RICHARD M. MANCINI** (the "Primary Beneficiary") and the descendants of **RICHARD M. MANCINI** (hereinafter collectively referred to as the "beneficiaries") as much of the net income and principal from the trust as the Trustee deems advisable for the health, education, support, and maintenance of the beneficiaries. Any excess net income shall be added to principal.

1.    **Guidelines for Discretionary Distributions.**

To the extent that the Grantor has given the Trustee any discretionary authority over the distribution of income or principal to the beneficiaries, the Trustee need not consider other income or resources available to the beneficiaries that are outside of the trust and are known to the Trustee.

The Trustee may lend income and principal of the trust to the beneficiaries or buy assets for their use, rather than distributing income or principal outright to beneficiaries, unless the Trustee determines that outright distributions are more appropriate. The Trustee may permit the use of any trust property by any beneficiary without the necessity of any compensation of any kind from the beneficiary to the trust for such use. In this regard, the Trustee may acquire any property, whether real or personal and whether income producing or not, which the Trustee believes desirable for a beneficiary's health, education, support, and maintenance. Such property may include, but shall not be limited to, residential real estate, household furnishings and appliances, artwork and jewelry.

The Trustee may also assist a beneficiary in a business or profession by (i) making a distribution directly to the beneficiary, (ii) investing trust principal directly in the business venture, without regard to whether such investment is a proper investment for trustees under applicable law, or (iii) loaning funds to the beneficiary or the business venture on such terms and conditions as the Trustee deems appropriate.

Although the Grantor does not intend to limit the discretion of the Trustee, it is the Grantor's belief that, in most cases, the most appropriate method for assisting a beneficiary consistent with the present and future needs of other trust beneficiaries is through a loan of trust funds to the individual.

Without in any way limiting the nature of the discretion conferred upon the Trustee and without imposing any fiduciary duty to do so, it is the Grantor's intention that the Trustee should consider the interests of the Primary Beneficiary as paramount to the interests of the other beneficiaries.

A distribution to or for the benefit of a beneficiary shall be charged to the trust rather than against the beneficiary's ultimate share upon the termination of the trust.

2.    **Limited Power of Appointment Upon Death of a Primary Beneficiary.**

The Primary Beneficiary of a trust created under this Paragraph (B) shall have the limited testamentary power to appoint the remaining property in the Primary Beneficiary's trust to, or in trust for the benefit of, a person or persons among the Grantor's then living descendants (other than the Primary Beneficiary, the Primary Beneficiary's estate or creditors, or the creditors of the Primary Beneficiary's estate) or to any one or more organizations described in IRC Sections 642(c), 2055(a) and 2522(a), in such proportions and upon such terms and conditions and estates, with the powers, in the manner and at the times as the Primary Beneficiary appoints by a valid last will or by a valid living trust agreement which specifically refers to this power.

The Primary Beneficiary may, at any time and from time to time during the Primary Beneficiary's lifetime, by a written, acknowledged instrument delivered to the Trustee, release such power of appointment with respect to any or all of the property subject to such power, or may further limit the persons or entities in whose favor this power may be exercised or the extent to which this power may be exercised.

If the Primary Beneficiary does not effectively exercise this power of appointment for any reason, in whole or in part, the trust, to the extent not effectively appointed by the Primary Beneficiary, shall, upon the Primary Beneficiary's death, be disposed of in accordance with the remaining terms and conditions provided in this Paragraph (B).

3.      **Disposition of Unappointed Property For Descendants of the Primary Beneficiary.**

Upon the death of the Primary Beneficiary, if any descendant of the Primary Beneficiary is then living, the unappointed principal and accrued income, if any, of the trust shall be divided into shares to be set apart, on a per stirpital basis with respect to the then living descendants of the Primary Beneficiary. Any share so set apart with respect to a descendant of the Primary Beneficiary shall be named for such descendant and shall be held, administered and distributed as provided in this Paragraph (B), with such descendant for whom such share was created referred to as the "Primary Beneficiary", and with such Primary Beneficiary and such Primary Beneficiary's descendants collectively referred to as the "beneficiaries". If no descendant of the Primary Beneficiary is then living, the remaining trust property shall be distributed to the then living descendants, per stirpes, of the Primary Beneficiary's nearest ancestor who is the Grantor or a descendant of the Grantor and of whom one or more descendants are then living, provided, however that any share thus inuring to a descendant of the Grantor shall be held in a separate trust (then or previously created with respect to the descendant under this Paragraph (B)) to be administered as provided in this Paragraph (B). If a trust for a descendant has already been established in accordance with other provisions of this Article, and if the provisions of such other trust differ from the provisions of the trust for such descendant under this Paragraph (B), then the share created for such descendant pursuant to this Paragraph (B) to be administered as provided in this Paragraph (B) shall, notwithstanding this Paragraph (B), be added to such other trust and be administered in accordance with the provisions of such other trust.

4.      **General Dispositive Intention of the Grantor.**

It is the Grantor's general intention that, upon the death of any Primary Beneficiary of any trust under this Paragraph (B), regardless of the Primary Beneficiary's generation from the Grantor (except to the extent that the Primary Beneficiary effectively exercises the Primary Beneficiary's limited power of appointment) the property in that trust be divided, as provided above, on a per stirpital basis, into trusts for the Primary Beneficiary's surviving descendants with each of those descendants becoming a Primary Beneficiary of such descendant's own trust, to be similarly disposed of through all succeeding generations in perpetuity to the maximum extent permitted by the governing law.

C.     **Distribution of Trust for SABRINA A. MANCINI.**

The Trustee, in its sole and absolute discretion, may apply to, or for the benefit of, **SABRINA A. MANCINI** (the "Primary Beneficiary") and the descendants of **SABRINA A. MANCINI** (hereinafter collectively referred to as the "beneficiaries") as much of the net income and principal from the trust as the Trustee deems advisable for the health, education, support, and maintenance of the beneficiaries. Any excess net income shall be added to principal.

1.     **Guidelines for Discretionary Distributions.**

To the extent that the Grantor has given the Trustee any discretionary authority over the distribution of income or principal to the beneficiaries, the Trustee need not consider other income or resources available to the beneficiaries that are outside of the trust and are known to the Trustee.

The Trustee may lend income and principal of the trust to the beneficiaries or buy assets for their use, rather than distributing income or principal outright to beneficiaries, unless the Trustee determines that outright distributions are more appropriate. The Trustee may permit the use of any trust property by any beneficiary without the necessity of any compensation of any kind from the beneficiary to the trust for such use. In this regard, the Trustee may acquire any property, whether real or personal and whether income producing or not, which the Trustee believes desirable for a beneficiary's health, education, support, and maintenance. Such property may include, but shall not be limited to, residential real estate, household furnishings and appliances, artwork and jewelry.

The Trustee may also assist a beneficiary in a business or profession by (i) making a distribution directly to the beneficiary, (ii) investing trust principal directly in the business venture, without regard to whether such investment is a proper investment for trustees under applicable law, or (iii) loaning funds to the beneficiary or the business venture on such terms and conditions as the Trustee deems appropriate.

Although the Grantor does not intend to limit the discretion of the Trustee, it is the Grantor's belief that, in most cases, the most appropriate method for assisting a beneficiary consistent with the present and future needs of other trust beneficiaries is through a loan of trust funds to the individual.

Without in any way limiting the nature of the discretion conferred upon the Trustee and without imposing any fiduciary duty to do so, it is the Grantor's intention that the Trustee should consider the interests of the Primary Beneficiary as paramount to the interests of the other beneficiaries.

A distribution to or for the benefit of a beneficiary shall be charged to the trust rather than against the beneficiary's ultimate share upon the termination of the trust.

2.     **Limited Power of Appointment Upon Death of a Primary Beneficiary.**

The Primary Beneficiary of a trust created under this Paragraph (C) shall have the limited testamentary power to appoint the remaining property in the Primary Beneficiary's trust to, or in trust for the benefit of, a person or persons among the

Grantor's then living descendants (other than the Primary Beneficiary, the Primary Beneficiary's estate or creditors, or the creditors of the Primary Beneficiary's estate) or to any one or more organizations described in IRC Sections 642(c), 2055(a) and 2522(a), in such proportions and upon such terms and conditions and estates, with the powers, in the manner and at the times as the Primary Beneficiary appoints by a valid last will or by a valid living trust agreement which specifically refers to this power.

The Primary Beneficiary may, at any time and from time to time during the Primary Beneficiary's lifetime, by a written, acknowledged instrument delivered to the Trustee, release such power of appointment with respect to any or all of the property subject to such power, or may further limit the persons or entities in whose favor this power may be exercised or the extent to which this power may be exercised.

If the Primary Beneficiary does not effectively exercise this power of appointment for any reason, in whole or in part, the trust, to the extent not effectively appointed by the Primary Beneficiary, shall, upon the Primary Beneficiary's death, be disposed of in accordance with the remaining terms and conditions provided in this Paragraph (C).

3.    **Disposition of Unappointed Property For Descendants of the Primary Beneficiary.**

Upon the death of the Primary Beneficiary, if any descendant of the Primary Beneficiary is then living, the unappointed principal and accrued income, if any, of the trust shall be divided into shares to be set apart, on a per stirpital basis with respect to the then living descendants of the Primary Beneficiary. Any share so set apart with respect to a descendant of the Primary Beneficiary shall be named for such descendant and shall be held, administered and distributed as provided in this Paragraph (C), with such descendant for whom such share was created referred to as the "Primary Beneficiary", and with such Primary Beneficiary and such Primary Beneficiary's descendants collectively referred to as the "beneficiaries". If no descendant of the Primary Beneficiary is then living, the remaining trust property shall be distributed to the then living descendants, per stirpes, of the Primary Beneficiary's nearest ancestor who is the Grantor or a descendant of the Grantor and of whom one or more descendants are then living, provided, however that any share thus inuring to a descendant of the Grantor shall be held in a separate trust (then or previously created with respect to the descendant under this Paragraph (C)) to be administered as provided in this Paragraph (C). If a trust for a descendant has already been established in accordance with other provisions of this Article, and if the provisions of such other trust differ from the provisions of the trust for such descendant under this Paragraph (C), then the share created for such descendant pursuant to this Paragraph (C) to be administered as provided in this Paragraph (C) shall, notwithstanding this Paragraph (C), be added to such other trust and be administered in accordance with the provisions of such other trust.

4.    **General Dispositive Intention of the Grantor.**

It is the Grantor's general intention that, upon the death of any Primary Beneficiary of any trust under this Paragraph (C), regardless of the Primary Beneficiary's generation from the Grantor (except to the extent that the Primary Beneficiary

effectively exercises the Primary Beneficiary's limited power of appointment) the property in that trust be divided, as provided above, on a per stirpital basis, into trusts for the Primary Beneficiary's surviving descendants with each of those descendants becoming a Primary Beneficiary of such descendant's own trust, to be similarly disposed of through all succeeding generations in perpetuity to the maximum extent permitted by the governing law.

**D.**     **Distribution of Trust for MARINA A. MANCINI.**

The Trustee, in its sole and absolute discretion, may apply to, or for the benefit of, **MARINA A. MANCINI** (the "Primary Beneficiary") and the descendants of **MARINA A. MANCINI** (hereinafter collectively referred to as the "beneficiaries") as much of the net income and principal from the trust as the Trustee deems advisable for the health, education, support, and maintenance of the beneficiaries. Any excess net income shall be added to principal.

**1.**     **Guidelines for Discretionary Distributions.**

To the extent that the Grantor has given the Trustee any discretionary authority over the distribution of income or principal to the beneficiaries, the Trustee need not consider other income or resources available to the beneficiaries that are outside of the trust and are known to the Trustee.

The Trustee may lend income and principal of the trust to the beneficiaries or buy assets for their use, rather than distributing income or principal outright to beneficiaries, unless the Trustee determines that outright distributions are more appropriate. The Trustee may permit the use of any trust property by any beneficiary without the necessity of any compensation of any kind from the beneficiary to the trust for such use. In this regard, the Trustee may acquire any property, whether real or personal and whether income producing or not, which the Trustee believes desirable for a beneficiary's health, education, support, and maintenance. Such property may include, but shall not be limited to, residential real estate, household furnishings and appliances, artwork and jewelry.

The Trustee may also assist a beneficiary in a business or profession by (i) making a distribution directly to the beneficiary, (ii) investing trust principal directly in the business venture, without regard to whether such investment is a proper investment for trustees under applicable law, or (iii) loaning funds to the beneficiary or the business venture on such terms and conditions as the Trustee deems appropriate.

Although the Grantor does not intend to limit the discretion of the Trustee, it is the Grantor's belief that, in most cases, the most appropriate method for assisting a beneficiary consistent with the present and future needs of other trust beneficiaries is through a loan of trust funds to the individual.

Without in any way limiting the nature of the discretion conferred upon the Trustee and without imposing any fiduciary duty to do so, it is the Grantor's intention that the Trustee should consider the interests of the Primary Beneficiary as paramount to the interests of the other beneficiaries.

A distribution to or for the benefit of a beneficiary shall be charged to the trust rather than against the beneficiary's ultimate share upon the termination of the trust.

2.      **Limited Power of Appointment Upon Death of a Primary Beneficiary.**

The Primary Beneficiary of a trust created under this Paragraph (D) shall have the limited testamentary power to appoint the remaining property in the Primary Beneficiary's trust to, or in trust for the benefit of, a person or persons among the Grantor's then living descendants (other than the Primary Beneficiary, the Primary Beneficiary's estate or creditors, or the creditors of the Primary Beneficiary's estate) or to any one or more organizations described in IRC Sections 642(c), 2055(a) and 2522(a), in such proportions and upon such terms and conditions and estates, with the powers, in the manner and at the times as the Primary Beneficiary appoints by a valid last will or by a valid living trust agreement which specifically refers to this power.

The Primary Beneficiary may, at any time and from time to time during the Primary Beneficiary's lifetime, by a written, acknowledged instrument delivered to the Trustee, release such power of appointment with respect to any or all of the property subject to such power, or may further limit the persons or entities in whose favor this power may be exercised or the extent to which this power may be exercised.

If the Primary Beneficiary does not effectively exercise this power of appointment for any reason, in whole or in part, the trust, to the extent not effectively appointed by the Primary Beneficiary, shall, upon the Primary Beneficiary's death, be disposed of in accordance with the remaining terms and conditions provided in this Paragraph (D).

3.      **Disposition of Unappointed Property For Descendants of the Primary Beneficiary.**

Upon the death of the Primary Beneficiary, if any descendant of the Primary Beneficiary is then living, the unappointed principal and accrued income, if any, of the trust shall be divided into shares to be set apart, on a per stirpital basis with respect to the then living descendants of the Primary Beneficiary. Any share so set apart with respect to a descendant of the Primary Beneficiary shall be named for such descendant and shall be held, administered and distributed as provided in this Paragraph (D), with such descendant for whom such share was created referred to as the "Primary Beneficiary", and with such Primary Beneficiary and such Primary Beneficiary's descendants collectively referred to as the "beneficiaries". If no descendant of the Primary Beneficiary is then living, the remaining trust property shall be distributed to the then living descendants, per stirpes, of the Primary Beneficiary's nearest ancestor who is the Grantor or a descendant of the Grantor and of whom one or more descendants are then living, provided, however that any share thus inuring to a descendant of the Grantor shall be held in a separate trust (then or previously created with respect to the descendant under this Paragraph (D)) to be administered as provided in this Paragraph (D). If a trust for a descendant has already been established in accordance with other provisions of this Article, and if the provisions of such other trust differ from the provisions of the trust for such descendant under this Paragraph (D), then the share created for such descendant pursuant to this Paragraph (D) to be administered as provided in this Paragraph (D)

shall, notwithstanding this Paragraph (D), be added to such other trust and be administered in accordance with the provisions of such other trust.

4.    **General Dispositive Intention of the Grantor.**

It is the Grantor's general intention that, upon the death of any Primary Beneficiary of any trust under this Paragraph (D), regardless of the Primary Beneficiary's generation from the Grantor (except to the extent that the Primary Beneficiary effectively exercises the Primary Beneficiary's limited power of appointment) the property in that trust be divided, as provided above, on a per stirpital basis, into trusts for the Primary Beneficiary's surviving descendants with each of those descendants becoming a Primary Beneficiary of such descendant's own trust, to be similarly disposed of through all succeeding generations in perpetuity to the maximum extent permitted by the governing law.

## SECTION 3.    TRUST OF A DECEASED CHILD

If the trust share created for a deceased child who has then living descendants would have referred to the deceased child as the "Primary Beneficiary" had the child survived, then such trust share shall be further divided into per stirpital parts for such descendants and each per stirpital part set aside for each such descendant shall be held, administered and distributed in accordance with the provisions of Section 2 of this Article that would have applied had the child survived, but treating the descendant as the "Primary Beneficiary" of the per stirpital part established hereunder for such descendant. A trust established under this section shall be named for the descendant for whom the trust is established.

## SECTION 4.    DISCRETIONARY DISTRIBUTIONS BY INDEPENDENT TRUSTEE

When the Grantor has authorized the Independent Trustee to make distributions for a beneficiary's best interests, the Grantor intends for the Independent Trustee to be able to make funds available to the beneficiary for purposes that are unrelated to the beneficiary's health, education, support and maintenance. The Independent Trustee should exercise its discretion in a manner it believes that the Grantor would if the Grantor were the Trustee. In doing so, the Independent Trustee should take into account the Grantor's values and beliefs as the Grantor has expressed them to others, whether set forth in writing (including written communications to the Independent Trustee) or orally. The Independent Trustee may consult with members of the Grantor's family, friends, and advisers as appropriate for guidance in determining whether a distribution would be in a beneficiary's best interests, but the decision will be made by the Independent Trustee alone and in its sole judgment.

The Grantor does not want trust funds or assets used to support a beneficiary in a privileged lifestyle unless that beneficiary is living a productive life and functioning as a contributing member to society, as evidenced by such things as employment (including employment in low or nonpaying occupations such as being a homemaker or a volunteer worker for charity), raising a family, or enrollment in an accredited institution of learning to acquire skills and qualifications to live a productive life. These conditions can be excused by the Independent Trustee for reasons that in its judgment the Grantor would consider to be good cause (for example, mental or physical disability, or normal retirement after a career of productive employment).

**SECTION 5.     ELECTING SMALL BUSINESS TRUST**

**A.     Separate Shares.**

For each of the separate trusts created under this Article, the Trustee may hold all shares of S corporation stock held by the Trustee (the ESBT share) as a separate trust. The Trustee shall apportion expenses of the trust between the two (2) shares (the ESBT share and the remaining share), in a manner that is not inconsistent with the Internal Revenue Code of 1986, as amended (the Code) and regulations promulgated thereunder.

**B.     Distributions to U.S. Beneficiaries Only.**

No Trustee may distribute income or principal to any beneficiary of the ESBT share of the trust who is not at the time of that distribution a citizen of the United States or a resident of the United States, as defined for federal income tax purposes (a "U.S. person" or a "non-U.S. person", as the case may be), notwithstanding any other provision of this Trust Agreement. The Trustee shall hold for future distribution any amounts that would otherwise have been distributed to a non-U.S. person, subject to the provisions of this Section 3. The Trustee shall distribute such accumulated amounts to the non-U.S. person when he or she becomes a U.S. person. If the beneficiary dies without ever becoming a U.S. person, the Trustee shall distribute these accumulated amounts to the successor in interest to that non-U.S. person's portion of the ESBT share of the trust, if the successor in interest is a U.S. person. If the successor in interest is not a U.S. person on the date of the death of the non-U.S. beneficiary, and if the successor in interest does not become a U.S. person within two (2) years of the date of the death of the non-U.S. beneficiary's, the Trustee shall reallocate the portion of the ESBT share of the trust that was otherwise being held for the non-U.S. beneficiary, to the other beneficiaries of the ESBT share of the trust who are U.S. persons. Such allocation shall be made pro rata, based on the relative value of each other share.

**C.     Election.**

The Trustee shall make the election required by Section 1361(e)(3) of the Code, to qualify the ESBT share as an electing small business trust, for purposes of subchapter S of the Code.

## ARTICLE FOUR

### ULTIMATE DISTRIBUTION PATTERN

If at any time there is no person, corporation, or other entity entitled to receive all or any part of the trust property, then the trust property shall be distributed to Grantor's spouse, **LISA MANCINI**, if living, otherwise the trust property shall be distributed as follows:

    50% to the then acting Trustee(s) of the **EDWARD A. MANCINI ELECTING SMALL BUSINESS TRUST AGREEMENT**, dated December 15, 2014; and

    50% to the then acting Trustee(s) of the **DANIEL C. MANCINI ELECTING SMALL BUSINESS TRUST AGREEMENT**, dated December 15, 2014;

to be held, administered and distributed in accordance with the terms thereof.

## ARTICLE FIVE

## METHODS OF DISTRIBUTION AND TRUST ADMINISTRATION

### SECTION 1.   GENERAL GUIDELINES FOR DISTRIBUTION

Whenever a distribution is authorized or required to be made by a provision of this Trust Agreement to any beneficiary who is disabled or incapacitated, such distribution may be made by the Trustee:

> Without continuing court supervision or the intervention of a guardian, conservator, or any other legal representative.

> Without giving or requiring any bond or surety on bond.

> Pursuant to any of the methods authorized under this Article.

In making distributions under this Article, disability or incapacity shall include adjudicated mental incapacity by a court of competent jurisdiction, or incapacity because of age, illness, or injury.

Before making any distributions to beneficiaries under this Article, it is the Grantor's desire that the Trustee, to the extent that it is both reasonable and possible:

> Inquire into the ultimate disposition of the distributed funds.

> Take into consideration the behavior of trust beneficiaries with regard to their disposition of prior distributions of trust property.

The Trustee shall obtain a receipt from the person, corporation, or other entity receiving any distribution called for in this Article.

### SECTION 2.   METHODS OF PAYMENT

The Trustee may make the distributions called for in this Article in any one or more of the following ways:

> Directly to a beneficiary.

> To persons, corporations, or other entities for the use and benefit of the beneficiary.

> To an account in a commercial bank or savings institution in the name of the beneficiary, or in a form reserving the title, management, and custody of the account to a suitable person, corporation, or other entity for the use and benefit of the beneficiary.

> In any prudent form of annuity purchased for the use and benefit of the beneficiary.

> To any person or duly licensed financial institution, including the Trustee, as a custodian under the Uniform Transfers to Minors Act, or any similar act, of any state, or in any manner allowed by any state statute dealing with gifts or distributions to minors or other individuals under a legal disability, for the use and benefit of the beneficiary.

To any guardian or other person deemed by the Trustee to be responsible, and who has assumed the responsibility of caring for the beneficiary, for the use and benefit of the beneficiary.

To any IRC Section 529 account or arrangement, of which the beneficiary would be both the account owner and designated beneficiary, for the use and benefit of the beneficiary.

To any self-settled revocable living trust established by the beneficiary, for the use and benefit of the beneficiary.

## ARTICLE SIX

### THE RESIGNATION, REPLACEMENT, AND SUCCESSION OF THE TRUSTEES

#### SECTION 1.    THE RESIGNATION OF A TRUSTEE

Any Trustee of a trust created under this Trust Agreement may resign by giving thirty (30) days written notice to the Grantor or the Grantor's legal representative. If the Grantor is not living, the notice shall be delivered to the Co-Trustee, if any, and to all of the beneficiaries then eligible to receive mandatory or discretionary distributions of net income from such trust.

If a beneficiary is a minor or is incapacitated, the notice shall be delivered to that beneficiary's guardian or other legal representative.

#### SECTION 2.    THE REMOVAL OF A TRUSTEE

Any Trustee may be removed as follows:

A.    **Removal by the Grantor.**

The Grantor reserves the right to remove any incumbent Trustee or Co-Trustee and a successor Trustee designated to act in the future and appoint a successor Independent Trustee or a series of successor Independent Trustees or Co-Trustees. As a condition precedent to removing a Trustee or Co-Trustee hereunder, the Grantor shall first appoint a successor Independent Trustee (if no successor Trustee has already been named herein) or a series of successor Independent Trustees, as such term is defined under Paragraph (E) of this Section.

In addition, the Grantor shall have the right to add one or more Independent Co-Trustees to act presently or in the future.

B.    **Removal by the Grantor's Spouse.**

After the Grantor's death, or during any period that the Grantor is disabled, the Grantor's spouse may remove any incumbent Trustee or Co-Trustee and a successor Trustee designated to act in the future and appoint a successor Independent Trustee or a series of successor Independent Trustees or Co-Trustees. As a condition precedent to removing a Trustee or Co-Trustee hereunder, the Grantor's spouse shall first appoint a successor Independent Trustee (if no successor Trustee has already been named herein) or a series of successor Independent Trustees, as such term is defined under Paragraph (E) of this Section.

C.    **Removal by Other Beneficiaries.**

After the death or disability of both the Grantor and the Grantor's spouse, a majority of the beneficiaries (with any beneficiary under a legal disability acting through his/her Agent) then eligible to receive mandatory or discretionary distributions of net income under this Trust Agreement may remove any incumbent Trustee or Co-Trustee and a successor Trustee designated to act in the future and appoint a successor Independent Trustee or a series of

successor Independent Trustees or Co-Trustees. In addition, each beneficiary (with any beneficiary under a legal disability acting through his/her Agent) for whom a separate trust is named or established hereunder may remove any incumbent Trustee or Co-Trustee and a successor Trustee designated to act in the future and appoint a successor Independent Trustee or a series of successor Independent Trustees or Co-Trustees with respect to his/her separate trust. As a condition precedent to removing a Trustee or Co-Trustee hereunder, the Grantor's beneficiaries shall first appoint a successor Independent Trustee (if no successor Trustee has already been named herein) or a series of successor Independent Trustees, as such term is defined under Paragraph (E) of this Section.

Notwithstanding the foregoing, at such time as a beneficiary is acting as a Co-Trustee of a trust named or established hereunder for such beneficiary, the beneficiary need not appoint a replacement for a co-trustee being removed if there is at least one other co-trustee then serving with the beneficiary, it being the Grantor's intention that there be at least two co-trustees serving at all times. Moreover, the beneficiary need not appoint a replacement for a co-trustee being removed if at least one other co-trustee is a Corporate Fiduciary as that term is defined below.

**D.     Notice of Removal.**

Neither the Grantor, nor the Grantor's spouse, nor any of the Grantor's beneficiaries, need give any Trustee being removed any reason, cause, or ground for such removal.

Notice of removal shall be effective when made in writing by either:

> Personally delivering notice to the Trustee and securing a written receipt, or

> Mailing notice in the United States mail to the last known address of the Trustee by certified mail, return receipt requested.

**E.     Definition of Independent Trustee.**

As used in this Trust Agreement, the term "Independent Trustee" means any person (other than the Grantor, any beneficiary of the trust in question, or any person who is "related or subordinate" within the meaning of IRC Section 672(c) to either the Grantor or any beneficiary of the trust in question), or a Corporate Fiduciary, as that term is defined below.

In the event that any Independent Trustee should for any reason cease to meet such qualifications, he or she shall immediately cease to be a Trustee as though he or she had resigned immediately prior to the occurrence of such disqualification

**F.     Involuntary Exercise Prohibited.**

The right to remove and replace a Trustee may be exercised only voluntarily and shall not include an involuntary exercise.

## SECTION 3.   REPLACEMENT OF TRUSTEES

Trustees shall be replaced in the following manner:

A.   **Designation of Successor Trustees.**

If either **FRANK P. IANNUZZI** or **CYNTHIA R. MOREFIELD** does not accept the appointment as Trustee, dies, resigns, is removed, or becomes incapacitated, the other shall serve as sole Trustee.

If both **FRANK P. IANNUZZI** and **CYNTHIA R. MOREFIELD** do not accept the appointment as Co-Trustees, die, resign, are removed or become incapacitated, then **CHRISTINA M. MANCINI, RICHARD M. MANCINI, SABRINA A. MANCINI** and **MARINA A. MANCINI** shall serve as successor Co-Trustees.

If any of **CHRISTINA M. MANCINI, RICHARD M. MANCINI, SABRINA A. MANCINI** or **MARINA A. MANCINI** does not accept the appointment as Trustee, dies, resigns, is removed, or becomes incapacitated, the remaining Co-Trustees shall continue to serve.

In addition, after the death of the Grantor, each legally competent beneficiary who has attained or attains the age of 30 years shall become a Co-Trustee over any separate trust named or established hereunder for the benefit of such beneficiary.

The Grantor shall not serve as Trustee, Co-Trustee, successor Trustee or successor Co-Trustee of any trust created hereunder.

B.   **Successor Trustees.**

A Trustee may be listed more than once in this Section or an initial Trustee may also be named as a successor Trustee. Naming a Trustee more than once is done as a convenience only and is not to be construed as a termination of that Trustee's trusteeship.

C.   **Unfilled Trusteeship.**

In the event no named Trustees of a trust created under this Trust Agreement are available, a majority of the beneficiaries then eligible to receive mandatory or discretionary distributions of net income from such trust shall forthwith name a successor fiduciary.

If a majority of the beneficiaries then eligible to receive mandatory or discretionary distributions of net income from such trust cannot agree on a successor fiduciary, any such beneficiary can petition a court of competent jurisdiction, ex parte, to designate a successor fiduciary as a Trustee.

The court that designates the successor Trustee shall not acquire any jurisdiction over any trust created under this Trust Agreement, except to the extent necessary to name a successor Trustee.

Any successor Trustee named hereunder must be an Independent Trustee. In the event that any successor Trustee should for any reason cease to meet such qualifications, he or she shall immediately cease to be a Trustee as though he or she had resigned immediately prior to the occurrence of such disqualification.

## SECTION 4.   POWERS, DUTIES, LIMITATIONS, IMMUNITIES AND LIABILITIES OF FIDUCIARIES

Except as may be expressly provided:

### A.   Exoneration of Fiduciaries.

Each fiduciary of any trust hereunder is exonerated from liability, responsibility and accountability for such fiduciary's own acts and omissions except for such fiduciary's bad faith or reckless indifference, to the maximum extent allowed by applicable law.

### B.   Indemnification.

Each fiduciary shall be entitled to indemnification out of the property of the trust of which such fiduciary is serving as fiduciary for costs and legal fees incurred by the fiduciary in any action concerning any act or omission of a beneficiary or of any act or omission of such fiduciary, unless there shall be a finding that such fiduciary's act or omission stemmed from the fiduciary's own bad faith or reckless indifference.

### C.   Liability of Fiduciary.

A fiduciary shall not be liable for any loss occasioned by acts in good faith in the administration of such trust (including acts in reliance upon an opinion of counsel) and in any event a fiduciary shall be liable only for bad faith or reckless indifference, but not for honest errors of judgment.

### D.   Liability of Successor Fiduciaries.

Wherever reference is made herein to the fiduciary, such reference shall include any and all successor fiduciary at any time acting as the fiduciary of a trust, and unless expressly provided in a plan, this Trust Agreement or otherwise, each successor fiduciary shall be vested with all powers, duties, limitations and immunities as if originally named as fiduciary. Successor fiduciaries shall not be liable or responsible in any way for the acts or defaults of any predecessor fiduciary, nor for any loss or expense occasioned by any act by or omission of a predecessor fiduciary, and shall be liable only for the fiduciary's own acts and omissions with respect to trust property, and a successor fiduciary may accept the account rendered and the assets and property delivered by the predecessor fiduciary, and shall incur no liability to any person beneficially interested in any trust by reason of so doing.

### E.   Liability of Co-Fiduciaries.

No fiduciary shall be liable or responsible in any way for the acts or defaults of any co-fiduciary, nor for any loss or expense occasioned by any act by or omission of a co-fiduciary, and shall be liable only for the fiduciary's own acts and omissions.

## SECTION 5.   CORPORATE FIDUCIARIES

Any Corporate Fiduciary named under this Trust Agreement or appointed by a court of competent jurisdiction as a Trustee must be a bank or trust company situated in the United States having trust powers under applicable federal or state law.

If any bank or trust company ever succeeds to the trust business of any Corporate Fiduciary serving as a Trustee hereunder, whether because of a name change or any other form of reorganization, or if such Corporate Fiduciary ever transfers all of its existing business to any other bank or trust company, the successor shall thereupon, without any action being required, succeed to the trusteeship as if originally named.

During any period of time that a Corporate Fiduciary is acting as Trustee or Successor Trustee hereof, the following provisions shall apply:

The Corporate Fiduciary may employ attorneys and such other persons including auditors, appraisers, accountants, investment advisors and/or agents, even if such persons are affiliated or associated with the Corporate Fiduciary, to advise or assist the Corporate Fiduciary in the performance of administrative duties, to act without independent investigation on their recommendations and, instead of acting personally, to employ one or more agents to perform any act of administration, whether or not discretionary.

The fees, compensation and expenses of such attorneys and such other persons, including those persons who are affiliates of the Corporate Fiduciary shall be, unless already included in the compensation of the Corporate Fiduciary as set out in its prevailing schedule of fees, in addition to the compensation of the Corporate Fiduciary and shall be an expense of the trust.

The services, including discretionary and non-discretionary services which may be performed by affiliates of the Corporate Fiduciary may include but not be limited to: (i) Managing the investment of trust assets or advising on the investment of such assets on a discretionary or non-discretionary basis, directly or through the retention of investment managers who may also be affiliates of the Corporate Fiduciary; (ii) Acting as custodian of all or part of the trust assets; and (iii) Executing or effecting transactions for the trust, and providing such other services to the trust that are normally provided by a broker dealer.

In addition to investments otherwise authorized by this Trust Agreement, the Corporate Fiduciary, and any Investment Advisor retained by the Corporate Fiduciary, are authorized to invest in the following: (i) Registered investment companies and mutual funds which are offered, managed or to which services are provided by affiliates of the Corporate Fiduciary; and (ii) Securities, instruments of deposit, insurance contracts or policies, or other property distributed, underwritten or issued by an affiliate of the Corporate Fiduciary, or sold as an agent by an affiliate of the Corporate Fiduciary. To the extent that the trust is invested in securities issued by an affiliate of the Corporate Fiduciary, and such securities have voting rights, the voting of such securities shall be directed by the Co-Trustee, if applicable, or otherwise by the individual who, pursuant to the terms of this Trust Agreement, has the authority to direct the purchase or retention of such securities. Pursuant to any of the above investments, the affiliate will be compensated (directly or indirectly) as it would be in comparable transactions in which an affiliate is not involved and such compensation shall be in addition to the compensation of the Corporate Fiduciary, for its services as Trustee of the trust.

The Corporate Fiduciary acting hereunder, or its affiliate, from time to time may have a commercial lending relationship with the trust or a business in which special securities held in the trust represent interests. The Grantor favors such relationships even though they may constitute a technical conflict of interest and the Corporate Fiduciary or its affiliate may earn interest, take and enforce security interests in collateral owned by that business, or otherwise profit from such lending relationship. In no event shall the Corporate Fiduciary or its affiliate be liable for any such technical violation of any conflict of interest or similar rule. The Corporate Fiduciary-lender or affiliate-lender shall be entitled

to enforce all its creditor's rights with respect to any such loan even though such enforcement is not in the best interests of the trust.

The Corporate Fiduciary shall be compensated in accordance with its schedule of fees in effect at the time such services are performed. In addition to such fees, the Corporate Fiduciary, or its affiliates, shall also be entitled to receive any payments under Rule 12b-1 of the Investment Company Act of 1940 from any registered investment company, as well as such other fees or compensation paid by any mutual fund, unit investment trust or other investment vehicle, or agent.

## ARTICLE SEVEN

## GENERAL MATTERS AND INSTRUCTIONS WITH REGARD TO THE TRUSTEESHIP

### SECTION 1.   USE OF "TRUSTEE" NOMENCLATURE

As used throughout this Trust Agreement, the word "Trustee" shall refer to the initial Trustee as well as any single, additional, or successor Trustee. It shall also refer to any individual, corporation, or other entity acting as a replacement, substitute, or added Trustee.

### SECTION 2.   NO REQUIREMENT TO FURNISH BOND

The Trustee shall not be required to furnish any bond for the faithful performance of its duties.

If a bond is required by any law or court of competent jurisdiction, it is the Grantor's desire that no surety be required on such bond.

### SECTION 3.   COURT SUPERVISION NOT REQUIRED

All trusts created under this Trust Agreement shall be administered free from the active supervision of any court. Any statute or rule to the contrary notwithstanding, pursuant to Estates and Protected Individuals Code, specifically the Michigan trust code Section 7101, the trust shall not be registered in any court, unless deemed appropriate or necessary by the Trustee for reasons including, but not limited to, establishing a principal place of administration for the trust. Any registration of the trust shall be made in the appropriate court located in the County of Oakland, State of Michigan.

Any proceedings to seek judicial instructions or a judicial determination shall be initiated by the Trustee in the appropriate court located in the County of Oakland, State of Michigan regarding those matters relating to the construction and administration of trusts.

### SECTION 4.   THE TRUSTEE'S RESPONSIBILITY TO MAKE INFORMATION AVAILABLE TO BENEFICIARIES

During the term of this Trust Agreement, the Trustee shall provide a statement of account to the beneficiary for whom the trust is named or established, as well as to those beneficiaries of said trust who received a distribution of income or principal in the trust's preceding taxable year, but shall not provide any account statements or information about the trust to any other beneficiary. If the beneficiary for whom the trust is named or established is another trust, account statements shall be delivered to the trustee of the other trust. Except as provided above, if any account recipient is a minor or otherwise disabled, delivery shall be made to his or her designated Agent, to the conservator of his or her estate, or, if none, then to his or her parent, nearest of kin (to the Grantor, if applicable), or an adult with whom he or she is living.

Notwithstanding the foregoing, unless required by Court Order or as otherwise set forth in this Trust Agreement, the Trustee is not required to provide the qualified trust beneficiaries, as defined in MCL §700.7103(g), information about the administration of the trust, information about the material facts

necessary for the qualified trust beneficiaries to protect their interests, or information requested by qualified trust beneficiaries.

## SECTION 5.   DELEGATION AMONG THE TRUSTEES

Any Trustee may delegate to any other Trustee the power to exercise any or all powers granted the Trustee in this Trust Agreement, including those that are discretionary, if allowed by law.

A delegating Trustee may revoke any such delegation at will.

The delegation of any such power, as well as the revocation of any such delegation, shall be evidenced by an instrument in writing executed by the delegating Trustee.

As long as any such delegation is in effect, any of the delegated powers may be exercised by the Trustee receiving such delegation with the same force and effect as if the delegating Trustee had personally joined in the exercise of such power.

## SECTION 6.   UTILIZATION OF SUBSTITUTE TRUSTEE

If any Trustee is unwilling or unable to act as to any trust property, the Trustee shall designate, in writing, an individual, bank trust department, or trust company to act as a substitute Trustee with regard to such property.

The property being administered by the substitute Trustee, as well as the net income therefrom, shall be distributed or remitted as directed by the designating Trustee consistent with the terms of this Trust Agreement.

Each substitute Trustee shall exercise all of the fiduciary powers granted by this Trust Agreement unless expressly limited by the designating Trustee in the instrument appointing such substitute Trustee, or by any provision within this Section.

Any substitute Trustee may be removed by the Trustee by written notice; or may resign at any time by delivering written notice to the Trustee to that effect.

## SECTION 7.   TRUSTEE'S FEE

The Trustee shall be entitled to fair and reasonable compensation for the services it renders as a fiduciary. The amount of compensation shall be an amount equal to the customary and prevailing charges for services of a similar nature during the same period of time and in the same geographic locale, but not to exceed one (1%) percent of the trust principal annually (determined as of the beginning of the fiscal year) for any non-corporate fiduciary.

The Trustee shall be reimbursed for the reasonable costs and expenses incurred in connection with its fiduciary duties under this Trust Agreement.

## SECTION 8.   A MAJORITY OF TRUSTEES REQUIRED TO CONTROL

When more than two Trustees are acting, the concurrence and joinder of a majority of the Trustees shall control in all matters pertaining to the administration of any trust created hereunder.

If only two Trustees are acting, the concurrence and joinder of both shall be required.

When more than two Trustees are acting, any dissenting or abstaining Trustee may be absolved from personal liability by registering a written dissent or abstention with the records of the trust; the dissenting Trustee shall thereafter act with the other Trustees in any manner necessary or appropriate to effectuate the decision of the majority.

### SECTION 9.    TERMINATION FOR UNUSUAL CAUSE

The Grantor recognizes that some or all of the following conditions may arise in the future although they cannot now be foreseen: (i) a radically substantial change in the political, economic, or social order in the United States of America; (ii) legislation or court decisions highly detrimental to any trust hereunder or its beneficiary(ies); (iii) lack of availability of suitable trust investments for an extended period; (iv) other events tending to greatly impair the intent and purposes of this Trust Agreement; and/or (v) future amendments and interpretations of the federal wealth transfer tax laws that could thwart the trust purposes. The Grantor further recognizes that a termination of a trust hereunder might be desirable if any of these conditions occur. It is, therefore, expressly provided that, if any Trustee of any trust hereunder shall make application to the then court of general jurisdiction in the place where such trust shall have its situs and if such court, by its appropriate decree, shall determine that a condition coming within any of the foregoing standards has occurred and that the best interests of such trust and of the persons interested in it require the termination of such trust, the Trustee of such trust, following entry of such decree and obedient to its terms, shall distribute the trust's estate to such trust's then beneficiaries according to their respective interests as set forth in such decree. No Trustee shall be required to consider any action under this Section until a person interested in a trust hereunder has requested such consideration in writing, nor shall any Trustee have any affirmative duty or responsibility for any failure to exercise any authority granted in this Section. Prior to terminating a trust hereunder, the Trustee may request and shall be entitled to be held harmless and receive appropriate indemnification from the beneficiaries who are going to receive a terminating distribution. The Trustee shall not terminate a trust if it would impair a beneficiary's unexercised right of withdrawal that has not yet lapsed, or would impair the status or qualification of a trust that holds shares of stock in a Subchapter S corporation. Notwithstanding anything contained in this Section to the contrary, the Trustee who terminates a trust under this Section must not: (i) be related or subordinate (within the meaning of IRC Section 672(c)) to any donor or beneficiary with respect to the trust in question; (ii) be benefited by the exercise or non-exercise of any power given the Trustee by this Trust Agreement or by law; or (iii) be a beneficiary or a donor of the trust in question.

### SECTION 10.  TRUST PROTECTOR

#### A.      Appointment of Trust Protector.

The Trustee may from time to time appoint as a Trust Protector (of any trust created under this Trust Agreement) one or more U.S. citizens or residents (other than a Trustee) who are not a related or subordinate party (as defined in IRC Section 672(c)), to the Grantor, the Grantor's spouse, or to any trust beneficiary. Any appointment of a Trust Protector shall be in writing. The writing shall describe when the appointment shall take effect and when it shall end. If an appointment has not been accepted by the appointee, it may be revoked by the appointing party unless the written appointment specifies otherwise.

The Trust Protector may receive reasonable compensation from the trust for his/her services as Trust Protector. The Trust Protector shall receive reimbursement from the trust for expenses properly incurred by the Trust Protector in the administration of the trust.

All trusts created under this Trust Agreement need not have or continue to have the same Trust Protector. The provisions of this Trust Agreement that relate to the Trust Protector shall be separately applicable to each trust held hereunder.

**B.**     **Powers of Trust Protector.**

The Trust Protector, in the Trust Protector's sole discretion, by written instrument, delivered to the Trustee may

(i) amend any trust (except as to any provision in any trust which was necessary for a gift tax exclusion, marital deduction, deferral of tax for a non-citizen spouse or charitable deduction to be claimed or allowed) in order to (A) achieve tax advantages, (B) react to changes in the Internal Revenue Code, Treasury Regulations, Revenue Rulings or court cases which adversely affect the tax benefits otherwise available with respect to the trust, or (C) react to changes in the Internal Revenue Code, Treasury Regulations, Revenue Rulings or court cases which present advantages to the beneficiaries of the trust;

(ii) amend the trust administrative provisions relating to the identity, qualifications, succession, removal, and appointment of the Trustee;

(iii) change the situs and governing law of any trust created hereunder;

(iv) amend the financial powers of the Trustee;

(v) change the terms of any spendthrift provision;

(vi) restrict in any way determined by the Trust Protector to be beneficial to the trust or a beneficiary, revocably or irrevocably, the future exercise of any power held by any beneficiary or Trustee hereunder;

(vii) amend the terms of any trust created under this Trust Agreement with respect to (A) the purposes for which the Trustee may distribute trust income and principal, and the circumstances and factors the Trustee may take into account in making such distributions; (B) the termination date of the trust, either by extending or shortening the termination date (but not beyond any applicable perpetuities period); and (C) the date upon which the trust is to divide, either by postponing or accelerating the same;

(viii) grant any Primary Beneficiary, or any beneficiary for whom a trust is named, the power to appoint to the creditors of said beneficiary's estate the principal and undistributed income of such trust; and

(ix) amend the Trust administrative provisions and the provisions dealing with the Trustee's duties, powers, responsibilities and liabilities, so as to comply with the standard requirements of any corporate fiduciary acting (or desiring to act) as a Trustee hereunder.

The Trust Protector may make a permitted amendment retroactively to the inception of the trust. Any such amendment may be made by an instrument in writing signed by the Trust

Protector, and a copy of the amendment shall be delivered to the Trustee and each adult beneficiary of the trust to whom income may then be payable or permitted to be paid hereunder and to the natural or legal guardian, if any, of each such minor or otherwise legally disabled beneficiary. Any amendment by the Trust Protector to any Trust created under this Trust Agreement that alters the duties, liabilities or compensation of the Trustee shall be subject to the prior written approval of the Trustee.

To the extent required by law, the Trust Protector is a fiduciary to the extent of the powers, duties and discretions granted to the Trust Protector hereunder. In exercising any power granted hereunder, the Trust Protector shall act in good faith and in accordance with the terms and purposes of the trust.

**C.**      **Resignation, Removal or Incapacity of Trust Protector.**

The Trust Protector may resign by giving written notice to the Trustee. In addition, at any time and from time to time, those persons who have the right to appoint a Trust Protector may remove, with or without cause, a Trust Protector acting hereunder.

**D.**      **Limitation on Trust Protector's Powers.**

The Trust Protector shall not have the power to amend any trust in such a way that it would cause any portion of the trust property to be included (for Federal Estate Tax purposes) in the Grantor's gross estate, any fiduciary of the trust, or the Trust Protector to the extent it was not already included in the Grantor's gross estate, the fiduciary of the trust, or the Trust Protector. The Trust Protector may not accelerate distributions or amend any trust if it would result in a distribution to or for the benefit of the Trust Protector, the Trust Protector's estate, or the creditors of the Trust Protector's estate.

The Trust Protector shall not have the power to amend any trust (i) to add one or more persons to the group of beneficiaries hereunder, (ii) to delete one or more persons from the group of beneficiaries hereunder, or (iii) to affect the amount of property that may be distributed to or for the benefit of any person. In addition, notwithstanding anything contained in this Section to the contrary, a power granted under this Section shall not be exercised in a manner that would violate any of the S Corporation requirements for any trust created hereunder as a Qualified Subchapter S Trust or an Electing Small Business Trust.

The Trust Protector shall not have the power to amend any Trust in such a manner as to (i) reduce the restrictions or limitations on the limited power of amendment of the Trust Protector as set forth in this Section; (ii) result in any direct or indirect financial benefit to any individual who is not, at the time of such amendment, already a present or potential future beneficiary of the trust other than merely through the exercise of a power of appointment herein granted; (iii) make any changes that would have the effect of eliminating or reducing any substantial deduction, credit, exclusion or other tax benefit, or significant grandfathered status or a protection from claims of the Grantor's creditors, the trust or a beneficiary of the trust; (iv) limit a beneficiary's rights resulting from transfers from the trust to the beneficiary prior to the time of the amendment; or (v) result in any direct or indirect financial benefit to any then acting Trustee.

**E.**   **Modification of Trust Protector's Powers.**

The Trust Protector, acting on behalf of the Trust Protector and any successor Trust Protector, may at any time irrevocably release, renounce, suspend or modify to a lesser extent any and all powers and discretion granted to the Trust Protector hereunder by delivering a written document to the Trustee.

**F.**   **Exculpation and Indemnification of Trust Protector.**

Neither the Trustee nor the Trust Protector shall have the duty to monitor any Trust in order to (i) determine whether any power conferred upon the Trust Protector should be exercised, (ii) keep informed as to the acts or omissions of others, and (iii) minimize or prevent any loss. Any exercise or non-exercise of the Trust Protector's power shall be in the Trust Protector's sole and absolute discretion and shall bind all persons. The Trust Protector is not required to exercise any power or discretion granted under this Trust Agreement. Absent bad faith or reckless indifference, the Trust Protector, in that capacity, is hereby exonerated from any and all liability for the acts or omissions of the Trust Protector, any fiduciary, or any beneficiary arising from any exercise or non-exercise by the Trust Protector of the powers granted to the Trust Protector. The Trust Protector may conclusively rely on the opinion of legal counsel retained by the Trustee in the exercise or non-exercise of the powers and discretions granted under this Section or may act or not act without seeking the opinion of legal counsel, all in its sole and absolute discretion. The Trust Protector shall have no fiduciary duty to any trust beneficiary and shall be indemnified by the trust and beneficiaries who are benefited by the exercise of the Trust Protector's authority hereunder.

The Trust Protector shall be fully indemnified from the trust property for reasonable legal expenses incurred in defending against any claim, demand or action filed by a trust beneficiary, except for a claim, demand or action based upon an act or omission by the Trust Protector proven by clear and convincing evidence to have been committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the trust beneficiaries.

**G.**   **Withdrawal Rights.**

Notwithstanding anything contained in this Section to the contrary, a power granted under this section shall not be exercised in a manner that would impair a beneficiary's existing withdrawal rights or cut off a beneficiary's powers over such withdrawal rights.

# SECTION 11.  DISTRIBUTION TO TRUSTS

If an Independent Trustee of a trust (the "original trust") has the discretion to pay a portion (or all) of the trust fund of the original trust (the "permitted portion") to or for the benefit of any one of more beneficiaries of such trust (the "original discretionary beneficiaries"), such Independent Trustee may exercise such discretion by directing the payment of any part of all of the permitted portion to the trustee or trustees of another trust for the benefit of one or more of the original discretional beneficiaries (the "recipient trust"), provided, however, that (i) the recipient trust does not direct or permit payments to or applications by the trustees for the benefit of any person other than one or more of the beneficiaries of the original trust, (ii) the recipient trust does not reduce any fixed income interest of any income beneficiary of the original trust, (iii) the recipient trust ends no later than the perpetuities date of the original trust, and (iv) the Independent Trustee gives each beneficiary of the original trust written notice of his/her/its intention to make such direction at least thirty (30)

days before making the direction. For purposes of clause (i) of the preceding sentence, the beneficiaries of the original trust shall include all beneficiaries, income-only beneficiaries or remaindermen, and for purposes of clause (iv) of the preceding sentence, the beneficiaries of the original trust shall include only those persons who are competent and to whom current distributions from such trust may be made. Notwithstanding the first sentence of this section, the terms of the recipient trust may provide any one or more of the original discretionary beneficiaries with a power of appointment exercisable in favor of one or more individuals, regardless of whether any such individual is a beneficiary of the original trust.

## ARTICLE EIGHT

## WITHDRAWAL RIGHTS

### SECTION 1.   WITHDRAWAL RIGHTS

Prior to the death of the Grantor, and with respect to each trust created under this Trust Agreement, during the calendar year of the creation of the trust or during any calendar year thereafter in which a transfer, whether direct or indirect or deemed, is made to the trust and commencing with the date of creation of the trust or the date of transfer to the trust, each of the then living present and remainder beneficiaries of the trust (referred to in this Article as the "Powerholders" and singularly as a "Powerholder") shall have the power to withdraw property then belonging to the trust (including the transferred property) having the value at the time of the withdrawal not exceeding the lesser of:

**A.**   **Powerholder's Pro Rata Share.**

Such Powerholder's pro rata share of the value at the time of the transfer of any property transfers to or for the benefit of the trust, whether direct, indirect or deemed, during such calendar year with such pro rata share to be determined by dividing such value by the number of Powerholders having a withdrawal right pursuant to this Article when such withdrawal rights arise hereunder; or

**B.**   **Federal Gift Tax Exclusion.**

The maximum amount which qualifies for the federal gift tax exclusion under IRC Section 2503(b), but such amount shall be adjusted to provide the maximum amount excludable pursuant to said IRC Section in future years (by cost of living adjustments, statutory changes or otherwise) reduced by the amount of any prior gifts to such Powerholder by the same donor which qualify for said annual exclusion in the same calendar year; provided, however, that for the purposes of determining the maximum amount which qualifies for such withdrawal pursuant to this Paragraph (B), it shall be presumed that a donor's spouse, if any, has consented to treat any such eligible gifts as being made one-half by such donor and one-half by such donor's spouse pursuant to IRC Section 2513, whether or not such donor's spouse has in fact so consented.

**C.**   **Powerholders on Government Assistance.**

If the treatment of an individual as a "Powerholder" for federal gift tax purposes hereunder would disqualify such individual from receiving public or private financial assistance in connection with such individual's disability in any given year, then such individual shall be prohibited from withdrawing any property from the trust in such year, notwithstanding any other provision contained in this Trust Agreement.

**D.**   **Priority of Withdrawal Right.**

Any distribution of principal to a Powerholder shall be considered as a distribution in full or partial satisfaction of the Powerholder's power to withdraw property under this Article. Notwithstanding any other provision of this Trust Agreement, no distribution shall be made

if the value of the principal of the trust after the distribution would be less than the aggregate amount subject to withdrawal from the trust after the distribution.

## SECTION 2.   NOTICE OF WITHDRAWAL RIGHTS

Each Powerholder shall be kept reasonably informed by the donor or the Trustee of all withdrawable transfers hereto which are made or expected to be made. Such efforts may include annually apprising each Powerholder of his/her rights to withdraw, providing the Powerholder with a single notice sufficient to apprise him/her of his/her current and expected future rights to withdraw, or any other means determined by the donor or the Trustee to provide each Powerholder with reasonable notice. After receiving such notice from the donor or the Trustee at least once, any Powerholder, or the legal guardian of any Powerholder, by a written instrument mailed or delivered to the donor or the Trustee, may permit the donor or the Trustee to provide such written notices annually (during the first month of each calendar year) in anticipation of transfers to be made during such year or may altogether waive the donor's or the Trustee's obligation to further provide such written notices. In addition, no notice shall be required to be given to any Powerholder who has actual or verbal notice of his/her withdrawal rights. In no event shall the donor or the Trustee be held liable for failing to give any notice required hereunder, nor shall the failure of any Powerholder to receive such notice be deemed to abrogate his/her withdrawal rights in accordance with the provisions of this Article. A Powerholder's right of withdrawal is not contingent upon such notice. Upon request by any Powerholder, the Trustee shall furnish full, detailed information with respect to any such transfers subject to withdrawal hereunder.

## SECTION 3.   EXERCISE OF WITHDRAWAL POWER

Withdrawal rights shall be exercised by an acknowledged instrument delivered to the Trustee indicating the amount desired to be withdrawn. The Trustee shall satisfy any such demand by distributing to such Powerholder cash or property of equivalent then current fair market value (including an interest in any life insurance policy held by the trust). To the extent that distributable assets are not conveniently available, the Trustee is authorized to borrow, upon such terms as are reasonably necessary, the funds necessary in order to provide for payment of amounts required by any exercise of withdrawal rights by a Powerholder hereunder.

## SECTION 4.   LAPSE OF POWER AND HANGING POWER

To the extent each such right of withdrawal is not fully exercised within 30 days after the transfer giving rise to the withdrawal right, it shall lapse, but only to the extent of the greater of the amount specified in IRC Sections 2514(e)(1) and (2), as amended, reduced by the amount of any such lapses which occurred previously in the same calendar year under this or other instruments, and any unlapsed portion shall continue in existence and shall thereafter lapse on January 1 of the next calendar year, but only to the extent provided above, and the unlapsed portion of such right of withdrawal shall be carried forward into succeeding years and lapse on January 1 of each succeeding calendar year, but only to the extent provided above.

The amounts involved in a withdrawal right described in the preceding Paragraph shall be measured after subtracting all other amounts that the same Powerholder could have withdrawn during the same calendar year from this or any other fund, to the extent that such powers must, under applicable federal gift tax law, be aggregated in determining whether the lapse of the right of withdrawal under this Section is a release of a general power of appointment.

Upon the death of a Powerholder, the unlapsed portion of such Powerholder's right of withdrawal shall be distributed to or in trust for such persons as the Powerholder may appoint by a validly executed Last Will and Testament, making specific reference to this general power of appointment. To the extent the foregoing general power of appointment is not exercised, the unlapsed portion of such Powerholder's right of withdrawal shall be added to the trust and distributed pursuant to the terms thereof.

## SECTION 5.   POWER TO CHANGE WITHDRAWAL RIGHTS

Notwithstanding the limitations provided in this Article with respect to withdrawal rights of the Powerholders, the donor making a transfer shall have the right, by acknowledged instrument delivered to the Trustee on or before the date of the specific transfer: (i) to prohibit any or all of the Powerholders from exercising a withdrawal right with respect to such transfer; (ii) to increase or decrease the amount subject to the withdrawal right of any or all of the Powerholders with respect to such transfer, except that the amounts subject to the withdrawal right shall not exceed the value of the property transferred at the time of transfer; or (iii) to change the period during which any or all of the Powerholders may exercise the withdrawal right, including provisions relating to the lapse of such right, with respect to such transfer.

## SECTION 6.   MISCELLANEOUS PROVISIONS

If the withdrawal right is possessed by a Powerholder who is legally incapacitated, such Powerholder's legal or natural guardian or another appropriate individual chosen by the Trustee may make such withdrawal or request or receive information about such right on behalf of such Powerholder; provided, however, the donor whose gift gave rise to the withdrawal power shall not be able to act on behalf of such incapacitated Powerholder. Any property received pursuant to the exercise of a withdrawal right on behalf of a Powerholder who is legally incapacitated shall be held for the use and benefit of such Powerholder and shall not be used by the person exercising the withdrawal power to discharge that person's legal obligation of support for such Powerholder.

Notwithstanding the foregoing provisions of this Article, no person shall have the right to withdraw any property hereunder as a result of the gift deemed under the Internal Revenue Code to have been made to a trust (or any of its beneficiaries) by reason of the lapse or release of a power over such trust. It is the Grantor's intention that the power of withdrawal granted to any Powerholder hereunder qualify any direct or indirect transfer to the trust for the benefit of such Powerholder as a gift of a present interest, which will qualify for the gift tax annual exclusion provided for in the Internal Revenue Code in effect at the time of such transfer. The provisions of this Article shall take precedence over and control any other provisions of this Trust Agreement; all other such provisions shall be limited and qualified so as not to detract from the unqualified rights of withdrawal granted to the Powerholders hereunder.

Notwithstanding anything in this Trust Agreement to the contrary, any distribution of principal of a trust established hereunder; any termination of a trust established hereunder; any exercise of a power of appointment granted hereunder; and/or any discretionary exercise by a Trustee acting hereunder, shall not be made if such distribution, termination, exercise or discretion would thwart or otherwise defeat an existing withdrawal right that is unexercised and has not lapsed.

## ARTICLE NINE

### INCOME TAX STATUS OF TRUST DURING THE GRANTOR'S LIFETIME

**SECTION 1.   NON-GRANTOR TRUST STATUS**

The Grantor intends that each trust created under this Trust Agreement during the Grantor's lifetime be treated as a separate taxable entity and not taxed to the Grantor for federal income tax purposes. This Trust Agreement shall be interpreted and administered consistently with this intent.

**SECTION 2.   NO DISCHARGE OF LEGAL OBLIGATION**

The Trustee shall make no distribution or expenditure that discharges a legal obligation of the Grantor or that gives the Grantor any monetary benefit.

## ARTICLE TEN

### THE TRUSTEE'S ADMINISTRATIVE AND INVESTMENT POWERS

**SECTION 1.   INTRODUCTION TO TRUSTEE'S POWERS**

Subject to the provisions and limitations set forth expressly herein, the Trustee shall have, in general, the power to do and perform any and all necessary acts and things in relation to the trust fund in the same manner and to the same extent as an individual might or could do with respect to his or her own property. No enumeration of specific powers made herein shall be construed as a limitation upon the foregoing general powers, nor shall any of the powers conferred herein upon the Trustee be exhausted by the use thereof, but each shall be continuing. In addition to the above, the Trustee shall have all of the powers authorized by the laws of the State of Michigan relating to inter-vivos trusts, and, in addition, the Trustee is specifically authorized and empowered to exercise those powers hereinafter set forth in this Article; provided, however, that no powers shall be possessed or exercised by the Trustee, or interpreted in any manner that would jeopardize the availability of any marital or charitable deduction. The Trustee may have duties and responsibilities in addition to those described in this Trust Agreement and, therefore, should seek legal advice if any questions arise. Any Trustee may release or renounce any or all powers granted hereunder at any time by written instrument filed with the trust records, and, if so specified, that release or renunciation shall bind all successor Trustees.

**SECTION 2.   POWERS TO BE EXERCISED IN THE BEST INTERESTS OF THE BENEFICIARIES**

The Trustee shall exercise the administrative and investment powers set forth in this Trust Agreement without the order of any court, as the Trustee determines in its sole and absolute discretion to be in the best interests of the beneficiaries. Notwithstanding any other provision of this Trust Agreement, each power, discretion or authority herein granted to the Trustee of any trust estate created hereunder, or accorded to the Trustee thereof generally pursuant to law, shall be exercised and exercisable only in such manner and with such restrictions and limitations as may be necessary in order to prevent the value of the trust estate, in whole or in part, from being includible in the Grantor's gross estate for federal estate tax purposes.

**SECTION 3.   ADMINISTRATIVE AND INVESTMENT POWERS**

The Trustee of each trust created hereunder is hereby granted the following administrative and investment powers:

A.   **Agricultural Powers.**

The Trustee may retain, sell, acquire, and continue any farm or ranching operation whether as a sole proprietorship, partnership, limited liability company, or corporation.

The Trustee may engage in the production, harvesting, and marketing of both farm and ranch products either by operating directly or with management agencies, hired labor, tenants, or sharecroppers.

The Trustee may engage and participate in any government farm program, whether state or federally sponsored.

The Trustee may purchase or rent machinery, equipment, livestock, poultry, feed, and seed.

The Trustee may improve and repair all farm and ranch properties; construct buildings, fences, and drainage facilities; acquire, retain, improve, and dispose of wells, water rights, ditch rights, and priorities of any nature.

The Trustee may, in general, do all things customary or desirable to operate a farm or ranch operation for the benefit of the beneficiaries of the various trusts created under this Trust Agreement.

**B.   Business Powers.**

The Trustee may retain and continue any business in which the Grantor has or had an interest as a shareholder, partner, sole proprietor, or as a participant in a joint venture, even though that interest may constitute all or a substantial portion of the trust property.

The Trustee may directly participate in the conduct of any such business or employ others to do so on behalf of the beneficiaries.

The Trustee may execute partnership agreements, limited liability company agreements, buy-sell agreements, and any amendments to them.

The Trustee may participate in the incorporation of any trust property; any corporate reorganization, merger, consolidation, recapitalization, liquidation, dissolution; or any stock redemption or cross purchase buy-sell agreement.

The Trustee may hold the stock of any corporation as trust property, and may elect or employ directors, officers, employees, and agents and compensate them for their services.

The Trustee may sell or liquidate any business interest that is part of the trust property.

The Trustee may carry out the provisions of any agreement entered into by the Grantor for the sale of any business interest or the stock thereof.

The Trustee may exercise all of the business powers granted in this Trust Agreement regardless of whether the Trustee is personally interested or an involved party with respect to any business enterprise forming a part of the trust property.

**C.   Common Fund Powers.**

For the purpose of convenience with regard to the administration and investment of the trust property, the Trustee may hold the several trusts created under this Trust Agreement as a common fund.

The Trustee may make joint investments with respect to the funds comprising the trust property.

The Trustee may enter into any transaction authorized by this Article with fiduciaries or other trusts or estates in which any beneficiary hereunder has an interest, even though such fiduciary is also a Trustee under this Trust Agreement.

**D.      Compensation Powers.**

The Trustee shall pay all expenses incurred in the administration of the Trust, including reasonable compensation to any Trustee, and, in the Trustee's absolute discretion, to allocate the expenses of administering the trust between the income and principal of the trust, including but not limited to, all to income or all to principal.

The Trustee shall pay itself reasonable compensation for its services as fiduciary as provided in this Trust Agreement, and shall reasonably compensate those persons employed by the Trustee, including agents, auditors, accountants, and attorneys.

**E.      Distribution Powers.**

The Trustee is specifically authorized to make divisions and distributions of the trust property either in cash or in kind, or partly in cash and partly in kind, or in any proportion it deems advisable.

The Trustee shall be under no obligation or responsibility to make pro rata divisions and distributions in kind.

The Trustee may allocate specific property to any beneficiary or share although the property may differ in kind from the property allocated to any other beneficiary or share.

The foregoing powers may be exercised regardless of the income tax basis of any of the property.

**F.      Income and Principal Powers.**

Subject to the duty of impartiality, the Trustee may determine in a fair, equitable, and practical manner how all Trustee's fees, disbursements, receipts, and wasting assets shall be credited, charged, or apportioned between principal and income.

The Trustee may set aside from trust income reasonable reserves for taxes, assessments, insurance premiums, repairs, depreciation, obsolescence, depletion, and for the equalization of payments to or for the beneficiaries; it may select any and all accounting periods with regard to the trust property.

All increases in the value of any life insurance policies prior to the death of the insured held by this trust shall be principal and not income.

The Trustee may allocate all receipts of money or property paid or delivered to the Trustee and all expenses to principal or income in accordance with the laws of the State governing this Trust Agreement; provided, however, that with regard to any item not clearly governed by such laws, the Trustee shall have discretion to determine whether items should be charged or credited to income or principal as the Trustee may deem equitable and just under all of the circumstances.

If the trust owns any interests in a partnership or limited liability company, and receives money or property from the partnership or limited liability company that is attributable to a partial or total liquidation, said receipt shall be allocated to the principal of the trust. Cash or property received from a partnership or limited liability company is considered to be received in partial liquidation to the extent that: (i) the partnership or limited liability company, on or about the time of a distribution, indicates that said distribution is a distribution in partial liquidation, or (ii) the total amount received in a distribution or a series of related distributions is greater than twenty (20%) percent of the partnership or limited liability company's gross assets, as reflected in its year-end financial statements for the period immediately preceding the initial receipt.

The Trustee, other than a Trustee who is a beneficiary hereunder, may allocate receipts and disbursements, within the meaning of Treas. Reg. §1.643(a)-3(b) to income or principal or partly to principal and partly to income all or part of the realized gains from the sale or exchange of trust assets in such manner as the Trustee, other than a Trustee who is a beneficiary hereunder, shall determine, even though a particular allocation may be inconsistent with otherwise applicable state law. Notwithstanding the foregoing, the Trustee may not exercise the power to allocate income or principal for assets held in a Qualified Subchapter S Trust created hereunder.

The Trustee, other than a Trustee who is a beneficiary hereunder, may deem, within the meaning of Treas. Reg. §1.643(a)-3(e), any discretionary distribution of principal as being paid from capital gains realized during the year. The Trustee, other than a Trustee who is a beneficiary hereunder, is authorized to take any action to make such deeming respected for tax purposes.

The Trustee may appoint a trustee who is neither related to nor subordinate to themselves or to the Grantor to make any distribution which the Trustee is prohibited from making or which may result in adverse estate, gift, or income tax consequences to the Trustee if the Trustee were to take a proposed action. Such trustee shall be limited in authority to taking or not taking such proposed action.

No beneficiary of a pecuniary bequest hereunder shall be entitled to interest on their bequest. Furthermore, the Trustee shall determine whether such bequest shall be paid from income, principal or partly from income and principal, in the Trustee's absolute and sole discretion.

G.    **Investment Powers in General.**

The Trustee may invest and reinvest in such classes of stocks, bonds, securities, commodities, options, metals, or other property, real or personal, as it shall determine, including, but not limited to, interests in closely-held corporations and closely-held partnerships and limited liability companies. The Trustee may invest in investment trusts as well as in common trust funds.

The Trustee may purchase life, long term care, annuity, accident, sickness, and medical insurance on the behalf of and for the benefit of any trust beneficiary.

H.    **"Prudent Person" Rule.**

In addition to the investment powers conferred herein, the Trustee is authorized (but not directed) to acquire and retain investments not regarded as traditional for trusts, including

investments that would be forbidden or would be regarded as imprudent, improper or unlawful by the "prudent person" rule, "prudent investor" rule, or any other rule or law which restricts a fiduciary's capacity to invest. In making investments, the Trustee may disregard any or all of the following factors:

> Whether a particular investment, or the trust investments collectively, will produce a reasonable rate of return or result in the preservation of principal.

> Whether the acquisition or retention of a particular investment or the trust investments collectively are consistent with any duty of impartiality as to the different beneficiaries.

> Whether the trust is diversified.

> Whether any or all of the trust investments would traditionally be classified as too risky or speculative for trusts and, therefore, the entire trust may be so invested.

The Grantor's purpose in granting the foregoing authority is to modify the "prudent person" rule, "prudent investor" rule, or any other rule or law which restricts a fiduciary's ability to invest insofar as any such rule or law would prohibit an investment or investments because of one or more factors listed above, or any other factor relating to the nature of the investment itself. The Grantor does this because the Grantor believes it is in the best interests of the beneficiaries of the trust created hereunder to give the Trustee broad discretion in managing the assets of the trusts created hereunder.

L.    **Loan, Borrowing, and Encumbrance Powers.**

The Trustee may lend trust funds to such persons and on such terms, including (but not limited to) interest rates, security, and loan duration, as the Trustee deems advisable.

The Trustee may borrow money upon such terms and conditions as it shall deem advisable, including, in the case of a corporate fiduciary, the power to borrow from its own banking or commercial department.

The Trustee shall have the power to obligate the trust property for the repayment of any sums borrowed where the best interests of the beneficiaries have been taken into consideration.

The Trustee may borrow money or provide guarantees of repayment of borrowings of another for any purpose incidental to the administration of the trust for the protection of trust assets, and to mortgage or pledge trust assets for payment.

To encumber the trust estate or any of its property by executing a general agreement of indemnity on behalf of a surety and to resolve out of trust property prior to distributions of the property to the beneficiaries the obligations to that surety pursuant to the indemnity agreement. Such encumbrance is in furtherance of trust purposes where the surety's issuance of surety bonds and similar instruments benefits or preserves property of the trust or is in the interest of the Grantor, the Trustee, or the beneficiaries of the trust; or surety's issuance of surety bonds is on behalf of any business entity in which the trust, the Grantor, or the Trustee have any ownership interest.

To encumber the trust property, in whole or in part, by a mortgage or mortgages, deeds of trust, or by pledge, guarantee, hypothecation or otherwise, even though such encumbrance may continue to be effective after the term of any trust or trusts created in this Trust Agreement, as it deems in the best interests of the trust beneficiaries. To borrow money or provide guarantees of repayment of borrowings of another for any purpose incidental to the administration of the trust for the protection of trust assets, and to mortgage or pledge trust assets for payment. The Trustee shall not be responsible for any loss resulting from any such pledge or guarantee

J.    **Margin, Brokerage, and Bank Account Powers.**

The Trustee is authorized to buy, sell, and trade in securities of any nature, including short sales and on margin. The Trustee also has the authority and right to invest or speculate in futures contracts and/or options on futures contracts. The Trustee may maintain and operate margin accounts with brokers, and may pledge any securities held or purchased by the Trustee with such brokers as securities for loans and advances made to the Trustee.

The Trustee is authorized to establish and maintain bank and brokerage accounts of all types in one or more banking and/or financial institutions that the Trustee may choose; and may authorize that checks or drafts may be drawn on, or withdrawal made from, any such account on the signature of the Trustee.

K.    **Mortgage Powers.**

The Trustee shall have the power to enter into any mortgage whether as a mortgagee or mortgagor, to purchase mortgages on the open market, and to otherwise buy, sell, or trade in first or subordinate mortgages.

The Trustee may reduce the interest rate on any mortgage and consent to the modification or release of any guaranty of any mortgage.

The Trustee may continue mortgages upon and after maturity with or without renewal or extension, and may foreclose any mortgage. The Trustee may purchase the mortgaged property or acquire it by deed from the mortgagor without foreclosure.

L.    **Nominee Powers.**

The Trustee may hold any trust property in the name of the Trustee, or in the name of a nominee, and may enter into agreements to facilitate holding such property. The Trustee may accomplish such with or without disclosing its fiduciary capacity.

The Trustee may cause assets, which may from time to time comprise the trust property, or any part thereof, to be registered in the Trustee's name or names, either with or without designation as Trustee, or in the name or names of the Trustee's nominee or nominees, or to hold them, in whole or in part, in such condition as they will pass by delivery, or to take and keep the same, in whole or in part, unregistered. The Trustee is specifically authorized to deposit such assets with others or have the same held by others, including securities intermediaries who may hold the same in commingled or uncertificated form; provided that the Trustee shall maintain adequate records of such assets which are so held and exercise reasonable care, skill and caution as to the selection of any such custodian or securities intermediary, the establishing of the scope of the terms of the agreement under which it shall

hold such assets and the monitoring of its performance and compliance with such agreement. If the Trustee shall comply with such preceding sentence, the Trustee shall not be liable to the beneficiaries or the trust property for the actions or inactions of the custodian or securities intermediary.

**M.      Nonproductive Property.**

The Trustee may hold property which is non-income producing or is otherwise nonproductive if the holding of such property is, in the sole and absolute discretion of the Trustee, in the best interests of the beneficiaries.

**N.      Oil, Gas, Coal, and Other Mineral Powers.**

The Trustee may do all things necessary to maintain in full force and effect any oil, gas, coal, or other mineral interests comprising part or all of the trust property.

The Trustee may purchase additional oil, gas, coal, and other mineral interests when necessary or desirable to effect a reasonable plan of operation or development with regard to the trust property.

The Trustee may buy or sell undivided interests in oil, gas, coal, and other mineral interests, and may exchange any of such interests for interests in other properties or for services.

The Trustee may execute oil, gas, coal, and other mineral leases on such terms as the Trustee may deem proper, and may enter into pooling, unitization, repressurization, and other types of agreements relating to the development, operation, and conservation of mineral properties.

Any lease or other agreement may have a duration that the Trustee deems reasonable, even though extending beyond the duration of any trust created in this Trust Agreement.

The Trustee may execute division orders, transfer orders, releases, assignments, farm outs, and any other instruments that it deems proper.

The Trustee may drill, test, explore, mine, develop, and otherwise exploit any and all oil, gas, coal, and other mineral interests, and may select, employ, utilize, or participate in any business form, including partnerships, limited liability companies, joint ventures, co-owners' groups, syndicates, and corporations, for the purpose of acquiring, holding, exploiting, developing, operating, or disposing of oil, gas, coal, and other mineral interests.

The Trustee may employ the services of consultants or outside specialists in connection with the evaluation, management, acquisition, disposition, or development of any mineral interest, and may pay the cost of such services from the principal or income of the trust property.

The Trustee may use the general assets of the trusts created under this Trust Agreement for the purposes of acquiring, holding, managing, developing, pooling, unitizing, repressuring, or disposing of any mineral interest.

O.     **Employment of Agents/Powers of Attorney.**

The Trustee is specifically authorized to employ or appoint and pay reasonable compensation to accountants, depositories, investment counsel, money managers, attorneys, attorneys-in-fact, and agents, with or without discretionary powers.

The Trustee is specifically authorized to employ, revocably delegate powers (including discretionary) to, and act without independent investigation upon the recommendation of, accountants, agents, attorneys, custodians, employees, investment advisors, managers and other representatives (including any fiduciary of the Grantor's estate or under this Trust Agreement), and pay their reasonable compensation and expenses even though such persons are associated with the Trustee or may also be a Trustee (or nominated Trustee) hereunder or a fiduciary of the Grantor's estate, and such compensation shall be in addition to their fiduciary fees. Where qualification for, or preservation of, a federal tax benefit attributable to a trust asset depends on the material participation or management by an individual, the Trustee without liability may designate any such individual as "manager" and may delegate to that individual such powers as the Trustee shall decide although such individual may not be specifically qualified to exercise such powers.

The Trustee may also execute, deliver, and grant to any individual or corporation a revocable or irrevocable power of attorney to transact any and all business on behalf of the various trusts created in this Trust Agreement. The power of attorney may grant to the attorney-in-fact all of the rights, powers, and discretion that the Trustee could have exercised.

P.     **Powers to Merge Similar Trusts.**

The Trustee may merge and consolidate any trust created in this Trust Agreement with any other trust created by the Grantor, or any other person at any other time, if the other trust contains substantially the same terms for the same beneficiaries.

The Trustee may administer such merged and consolidated trusts as a single trust or unit. If, however, such a merger or consolidation does not appear feasible, as determined in the sole and absolute discretion of the Trustee, the Trustee may consolidate the assets of such trusts for purposes of investment and trust administration while retaining separate records and accounts for the respective trusts.

Q.     **Powers of an Interested Trustee.**

Notwithstanding any provision in this Trust Agreement to the contrary, no Trustee shall have the power to use or apply trust property (i) to discharge the Grantor's obligation to support or maintain any beneficiary hereunder, (ii) for the support and maintenance of anyone the Trustee is obligated to support and maintain, (iii) for the purpose of directly or indirectly discharging the personal legal obligations of that Trustee or of any beneficiary of any trust created under this Trust Agreement with respect to any other person, (iv) nor shall any Trustee who is also a beneficiary of any trust created under this Trust Agreement have the power, as trustee, to make discretionary distributions to himself/herself (including, but not limited to, any decision to terminate such trust estate) except to the extent necessary for such Trustee's health, education, support and maintenance as described under IRC Section 2041 and 2514 (concerning powers of appointment and ascertainable standards), and such beneficiary-trustee shall exercise its trustee powers solely in a fiduciary capacity and shall possess no powers that would otherwise permit that beneficiary-trustee to enlarge or shift

any of the beneficial interests created under this Trust Agreement (except as an incidental consequence of the discharge of such fiduciary duties); provided, however, if a beneficiary-Trustee is a Co-Trustee with one or more others, the foregoing limitation of Subparagraph (iii) shall not apply to the other Trustees, who may exercise the discretionary power in accordance with its terms but without the participation of the beneficiary-Co-Trustee who is subject to such foregoing limitation and to the extent that a beneficiary-trustee has the authority to make discretionary distributions of income and/or principal to another beneficiary from a trust that the beneficiary-trustee is also a beneficiary of, such distributions shall be limited by an ascertainable standard related to the distributee beneficiary's health, education, support and maintenance in the manner of living to which the distributee beneficiary has been accustomed, considering the resources otherwise available to the distributee beneficiary. Any other provision to the contrary notwithstanding, no beneficiary-trustee shall possess any power or discretion that is "conclusive", "sole", "absolute" or "uncontrolled" with respect to the exercise or non-exercise of such power or discretion; and such beneficiary-trustee's power or discretion in that regard shall at all times be exercised or not exercised in a reasonable manner, be limited by a reasonably definite standard, and shall be subject to review and judicial scrutiny.

If the limitations contained in this Subparagraph would prevent the exercise of one or more powers or authorities granted to the Trustee named or selected hereunder, but such powers could be exercised either by such named Trustee acting jointly with an Independent Trustee or by an Independent Trustee alone, then such named Trustee shall appoint an additional Co-Trustee (if one is not then serving) who can exercise those powers and authorities without violating this Subparagraph. Such an Independent Trustee shall act jointly with such named trustee whenever their joint exercise of a power or authority will not violate the restrictions imposed by this Subparagraph, and such Independent Trustee shall act alone whenever such separate action is required to exercise a power or authority without violating the restrictions imposed by this Subparagraph.

If a beneficiary is acting as the sole Trustee over any trust named for or established for such beneficiary under the trust, then such beneficiary may at any time, by written instrument, appoint any person, or any bank or trust company, within or outside the State of Michigan to serve as a Co-Trustee over his/her separate trust; provided, however, any such Co-Trustee so appointed may not be the Grantor , the Grantor's spouse, or a "related or subordinate party" (as to either the Grantor or the beneficiary) as defined in IRC Section 672(c).

Whenever a beneficiary is acting as a Co-Trustee over any trust named for or established for such beneficiary under the trust, then, notwithstanding anything contained in this Trust Agreement to the contrary, the following provisions shall apply:

1.      **Participation in Exercise of Discretion.**

         The beneficiary shall not participate in the exercise of any discretion to determine the propriety or amount of payments of income or principal to himself or herself (except such discretion may be exercised so long as it is limited by an ascertainable standard [relating to the health, education, support, and maintenance of such person], in which event the beneficiary may participate in the exercise of such limited discretion);

2.      **Insurance on Life of Beneficiary.**

The beneficiary shall not possess any of the incidents of ownership or participate in any determination with respect to any policy of insurance on his or her life or the proceeds thereof, and the remaining Co-Trustees alone shall exercise that discretion and possess those incidents of ownership;

3.      **Prohibition Against Attribution of Trust Property.**

The beneficiary shall not authorize or make other payment for the benefit of any person or exercise any power, whether granted under this Trust Agreement or applicable law, if under the then-applicable tax law, such Trustee's sole possession and/or exercise (as though the only Trustee) of such power would cause all or part of such trust to be attributed to any person for purposes of income or transfer taxes before such person receives the actual distribution or benefit of such property, and another Trustee could alone possess and exercise such power without such adverse tax consequences;

4.      **Prohibition Against Discharge of Legal Obligation.**

The beneficiary shall not authorize or make any payment for the benefit of any person if such payment or application both will discharge the legal obligation of another person and, on account of such discharge, cause there to be imposed any transfer tax.

R.      **Powers of an Insured Trustee.**

Any individual Trustee under this Trust Agreement is prohibited from exercising any power conferred on the owner of any policy which insures the life of such individual Trustee and which is held as part of the trust property, or from exercising any rights under a split-dollar arrangement involving any policy which insures the life of such individual Trustee and which is held as part of the trust property.

If the Trustee holds any such policy or policies as a part of the trust property, or holds an interest in any such split-dollar arrangement, the powers conferred on the owner of such policy, and the rights conferred under the split-dollar arrangement, shall be exercised only by the other then acting Trustee or substitute Trustee.

If the insured Trustee is the only then acting Trustee, then such powers and rights shall be exercised by a substitute Trustee designated pursuant to the provisions of this Trust Agreement dealing with the Trusteeship.

If any rule of law or court decision construes the ability of the insured Trustee to name a substitute Trustee as an incident of ownership, the substitution process shall be implemented by a majority of the then current mandatory and discretionary income beneficiaries, excluding the insured Trustee if the insured Trustee is a beneficiary.

S.      **Real Estate Powers.**

The Trustee may sell, convey, transfer, exchange, convert or otherwise dispose of real estate, at public or private sale, with or without security, in such manner, at such time or times, for

such purposes, for such prices, and upon such terms, credits and conditions as the Trustee may deem advisable.

The Trustee may make leases and grant options to lease for any term, even though the term may extend beyond the termination of any trust created under this Trust Agreement.

The Trustee may grant or release easements and other interests with respect to real estate, enter into party wall agreements, execute estoppel certificates, and develop and subdivide any real estate.

The Trustee may dedicate parks, streets, and alleys or vacate any street or alley, and may construct, repair, alter, remodel, demolish, or abandon improvements.

The Trustee may elect to insure, as it deems advisable, all actions contemplated by this subsection.

The Trustee may take any other action reasonably necessary for the preservation of real estate and fixtures comprising a part of the trust property or the income therefrom.

T.   **S Corporation Stock.**

If any stock of a corporation that then operates or that Trustee shall deem likely to operate in the near future as an S corporation (as defined in IRC Section 1361(a)) is held by a trust or becomes distributable to a trust created under this Trust Agreement, and such trust is not eligible or is no longer eligible, or may not be eligible or qualified to hold S corporation stock (for whatever the reason - including because of discretionary authority granted the Trustee), the Trustee may implement any of the following alternatives with respect to the S corporation stock:

1.   **Creation of QSST for Sole Beneficiary.**

Where the original trust is for a sole beneficiary, the Trustee may create for that beneficiary (provided the beneficiary meets the requisite qualifications under IRC Section 1361) a separate trust that qualifies as a Qualified Subchapter S Trust ("QSST") under IRC Section 1361(d), and then distribute such stock to the newly created trust.

2.   **Creation of QSSTs for Multiple Beneficiaries.**

Where the original trust is for multiple beneficiaries, the Trustee may create separate trusts for each beneficiary (provided the beneficiary meets the requisite qualifications under IRC section 1361) and allocate the S corporation stock among the newly created trusts based on each beneficiary's current interest in the income of the original trust, and if no beneficiary is entitled to current income from the original trust, the Trustee may allocate the S corporation stock among the newly created trusts in a manner that the Trustee deems fair and appropriate; provided, however, that if the current income beneficiaries of the original trust are only the Grantor's descendants, each new trust shall be created solely for the benefit of the descendant in the most senior generation. Each newly created trust shall hold that beneficiary's appropriate share of the S corporation stock, and shall qualify as a QSST.

3.    **Alternatives to Creation of QSST(s).**

In lieu of creating a QSST the Trustee may, in its discretion: (i) create for the beneficiary or beneficiaries a new trust that qualifies as an Electing Small Business Trust ("ESBT") under IRC Section 1361(e) (provided the beneficiaries meet the requisite qualifications thereunder) and distribute such stock to the newly created trust(s), provided however, any currently exercisable inter-vivos power of appointment held by a beneficiary concerning the S corporation stock to be held by the ESBT is hereby automatically modified and limited concerning the number and class of potential appointees eligible to receive the S corporation stock so that the number of potential appointees shall not exceed the number of persons who are eligible to hold the S corporation stock (as currently specified in IRC Section 1361(b)(1)(A)) and the class of appointees shall not include those persons who are ineligible to hold S corporation stock (as currently described in IRC Sections 1361(b)(1)(B) and (C)), (ii) elect to qualify any trust as any form of eligible stockholder of an S corporation under future legislation and to reform any existing trust in order to qualify and conform thereunder, or (iii) distribute such stock to the beneficiaries (provided the beneficiaries are eligible S corporation shareholders) as if the trust had terminated, while continuing to hold any other non-S corporation property in trust.

4.    **QSST/ESBT Consistency with Original Trusts.**

Each newly created QSST shall have mandatory distributions of income (as defined in IRC Section 643(b)) and no one shall have any power to appoint or distribute any portion of the QSST property to anyone other than to the beneficiary of the trust. In all other respects the newly created trusts shall be as consistent as possible with the original trusts and still qualify as QSSTs or ESBTs (as the case may be). The Trustee may take any action necessary with regard to S corporations, including making any elections required to qualify stock as S corporation stock and may sign all necessary tax returns and forms.

5.    **Amendment Power to Permit S Corporation Stock to be Held.**

It is the Grantor's intent that any S corporation stock comprising a portion of the trust estate be eligible to be held pursuant to the terms of this Trust Agreement, either as an ESBT, a QSST, or in any other manner permitted by the Internal Revenue Code or the Regulations or rulings thereunder. Accordingly, the Trustee is granted the power to amend or modify this Trust Agreement when, in the sole opinion of the Trustee, an amendment is required to this Trust Agreement or any trust established hereunder to permit S corporation stock to be held pursuant to the terms of this Trust Agreement. The sole purpose of this power to amend this Trust Agreement is to enable the Trustee to make technical amendments to this Trust Agreement as necessary to permit this Trust Agreement and its trusts to hold S corporation stock during the continuance of this Trust Agreement in accordance with the Internal Revenue Code, Regulations and rulings thereunder; but in no event shall the Trustee amend or modify this Trusts Agreement or any trust in a manner that would impair a beneficiary's unexercised right of withdrawal that has not yet lapsed, or that would impair the status or qualification of a trust that holds shares of stock in a Subchapter S corporation.

U.    **Sale, Lease, and Other Dispositive Powers.**

The Trustee may sell, lease, transfer, exchange, grant options with respect to, or otherwise dispose of the trust property.

The Trustee may deal with the trust property at such time or times, for such purposes, for such considerations and upon such terms, credits, and conditions, and for such periods of time, whether ending before or after the term of any trust created under this Trust Agreement, as it deems advisable.

The Trustee may make such contracts, deeds, leases, and any other instruments it deems proper under the immediate circumstances, and may deal with the trust property in all other ways in which a natural person could deal with his or her property.

The Trustee may divide into separate trusts with appropriate identification, or hold as designated portions of a single trust, assets held in "portions" for the benefit of the same beneficiary, and to sever a trust into two or more separate trusts for any reason, provided that the division shall be on a proportional or fractionalized basis.

V.    **Securities Powers.**

In addition to those other securities powers granted throughout this Article, the Trustee may retain, exercise, or sell rights of conversion or subscription with respect to any securities held as part of the trust property.

The Trustee may vote or refrain from voting at corporate meetings either in person or by proxy, whether general or limited, and with or without substitutions.

W.    **Settlement Powers.**

The Trustee may compromise, adjust, arbitrate, alter the terms of, or abandon any claim in favor of or against any trust created under this Trust Agreement, and may take deeds in lieu of foreclosure.

X.    **Trust Addition and Retention Powers.**

The Trustee is authorized to receive additional trust property, whether by gift, will, or otherwise, from either the Grantor or any other person, corporation, or entity.

Upon receipt of any additional property, the Trustee shall administer and distribute the same as part of the trust property.

The Trustee may retain, without liability for depreciation or loss resulting from such retention, all property constituting the trust estate at the time of its creation or thereafter received from other sources.

The foregoing shall be acceptable even though such property may not be of the character prescribed by law for the investment of trust funds or may result in inadequate diversification of the trust property.

**Y.**     **Split Interest Trusts.**

With respect to a trust, if any, of which both individuals and charity are beneficiaries (including remainder beneficiaries), to create or make an addition to a so-called qualified charitable lead trust with remainder to or in further trust for any one or more of the beneficiaries of the trust, or a qualified charitable remainder trust initially for the benefit of any one or more of the beneficiaries of the trust, as the Trustee, in the exercise of sole and absolute discretion, may determine; to select the qualified charitable organizations receiving a benefit from any such split-interest trust; to determine whether the trust is of the annuity, unitrust or income-only unitrust variety; the annual payout percentage or amount, and the length of the trust, provided, however, that it is the Grantor's intention that any split-interest charitable trust created by the Trustee pursuant to this Subparagraph shall constitute a trust conferring a charitable interest which qualifies for a federal income, gift and estate tax charitable deduction, if applicable, and accordingly, the Grantor directs that the provisions of this Trust Agreement applying to any such split-interest charitable trust shall be construed in a manner consistent with IRC Sections 170(c), 501(c)(3), 642(c), 664, 2055 and 2522 and with the regulations and rulings which from time to time may be promulgated thereunder, and that any such trust shall be administered solely in conformity with said Sections applicable to it and the regulations and rulings thereunder.

**Z.**     **IRC Section 529 Plans.**

To manage without judicial authorization or approval any IRC Section 529 education savings account or arrangement (collectively referred to as an account) of which the Grantor is or at one time was the designated owner. Included within the scope of this authority the Trustee shall possess full power and authority to establish new IRC Section 529 accounts on behalf of any trust beneficiary to be named as the "designated beneficiary," to make beneficiary changes from time to time to any IRC Section 529 account, and to make additional contributions to IRC Section 529 accounts if the Trustee considers additional contributions to be necessary and appropriate to carry out the directions contained in this Trust Agreement. The Trustee shall also possess the full authority to transfer funds from one state's IRC Section 529 account to another state's IRC Section 529 account. The Trustee shall possess the incidental power to transfer funds from one account investment to another account investment so long as that change in investments is authorized by the state that sponsors the IRC Section 529 account. In addition, the Trustee shall possess full authority to approve any distributions or approve any reimbursements from an established IRC Section 529 account. The Trustee shall also possess the authority to name a contingent IRC Section 529 account owner. The Trustee is authorized to make any investments of trust estate assets in an IRC Section 529 account, and the transfer of cash to an IRC Section 529 account shall constitute a permissible investment without judicial approval, and such investment shall be conclusively deemed to be an appropriate exercise of the Trustee's discretion to carry out the objectives that are more particularly described in this Trust Agreement.

**AA.**     **Trustees' or Fiduciaries' Powers Acts.**

In addition to all of the powers specifically granted the Trustee in this Article, the Trustee may exercise those powers set forth under the Trustees' or Fiduciaries' Powers Acts, or their equivalent, of the State of Michigan, together with any amendment to such laws.

The Trustee may perform every act reasonably necessary to administer each and every share or trust created under this Trust Agreement. All of the powers granted to the Trustee in this

Article shall be in addition to those powers conferred upon Trustees under all applicable state and federal statutes.

Each power conferred upon the Trustee under this Article, or upon Trustees in general, by applicable state or federal statutes, shall be subject to any express limitations or contrary directions contained in this Trust Agreement.

In addition, the Trustee may disclaim any power granted to it, if the disclaimer will not adversely affect any beneficiary materially. The Trustee shall deliver a written disclaimer under this provision to one or more of the beneficiaries then entitled to trust income. The disclaimer shall be effective on the date first received by a beneficiary.

In addition, the Trustee may release all or any part of a general power or special power, even if a special power is not presently exercisable or is exercisable in a fiduciary capacity that requires the exercise of the power, if the Trustee, in its sole discretion, determines that the release is necessary to qualify a trust as an eligible shareholder of an S corporation (as defined in IRC Section 1361(b)).

**BB.   Charitable Trusts.**

During the Grantor's lifetime, the Trustee (if such Trustee is not a related or subordinate party to the Grantor or to any trust beneficiary, as defined in IRC Section 672(c)) may add to the class of beneficiaries any charitable split interest trust, as described in IRC Section 4947(a)(2), where all of the non-charitable beneficiaries are the Grantor's descendants. The addition shall be effected by a writing retained with the records of the Trust, designating the date of the addition of the new beneficiary.

**CC.   Life Insurance Powers.**

The Trustee shall have the powers with regard to life insurance as set forth in this Paragraph, except as otherwise provided in this agreement.

The Trustee may purchase, accept, hold, and deal with as owner policies of insurance on Grantor's life, the life of any trust beneficiary, or on the life of any person in whom any trust beneficiary has an insurable interest.

The Trustee shall have the power to execute or cancel any automatic premium loan agreement with respect to any policy, and shall have the power to elect or cancel any automatic premium loan provision in a life insurance policy.

The Trustee may borrow money with which to pay premiums due on any policy either from the company issuing the policy or from any other source and may assign any such policy as security for the loan.

The Trustee shall have the power to exercise any option contained in a policy with regard to any dividend or share of surplus apportioned to the policy, to reduce the amount of a policy or convert or exchange the policy, or to surrender a policy at any time for its cash value.

The Trustee may elect any paid-up insurance or any extended-term insurance non-forfeiture option contained in a policy.

The Trustee shall have the power to sell policies at their fair market value to any person whether or not such person has an insurable interest in the policies.

The Trustee shall have the right to exercise any other right, option, or benefit contained in a policy or permitted by the insurance company issuing that policy.

The Trustee shall have the right to enter into split-dollar arrangements.

Upon termination of any trust created under this agreement, the Trustee shall have the power to transfer and assign the policies held by the trust as a distribution of trust property.

### DD.   Resolve Disputes

The Trustee may resolve a dispute concerning the interpretation of the Trust Agreement or its administration by mediation, arbitration, or other procedure for alternate dispute resolution.

### EE.   Powers After Termination

On termination of the trust, the Trustee may exercise the powers appropriate to wind up the administration of any trust created hereunder and distribute the trust assets to the persons entitled to it.

## SECTION 4.   ENVIRONMENTAL MATTERS

The Trustee is hereby granted the following additional powers and rights:

### A.   Trustee's Powers to Deal with Environmental Hazards.

The Trustee shall have the power to use and expend the trust income and principal to (i) conduct or cause to be conducted an environmental investigation of the trust property including environmental audits, assessments, site monitoring, laboratory analysis, testing, title history, aerial photographs, public and private records review and any related inquiry arising out of or in any way related to liability or claims under federal, state or local environmental statutes, regulations, ordinances, requirements, demands of government authorities or policies or under common law ("environmental laws"); (ii) take appropriate remedial action to contain cleanup or remove any actual or threatened environmental hazard including a spill, release, discharge or contamination and conduct site restoration work on the trust property and to notify the appropriate federal, state or local authorities either on its own accord or in response to an actual or threatened violation of environmental laws; (iii) institute legal proceedings, claims and demands concerning environmental hazards, contamination or condition of the trust property or contest, pay, compromise, settle or comply with legal proceedings, claims, demands, orders, penalties, fines and damages brought or imposed by federal, state or local government authorities or by a private litigant; (iv) comply with any local, state or federal agency order or court order directing an assessment, abatement or cleanup of any environmental hazards; and (v) employ agents, consultants and legal counsel to assist with or perform the above undertakings or actions. Any expenses or costs incurred by The Trustee under this Paragraph may be charged against income or principal as the Trustee shall determine.

**B.    Trustee's Right to Refuse Contributions.**

The Trustee shall have the power to receive any property, real or personal, to be added to the trust from the Grantor or Grantor's spouse, in any event (and if the Trustee consents in writing, from any other person) by lifetime or testamentary transfer or otherwise; provided, however, that the Trustee, in its sole discretion, may require, as a prerequisite to accepting property, that the donating party provide evidence satisfactory to the Trustee that: (i) the property is not contaminated by any Hazardous Materials; and (ii) the property is not being used and has never been used for any activities directly or indirectly involving the generation, use, treatment, storage, disposal, release, or discharge of any Hazardous Materials, except in compliance with all applicable federal, state and local laws and regulations.

**C.    Indemnification of Trustee.**

Notwithstanding any contrary provision of the trust, the Trustee may withhold a distribution to a beneficiary until receiving from the beneficiary an indemnification agreement in which the beneficiary agrees to indemnify the Trustee as follows:

The Grantor or the Grantor's successors in interest shall defend, indemnify and hold harmless the Trustee and its employees, directors, shareholders, successors and assigns, attorneys and representatives from and against any claims, demand, penalties, fines, liabilities, settlements, damages, including, but not limited to personal injury and property damages, costs or expenses including, without limitation attorney's and consultant's fees, investigation and laboratory fees, site monitoring, removal, cleanup, restoration or other remedial action, court costs and litigation expenses, known or unknown, contingent or otherwise, arising out of or in any way related to liability or claims under federal, state or local environmental statutes, regulations, ordinances, requirements, demands of government authorities or policies or under common law that may arise as a result of or be attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal or presence of Hazardous Materials, in, on or about the trust property, real or personal.

**D.    Hazardous Materials.**

For purposes of this Section 4, "Hazardous Materials" means any materials or substance: (1) defined as a "hazardous substance" pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. Section 9601 et. seq.) and amendments thereto and regulations promulgated thereunder; (ii) containing gasoline, oil, diesel fuel and other petroleum products; (iii) defined as a "hazardous waste" pursuant to the Federal Resource Conservation and Recovery Act (42 U.S.C Section 6901 et. seq.) and amendments thereto and regulations promulgated thereunder; (iv) containing polychlorinated byphenyls (PCBs); (v) containing asbestos; (vi) radioactive; (vii) biologically hazardous or (viii) the presence of which requires investigation or remediation under any federal, state or local statute, regulation, ordinance or policy; or which is or becomes defined as a "hazardous waste" or "hazardous substance" under any federal, state or local statute, regulation or ordinance; and any toxic, explosive, corrosive or otherwise hazardous substance, material or waste which is or becomes regulated by any federal, state or local governmental authority, or which causes a nuisance upon or waste to the premises.

E.    **Exoneration of Trustee.**

No Trustee shall be liable for any loss or depreciation in value of trust assets as a result of the Trustee retaining any property that is polluted or contaminated or has an adverse environmental condition unless the Trustee caused the loss or depreciation in value through willful default, willful misconduct or gross negligence.

**SECTION 5.    GENERATION-SKIPPING TRANSFERS**

A.    **Power to Allocate the GST Exemption.**

If the Trustee is required to make and file the Federal estate tax return for the Grantor's estate or any other return that may be required in connection with the generation-skipping transfer tax (the "GST tax"), the Trustee shall have the power to:

1.    **Lifetime Transfers.**

Allocate the Grantor's exemption from the Federal generation-skipping transfer tax (the "GST Exemption") to all or part of any property that the Grantor transferred during life to which the Grantor did not allocate any GST Exemption;

2.    **Deemed Allocation Election.**

Elect not to have the deemed allocation provisions of IRC Section 2632(b) apply, in whole or in part, to any lifetime transfer made by the Grantor;

3.    **Testamentary Transfers.**

Allocate the Grantor's GST Exemption that has not been allocated to the Grantor's lifetime transfers to all or any part of any transfer, outright or in trust, that occurs as a result of the Grantor's death and of which the Grantor is the transferor, whether provided for in this Trust Agreement, the Grantor's will, or in any other way; and

B.    **Allocation of Assets.**

1.    **Based on the Grantor's GST Exemption.**

If the value of the property to be distributed to any trust created by this Trust Agreement is greater than the GST Exemption that the Trustee decides to allocate to that trust, the Trustee shall create two separate trusts that shall be identified as the Exempt Portion and the Non-Exempt Portion of that trust. The Trustee shall first distribute to the Non-Exempt Portion each asset (or its proceeds) that is an item of income in respect of a decedent, and shall distribute to the Exempt Portion the fractional share of the remaining property to be distributed that will cause the Exempt Portion to have an inclusion ratio of zero based on the GST Exemption that the Trustee allocates to it. To the extent the remaining property is insufficient to fully fund the Exempt Portion in accordance with the preceding sentence, the Trustee shall allocate to the Exempt Portion instead of the Non-Exempt Portion the fractional share of the items of income in respect of a decedent that is necessary to fully fund the Exempt Portion. Any remaining assets shall be distributed to the Non-

Exempt Portion. The Exempt Portion and Non-Exempt Portion of such a trust shall be held, administered, and distributed as separate trusts in the manner described in this Section 5.

2.  **Based on Another Person's GST Exemption.**

   (i)     If property that is held in the Non-Exempt Portion of any trust created by this Trust Agreement is included in the Federal gross estate of a person other than the Grantor, the Trustee shall allocate to a separate trust the fractional share of the assets in the Non-Exempt Portion that will cause the separate trust to have an inclusion ratio of zero, based on the amount of the other person's GST Exemption that is allocated to that separate trust. The assets allocated to the separate trust shall be held, administered, and distributed pursuant to the same provisions that apply to the trust from which those assets were distributed.

   (ii)    If a person other than the Grantor adds property to any trust created by this Trust Agreement and if that other person's GST Exemption is allocated to all or a portion of that property, the Trustee shall allocate to a separate trust a fractional share of that property that has a value equal to the amount of that other person's GST Exemption that is allocated to the property so that the separate trust shall have an inclusion ratio of zero. The Trustee shall hold, administer, and distribute the assets allocated to that separate trust pursuant to the provisions that apply to the trust to which the assets were to be added.

   (iii)   If the Trustee creates more than one separate trust with an inclusion ratio of zero because it has received property to which more than one person's GST Exemption has been allocated, and if those trusts are to be administered for the same beneficiaries and pursuant to the same provisions, those several separate trusts may be combined in a single trust if the inclusion ratio of the combined trust will continue to be zero after the separate trusts are combined.

3.  **Based on Other Characteristics.**

   The Trustee shall have the authority to allocate property to as many separate trusts as shall be necessary to identify characteristics of such property that are significant for GST tax purposes, including but not limited to, property that is not subject to the GST tax (in which case such a trust shall be administered by reference to the provisions in this Trust Agreement that apply to the Exempt Portion of a trust), or property that qualifies for the grandchild exclusion or for the predeceased child exemption. Any such separate trust shall be held, administered, and distributed pursuant to the provisions that would have applied to the property if the separate trust had not been created.

4.  **Pecuniary Payments and Bequests.**

   If a person or trust holds the current right to receive a mandatory (i.e., nondiscretionary and noncontingent) payment of a pecuniary amount at the death of a person treated as the transferor of the property for Federal GST tax purposes (the "Transferor"), the Trustee shall either:

(i)      Within 15 months of the Transferor's death, make the entire payment or irrevocably set it aside by segregating it and holding it in a separate account pending distribution; or

(ii)     Allocate to the pecuniary payment a pro rata share of the income earned by the fund from which the pecuniary payment is to be made between the date of death of the Transferor and the date of payment.

C.   **Administration of Trusts for Descendants.**

The Trustee shall administer the Exempt Portion, Non-Exempt Portion and any other separate trust for a descendant pursuant to the terms of this Trust Agreement that apply to those trusts, except that:

1.   **Discretionary Distribution.**

The Trustee shall make any discretionary distribution of income or principal to a non-skip person first from the Non-Exempt Portion of the trust and last from the Exempt Portion of the trust; and shall, insofar as the Trustee deems it appropriate, pay from the Non-Exempt Portion of the trust a skip person's medical and tuition expenses directly to the provider of those services to the extent such distributions would be excluded from the definition of a generation skipping transfer under IRC Section 2611(b)(1); and shall make any discretionary distribution of income or principal to a skip person first from the Exempt Portion and last from the Non-Exempt Portion; and shall make any distribution from any other separate trust for that descendant in a way that will eliminate or minimize the imposition of a GST tax on the distribution or on future distributions.

2.   **Withdrawal of Principal.**

Any assets that the descendant is permitted to withdraw shall be withdrawn first from the Non-Exempt Portion until it is exhausted and last from the Exempt Portion. The part of the Non-Exempt Portion that may be withdrawn shall be determined by a fraction whose numerator shall be the value of the combined principal balances of the Exempt Portion, the Non-Exempt Portion and any other separate trust for that descendant that is administered pursuant to the same provisions as the Exempt Portion and the Non-Exempt Portion, times the fractional share of the trust's principal that the descendant is entitled to withdraw; and the denominator shall be the value of the Non-Exempt Portion's principal balance. If the numerator is larger than the denominator the descendant may withdraw all of the Non-Exempt Portion and may withdraw the balance to which such descendant is entitled next from the Exempt Portion and any other separate trust in a sequence determined by the Trustee that will eliminate or minimize the imposition of a GST tax on the distribution or on future distributions.

3.   **General Power of Appointment.**

This Subparagraph (C)(3) shall apply if a descendant of the Grantor dies and if the GST tax would apply to the Non-Exempt Portion of such descendant's trust at a rate that is based on the maximum Federal estate tax rate if it were not for the provisions of this Subparagraph (C)(3).

(i)    If such a descendant's gross estate plus such descendant's adjusted taxable gifts, less all of the items that are deductible for Federal estate tax purposes other than the marital deduction, is less than the lowest amount to which the maximum Federal estate tax rate applies, such descendant shall have the power to appoint to the creditors of such descendant's estate the fractional share of the remaining principal and undistributed income of the Non-Exempt Portion of such descendant's trust that is described in the Subparagraph immediately following.

(ii)    The fractional share that the descendant may appoint shall be that part of the Non-Exempt Portion that is not otherwise includable in the descendant's gross estate for Federal estate tax purposes that, when added to such descendant's gross estate and to the amount of death taxes that are payable from the Non-Exempt Portion pursuant to Subparagraph (D)(1), will cause such descendant's gross estate plus such descendant's adjusted taxable gifts, less all of the items that are deductible for Federal estate tax purposes other than the marital deduction, to be the highest amount to which the rate just below the maximum Federal estate tax rate applies. This power is in addition to any other power of appointment given to the descendant by this Trust Agreement.

D.    **Death Taxes.**

1.    **Descendants' Trusts.**

After the death of a descendant, if any part of the Non-Exempt Portion of such descendant's trust is subject to an estate, inheritance or succession tax because of the power given the descendant by Subparagraph (C)(3) and because of the provisions of this Section 5, the Trustee shall pay the fiduciary of the descendant's estate, from that part of the Non-Exempt Portion of such descendant's trust that is not otherwise includable in such descendant's gross estate for Federal estate tax purposes, the amounts that the fiduciary certifies have been paid or are due from such descendant's estate for such death taxes. The taxes attributable to the Non-Exempt Portion because of the provisions of Subparagraph (C)(3) and this Section 5 shall be the excess of the actual taxes over the taxes that would have been payable if the provisions of Subparagraph (C)(3) and this Section 5 did not apply.

E.    **Simultaneous Death.**

If (a) the Grantor, the Grantor's spouse,  or any descendant of the Grantor dies, and if (b) another person dies who is (i) assigned to a younger generation than that of the deceased person described in (a) of this sentence, and who is (ii) a person to or for whom an interest in any property passes outright or in trust because of the deceased person's death, and if (c) there is insufficient evidence to determine who died first, it shall be presumed that the person assigned to the younger generation died first as to property that that person failed to appoint effectively; and it shall be presumed that the person assigned to the older generation died first as to property that the younger generation person did appoint effectively.

F.    **Division of Trusts.**

The Grantor intends that each separate trust created by this Trust Agreement, including the Exempt Portion and Non-Exempt Portion into which any trust may be divided, shall have an inclusion ratio for GST tax purposes of either zero or one. If a separate trust shall have an

inclusion ratio that is more than zero and less than one, the Trustee shall have the power to divide any property held in such a trust or portion into two separate trusts representing fractional shares of the property being divided so that one trust will have an inclusion ratio of one and the other trust an inclusion ratio of zero if such a division is permitted by applicable law; if it is not permitted, such a trust shall be held, administered, and distributed, separate from any other trust or portion that does not have an inclusion ratio of either one or zero.

**G.**     **Frustration of Purpose.**

    **1.**     **Purpose.**

The Grantor's purpose in creating any Exempt Portion as a separate trust is to segregate in the Exempt Portion those funds that are permitted by law to be transferred to a younger generation person without the imposition of the GST tax so that they can be held in trust free from the imposition of either the Federal estate tax or the GST tax until the Exempt Portion is terminated pursuant to the effective exercise of a power of appointment or the terms of this Trust Agreement.

    **2.**     **Change in Law or Circumstances.**

If the provisions of the applicable tax law change from those that are in effect when the Grantor signs this Trust Agreement, or if the circumstances of one or more of the Grantor's descendants and the descendant's family should be such that, in the Trustee's judgment, there is either no significant tax advantage or there is a significant tax or non-tax disadvantage in continuing all or any part of the Exempt Portion or any other separate trust for a descendant as a separate trust in the manner provided for in this Trust Agreement, the Trustee is authorized, in its sole and uncontrolled discretion, (i) to terminate the Exempt Portion or any other separate trust, in whole or in part, and to distribute the principal and undistributed income outright to the person who is then the income beneficiary of that portion, or (ii) to combine all or any part of a descendant's Exempt Portion, Non-Exempt Portion, or any other separate trust for a descendant with all or any part of one or more other trusts that are to be held, administered, and distributed pursuant to the same provisions.

**H.**     **Exoneration of Trustee.**

Any decision by the Trustee to exercise or not to exercise any power granted by this Section 5, and the extent to which such a power shall be exercised, shall be final and binding on all persons. No beneficiary who is serving as a Trustee may participate in the exercise of any power granted by this Section 5 if the exercise of that power may in any way affect a right or a potential right of that beneficiary or confer upon that beneficiary any kind of benefit; in any such case the powers granted by this Section 5 shall be exercised only by a co-trustee or successor trustee who is not prevented from acting by this Section 5 or, if there is no such trustee, by a court of competent jurisdiction.

## SECTION 6.   INVESTMENT ADVISOR

### A.      Appointment.

After the Grantor's death, then the Grantor's spouse, if living, and if not, then any beneficiary for whom a trust is created or named (with any such beneficiary under a legal disability voting through his/her lawful guardian) shall have the right, by written instrument, to appoint and remove, from time to time, an Investment Advisor to the Trustee of such trust. The Investment Advisor may be an individual or a corporate entity but must be a person (individual or corporate) whose primary profession is investment counseling and advising. Every Trustee acting when any Investment Advisor is appointed or removed shall forthwith be given written notice of such fact.

The principal purpose of the Investment Advisor is to consult with the Trustee on the diversity of investments, the selection of investment managers, and/or the selection of mutual funds (depending on the size of the portfolio). In setting the investment strategy for the funds of any trusts established hereunder, the Trustee is directed to request the Investment Advisor to make investment recommendations based on the "risk adjusted returns" of the investment managers and/or the mutual funds.

### B.      Coordination with Trustee.

The Trustee shall consult with any Investment Advisor, when acting, with respect to any and all investment decisions, other than ministerial decisions, and shall cooperate with the Investment Advisor to carry out such investment plans, programs and acts as may be recommended by the Investment Advisor; provided, however, and notwithstanding the foregoing, upon receipt of written recommendations from a duly appointed Investment Advisor, the Trustee shall be accorded a reasonable time to examine and review the same before implementing the same and may refuse to implement the same, in whole or in part, if the Trustee shall determine, in the exercise of its fiduciary responsibilities, that implementation of all or any part of said recommendations would not be reasonably prudent in the circumstances. Written notice of such determination shall be given by the Trustee to the Investment Advisor (with a copy to each beneficiary entitled to appoint an Investment Advisor).

### C.      Liability of Trustee.

Notwithstanding anything elsewhere herein or as provided by statute or regulation to the contrary, no Trustee shall be liable for any loss or other detriment arising directly or indirectly from any act or omission to act directed by an Investment Advisor or from any sale, failure to sell, retention of assets or other investment activity or failure of activity based upon or resulting, directly or indirectly, from the directions of an Investment Advisor or from the failure or refusal of a Trustee, acting in discharge of its fiduciary responsibilities hereunder, to implement all or any part of the written directions or recommendations of any Investment Advisor.

## SECTION 7.   DISTRIBUTION ADVISOR

Notwithstanding any other provisions of this Agreement, there may at any time be one or more Distribution Advisors (the "Distribution Advisor") to serve in accordance with the provisions of this Section. The role and

function of the Distribution Advisor is set forth in this Section. The Distribution Advisor shall serve in a fiduciary capacity and conform to the purposes of this Agreement.

**A.      Initial Appointment of Distribution Advisor.**

After the Grantor's death, then the Grantor's spouse, if living, and if not, then any beneficiary for whom a trust is created or named (with any such beneficiary under a legal disability voting through his/her lawful guardian) shall have the right, by written instrument, to appoint and remove, from time to time, a Distribution Advisor to any Trustee. The Distribution Advisor may be an individual or a corporate entity but must be a person (individual or corporate) whose primary profession is investment counseling and advising. Every Trustee acting when any Distribution Advisor is appointed or removed shall forthwith be given written notice of such fact.

At no time may the Grantor, the Grantor's spouse, any beneficiary of this Trust, or any party who is a related or subordinate party to the Grantor, the Grantor's spouse, or any beneficiary of this Trust under IRC Section 672(c), serve as Distribution Advisor of any trust created by or pursuant to this Agreement.

Those persons designated above shall have the power to appoint additional Distribution Advisors if at such time there are fewer than three Distribution Advisors serving and shall have the power to designate a successor Distribution Advisor upon the death, resignation, removal or incapacity of the last serving Distribution Advisor by providing written notice to such additional or successor Distribution Advisor, and the Trustee. The appointment of additional or successor Distribution Advisors shall become effective at such time as the person(s) authorized to designate same provides in the instrument of appointment and upon written acceptance by the designee.

To the extent that more than two persons are serving as Distribution Advisor at any time, an affirmative vote of a majority of such Distribution Advisor must be reached with respect to any decisions, actions taken or direction given. Otherwise, the Distribution Advisor must act unanimously Notwithstanding the foregoing, to the extent that more than one Distribution Advisor is serving, the Distribution Advisor may designate one such Distribution Advisor to communicate all directions to the Trustee.

**B.      Role and Function.**

The Distribution Advisor shall hold and exercise the full power to direct the Trustee to distribute income and principal of the Trust pursuant to the standards established under this Agreement. The Trustee shall follow the direction of the Distribution Advisor with respect to all matters concerning the distribution of income or principal of the Trust. In the event no Distribution Advisor is then serving, the Trustee shall hold and exercise the full power to make discretionary distributions of income and principal of the Trust pursuant to the standards established under this Agreement.

**C.      Directions to Trustee.**

Any distribution direction to the Trustee shall be in writing, delivered by mail, courier, facsimile transmission, electronic mail, or otherwise in such form as the Trustee may specify from time to time by written notice to the Distribution Advisor. The Trustee shall have no obligation to investigate or confirm the authenticity of directions it receives or the authority

of the person or persons conveying them, and the Trustee shall be exonerated from any and all liability in relying on any such direction from a person purporting to be the Distribution Advisor without further inquiry by the Trustee.

**D.    Liability of Trustee.**

Provided a Distribution Advisor is then serving, the Distribution Advisor shall  have sole responsibility (and the Trustee shall have no responsibility) for all discretionary actions involving any distribution of income or principal of the Trust. The Trustee shall make only such distributions of income or principal as the Distribution Advisor directs, or that are non-discretionary and mandated by the terms of the Trust. The Trustee shall be under no obligation to review the beneficiaries' needs or requests for income or principal distributions, make any recommendation with respect to such distributions, solicit any direction from the Distribution Advisor, calculate the impact of any distribution on the likely duration of the Trust, or ensure the equality of distributions among the beneficiaries. The Trustee need not review whether the Distribution Advisor is satisfying its responsibilities hereunder. The Trustee shall incur no liability for any act or failure to act by the Distribution Advisor, or for acting on a direction of the Distribution Advisor and it shall not be liable for any loss to the Trust or any claim of inequality, partiality or unreasonableness resulting from any action taken at the direction of the Distribution Advisor, or taken by the Trustee in accordance with the direction of the Distribution Advisor. The Trustee shall have no duty to monitor the conduct of the Distribution Advisor, provide advice to the Distribution Advisor or consult with the Distribution Advisor or communicate with or warn or apprise any beneficiary or third party concerning instances in which the Trustee would or might have exercised the Trustee's own discretion in a manner different from the manner directed by the Distribution Advisor. Furthermore, the Trustee shall have no liability under this Trust to any Trust beneficiary or any other person whose interest arises under this Trust for the Trustee's good faith reliance on the provisions of this Section or any other provision of this Agreement concerning distribution decisions (unless the Trustee has acted with willful misconduct proven by clear and convincing evidence in the Court then having primary jurisdiction over the Trust). The Trustee shall be deemed to have acted within the scope of its respective authority, to have exercised reasonable care, diligence and prudence, and to have acted impartially as to all interested persons unless the contrary may be proved by clear and convincing evidence in the Court then having primary jurisdiction over the Trust. The Trustee and the Distribution Advisor shall not be liable for the acts or defaults of each other or any other Advisor.

**E.    Liability of Distribution Advisor.**

The Distribution Advisor shall not be held liable to any beneficiary for any distribution decision made hereunder, unless it results from actions taken in bad faith or through willful misconduct proven by clear and convincing evidence in the Court than having primary jurisdiction over the Trust.

**F.    Indemnification.**

The Trustee shall, to the extent of the Trust assets and solely payable from the Trust assets, indemnify the Distribution Advisor for all losses, costs, damages, expenses and charges, public and private, including reasonable attorneys' fees, including those arising from all litigation, groundless or otherwise that result from the performance or non-performance of the powers given to the Distribution Advisor under this Agreement (unless the Distribution

Advisor has acted in a manner that does not comply with the standard of liability applicable to the Distribution Advisor).

G.   **Resignation of Distribution Advisor.**

Any Distribution Advisor serving hereunder may resign at any time by providing written notice to the Trustee and the Trust Protector (if one is then serving). Such resignation shall become effective at such time as the resigning Distribution Advisor shall provide in the notice of resignation.

H.   **Removal of Distribution Advisor.**

The Trust Protector shall have the power to remove any Distribution Advisor by providing written notice to such Distribution Advisor and the Trustee. The removal shall become effective at such time as the Trust Protector indicates in the notice of removal.

I.   **Compensation.**

The Distribution Advisor may be entitled to reasonable compensation for its services as agreed upon by the Distribution Advisor and Trust Protector.

## ARTICLE ELEVEN

## DEFINITIONS AND GENERAL PROVISIONS

### SECTION 1.   DEFINITIONS

For purposes of this Trust Agreement, the following words and phrases shall be defined as follows:

**A.**   **Adopted and Afterborn Persons.**

Persons who are legally adopted while they are under 18 years of age (and not those persons adopted after attaining 18 years of age) shall be treated for all purposes under this Trust Agreement as though they were the naturally born children of their adopting parents.

A child in gestation who is later born alive shall be considered a child in being throughout the period of gestation.

**B.**   **Agent.**

An individual's "Agent" means (1) the individual's attorney-in-fact acting under a durable power of attorney, to the extent such durable power of attorney specifically authorizes the exercise of a particular power;, or (2) the individual's duly appointed conservator to the extent such conservator gives notice to the Trustee and obtains approval for the exercise of such power from the Court which appointed him or her as such conservator; or (3) the individual's legal or natural guardian, and, if more than one, that legal or natural guardian that is either an ancestor or descendant of the Grantor.

**C.**   **Descendants.**

A person's descendants shall include all of his or her lineal descendants through all generations; provided, however, a child shall not be considered a descendant of his or her natural or adoptive parent (or of the ancestors of such parent) after the date of a court order terminating the parent's parental rights of the child, unless such parental rights were terminated primarily as a result of the actions of a party other than the parent.

A descendant in gestation who is later born alive shall be considered a descendant in being throughout the period of gestation.

An adopted person, and all persons who are the descendants by blood or by legal adoption while under the age of 18 years of such adopted person, shall be considered descendants of the adopting parents as well as the adopting parents' ancestors.

**D.**   **Per Stirpes Distributions.**

For purposes of this Trust Agreement, when an allocation or distribution is directed to be made "per stirpes" the following rules shall be applied to determine both the eligible takers and the shares which they shall take, in the following manner: (i) eligible takers shall not include the issue of living issue; and (ii) in determining the shares, the primary shares shall be fixed in reference to the generation closest to the ancestor or ancestors described in which

there is at least one member then living. The number of such primary shares shall be the same as the number of members of that generation then living or who died survived by issue then living; intending that if all eligible takers are of the same generation they shall take in equal shares.

E.    **Education.**

As used in this Trust Agreement, "education" shall include:

> Any course of study or instruction at an accredited college or university granting undergraduate or graduate degrees.

> Any course of study or instruction at any institution for specialized, vocational, or professional training.

> Any curriculum offered by any institution that is recognized for purposes of receiving financial assistance from any state or federal agency or program.

> Any course of study or instruction which may be useful in preparing a beneficiary for any vocation consistent with the beneficiary's abilities and interests.

> Distributions for education may include tuition, fees, books, supplies, living expenses, travel, and spending money to the extent that they are reasonable.

> Expenses for studying abroad; and paying off student loans.

F.    **Personal Representative.**

For the purposes of this Trust Agreement, the term "personal representative" shall include an executor, administrator, guardian, custodian, conservator, Trustee, or any other form of personal representative.

G.    **Incapacity or Disability.**

Except as otherwise provided in this Trust Agreement, a person shall be deemed to be incapacitated or under a legal incapacity or disability if (i) such person has been duly adjudged an incapacitated person, a disabled person, an insane person or an incompetent person by any court of competent jurisdiction and a legal guardian for such person has been appointed; or (ii) a person's ability to receive and evaluate information effectively or to communicate decisions, or both, is impaired to such an extent that the person lacks the capacity to manage such person's financial resources, as determined by certification of two licensed physicians who are unrelated to the person (by blood or marriage) and who are experts in neuro-psychological evaluations; or (iii) an individual Trustee of a trust created under this Trust Agreement fails to satisfy within sixty (60) days a written request by a majority of the beneficiaries then eligible to receive mandatory or discretionary distributions of net income from such trust (with any beneficiary under a legal disability acting through his/her Agent) for certification in writing by at least two licensed physicians who are unrelated to the person (by blood or marriage) and who are experts in neuro-psychological evaluations that the Trustee can effectively carry out the duties of a Trustee; or (iv) such person is someone who cannot take any needed actions due to involuntary detention or disappearance, as determined by the affidavit of at least two people with knowledge

regarding the same. The Trustee hereunder shall have no liability to anyone for acting in good faith upon any such certification or affidavit.

**H.  Antilapse Provision.**

As used in this Trust Agreement, the term "if living" shall have the same meaning as the phrase "and not to [the beneficiary's] descendants", except to the extent such descendants are named as successor beneficiaries by the terms of this Trust Agreement.

**I.  Ademption of Specific Devises**

It is the Grantor's intent that each specific devise of trust property made hereunder, if any, shall lapse and be of no effect if, at the time of distribution, the property so devised is not part of the trust property and does not subsequently become trust property after the Grantor's death.

**J.  State as Heir.**

In the event the State of Michigan is determined to be an heir hereunder, any distribution that would have been made to the State, but for this provision, shall be added to and distributed as part of the shares being distributed to living individuals.

**K.  Ascertainable Standard.**

Notwithstanding any other provision of this Trust Agreement to the contrary, whenever payments are authorized to be made to or for a beneficiary's "health, education, support and maintenance", the Grantor intends that such payments are to be limited by "ascertainable standards" within the meaning of IRC Sections 2041 and 2514.

**L.  Survivor or Survivors.**

As used herein, the term "survivor or survivors of" shall mean the persons or person so designated that are living at the time in question, but shall not include any descendants or issue of such designated persons or person.

**M.  Use of Trust.**

As used herein, the term "income" shall also mean the use of non-income producing trust property.

**N.  Internal Revenue Code of 1986.**

Reference to "Code", "Internal Revenue Code", IRC (or similar abbreviations), or to provisions thereof, are to the Internal Revenue Code of 1986, as amended at the time in question.

## SECTION 2.   DIVORCE

If either the Grantor or the Grantor's spouse files a petition for legal separation or dissolution of marriage, the Grantor's spouse, the parents of the Grantor's spouse, and all descendants of the parents of the Grantor's spouse (who are not descendants of the Grantor's parents) and all spouses of such persons (who are not

descendants of the Grantor's parents) shall be deemed to have died intestate on the date of such filing for all purposes of this Trust Agreement (other than for purposes of the "rule against perpetuities" provisions under this Trust Agreement); provided, however, that if court order(s) are issued dismissing all such petitions (whether filed by the Grantor or the Grantor's spouse) and the Grantor accepts the dismissal of such petitions filed by the Grantor's spouse by a duly acknowledged instrument, then all such persons shall no longer be deemed to have died intestate for all purposes of this Trust Agreement.

If a descendant of the Grantor or such descendant's spouse files a petition for legal separation or dissolution of marriage, such spouse, all descendants of the parents of such spouse (who are not descendants of the Grantor), and all spouses of such persons (who are not descendants of the Grantor's parents) shall be deemed to have died intestate on the date of such filing for all purposes of this Trust Agreement (other than for purposes of the "rule against perpetuities" provisions under this Trust Agreement); provided, however, that if court order(s) are issued dismissing all such petitions (whether filed by the descendant of the Grantor or such descendant's spouse) and the descendant of the Grantor accepts the dismissal of such petitions filed by such descendant's spouse by a duly acknowledged instrument, then all such persons shall no longer be deemed to have died intestate for all purposes of this Trust Agreement.

## SECTION 3.   THE RULE AGAINST PERPETUITIES

Notwithstanding any other provision in this Trust Agreement relating to perpetuity periods, the trusts created under this Trust Agreement shall be perpetual to the fullest extent permitted by applicable law. If any trust created hereunder is deemed to be subject to the law of a jurisdiction that has a rule against perpetuities or similar rule which limits the period during which property can be held in trust, then such trust (other than a trust created by the exercise of a power of appointment conferred hereunder which exercise commences a new rule against perpetuities period under the law of such jurisdiction) shall terminate in all events upon the expiration of the longest period that property may be held in trust under this Trust Agreement under the law of such jurisdiction (including any applicable period in gross, such as 21 years, 90 years or 110 years); provided, however, that if the jurisdiction has a rule against perpetuities or similar rule which applies only to certain types of property, such as real property, the provisions of this Section shall apply only to such property. If under the law of such jurisdiction the longest period that property may be held in trust may be determined (or alternatively determined) with reference to the death of the last survivor of a group of individuals in being upon the date of that Trust Agreement becomes irrevocable, those individuals shall consist of all of the descendants of the Grantor's parents who were in being on the date such rule against perpetuities period or similar rule commenced. Upon termination of a trust pursuant to the provisions of this Section, the trust property shall be transferred, conveyed and paid over to the beneficiary for whom the trust was named or created, or, if such beneficiary is not then living, to the then living descendants of the beneficiary, per stirpes, or, if no descendant of the beneficiary is then living, to the then living descendants, per stirpes, of the lineal ancestor of the beneficiary of the closest degree of consanguinity to the beneficiary which ancestor has descendants who are then living and which ancestor was also a descendant of the Grantor, or, if there are no descendants of such a lineal ancestor of the beneficiary, in accordance with the terms and conditions set forth in Article Four above.

## SECTION 4.   PROTECTIVE CLAUSE

To the extent permitted by law, a beneficiary's interest hereunder shall not be subject to liabilities or creditor claims or to assignment or anticipation. However, this provision shall not restrict the exercise of a disclaimer or the exercise of a power of appointment or withdrawal right granted by this Trust Agreement, nor shall it prevent or prohibit the termination of a trust or the sale, gift or transfer of beneficial interests to charity or between family members and/or beneficiaries.

## SECTION 5.   BENEFICIARIES ON GOVERNMENT ASSISTANCE

If the Trustee reasonably believes that a beneficiary of any trust created under this Agreement is a person who is incapacitated, or is a person whose financial circumstances are such that failure to delay distributions will actually reduce the trust benefits to such person, the Trustee shall hold the distribution for such beneficiary in further trust hereunder (hereinafter referred to as the "Special Trust") on the following terms and conditions:

The primary purpose of this trust is to provide a supplemental and emergency fund to supplement any public benefits available to such beneficiary during his or her lifetime. It is the Grantor's intent that the assets of the Special Trust shall, to the fullest extent permitted by law, be free from assignment or collection for the satisfaction of the claims of any creditors or government agencies. If this trust were to be invaded by creditors or subject to any liens or encumbrances, or if the terms of this trust were to be applied so as to cause such beneficiary's eligibility for public benefits to be terminated, it is likely that the trust assets would be depleted before his or her death and the purpose of this trust could not then be fulfilled.

Until such beneficiary is, in the Trustee's judgment, no longer incapacitated, or such beneficiary's financial situation has changed significantly, the Trustee shall pay over to or for the benefit of such beneficiary as much of the net income and as much of the principal of the Special Trust, up to the whole thereof, as the Trustee, in the Trustee's sole discretion, from time to time deems necessary or advisable for the satisfaction of such beneficiary's special needs. For this purpose, "special needs" refers to the requisites for maintaining such beneficiary's good health, comfort, safety, and welfare when, in the discretion of the Trustee, those requisites are not being provided for by any county, state, federal, or other governmental agency, or by any person or persons with a legal obligation to support such beneficiary. "Special needs" shall include, but not be limited to, medical and dental care, special equipment, programs of training, education, rehabilitation, travel needs and recreation not provided for or reimbursed by public benefits. The Trustee shall consult with any guardian, conservator, custodian, or other person who cares for such beneficiary regarding his or her special needs. Expenditures made by the Trustee under this Section 5 may include reasonable compensation to any person who provides for the special needs of such beneficiary as provided in this Section 5. Any expenditure permitted by this Section 5 may be made either with or without prior court order.

It is the Grantor's intent that any payments or distributions from this trust to or for the benefit of such beneficiary shall supplement (but not replace) any public benefits or other private resources available to him or her. The Trustee may, in the exercise of the Trustee's discretion, seek as necessary all available public benefits for such beneficiary's benefit, and shall segregate any public benefits received by the Trustee for that purpose in a separate trust or account and administer the same for the benefit of such beneficiary. All public benefits received by the Trustee for that purpose, together with any other resources available to such beneficiary, shall be taken into account by the Trustee in making payments or distributions to or for the benefit of such beneficiary. The Trustee shall regularly consult with such beneficiary and any persons or entities providing care or assistance to such beneficiary for the purpose of determining such beneficiary's needs and resources. The Trustee shall not exercise the Trustee's discretion to make any payments or distributions to or for the benefit of such beneficiary if the Trustee determines, in the Trustee's sole discretion, that public benefits, private resources, or a combination of public benefits and private resources are reasonably available to such beneficiary to satisfy those needs.

No part of the income or principal of the trust shall be used to replace or supplant public benefits of any county, state, federal, or other governmental agency that has a legal responsibility to serve persons with disabilities or conditions that are the same as or similar to those of such beneficiary. For purposes of determining such beneficiary's eligibility for any public benefits, no part of the principal

or undistributed income of the trust shall be considered available to him or her, and he or she shall have no right to compel the Trustee to release principal or income to him or her or for his or her benefit or otherwise to have any access to any of the trust assets. In the event that the Trustee is requested to release principal or income of the trust to or on behalf of such beneficiary to pay for any equipment, medication, services, or any other needs that any public benefits would be authorized to provide for were it not for the existence of the trust, or in the event that the Trustee is requested to petition any court or any administrative agency for authorization to release principal or income for any purpose of that kind, the Trustee is authorized to deny the request and take whatever administrative or judicial steps may be necessary to continue the eligibility of such beneficiary for all available public benefits, including obtaining instructions from a court of competent jurisdiction that the trust principal is not available to such beneficiary for purposes of determining his or her eligibility for any public benefits. Any expenses of the Trustee in this regard, including reasonable attorney's fees, shall be a proper charge to the Special Trust.

If any payment or distribution from the trust to or for the benefit of such beneficiary would have the effect of disqualifying him or her for any public benefits, or if all income of the Special Trust cannot be completely utilized for his or her special needs, the Trustee shall accumulate the trust income annually and add it to principal.

The discretion of the Trustee shall not be subject to review by such beneficiary, his or her creditors and/or any governmental agency. Notwithstanding any other provision of this Agreement if the existence of the Special Trust, or any change in any law, regulation, or rule relating to the Special Trust or the administration of the Special Trust for the benefit of such beneficiary, should at any time have the effect of disqualifying him or her for any public benefits, or if such beneficiary, his or her creditors and/or any governmental agency shall ever bring any court action to force or require the Trustee to distribute to or for the benefit of such beneficiary a greater amount of income and/or principal than the Trustee, in the Trustee's absolute discretion, has determined to be appropriate, the Trustee is authorized (but not required) to terminate the trust and distribute the trust principal and income as provided in the last paragraph of this Section 5 below; the Grantor requests that any person who takes any part of the trust assets as the result of this termination power, conserve and manage such property for the benefit of such beneficiary during his or her lifetime to ensure that he or she receives sufficient funds for his or her living needs when public benefits are unavailable or insufficient to satisfy those needs. This request is precatory, however, and is not mandatory.

At such beneficiary's death, the Trustee shall distribute the Special Trust, as then constituted, in the manner hereinafter set forth for the distribution of such beneficiary's share in the event such beneficiary did not survive the Grantor.

## SECTION 6.   EXERCISE OF POWER OF APPOINTMENT

Any trust principal or net income as to which a power of appointment is exercised shall be distributed to the appointee or appointees upon such conditions and estates, in such manner (in trust or otherwise), with such powers, in such amounts or proportions, and at such time or times (but not beyond the period permitted by any applicable rule of law relating to perpetuities) as the powerholder may specify in the instrument exercising the power, subject to the following:

### A.     Manner of Exercise.

Any power, including a power of appointment, granted to an individual under the trust may be exercised either by (1) such individual by a Will, or (2) a written direction other than a

Will executed by such individual or such individual's Agent, and delivered to the Trustee during the individual's lifetime (hereinafter referred to as a "written direction"), which Will or written direction specifically refers to the paragraph of the trust under which the power is granted. A written direction may be revoked or amended by a subsequent written direction executed by the individual or his or her Agent that complies with the above formalities. If a conflict occurs between the terms of the individual's Will and the terms of a written direction or between the terms of two or more written directions, the terms of the most recent document shall prevail. A power of appointment may be exercised by an individual even if (1) the individual is a minor or under disability, or (2) all of the assets constituting the trust with respect to which the power is granted have not been received by the Trustee. If the Trustee does not receive actual notice of the exercise of a power of appointment by Will within six (6) months after the death of the individual holding the power, the Trustee may, without liability, distribute the property subject to the power as if the power had not been exercised. In determining whether, in what manner, and to what extent a power of appointment has been exercised by Will, the Trustee may act in reliance on a court order in any jurisdiction admitting an instrument to probate as the Will of the holder of the power or finding that the holder died intestate. However, this provision shall not affect any right an appointee or beneficiary in default of appointment may have against any distributee.

**B.**     **Restrictions on Implementation.**

Notwithstanding Paragraph (A) above to the contrary, no power of appointment may be exercised by any individual under the trust with respect to policies of insurance on the life of such individual, or the proceeds thereof, unless such policies or proceeds would be included in the individual's gross estate at such individual's death without regard to such power of appointment. Unless the implementation of the exercise of a power of appointment described herein is specifically restricted under the trust, a power of appointment (1) exercisable during the powerholder's lifetime shall be implemented upon delivery to the Trustee or thereafter as provided in the instrument exercising the power, and (2) exercisable at the death of the powerholder shall be implemented upon such individual's death or thereafter as provided in the instrument exercising the power. Upon a powerholder's death, the power of appointment shall not pass on to the powerholder's descendants.

**C.**     **Compelled Exercise Not Effective.**

The purported exercise of any power, including a power of appointment, granted under this Trust Agreement shall be of no force or effect if such purported exercise was the result of compulsion. If such purported exercise is the result of compulsion, the Trustee shall administer the property subject to such power as if said purported exercise had not occurred. The purported exercise of a power shall be deemed to be the result of compulsion if such purported exercise is in response to or by reason of any order or other direction of any court having jurisdiction over the individual holding the power, the Trustee, the property subject to the power or the trust containing such property. An individual's Agent may not exercise a power given to such individual under this Trust Agreement if such purported exercise is in response to or by reason of any such order or other direction of any court having jurisdiction over the Agent, unless the order or other direction was obtained by the Agent in a proceeding in which the Agent was the petitioner or voluntarily acquiesced.

## SECTION 7.   CONTEST CLAUSE

Except as provided in the next paragraph, every share, interest, or power conferred by this trust is made on the condition precedent that the recipient acquiesce in all the provisions of this Trust Agreement and not challenge or contest any of the provisions of this Trust Agreement, of any other trust established by the Grantor, or of the Grantor's Will. This condition precedent is an essential ingredient of every benefit conferred by this Trust Agreement. The recipient must agree to abide by the terms of this Trust Agreement, all other trusts established by the Grantor, and the Grantor's Will. Failure to do so shall result in the recipient and all descendants of the recipient being treated as if they had failed to survive the Grantor, or, in the case of a non-individual recipient, as if the same were not then in existence.

Both the Grantor and the law recognize that facts or circumstances could give rise to probable cause to challenge this Trust Agreement or some of its provisions. Therefore, the precondition of the preceding paragraph shall not apply to a challenge or contest if probable cause to assert the challenge or contest exists. As used in this Section, probable cause shall exist if at the time of instituting the proceeding, there was evidence that would lead a reasonable person, properly informed and advised, to conclude that there was a substantial likelihood that the challenge would be successful.

## SECTION 8.   GENERAL MATTERS

The following general matters of construction shall apply to the provisions of this Trust Agreement:

A.    **Construction.**

Unless the context requires otherwise, words denoting the singular may be construed as denoting the plural, and words of the plural may be construed as denoting the singular. Words of one gender may be construed as denoting another gender as is appropriate within such context.

B.    **Headings of Articles, Sections, and Paragraphs.**

The headings of Articles, Sections, and Paragraphs used within this Trust Agreement are included solely for the convenience and reference of the reader. They shall have no significance in the interpretation or construction of this Trust Agreement.

C.    **Notices.**

All notices required to be given in this Trust Agreement shall be made in writing by either:

Personally delivering notice to the party requiring it, and securing a written receipt, or

Mailing notice by certified United States mail, return receipt requested, to the last known address of the party requiring notice.

The effective date of the notice shall be the date of the written receipt or the date of the return receipt, if received, or if not, the date it would have normally been received via certified mail, provided there is evidence of mailing.

D.   **Delivery.**

For purposes of this Trust Agreement "delivery" shall mean:

Personal delivery to any party, or

Delivery to any party's last known address or place of business by certified United States mail, return receipt requested, Federal Express, UPS, or a similar carrier, or

Delivery to any party by properly directed and identified facsimile or electronic message.

The effective date of delivery shall be the date of personal delivery or the date of the return receipt, if received, or if not, the date it would have normally been received via certified mail, provided there is evidence of mailing, or the date the property directed and identified facsimile or electronic message was sent.

E.   **Duplicate Originals.**

This Trust Agreement may be executed in several counterparts; each counterpart shall be considered a duplicate original Trust Agreement.

F.   **Severability.**

If any provision of this Trust Agreement is declared by a court of competent jurisdiction to be invalid for any reason, such invalidity shall not affect the remaining provisions of this Trust Agreement. The remaining provisions shall be fully severable, and this Trust Agreement shall be construed and enforced as if the invalid provision had never been included in this Trust Agreement.

## SECTION 9.   COST-OF-LIVING ADJUSTMENT FACTOR

Whenever a gift, bequest or other payment made hereunder which is expressly to be adjusted for the "cost-of-living", then as of January 1 of each calendar year beginning with the second year after the date of this Trust Agreement, such gift, bequest or payment (the "Payment") shall be redetermined by multiplying the initial Payment times the Cost of Living Adjustment Factor. The Cost of Living Adjustment Factor shall be a fraction, the numerator of which is the United States consumer price index for the prior calendar year and the denominator of which is the United States consumer price index for the year this Trust Agreement was dated. For purposes of this section, "United States consumer price index" means the annual average of the United States consumer price index for all urban consumers as defined and reported by the United States Department of Labor, Bureau of Labor Statistics, or its successor agency. Alternatively, the Trustee may obtain this factor from the State of Michigan Department of Treasury's annual publication of the cost of living adjustment factor required to be published annually by section 1210 of the Estates and Protected Individuals Code of 1998, which factor is presently determined in the same manner as the Cost of Living Adjustment Factor described above.

## SECTION 10.  GOVERNING LAW / SITUS

It is not intended that the laws of only one particular state shall necessarily govern all questions pertaining to all of the trusts hereunder. Rather, the validity of each trust hereunder, as well as the validity of the particular provisions of that trust, shall be governed by the laws of whatever state having any sufficient connection with such trust will support such validity.

The meaning and effect of the terms of this trust instrument (and of any other instrument related hereto) shall be governed by the laws of the State of Michigan. The meaning and effect of the instrument creating any trust receiving an appointment hereunder shall be governed by the laws of whatever state may be designated in such instrument (or, absent such designation, by the laws of the State of Michigan).

The administration of each trust hereunder shall be governed by the laws of the state in which that trust is then being administered (based on the location of the principal office of the trustee then having custody of that trust's principal assets and records), which state's courts shall have exclusive jurisdiction over the administration of that trust with respect to any period during which it was thus being administered in that state. Furthermore, to the greatest extent permitted by law each and every trust hereunder (and each of its trustees) shall be exempt from and shall do everything possible to be independent of registration in or with, accountings to, and supervision by any court or other government agency. The jurisdiction whose laws govern the validity, construction, administration, meaning and effect, and rights of beneficiaries of any trust may, but need not, be the same as the situs of the administration of such trust.

The foregoing shall apply even though the situs of some trust assets or the home of the Grantor, a trustee or a beneficiary may at some time be elsewhere.

The Trustee may, with the written consent of a majority of the trust's current income beneficiaries who are not incapacitated, change the situs of any trust created hereunder and elect to have the validity, construction, administration, meaning and effect or rights of beneficiaries of such trust be governed by the laws of another jurisdiction, in or outside the United States (including that jurisdiction's law concerning the maximum duration of trusts). The Trustee may not change the situs of a trust or the trust's governing law in order to limit its existing liability to the beneficiaries.

Unless otherwise consented to by the current income beneficiaries of the trust in question or by any Trust Protector of the trust in question, no person shall serve as a Trustee if to do so would result in the trust being: (i) classified as a "foreign trust" under the Internal Revenue Code, and (ii) subjected to greater or additional taxation as a result of such classification.

**IN WITNESS WHEREOF**, I have executed this Trust Agreement the day and year first written above.

I certify that I have read the foregoing irrevocable Trust Agreement, and that it correctly states the terms and conditions under which the trust property is to be held, managed, and disposed of by the Trustee, and that I am 18 years of age or older, of sufficient mental capacity, and under no constraint or undue influence. I approve this irrevocable trust in all particulars, and request the Trustee to execute it.

WITNESS:

GRANTOR:

_____

**STEVEN M. MANCINI**

TRUSTEE:

_____

**FRANK P. IANNUZZI**

_____

**CYNTHIA R. MOREFIELD**

| STATE OF MICHIGAN | ) |
|---|---|
| | ) SS. |
| COUNTY OF OAKLAND | ) |

Acknowledged before me in Oakland County, Michigan, on December 15, 2014, by **STEVEN M. MANCINI** as Grantor and **FRANK P. IANNUZZI** and **CYNTHIA R. MOREFIELD** as Trustees.

_____
Notary Public

DEANNA LYNN HOJARA
NOTARY PUBLIC
Macomb County
State of Michigan
My Comm. Expires July 31, 2016

December 15, 2014

Steven M. Mancini
37532 Hidden Valley Court
Clinton Township, Michigan 48036

Re:   **STEVEN M. MANCINI ELECTING SMALL BUSINESS TRUST AGREEMENT,** dated
      December 15, 2014

Dear Steven:

This letter will explain some of the tax implications of the above-named trust, as well as the mechanics for administering and funding the trust.

## FUNDING THE TRUST

To transfer assets (i.e. cash, stocks, bonds, mutual funds, etc.) to the trust, an account should be opened in the following name:

> **FRANK P. IANNUZZI** and **CYNTHIA R. MOREFIELD,** Trustees, or any successor Trustee,
> of the **STEVEN M. MANCINI ELECTING SMALL BUSINESS TRUST AGREEMENT,**
> dated December 15, 2014.

Please note that when establishing this account, you will be asked for the trust's federal tax identification number. I will obtain this number from the IRS and will notify you of same.

## GIFT TAXES

To qualify these gifts for the $14,000 annual gift tax exclusion, the beneficiary of the trust must be given the right to withdraw the beneficiary's share of any gifts made to that trust. If your annual gifts to the trust exceed $14,000 per beneficiary, your accountant will have to file a gift tax return (Form 709) with the IRS to report these gifts. However, no gift tax will have to be paid until these excess gifts exceed the $5,340,000 gift tax "exemption" that is available to you. *It is your responsibility to advise your accountant of all gifts made to the trust so that he/she can prepare any gift tax return that may be due.*

*The Trust contains generation skipping tax provisions, we recommend that you advise your accountant to elect, pursuant to Treasury Regulation Section 26.2632-1(b)(3), to treat the trust as a "GST Trust" with respect to all current-year transfers and all future transfers to the trust. Therefore, you should advise your accountant to attach to the gift tax return a statement identifying the trust, the transfers to be covered by the election, and that the trust is to be treated as a "GST Trust" with respect to the covered transfers.*

## NOTICE OF WITHDRAWAL RIGHTS

Existing law requires that the beneficiary be given "notice" of the beneficiary's withdrawal rights as described above. Attached is a letter from the trustee apprising the beneficiary of the same. This notice to the beneficiary must be given each time a gift is made to the trust. I suggest that the attached letters be used as "masters" with copies of same being made as needed. You should ask the beneficiary to sign this waiver. *Please note that the very last sentence at the very end of the notice wherein the beneficiary waives the right to future notices is only intended as a "fail-safe" in case written notice is inadvertently not given by the Trustee.* The original waiver, signed and dated by the beneficiary, should be kept by the trustee indefinitely. These waivers may be needed in the event of a gift tax audit, or in the event of an estate tax audit at the time

1

of your death. Until the beneficiary reaches the age of 18, the parent of the beneficiary who did not make the contribution to the trust that is subject to withdrawal should sign the waiver on the beneficiary's behalf.

## INCOME TAXES

In general, a trust is considered a mere conduit of the income it distributes to its beneficiaries. For this reason, trust income is normally taxed either to the trust, if retained by the trust, or to the beneficiaries, if distributed to or for the benefit of the beneficiaries. Please note that any income distributed to or on behalf of a beneficiary under age 18 years would be subject to the "Kiddie Tax" rules. *It is your responsibility to provide your accountant with a copy of this letter and ask your accountant to prepare and file an annual income tax return (Form 1041) for you and the trust.*

If you should have any questions regarding the above, please do not hesitate to call me.

## NOTICE OF TRUST EXISTENCE

Existing law requires that the beneficiary be given "notice" of the trust's existence. This notice to each beneficiary must be given within 63 days of the creation of the trust. I suggest that the attached "Notice To Beneficiary of Interest in Trust" be used. The Trustee should ask the beneficiary to sign and date this notice. The original notice, signed and dated by the beneficiary, should be kept by the trustee indefinitely.

Very truly yours,

GIARMARCO, MULLINS & HORTON, P.C.

Julius H. Giarmarco, Esq.

Enclosures

2

Dated: _____

_____

_____

To:    Christina M. Mancini

Re:    **STEVEN M. MANCINI ELECTING SMALL BUSINESS TRUST AGREEMENT**, dated December 15, 2014

As the trustee of the above-captioned trust, I hereby give you notice that an addition has been made to said trust. As the beneficiary of the trust you are entitled for a period of thirty (30) days from the date of this letter, pursuant to Article Eight, Section 1 of said trust, to withdraw from the trust property an amount equal to $_____. If you desire to withdraw the above-specified sum, please inform me immediately, in writing.

Your withdrawal right will lapse at the end of the 30-day withdrawal period if it is not properly exercised during that period, except in certain circumstances, where, pursuant to Article Eight, Section 4 of the Trust, part or all of your withdrawal right will automatically continue, but will then terminate in future years.

The IRS requires that you acknowledge your receipt of this letter. Therefore, I would appreciate your signing, dating and returning to me immediately a copy of this letter for my records. You may fax your response to me.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

_____
Frank P. Iannuzzi, Trustee

_____
Cynthia R. Morefield, Trustee

☐    I wish to exercise my withdrawal right.

☐    I hereby acknowledge receipt of notification of my power of withdrawal under the above-named Trust and the addition made to the Trust. Further, I understand that additions will be made to the Trust in future years, and I may be given a power of withdrawal with respect to such additions. Unless I notify you to the contrary, you do not need to notify me regarding future additions over which I am given a power of withdrawal.

_____
Signature of Beneficiary or his/her Guardian

Dated: _____

_____

_____

To:  Richard M. Mancini

Re:  **STEVEN M. MANCINI ELECTING SMALL BUSINESS TRUST AGREEMENT**, dated December 15, 2014

As the trustee of the above-captioned trust, I hereby give you notice that an addition has been made to said trust. As the beneficiary of the trust you are entitled for a period of thirty (30) days from the date of this letter, pursuant to Article Eight, Section 1 of said trust, to withdraw from the trust property an amount equal to $_____. If you desire to withdraw the above-specified sum, please inform me immediately, in writing.

Your withdrawal right will lapse at the end of the 30-day withdrawal period if it is not properly exercised during that period, except in certain circumstances, where, pursuant to Article Eight, Section 4 of the Trust, part or all of your withdrawal right will automatically continue, but will then terminate in future years.

The IRS requires that you acknowledge your receipt of this letter. Therefore, I would appreciate your signing, dating and returning to me immediately a copy of this letter for my records. You may fax your response to me.

If you have any questions, please do not hesitate to contact me.

                                        Very truly yours,

                                        _____
                                        Frank P. Iannuzzi, Trustee

                                        _____
                                        Cynthia R. Morefield, Trustee

☐    I wish to exercise my withdrawal right.

☐    I hereby acknowledge receipt of notification of my power of withdrawal under the above-named Trust and the addition made to the Trust. Further, I understand that additions will be made to the Trust in future years, and I may be given a power of withdrawal with respect to such additions. Unless I notify you to the contrary, you do not need to notify me regarding future additions over which I am given a power of withdrawal.

_____
Signature of Beneficiary or his/her Guardian

Dated: _____

_____

_____

To:     Sabrina A. Mancini

Re:     **STEVEN M. MANCINI ELECTING SMALL BUSINESS TRUST AGREEMENT**, dated
December 15, 2014

As the trustee of the above-captioned trust, I hereby give you notice that an addition has been made to said
trust. As the beneficiary of the trust you are entitled for a period of thirty (30) days from the date of this letter,
pursuant to Article Eight, Section 1 of said trust, to withdraw from the trust property an amount equal to
$_____. If you desire to withdraw the above-specified sum, please inform me immediately, in
writing.

Your withdrawal right will lapse at the end of the 30-day withdrawal period if it is not properly exercised
during that period, except in certain circumstances, where, pursuant to Article Eight, Section 4 of the Trust,
part or all of your withdrawal right will automatically continue, but will then terminate in future years.

The IRS requires that you acknowledge your receipt of this letter. Therefore, I would appreciate your signing,
dating and returning to me immediately a copy of this letter for my records. You may fax your response to
me.

If you have any questions, please do not hesitate to contact me.

Very truly yours,


_____
Frank P. Iannuzzi, Trustee


_____
Cynthia R. Morefield, Trustee

☐      I wish to exercise my withdrawal right.

☐      I hereby acknowledge receipt of notification of my power of withdrawal under the above-named
Trust and the addition made to the Trust. Further, I understand that additions will be made to the
Trust in future years, and I may be given a power of withdrawal with respect to such additions.
Unless I notify you to the contrary, you do not need to notify me regarding future additions over
which I am given a power of withdrawal.

_____
Signature of Beneficiary or his/her Guardian

Dated: _____

_____

_____

To:    Marina A. Mancini

Re:    **STEVEN M. MANCINI ELECTING SMALL BUSINESS TRUST AGREEMENT**, dated December 15, 2014

As the trustee of the above-captioned trust, I hereby give you notice that an addition has been made to said trust. As the beneficiary of the trust you are entitled for a period of thirty (30) days from the date of this letter, pursuant to Article Eight, Section 1 of said trust, to withdraw from the trust property an amount equal to $_____. If you desire to withdraw the above-specified sum, please inform me immediately, in writing.

Your withdrawal right will lapse at the end of the 30-day withdrawal period if it is not properly exercised during that period, except in certain circumstances, where, pursuant to Article Eight, Section 4 of the Trust, part or all of your withdrawal right will automatically continue, but will then terminate in future years.

The IRS requires that you acknowledge your receipt of this letter. Therefore, I would appreciate your signing, dating and returning to me immediately a copy of this letter for my records. You may fax your response to me.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

_____
Frank P. Iannuzzi, Trustee

_____
Cynthia R. Morefield, Trustee

☐    I wish to exercise my withdrawal right.

☐    I hereby acknowledge receipt of notification of my power of withdrawal under the above-named Trust and the addition made to the Trust. Further, I understand that additions will be made to the Trust in future years, and I may be given a power of withdrawal with respect to such additions. Unless I notify you to the contrary, you do not need to notify me regarding future additions over which I am given a power of withdrawal.

_____
Signature of Beneficiary or his/her Guardian

## NOTICE TO BENEFICIARY OF INTEREST IN TRUST

To: _____

Re: **STEVEN M. MANCINI ELECTING SMALL BUSINESS TRUST AGREEMENT**

Trustees: **FRANK P. IANNUZZI** and **CYNTHIA R. MOREFIELD**

Trust Date: December 15, 2014

The purpose of this notice is to inform you that you are a beneficiary of the Trust, which is in existence, and of which the foregoing is named as Trustee and has signed an Acceptance of Trust.

Pursuant to the instructions of the Grantor of the Trust, **STEVEN M. MANCINI**, the Trust is not registered with a Probate Court.

You, as a beneficiary of the Trust, have the right to receive both a copy of the Trust's terms that describe or affect your beneficiary's interest and relevant information about the Trust property.

You have six (6) months from the date of this Notice to contest the validity of the Trust, pursuant to MCL §700.7604(1)(b)(vii).

To assist in the administration of the Trust, please sign and date where indicated below and return this form to me. If you have any questions, please contact me at the following address and phone number.

Trustees

Dated: _____    By: _____

**FRANK P. IANNUZZI**
Address: 1175 W. Long Lake Rd
Bingham Troy, MI 48098
Phone Number: 1 248-641-0005

Dated: _____    By: _____

**CYNTHIA R. MOREFIELD**
Address: 448 Victoria La-
Romeo, MI 48065
Phone Number: 586-215-0588

## ACKNOWLEDGMENT OF NOTICE

The undersigned acknowledges receipt of the above notice.

_____

## REMOVAL OF CO-TRUSTEES

Pursuant to Article Six, Section 2, Paragraph (A) of the **STEVEN M. MANCINI ELECTING SMALL BUSINESS TRUST AGREEMENT**, dated December 15, 2014 ("Trust"), the undersigned hereby removes **RICHARD MANCINI, SABRINA A. MANCINI** and **MARINA A. MANCINI** as the current Co-Trustees of the Trust, effective immediately.

Dated: January 5, 2019

_____

**STEVEN M. MANCINI**, Grantor

## ACCEPTANCE OF SOLE TRUSTEE

The undersigned hereby agrees to act as the sole Trustee of the **STEVEN M. MANCINI ELECTING SMALL BUSINESS TRUST AGREEMENT**, dated December 15, 2014; without responsibility for any act or omission on the part of any previous Co-Trustee(s).

Dated: January 5, 2019

_____

**CHRISTINA M. MANCINI**

## ACCEPTANCE OF SUCCESSOR CO-TRUSTEES

The undersigned hereby accept the appointment as the successor Co-Trustees of the STEVEN M. MANCINI ELECTING SMALL BUSINESS TRUST AGREEMENT, dated December 15, 2014, effective immediately; without responsibility for any act or omission on the part of any previous Trustee(s).

Dated: June __5__, 2017

_____
CHRISTINA M. MANCINI

_____
RICHARD M. MANCINI

_____
SABRINA A. MANCINI

_____
MARINA A. MANCINI

## NOTICE OF RESIGNATION OF TRUSTEES
## AND AGREEMENT TO WAIVE 30-DAY NOTICE PROVISION

I, **Frank P. Ianuzzi**, by my signature below, hereby voluntarily RESIGN as the Trustee of the **STEVEN M. MANCINI ELECTING SMALL BUSINESS TRUST AGREEMENT**, dated December 15, 2014, effective immediately upon the date of my signature.

I, **Cynthia R. Morefield**, by my signature below, hereby voluntarily RESIGN as the Trustee of the **STEVEN M. MANCINI ELECTING SMALL BUSINESS TRUST AGREEMENT**, dated December 15, 2014, effective immediately upon the date of my signature.

I, **Steven M. Mancini**, Grantor of the **STEVEN M. MANCINI ELECTING SMALL BUSINESS TRUST AGREEMENT**, dated December 15, 2014, by my signature below, hereby:

(1) accept and acknowledge the voluntary resignations of co-trustees Frank P. Ianuzzi and Cynthia R. Morefield, effective immediately upon the date of their signatures;

(2) thank each of them for their service to the Trust; and

(3) waive the provisions contained in Article Six, Section 1 of the **STEVEN M. MANCINI ELECTING SMALL BUSINESS TRUST AGREEMENT**, dated December 15, 2014, requiring thirty-day notice of resignation by a Trustee.

---

Frank P. Ianuzzi, Trustee                    Dated: _____

Cynthia R. Morefield, Trustee                Dated: 6 - 2 - 17

Steven M. Mancini, Grantor                   Dated: 6 - 2 - 17